**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| H&R BLOCK, INC. and HRB INNOVATIONS, INC.<br><br>     Plaintiffs,<br><br>  v.<br><br>BLOCK, INC.,<br><br>     Defendant. | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs H&R Block, Inc. and HRB Innovations, Inc. (together with their subsidiaries and affiliates, "Block"), by its attorneys Berkowitz Oliver LLP and Debevoise & Plimpton LLP, for their complaint against Block, Inc., alleges as follows:

### Nature of the Case

1. Block brings this lawsuit to protect consumers from being deceived and to prevent a Silicon Valley tech company from stealing Block's name in order to co-opt the reputation and goodwill that Block has earned through decades of hard work.

2. For more than 65 years, consumers have entrusted their most sensitive and personal financial information to Block. Block began as a company that helped consumers prepare and file their tax returns, and has expanded into other financial services including prepaid debit cards, lines of credit, loans, access to bank accounts, small business services, and more. One year ago, Block unveiled the next phase of its strategic transformation, Block Horizons, outlining how the company is leveraging its client relationships and technology

platform to accelerate growth in small business and financial products, and continuing to modernize the consumer tax business to combine digital tools with human expertise and care. As part of that transformation, in January 2022, Block will launch the SPRUCE BUILT BY H&R BLOCK financial technology platform that combines the best features of leading digital banks with Block's trusted brand and insights, gained from helping millions of customers every year. Leveraging the deep relationship Block has built with its consumer and small business customers, and its reputation for trust, quality, reliability and excellence, Block uses innovative technology to provide customers with a diverse suite of financial services and products, all under a family of BLOCK trademarks.

3. The goodwill that Block has so carefully created and nurtured over the last six-plus decades is now under attack by a Silicon Valley fintech company that announced on December 1 that it is rebranding itself as Block, Inc. Previously known as Square, Inc., the newly-named Block, Inc. competes directly with Block in several areas of tax and other financial services. For example, Block, Inc. acquired Credit Karma Tax— which is a competitor of Block's tax-related businesses—and offers competitive tax preparation and filing services through Cash App Taxes. Once Block, Inc. completes the integration of Credit Karma Tax, customers will be able to receive their tax refunds via Block, Inc.'s Cash App (which Block, Inc. describes as one of the "building blocks" in its family of companies), and will be able to save those funds or spend them through the Cash App or through Cash App's Cash Card debit card. In the same exact manner, Block's customers can access, save or spend their tax refunds using Block's MyBLOCK app and the integrated H&R BLOCK EMERALD CARD (a prepaid Mastercard debit card). Block, Inc. even intends to offer these services using a square green logo

(shown at right below) that is nearly identical in color and shape to Block's federally registered green square logo (shown at left below).



4.      In the two weeks since Block, Inc. announced its name change, consumers (and even an employee in the Block, Inc. family of companies) have indicated on Twitter that consumers are likely to draw an link between Block, Inc. and Block because of Block, Inc.'s choice to co-opt the BLOCK name.  It is inevitable that even more consumer confusion and deception will follow as Block, Inc. moves beyond the announcement phase and starts to actively market, advertise and sell its competing tax and other financial products and services.  Block, Inc. is already promoting its Cash App Taxes service as coming from Block, Inc. as shown below:



5.      Instead of misappropriating the BLOCK name, Block, Inc. could have continued to use its prior name (Square, Inc.) or could have chosen any number of alternatives.  Block, Inc.'s decision—taken with obvious knowledge of Block's market position, reputation and trademark rights—reflects a conscious choice to trade on Block's heritage of consumer trust.  As a relatively new Silicon Valley business, Block, Inc. knows that it does not have the kind of history or reputation for trust and reliability that Block has enjoyed for more than 65 years, or the

deep relationship with consumers that Block has earned. Instead of earning its own reputation under its own brand, Block, Inc. has decided to take a short cut.

6.      Block, Inc.'s name change will deceive consumers and cause irreparable harm to Block. Consumers will mistakenly believe that Block is one of the "building blocks" in the Block, Inc. family of financial services companies. Any announced bad news about Block, Inc. —such as a data breach that exposes its customers' social security numbers or private financial information—would devastatingly be associated with Block. There is no harm more irreparable than the loss of reputation that this confusion will cause. Block therefore asks this Court to put a stop to Block Inc.'s unlawful conduct and prevent this harm.

**The Parties**

7.      Plaintiff H&R Block, Inc. is a corporation organized under the laws of the State of Missouri, with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105. H&R Block, Inc. is a holding company that operates through its subsidiaries, and is the ultimate parent company to the Block family of companies.

8.      Plaintiff HRB Innovations, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 103 Foulk Road, Suite 208, Wilmington, Delaware 19803, and is a wholly-owned indirect subsidiary of H&R Block, Inc. HRB Innovations is the owner of the BLOCK family of marks.

9.      Upon information and belief, Defendant Block, Inc. is a Delaware corporation with a principal place of business located at 1455 Market Street, Suite 600, San Francisco, California 94103, and is registered to conduct business in the State of Missouri. Formerly

known as Square, Inc., Block, Inc. announced its name change on December 1, 2021 and formally changed its name on December 10, 2021.

## Jurisdiction and Venue

10.     This Court has original jurisdiction over this action pursuant 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over Block, Inc. pursuant to Mo. Rev. Stat. § 506.500 because Block, Inc. transacts business within the State of Missouri and committed trademark infringement in the State of Missouri.

12.     Venue is proper under 28 U.S.C. §§ 1391(b) and (c).  Block, Inc. is located in this district and does business in this District, and a substantial part of the events giving rise to the claims in this case occurred in this District.

## *Block and Its Well-Known BLOCK Family of Marks*

13.     In 1955, brothers Henry and Richard Bloch transformed their bookkeeping business into a new company that specialized in income tax preparation.  They called their company "H&R Block."  More than 65 years later, Block is a market leader and a brand icon in tax and other financial services, with over 9,000 locations in the United States alone.  With nearly 1,500 additional offices in Canada and Australia, Block is one of the world's largest tax preparation companies, with more than 800 million tax returns prepared for its customers.

14.     In the past six-plus decades, Block has expanded its services from tax preparation to a variety of other financial services, including electronic tax filing, refund advance loans,

refund transfers, prepaid debit cards, lines of credit, providing credit scores, mobile banking platforms, tax refund identity theft protection, and small business services. Block already offers a number of these services through its MyBLOCK mobile app, and has announced that, in 2022, it will launch a new, innovative financial technology platform, SPRUCE BUILT BY H&R BLOCK, which will provide consumers with a range of mobile banking, such as the ability to set and monitor savings goals and the ability to earn cash back on everyday purchases.

15. Block offers its services under a family of marks (the "BLOCK Marks"), including a number for which it owns United States trademark registrations. Among those registrations are the following:

| Mark | Reg. No. | Reg. Date. | Services/Goods |
|---|---|---|---|
| H&R BLOCK | 3,338,962 | Nov. 20, 2007 | Preparation of tax returns for others; financial planning services; conducting classes and courses in preparation of tax returns. |
| H&R BLOCK EMERALD CARD | 3,392,368 | Mar. 4, 2008 | Debit card and credit card services. |
| H&R BLOCK EMERALD SAVINGS | 3,525,361 | Oct. 28, 2008 | Savings account services. |
| H&R BLOCK EMERALD ADVANCE | 3,532,084 | Nov. 11, 2008 | Financial services, namely, debit and credit card services, loan financing and financing lines of credit. |
| BLOCKWORKS | 4,769,331 | Jul. 7, 2015 | Computer software for tax return preparation, tax planning, tax calculation, and tax return filing and associated instructional manuals and other printed instructional materials sold as a unit therewith. |
| BLOCK ADVISORS | 5,055,458 | Oct. 4, 2016 | Tax return preparation for others; tax planning services; business management |

| Mark | Reg. No. | Reg. Date. | Services/Goods |
|---|---|---|---|
| | | | and consulting services; accounting services; bookkeeping; and payroll services for others, namely, payroll preparation and payroll processing. |
|  | 5,179,142 | Apr. 11, 2017 | Tax return preparation for others; tax planning services; business management and consulting services; accounting services; budgeting services; bill paying services; and payroll services for others, namely, payroll preparation and payroll processing services. |
| BLOCK HAS YOUR BACK | 6,003,605 | Mar. 3, 2020 | Preparation of tax returns for others. |

16. These registrations were duly and legally issued, and they are valid and subsisting. The registrations for H&R BLOCK, BLOCKWORKS, H&R BLOCK EMERALD SAVINGS, H&R BLOCK EMERALD ADVANCE, and BLOCKWORKS also are incontestable pursuant to 15 U.S.C. § 1065.

17. Block promotes and provides its services under the BLOCK Marks on its websites including https://hrblock.com/ and https://blockadvisors.com/. It also promotes its brand on Twitter under the handles @hrblock, @hrblocknews and @hrblockanswers; on Facebook under the name @hrblock; on Instagram under the name @hrblock; and on LinkedIn at https://www.linkedin.com/company/h&r-block/.

18. Block has made significant investment to develop its brand identity, including through community outreach programs and national advertising campaigns on television, in print, on the radio, on the Internet, and on social media channels, including Twitter, Instagram,

Facebook and LinkedIn. Over the last three years alone, Block has spent nearly half a billion dollars advertising its products and services under the BLOCK Marks.

19.     Through these campaigns, and since at least 2015, Block has prominently identified itself simply as BLOCK (in addition to using the BLOCK Marks) to promote its consumer services, as shown in the following examples:













20.     Among the BLOCK Marks is "MyBlock," the
mobile app (shown at right) that consumers can use to get support
from their Block tax professionals, access credit scores, manage
their Tax Identity Shield membership (which helps protect against
identity theft tax refund fraud), upload receipts, donations, and
other tax-related items, and access other financial services, such as
manage their H&R BLOCK EMERALD CARD.



21.     In addition to advertising its consumer services under the BLOCK Marks, Block
refers to itself as BLOCK in recruiting new employees, such as inviting them to come to "Block
Day" career events, and explaining that "Opportunity knocks at Block" as shown below:



Employees who go above and beyond in demonstrating Block's values can be awarded the title
of "BLOCK MVP," and featured on Block's social media channels. Block employees frequently
refer to their employer as "Block," and customers frequently refer to the local offices where they
go for Block's services as "Block" offices.

22.     In connection with its small business services and advice, Block uses the BLOCK ADVISORS registered trademark (Reg. No. 5,055,458) and the BLOCK ADVISORS and design registered trademark (Reg. No. 5,179,142, shown at right). In 2021 alone, Block has served more than two million small businesses, including under the BLOCK ADVISORS brand.



23.     In addition to the tax and other financial services offered under the BLOCK Marks, in 2019 Block formed a community impact program under the name MAKE EVERY BLOCK BETTER. Through this program, Block employees volunteer and give back to their local communities. Block partners with national organizations and those in its hometown—such as Habitat for Humanity, Nextdoor, the Urban Neighborhood Initiative, the Neighborhoods Rising Fund, the Ewing Marion Kauffman Foundation, and the Urban League of Greater Kansas City—to build connections among neighbors and provide resources and support in communities through efforts such as donating to food pantries, increasing access to quality housing and better neighborhood spaces, enhancing shared community spaces, and supporting small businesses. Block promotes the MAKE EVERY BLOCK BETTER program with its BLOCK branding at its various community programs, such as with t-shirts, and other branding, as shown below:



24.     Block also uses the BLOCK Marks to support local charitable initiatives in Kansas City, Block's hometown.  Block licenses the BLOCK Marks to the H&R Block Foundation, a Kansas City non-profit organization that, since 1974, has worked to create positive social change on important community issues, such as art and culture, neighborhood revitalization, education, and health and human service.

25.     Block also uses the BLOCK Marks in connection with its diversity and inclusion initiative BELONGING AT BLOCK:





26.     As a result of its efforts, the H&R BLOCK brand has over 90% brand awareness in the United States.

27.     Although Block is aware of other companies that use BLOCK-formative marks such as BLOCK & COMPANY, INC.—which offers real estate brokerage services in the Kansas City area, and uses a logo that is distinct from Block's (shown at right)—Block is not aware of any companies with a national reach that use the "BLOCK" mark in connection with the types of tax preparation and other financial services that Block offers under its family of BLOCK Marks.  Indeed, when other companies have used marks confusingly similar to the BLOCK Marks in connection with the types of tax preparation and other financial services that Block offers, Block has enforced its rights to swiftly put an end to the infringing use.



### *Block's Green Color Scheme and Green Square Marks*

28.     As shown in virtually all of the images reproduced above, Block consistently and prominently uses the color green in connection with its BLOCK Marks.  Block also owns federally registered trademarks for its green square logo (the "Green Square Marks"), shown below:

| Mark | Reg. No. | Reg. Date. | Services/Goods |
|------|----------|------------|----------------|
|  **H&R BLOCK** [Note:  The mark consists in part of a green square] | 2,533,014 | Jan. 22, 2002 | Preparation of tax returns for others. |

| Mark | Reg. No. | Reg. Date. | Services/Goods |
|------|----------|------------|----------------|
| | 3,656,593 | July 21, 2009 | Computer programs for use in the preparation of tax returns; tax advice and planning services; tax consultation; tax filing services; accounting consultation and accounting services; Financial planning services; banking services; and mortgage services, namely, mortgage banking, mortgage lending, mortgage brokering and mortgage servicing; Educational services, namely, conducting classes and courses in the field of tax preparation and distribution of course materials in connection therewith; Providing online non-downloadable software for use in the preparation of tax returns. |
| BLOCK Advisors | 5,179,142 | Apr. 11, 2017 | Tax return preparation for others; tax planning services; business management and consulting services; accounting services; budgeting services; bill paying services; and payroll services for others, namely, payroll preparation and payroll processing services. |

And as shown in Paragraph 22 above, the BLOCK ADVISORS mark incorporates a green square logo, in three-dimensional cube form. Block, Inc. uses a similar three-dimensional cube for its brand, as shown at right. 

29.     The first two Green Square Marks listed above were duly and legally issued, they are valid and subsisting, and are also incontestable pursuant to 15 U.S.C. § 1065.

30.     As an extension of its green branding, Block offers the H&R BLOCK EMERALD PREPAID MASTERCARD, which allows customers to deposit money onto a Block-branded prepaid debit card (including direct deposit of tax refunds and payroll).  The Emerald Card can be used as an everyday account, to pay bills, and to make purchases anywhere Mastercard® debit cards are accepted.  The Emerald Card is the fourth most popular prepaid debit card in the United States.  Block also offers the Emerald Savings account (which can be used in conjunction with the Emerald Card to make deposits and withdrawals), and Emerald Advance (a line of credit with year-round access).  Consumers can manage their Emerald Card and Emerald Savings accounts through Block's "MyBlock" mobile app or through the login page on Block's website.

31.     In 2020, Block announced its "Block Horizons 2025" transformation strategy program, which targets the next phase of Block's growth and development, focusing on three strategic imperatives including "Small Business," "Financial Products," and the "Block Experience."  This program will help provide access to financial services for customers who are "underbanked" (*e.g.*, individuals who have some type of bank account but also use alternative financial services, such as money orders, check-cashing services, and payday loans, to manage their finances and make purchases).  Through the Block Horizons 2025 corporate growth strategy, Block has already announced that it will launch its SPRUCE financial technology platform in early 2022:



*__Block, Inc.'s Infringing Re-Branding as "BLOCK"__*

32.     On December 1, 2021, Block, Inc., formerly known as Square, Inc., publicly announced that it was changing its name to "Block, Inc."  In the "About Block" section of its press release, Block, Inc. describes the company as "a global technology company with a focus on financial services."  Block, Inc.'s CEO, Jack Dorsey, stated: "Block is a new name, but our purpose of economic empowerment remains the same. No matter how we grow or change, we will continue to build tools to help increase access to the economy."  Block, Inc.'s businesses include offering tax preparation and other financial services, such as prepaid debit cards, bank accounts, and payroll services that include the payment of payroll taxes.  A true and correct copy of the December 1, 2021 press release is attached hereto as Exhibit A.

33. Block, Inc. has launched a website at https://block.xyz, which identifies its brands, including Square and Cash App, as the "building blocks" of the BLOCK brand. Block, Inc.'s website visually depicts its brands as "building blocks" (as shown at right). Block, Inc. also has established "BLOCK"



social media accounts, a "BLOCK" LinkedIn page with the tagline "joinblock" in the URL address, a "BLOCK" copyright and trademark policy, a "BLOCK" contact for press and investor relations, and a "BLOCK" music playlist on its website called "BLOCK VIBES." Block, Inc.'s Twitter handle is "@blocks" and "@blockir." The first search result on Twitter (of which Mr. Dorsey was also the founder and a former CEO) for "Block" is Block, Inc., followed by Block's Twitter account @hrblock. A printout of Block, Inc.'s block.xyz website is attached hereto as Exhibit B.

34. According to the December 1 press release, Block, Inc.'s Square brand "helps sellers run and grow their business with its integrated ecosystem of commerce solutions, business software, and banking services." Square's website (at https://squareup.com/us/en/banking) explains that, with Square, "[y]our payments, business banking accounts, and cash flow [are] synced together seamlessly." Square also offers checking account services with a linked debit card.

35. Block, Inc.'s Cash App brand is a mobile payment service that offers users direct deposit, a debit card connected to the user's balance that can be used anywhere Visa is accepted, and money transfer services. Block, Inc.'s Cash App uses a green square logo that is nearly identical in color and shape to Block's federally registered Green Square Marks:



36.    As Block strives to do, Cash App has stated that it also seeks to help underbanked consumers, as described on its LinkedIn page, shown below:



37.    On information and belief, Cash App also is about to begin offering tax preparation services that compete directly with Block's tax preparation business. On November 25, 2020, Block, Inc. announced that it entered into an agreement, on behalf of Cash App, to acquire Credit Karma's tax business. The press release stated that "[t]he acquisition provides an opportunity to digitize and simplify the tax filing process in the United States, expanding access to the one in three households which are unbanked or underbanked." The press release further explained that "[t]he tax product will expand Cash App's diverse ecosystem of financial tools—which currently includes peer-to-peer payments, Cash Card, [and] direct deposit . . . giving customers another way to manage their finances from their pocket." A true and correct copy of the press release is attached hereto as Exhibit C.

38.    On information and belief, Cash App is not yet offering these tax filing service products but plans to do so imminently, as it has begun to advertise on its website

(https://cash.app/taxes) using green branding that is similar to Block's branding, and green squares that are similar to Block's Green Square Marks.



39.     News reports in November 2021 state that "Cash App is currently working to integrate the Credit Karma Tax platform," and that "customers will access the tax prep software through Cash App instead of Credit Karma."  Attached hereto as Exhibit D is a true and correct copy of a Forbes Advisor article describing the Cash App's integration of Credit Karma Tax.

40.     Block, Inc. is already promoting Cash App Taxes—the service that will compete directly with Block—as coming from Block, Inc.:



41.     On information and belief, Block, Inc. also intends to offer charitable services under the BLOCK brand.  On December 1, 2021, Block, Inc. (under its then-name Square, Inc.) filed an application with the United States Patent and Trademark Office ("USPTO") to register BLOCK as a trademark for use in connection with, among other services, "charitable services, namely, promoting public awareness about charitable, philanthropic, volunteer, public and community service and humanitarian activities."  It also has filed an application to register its block logo.  A true and correct copy of these trademark applications are attached hereto as Exhibit E.

42.     Given the similarities between the tax and other financial services offered by brands that form the building blocks of the Block, Inc. family of financial services companies (such as Square and Cash App) on the one hand, and the tax and other financial services offered by Block on the other, as well as the charitable services to be offered by Block, Inc. and that are currently offered by Block, all under the BLOCK name and marks, consumer confusion is inevitable.

43.     In the two weeks since Block, Inc. changed its name to Block, Inc. and became known as BLOCK, there has been significant discussion on social media reflecting actual or potential confusion.  For example, users have tweeted in response to Block, Inc.'s name change

- "The square rebrand is surely going to piss off@HRBlock who do a lot of financial services stuff under the Block name."

- "Are you talking about H&R Block?"

- "Have you ever heard of H&R Block? They are in the financial business as well. Did you know they refer to their business as the Block?"

- "[D]oesn't this seem close to H&R Block with their simple green square logo?"

- "[I]sn't that name already taken by HRBlock, which is already in the financial and banking sectors?"



44.     Even employees in the Block, Inc. family of companies recognize the risk of confusion.  For example, one of those employees tweeted:  "Folks regularly mistook me working and [sic] Square Enix. Now, I'm pretty sure folks are now going to think I work for H&R Block."





45.     Block, Inc., by using "BLOCK" as its name in connection with its tax and other financial services businesses, is creating a likelihood of confusion with Block's tax and other financial services, and the BLOCK Marks.  As Block, Inc. expands its financial offerings under the BLOCK brand of companies, and as its use of the BLOCK mark becomes more widespread, the initial confusion highlighted above will only become exacerbated.  That is particularly true as Block, Inc.'s Cash App Taxes completes its integration of Credit Karma Tax and begins offering the same tax preparation services as Block, with its green color scheme and square logo.

46.     The potential consumers of Block, Inc.'s services are the same as, or similar to, the potential consumers for Block.  They include consumers seeking tax and other financial services, small businesses seeking tax and other financial services, and unbanked or underbanked individuals seeking debit cards, savings accounts, and other financial services.  Given the clear overlap, these consumers are particularly susceptible to being confused by Block, Inc.'s misappropriation of the BLOCK trademark.

47.     If Block, Inc. is not enjoined from infringing Block's family of BLOCK Marks, Block will suffer irreparable harm, and the goodwill that Block has spent decades cultivating will be eroded.

**COUNT ONE
(Registered Trademark Infringement
Under Section 32 of the Lanham Act)**

48.     Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

49.     Certain of the BLOCK Marks and the Green Square Marks are registered with the USPTO and are valid, subsisting, used in commerce, and inherently distinctive (the "Registered BLOCK Marks").

50.     Block, Inc.'s "BLOCK" mark and green logo are confusingly similar to the Registered BLOCK Marks and the Green Square Marks.  Those marks are used in connection with advertising and offering products and services that are overlapping and related to the products and services offered by Block.

51.     Block, Inc.'s use of the "BLOCK" mark and the green square logo is therefore likely to cause confusion, or to cause mistake, or to deceive as to the source, origin, sponsorship or affiliation of Block, Inc.'s products and services, and is likely to cause consumers to believe, incorrectly, that Block, Inc.'s products and services originate from, or have been authorized, sponsored, approved, or endorsed by Block, or that Block, Inc.'s businesses are otherwise connected to, sponsored by, or affiliated with Block in some way; whereas, in fact, Block does not approve of Block, Inc.'s appropriation of its trademarks for Block, Inc.'s products, services, or businesses.

52.     Block, Inc.'s use of the confusingly similar BLOCK trademark and the confusingly similar green square logo is likely to cause irreparable injury to the reputation of Block as well as the goodwill developed by Block for its services and the BLOCK brand.  The extent of this harm cannot be ascertained at this time, leaving Block without any adequate remedy at law.

53.     The foregoing acts by Block, Inc. constitute trademark infringement of Block's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of the Registered BLOCK Marks and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Block, Inc.'s aforesaid acts.

## COUNT TWO
### (Trademark Infringement
### Under Section 43(a) of the Lanham Act)

55.     Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

56.     The BLOCK Marks and the Green Square Marks are used in commerce in the United States.

57.     Block Inc.'s infringing "BLOCK" mark is confusingly similar to Block's family of BLOCK Marks.  Block, Inc.'s infringing use of the green square logo in connection with its Cash App Taxes services is confusingly similar to Block's Green Square Marks.  Block, Inc.'s promotion, advertising, offering for sale, and sale of its services in connection with the "BLOCK" mark and the green square logo is therefore likely to cause confusion, to cause mistake, and/or to deceive as to affiliation, connection, or association between Block and Block, Inc., and is likely to cause members of the public to believe, incorrectly, that Block, Inc.'s products and services are provided by, or under the sponsorship or approval of, Block; whereas, in fact, Block does not approve of Block, Inc.'s appropriation of its trademarks for Block, Inc.'s products, services, or businesses.

58. Block, Inc.'s use of the confusingly similar BLOCK trademark and green square logo is likely to cause irreparable injury to the reputation of Block as well as the goodwill developed by Block for its services and the BLOCK brand. The extent of this harm cannot be ascertained at this time, leaving Block without any adequate remedy at law.

59. Block, Inc.'s current use of the BLOCK trademark constitutes infringement of the common law family of BLOCK Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60. By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of Block's common law trademarks and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Block, Inc.'s aforesaid acts.

**COUNT THREE**
**(Trademark Infringement**
**Under Missouri Common Law)**

61. Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

62. Block is the common law owner of the BLOCK Marks and the Green Square Marks, which are strong, distinctive, valid, and enforceable trademarks at common law.

63. Block, Inc.'s promotion, advertising, offering for sale, and sale of its services in connection with the "BLOCK" mark and the green square logo is likely to cause confusion, to cause mistake, and/or to deceive as to affiliation, connection, or association between Block and Block, Inc., and is likely to cause members of the public to believe, incorrectly, that Block, Inc.'s

products and services originate from, or have been authorized, sponsored, approved, or endorsed by Block, or that Block Inc.'s businesses are otherwise connected to, sponsored by, or affiliated with Block in some way; whereas, in fact, Block does not approve of Block Inc.'s appropriation of its trademarks for Block, Inc.'s products, services, or businesses.

64.     Block, Inc.'s use of the confusingly similar "BLOCK" mark and the green square logo is likely to cause irreparable injury to the reputation of Block, as well as the goodwill developed by Block for its services and the BLOCK Marks.

65.     The above described acts and practices constitute infringement of Block's valid and enforceable common law trademarks.

66.     By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of Block's common law trademark and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Block, Inc.'s aforesaid acts.

**COUNT FOUR**
**(Unfair Competition)**

67.     Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

68.     The BLOCK Marks and the Green Square Marks are distinct and significant, such that the use of the name "BLOCK" and the Green Square Marks identify Block. Block has an established reputation which is capable of protection.

69.     Block, Inc.'s unfair use of the "BLOCK" mark and the green square logo is likely to deceive consumers, and has in fact actually deceived consumers, in that it is likely to cause members of the public to believe, incorrectly, that Block, Inc.'s products and services originate from, or have been authorized, sponsored, approved, or endorsed by Block, or that Block, Inc.'s businesses are otherwise connected to, sponsored by, or affiliated with Block in some way; whereas, in fact, Block does not approve of Block, Inc.'s appropriation of its trademarks for Block, Inc.'s products, services, or businesses.

70.     Block, Inc., by virtue of its unfair use of the "BLOCK" mark and the green square logo, has violated society's notions of fair play and fundamental fairness.

71.     The above described acts and practices constitute actionable unfair competition under Missouri law.

72.     By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of Block's common law trademark and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Block, Inc.'s aforesaid acts.

**COUNT FIVE**
**(Injunctive Relief Under Mo. Rev. Stat. § 417.061)**

73.     Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

74.     As discussed above, Block is the owner of the BLOCK Marks and the Green Square Marks, which are strong, distinctive, valid, and enforceable trademarks at common law.

75.     Block, Inc.'s use of the "BLOCK" mark and the green square logo is similar to Block's distinctive common law trademarks.

76.     Block, Inc.'s continuing use of the "BLOCK" mark and the green square logo is likely to injure the business reputation of Block and/or dilute the distinctive quality of its trademarks.

77.     The above described acts and practices constitute violations of Mo. Rev. Stat. § 417.061.

78.     By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of Block's common law trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Block respectfully demands judgment:

1.     That Block, Inc. and all those in active concert or participation with Block, Inc. (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns, and contracting parties) be temporarily, preliminarily, and then permanently enjoined and restrained from:

   i.   using the "BLOCK" mark, or any other logo, device, design, or word mark that is a colorable imitation of, or is similar to, the Block Marks, or any of them, in connection with the advertising, distribution, marketing, offering for sale, or sale of any product or service neither originating from nor authorized by Block;

ii. using the green square logo, or any other logo, device, design, or word mark that is a colorable imitation of, or is similar to, Block's Green Square Marks, in connection with the advertising, distribution, marketing, offering for sale, or sale of any product or service neither originating from nor authorized by Block;

iii. representing in any manner or by any method whatsoever, that goods, services or other products provided by Block, Inc. are sponsored, approved, authorized by or originate from Block or otherwise taking any action likely to cause confusion, mistake or deception as to the origin, approval, sponsorship or certification of such goods, products, or services;

2. That Block, Inc. and all those in active concert or participation with Block, Inc. (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns, and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by their use of the BLOCK mark, including, but not limited to, recalling from any and all channels of distribution any and all advertising, marketing, or promotional material and the like, bearing or distributed under the BLOCK mark, or any confusingly similar variations thereof.

3. That Block, Inc., within thirty days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Block's attorneys a written report under oath setting forth in detail the manner in which Block, Inc. has complied with the above-mentioned paragraphs 1 through 2.

4. That Block, Inc. account to Block for its profits and any damages sustained by

Block, to the extent calculable, arising from the foregoing acts of trademark infringement, false designation of origin, unfair competition and deceptive acts and practices.

5.      That, in accordance with such accounting, Block be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117.

6.      That Block be awarded its reasonable costs and attorneys' fees and disbursements.

7.      That Block have such other and further relief as the Court may deem equitable.

## JURY DEMAND

Block hereby demands a trial by jury on all issues so triable.

*/s/ Anthony J. Durone*

| | |
|---|---|
| Anthony J. Durone | MO Bar #43872 |
| Stacey Gilman | MO Bar #55690 |
| Elizabeth R. Martin | MO Bar #64129 |

BERKOWITZ OLIVER LLP
2600 Grand Blvd., Suite 1200
Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile:  (816) 561-1888


David H. Bernstein (*pro hac vice* forthcoming)
Jyotin Hamid (*pro hac vice* forthcoming)
Jared I. Kagan (*pro hac vice* forthcoming)
Marissa MacAneney(*pro hac vice* forthcoming)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000

**ATTORNEYS FOR PLAINTIFFS**
