Civil Action No. 4:21-cv-00916

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   Block, Inc.

was received by me on *(date)*   12·17·2021   .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☒ I served the summons on *(name of individual)*   Daniela Garcia (Intake Specialist) who is

designated by law to accept service of process on behalf of *(name of organization)*

Block, Inc 40 CT Corporation System on *(date)* 12·17·2021 ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: 12·19·2021

_____
*Server's signature*

Chris Drummond - Process Server
*Printed name and title*


3621 Winnebago St. Saint Louis, MO 63116
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Western District of Missouri

| | |
|---|---|
| H&R BLOCK, INC.<br>HRB INNOVATIONS, INC.<br><br>*Plaintiff(s)*<br>v.<br><br>BLOCK, INC.<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 4:21-cv-00913

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Block, Inc.
CT Corporation System
120 South Central Avenue
Clayton, Missouri 63105

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Anthony J. Durone (MO Bar #43872)
Stacey R. Gilman (MO Bar # 55690)
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: Dec 16, 2021

_____
Signature of Clerk or Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

H&R BLOCK, INC. and
HRB INNOVATIONS, INC.

          Plaintiffs,

    v.

BLOCK, INC.,

          Defendant.

Case No.

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs H&R Block, Inc. and HRB Innovations, Inc. (together with their subsidiaries and affiliates, "Block"), by its attorneys Berkowitz Oliver LLP and Debevoise & Plimpton LLP, for their complaint against Block, Inc., alleges as follows:

## Nature of the Case

1. Block brings this lawsuit to protect consumers from being deceived and to prevent a Silicon Valley tech company from stealing Block's name in order to co-opt the reputation and goodwill that Block has earned through decades of hard work.

2. For more than 65 years, consumers have entrusted their most sensitive and personal financial information to Block. Block began as a company that helped consumers prepare and file their tax returns, and has expanded into other financial services including prepaid debit cards, lines of credit, loans, access to bank accounts, small business services, and more. One year ago, Block unveiled the next phase of its strategic transformation, Block Horizons, outlining how the company is leveraging its client relationships and technology

platform to accelerate growth in small business and financial products, and continuing to modernize the consumer tax business to combine digital tools with human expertise and care. As part of that transformation, in January 2022, Block will launch the SPRUCE BUILT BY H&R BLOCK financial technology platform that combines the best features of leading digital banks with Block's trusted brand and insights, gained from helping millions of customers every year. Leveraging the deep relationship Block has built with its consumer and small business customers, and its reputation for trust, quality, reliability and excellence, Block uses innovative technology to provide customers with a diverse suite of financial services and products, all under a family of BLOCK trademarks.

3.     The goodwill that Block has so carefully created and nurtured over the last six-plus decades is now under attack by a Silicon Valley fintech company that announced on December 1 that it is rebranding itself as Block, Inc. Previously known as Square, Inc., the newly-named Block, Inc. competes directly with Block in several areas of tax and other financial services. For example, Block, Inc. acquired Credit Karma Tax— which is a competitor of Block's tax-related businesses—and offers competitive tax preparation and filing services through Cash App Taxes. Once Block, Inc. completes the integration of Credit Karma Tax, customers will be able to receive their tax refunds via Block, Inc.'s Cash App (which Block, Inc. describes as one of the "building blocks" in its family of companies), and will be able to save those funds or spend them through the Cash App or through Cash App's Cash Card debit card. In the same exact manner, Block's customers can access, save or spend their tax refunds using Block's MyBLOCK app and the integrated H&R BLOCK EMERALD CARD (a prepaid Mastercard debit card). Block, Inc. even intends to offer these services using a square green logo

(shown at right below) that is nearly identical in color and shape to Block's federally registered green square logo (shown at left below).



4.    In the two weeks since Block, Inc. announced its name change, consumers (and even an employee in the Block, Inc. family of companies) have indicated on Twitter that consumers are likely to draw an link between Block, Inc. and Block because of Block, Inc.'s choice to co-opt the BLOCK name.  It is inevitable that even more consumer confusion and deception will follow as Block, Inc. moves beyond the announcement phase and starts to actively market, advertise and sell its competing tax and other financial products and services.  Block, Inc. is already promoting its Cash App Taxes service as coming from Block, Inc. as shown below:



5.    Instead of misappropriating the BLOCK name, Block, Inc. could have continued to use its prior name (Square, Inc.) or could have chosen any number of alternatives.  Block, Inc.'s decision—taken with obvious knowledge of Block's market position, reputation and trademark rights—reflects a conscious choice to trade on Block's heritage of consumer trust.  As a relatively new Silicon Valley business, Block, Inc. knows that it does not have the kind of history or reputation for trust and reliability that Block has enjoyed for more than 65 years, or the

deep relationship with consumers that Block has earned. Instead of earning its own reputation under its own brand, Block, Inc. has decided to take a short cut.

6. Block, Inc.'s name change will deceive consumers and cause irreparable harm to Block. Consumers will mistakenly believe that Block is one of the "building blocks" in the Block, Inc. family of financial services companies. Any announced bad news about Block, Inc. —such as a data breach that exposes its customers' social security numbers or private financial information—would devastatingly be associated with Block. There is no harm more irreparable than the loss of reputation that this confusion will cause. Block therefore asks this Court to put a stop to Block Inc.'s unlawful conduct and prevent this harm.

## The Parties

7. Plaintiff H&R Block, Inc. is a corporation organized under the laws of the State of Missouri, with its principal place of business located at One H&R Block Way, Kansas City, Missouri 64105. H&R Block, Inc. is a holding company that operates through its subsidiaries, and is the ultimate parent company to the Block family of companies.

8. Plaintiff HRB Innovations, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 103 Foulk Road, Suite 208, Wilmington, Delaware 19803, and is a wholly-owned indirect subsidiary of H&R Block, Inc. HRB Innovations is the owner of the BLOCK family of marks.

9. Upon information and belief, Defendant Block, Inc. is a Delaware corporation with a principal place of business located at 1455 Market Street, Suite 600, San Francisco, California 94103, and is registered to conduct business in the State of Missouri. Formerly

known as Square, Inc., Block, Inc. announced its name change on December 1, 2021 and formally changed its name on December 10, 2021.

## Jurisdiction and Venue

10.     This Court has original jurisdiction over this action pursuant 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over Block, Inc. pursuant to Mo. Rev. Stat. § 506.500 because Block, Inc. transacts business within the State of Missouri and committed trademark infringement in the State of Missouri.

12.     Venue is proper under 28 U.S.C. §§ 1391(b) and (c).  Block, Inc. is located in this district and does business in this District, and a substantial part of the events giving rise to the claims in this case occurred in this District.

### *Block and Its Well-Known BLOCK Family of Marks*

13.     In 1955, brothers Henry and Richard Bloch transformed their bookkeeping business into a new company that specialized in income tax preparation.  They called their company "H&R Block."  More than 65 years later, Block is a market leader and a brand icon in tax and other financial services, with over 9,000 locations in the United States alone.  With nearly 1,500 additional offices in Canada and Australia, Block is one of the world's largest tax preparation companies, with more than 800 million tax returns prepared for its customers.

14.     In the past six-plus decades, Block has expanded its services from tax preparation to a variety of other financial services, including electronic tax filing, refund advance loans,

refund transfers, prepaid debit cards, lines of credit, providing credit scores, mobile banking platforms, tax refund identity theft protection, and small business services. Block already offers a number of these services through its MyBLOCK mobile app, and has announced that, in 2022, it will launch a new, innovative financial technology platform, SPRUCE BUILT BY H&R BLOCK, which will provide consumers with a range of mobile banking, such as the ability to set and monitor savings goals and the ability to earn cash back on everyday purchases.

15.    Block offers its services under a family of marks (the "BLOCK Marks"), including a number for which it owns United States trademark registrations. Among those registrations are the following:

| Mark | Reg. No. | Reg. Date. | Services/Goods |
|---|---|---|---|
| H&R BLOCK | 3,338,962 | Nov. 20, 2007 | Preparation of tax returns for others; financial planning services; conducting classes and courses in preparation of tax returns. |
| H&R BLOCK EMERALD CARD | 3,392,368 | Mar. 4, 2008 | Debit card and credit card services. |
| H&R BLOCK EMERALD SAVINGS | 3,525,361 | Oct. 28, 2008 | Savings account services. |
| H&R BLOCK EMERALD ADVANCE | 3,532,084 | Nov. 11, 2008 | Financial services, namely, debit and credit card services, loan financing and financing lines of credit. |
| BLOCKWORKS | 4,769,331 | Jul. 7, 2015 | Computer software for tax return preparation, tax planning, tax calculation, and tax return filing and associated instructional manuals and other printed instructional materials sold as a unit therewith. |
| BLOCK ADVISORS | 5,055,458 | Oct. 4, 2016 | Tax return preparation for others; tax planning services; business management |

| Mark | Reg. No. | Reg. Date. | Services/Goods |
|------|----------|------------|----------------|
| | | | and consulting services; accounting services; bookkeeping; and payroll services for others, namely, payroll preparation and payroll processing. |
| BLOCK Advisors | 5,179,142 | Apr. 11, 2017 | Tax return preparation for others; tax planning services; business management and consulting services; accounting services; budgeting services; bill paying services; and payroll services for others, namely, payroll preparation and payroll processing services. |
| BLOCK HAS YOUR BACK | 6,003,605 | Mar. 3, 2020 | Preparation of tax returns for others. |

16.     These registrations were duly and legally issued, and they are valid and subsisting.  The registrations for H&R BLOCK, BLOCKWORKS, H&R BLOCK EMERALD SAVINGS, H&R BLOCK EMERALD ADVANCE, and BLOCKWORKS also are incontestable pursuant to 15 U.S.C. § 1065.

17.     Block promotes and provides its services under the BLOCK Marks on its websites including https://hrblock.com/ and https://blockadvisors.com/.  It also promotes its brand on Twitter under the handles @hrblock, @hrblocknews and @hrblockanswers; on Facebook under the name @hrblock; on Instagram under the name @hrblock; and on LinkedIn at https://www.linkedin.com/company/h&r-block/.

18.     Block has made significant investment to develop its brand identity, including through community outreach programs and national advertising campaigns on television, in print, on the radio, on the Internet, and on social media channels, including Twitter, Instagram,

Facebook and LinkedIn. Over the last three years alone, Block has spent nearly half a billion dollars advertising its products and services under the BLOCK Marks.

19.     Through these campaigns, and since at least 2015, Block has prominently identified itself simply as BLOCK (in addition to using the BLOCK Marks) to promote its consumer services, as shown in the following examples:













20.     Among the BLOCK Marks is "MyBlock," the mobile app (shown at right) that consumers can use to get support from their Block tax professionals, access credit scores, manage their Tax Identity Shield membership (which helps protect against identity theft tax refund fraud), upload receipts, donations, and other tax-related items, and access other financial services, such as manage their H&R BLOCK EMERALD CARD.



21.     In addition to advertising its consumer services under the BLOCK Marks, Block refers to itself as BLOCK in recruiting new employees, such as inviting them to come to "Block Day" career events, and explaining that "Opportunity knocks at Block" as shown below:



Employees who go above and beyond in demonstrating Block's values can be awarded the title of "BLOCK MVP," and featured on Block's social media channels. Block employees frequently refer to their employer as "Block," and customers frequently refer to the local offices where they go for Block's services as "Block" offices.

22.     In connection with its small business services and advice, Block uses the BLOCK ADVISORS registered trademark (Reg. No. 5,055,458) and the BLOCK ADVISORS and  design registered trademark (Reg. No. 5,179,142, shown at right).  In 2021 alone, Block has served more than two million small businesses, including under the BLOCK ADVISORS brand.

23.     In addition to the tax and other financial services offered under the BLOCK Marks, in 2019 Block formed a community impact program under the name MAKE EVERY BLOCK BETTER.  Through this program, Block employees volunteer and give back to their local communities.  Block partners with national organizations and those in its hometown—such as Habitat for Humanity, Nextdoor, the Urban Neighborhood Initiative, the Neighborhoods Rising Fund, the Ewing Marion Kauffman Foundation, and the Urban League of Greater Kansas City—to build connections among neighbors and provide resources and support in communities through efforts such as donating to food pantries, increasing access to quality housing and better neighborhood spaces, enhancing shared community spaces, and supporting small businesses.  Block promotes the MAKE EVERY BLOCK BETTER program with its BLOCK branding at its various community programs, such as with t-shirts, and other branding, as shown below:



24.     Block also uses the BLOCK Marks to support local charitable initiatives in Kansas City, Block's hometown.  Block licenses the BLOCK Marks to the H&R Block Foundation, a Kansas City non-profit organization that, since 1974, has worked to create positive social change on important community issues, such as art and culture, neighborhood revitalization, education, and health and human service.

25.     Block also uses the BLOCK Marks in connection with its diversity and inclusion initiative BELONGING AT BLOCK:





26.     As a result of its efforts, the H&R BLOCK brand has over 90% brand awareness in the United States.

27.     Although Block is aware of other companies that use BLOCK-formative marks such as BLOCK & COMPANY, INC.—which offers real estate brokerage services in the Kansas City area, and uses a logo that is distinct from Block's (shown at right)—Block is not aware of any companies with a national reach that use the "BLOCK" mark in connection with the types of tax preparation and other financial services that Block offers under its family of BLOCK Marks.  Indeed, when other companies have used marks confusingly similar to the BLOCK Marks in connection with the types of tax preparation and other financial services that Block offers, Block has enforced its rights to swiftly put an end to the infringing use.



### *Block's Green Color Scheme and Green Square Marks*

28.     As shown in virtually all of the images reproduced above, Block consistently and prominently uses the color green in connection with its BLOCK Marks.  Block also owns federally registered trademarks for its green square logo (the "Green Square Marks"), shown below:

| Mark | Reg. No. | Reg. Date. | Services/Goods |
|---|---|---|---|
|  H&R BLOCK <br><br> [Note:  The mark consists in part of a green square] | 2,533,014 | Jan. 22, 2002 | Preparation of tax returns for others. |

| Mark | Reg. No. | Reg. Date. | Services/Goods |
|---|---|---|---|
| | 3,656,593 | July 21, 2009 | Computer programs for use in the preparation of tax returns; tax advice and planning services; tax consultation; tax filing services; accounting consultation and accounting services; Financial planning services; banking services; and mortgage services, namely, mortgage banking, mortgage lending, mortgage brokering and mortgage servicing; Educational services, namely, conducting classes and courses in the field of tax preparation and distribution of course materials in connection therewith; Providing online non-downloadable software for use in the preparation of tax returns. |
| | 5,179,142 | Apr. 11, 2017 | Tax return preparation for others; tax planning services; business management and consulting services; accounting services; budgeting services; bill paying services; and payroll services for others, namely, payroll preparation and payroll processing services. |

And as shown in Paragraph 22 above, the BLOCK ADVISORS mark incorporates a green square logo, in three-dimensional cube form. Block, Inc. uses a similar three-dimensional cube for its brand, as shown at right.



29.     The first two Green Square Marks listed above were duly and legally issued, they are valid and subsisting, and are also incontestable pursuant to 15 U.S.C. § 1065.

30.     As an extension of its green branding, Block offers the H&R BLOCK EMERALD PREPAID MASTERCARD, which allows customers to deposit money onto a Block-branded prepaid debit card (including direct deposit of tax refunds and payroll).



The Emerald Card can be used as an everyday account, to pay bills, and to make purchases anywhere Mastercard® debit cards are accepted. The Emerald Card is the fourth most popular prepaid debit card in the United States. Block also offers the Emerald Savings account (which can be used in conjunction with the Emerald Card to make deposits and withdrawals), and Emerald Advance (a line of credit with year-round access). Consumers can manage their Emerald Card and Emerald Savings accounts through Block's "MyBlock" mobile app or through the login page on Block's website.

31.     In 2020, Block announced its "Block Horizons 2025" transformation strategy program, which targets the next phase of Block's growth and development, focusing on three strategic imperatives including "Small Business," "Financial Products," and the "Block Experience." This program will help provide access to financial services for customers who are "underbanked" (*e.g.*, individuals who have some type of bank account but also use alternative financial services, such as money orders, check-cashing services, and payday loans, to manage their finances and make purchases). Through the Block Horizons 2025 corporate growth strategy, Block has already announced that it will launch its SPRUCE financial technology platform in early 2022:



*Block, Inc.'s Infringing Re-Branding as "BLOCK"*

32.     On December 1, 2021, Block, Inc., formerly known as Square, Inc., publicly announced that it was changing its name to "Block, Inc."  In the "About Block" section of its press release, Block, Inc. describes the company as "a global technology company with a focus on financial services."  Block, Inc.'s CEO, Jack Dorsey, stated: "Block is a new name, but our purpose of economic empowerment remains the same. No matter how we grow or change, we will continue to build tools to help increase access to the economy."  Block, Inc.'s businesses include offering tax preparation and other financial services, such as prepaid debit cards, bank accounts, and payroll services that include the payment of payroll taxes.  A true and correct copy of the December 1, 2021 press release is attached hereto as Exhibit A.

33.     Block, Inc. has launched a 
website at https://block.xyz, which identifies
its brands, including Square and Cash App, as
the "building blocks" of the BLOCK brand.
Block, Inc.'s website visually depicts its
brands as "building blocks" (as shown at right).  Block, Inc. also has established "BLOCK"
social media accounts, a "BLOCK" LinkedIn page with the tagline "joinblock" in the URL
address, a "BLOCK" copyright and trademark policy, a "BLOCK" contact for press and investor
relations, and a "BLOCK" music playlist on its website called "BLOCK VIBES."  Block, Inc.'s
Twitter handle is "@blocks" and "@blockir."  The first search result on Twitter (of which Mr.
Dorsey was also the founder and a former CEO) for "Block" is Block, Inc., followed by Block's
Twitter account @hrblock.  A printout of Block, Inc.'s block.xyz website is attached hereto as
Exhibit B.

34.     According to the December 1 press release, Block, Inc.'s Square brand "helps
sellers run and grow their business with its integrated ecosystem of commerce solutions, business
software, and banking services."  Square's website (at https://squareup.com/us/en/banking)
explains that, with Square, "[y]our payments, business banking accounts, and cash flow [are]
synced together seamlessly."  Square also offers checking account services with a linked debit
card.

35.     Block, Inc.'s Cash App brand is a mobile payment service that offers users direct
deposit, a debit card connected to the user's balance that can be used anywhere Visa is accepted,
and money transfer services.  Block, Inc.'s Cash App uses a green square logo that is nearly
identical in color and shape to Block's federally registered Green Square Marks:



36.     As Block strives to do, Cash App has stated that it also seeks to help underbanked consumers, as described on its LinkedIn page, shown below:



Cash App is the easiest way to send, spend, bank, and invest.

In the U.S., approximately one in four households are either unbanked or underbanked. With Cash App, we believe we're in a position to expand access to financial services to empower individuals all over the world to better spend, send, store, and invest their money. We want to make the world's relationship with money more relatable, instantly available, and universally accessible. This is our mission, and it's why working at Cash App means so much more than a job. Ready to take the next step?

Visit our careers site

37.     On information and belief, Cash App also is about to begin offering tax preparation services that compete directly with Block's tax preparation business.  On November 25, 2020, Block, Inc. announced that it entered into an agreement, on behalf of Cash App, to acquire Credit Karma's tax business.  The press release stated that "[t]he acquisition provides an opportunity to digitize and simplify the tax filing process in the United States, expanding access to the one in three households which are unbanked or underbanked."  The press release further explained that "[t]he tax product will expand Cash App's diverse ecosystem of financial tools—which currently includes peer-to-peer payments, Cash Card, [and] direct deposit . . . giving customers another way to manage their finances from their pocket."  A true and correct copy of the press release is attached hereto as Exhibit C.

38.     On information and belief, Cash App is not yet offering these tax filing service products but plans to do so imminently, as it has begun to advertise on its website

(https://cash.app/taxes) using green branding that is similar to Block's branding, and green squares that are similar to Block's Green Square Marks.



39.    News reports in November 2021 state that "Cash App is currently working to integrate the Credit Karma Tax platform," and that "customers will access the tax prep software through Cash App instead of Credit Karma."  Attached hereto as Exhibit D is a true and correct copy of a Forbes Advisor article describing the Cash App's integration of Credit Karma Tax.

40.    Block, Inc. is already promoting Cash App Taxes—the service that will compete directly with Block—as coming from Block, Inc.:



41.     On information and belief, Block, Inc. also intends to offer charitable services under the BLOCK brand.  On December 1, 2021, Block, Inc. (under its then-name Square, Inc.) filed an application with the United States Patent and Trademark Office ("USPTO") to register BLOCK as a trademark for use in connection with, among other services, "charitable services, namely, promoting public awareness about charitable, philanthropic, volunteer, public and community service and humanitarian activities."  It also has filed an application to register its block logo.  A true and correct copy of these trademark applications are attached hereto as Exhibit E.

42.     Given the similarities between the tax and other financial services offered by brands that form the building blocks of the Block, Inc. family of financial services companies (such as Square and Cash App) on the one hand, and the tax and other financial services offered by Block on the other, as well as the charitable services to be offered by Block, Inc. and that are currently offered by Block, all under the BLOCK name and marks, consumer confusion is inevitable.

43.     In the two weeks since Block, Inc. changed its name to Block, Inc. and became known as BLOCK, there has been significant discussion on social media reflecting actual or potential confusion.  For example, users have tweeted in response to Block, Inc.'s name change

- "The square rebrand is surely going to piss off@HRBlock who do a lot of financial services stuff under the Block name."

- "Are you talking about H&R Block?"

- "Have you ever heard of H&R Block? They are in the financial business as well. Did you know they refer to their business as the Block?"

- "[D]oesn't this seem close to H&R Block with their simple green square logo?"

- "[I]sn't that name already taken by HRBlock, which is already in the financial and banking sectors?"



44.     Even employees in the Block, Inc. family of companies recognize the risk of confusion.  For example, one of those employees tweeted:  "Folks regularly mistook me working and [sic] Square Enix. Now, I'm pretty sure folks are now going to think I work for H&R Block."





45.     Block, Inc., by using "BLOCK" as its name in connection with its tax and other financial services businesses, is creating a likelihood of confusion with Block's tax and other financial services, and the BLOCK Marks.  As Block, Inc. expands its financial offerings under the BLOCK brand of companies, and as its use of the BLOCK mark becomes more widespread, the initial confusion highlighted above will only become exacerbated.  That is particularly true as Block, Inc.'s Cash App Taxes completes its integration of Credit Karma Tax and begins offering the same tax preparation services as Block, with its green color scheme and square logo.

46.     The potential consumers of Block, Inc.'s services are the same as, or similar to, the potential consumers for Block.  They include consumers seeking tax and other financial services, small businesses seeking tax and other financial services, and unbanked or underbanked individuals seeking debit cards, savings accounts, and other financial services.  Given the clear overlap, these consumers are particularly susceptible to being confused by Block, Inc.'s misappropriation of the BLOCK trademark.

47.     If Block, Inc. is not enjoined from infringing Block's family of BLOCK Marks, Block will suffer irreparable harm, and the goodwill that Block has spent decades cultivating will be eroded.

## COUNT ONE
### (Registered Trademark Infringement
### Under Section 32 of the Lanham Act)

48.     Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

49. Certain of the BLOCK Marks and the Green Square Marks are registered with the USPTO and are valid, subsisting, used in commerce, and inherently distinctive (the "Registered BLOCK Marks").

50. Block, Inc.'s "BLOCK" mark and green logo are confusingly similar to the Registered BLOCK Marks and the Green Square Marks. Those marks are used in connection with advertising and offering products and services that are overlapping and related to the products and services offered by Block.

51. Block, Inc.'s use of the "BLOCK" mark and the green square logo is therefore likely to cause confusion, or to cause mistake, or to deceive as to the source, origin, sponsorship or affiliation of Block, Inc.'s products and services, and is likely to cause consumers to believe, incorrectly, that Block, Inc.'s products and services originate from, or have been authorized, sponsored, approved, or endorsed by Block, or that Block, Inc.'s businesses are otherwise connected to, sponsored by, or affiliated with Block in some way; whereas, in fact, Block does not approve of Block, Inc.'s appropriation of its trademarks for Block, Inc.'s products, services, or businesses.

52. Block, Inc.'s use of the confusingly similar BLOCK trademark and the confusingly similar green square logo is likely to cause irreparable injury to the reputation of Block as well as the goodwill developed by Block for its services and the BLOCK brand. The extent of this harm cannot be ascertained at this time, leaving Block without any adequate remedy at law.

53. The foregoing acts by Block, Inc. constitute trademark infringement of Block's federally registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of the Registered BLOCK Marks and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Block, Inc.'s aforesaid acts.

## COUNT TWO
### (Trademark Infringement
### Under Section 43(a) of the Lanham Act)

55.     Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

56.     The BLOCK Marks and the Green Square Marks are used in commerce in the United States.

57.     Block Inc.'s infringing "BLOCK" mark is confusingly similar to Block's family of BLOCK Marks.  Block, Inc.'s infringing use of the green square logo in connection with its Cash App Taxes services is confusingly similar to Block's Green Square Marks.  Block, Inc.'s promotion, advertising, offering for sale, and sale of its services in connection with the "BLOCK" mark and the green square logo is therefore likely to cause confusion, to cause mistake, and/or to deceive as to affiliation, connection, or association between Block and Block, Inc., and is likely to cause members of the public to believe, incorrectly, that Block, Inc.'s products and services are provided by, or under the sponsorship or approval of, Block; whereas, in fact, Block does not approve of Block, Inc.'s appropriation of its trademarks for Block, Inc.'s products, services, or businesses.

58.     Block, Inc.'s use of the confusingly similar BLOCK trademark and green square logo is likely to cause irreparable injury to the reputation of Block as well as the goodwill developed by Block for its services and the BLOCK brand.  The extent of this harm cannot be ascertained at this time, leaving Block without any adequate remedy at law.

59.     Block, Inc.'s current use of the BLOCK trademark constitutes infringement of the common law family of BLOCK Marks in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of Block's common law trademarks and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Block, Inc.'s aforesaid acts.

## COUNT THREE
### (Trademark Infringement Under Missouri Common Law)

61.     Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

62.     Block is the common law owner of the BLOCK Marks and the Green Square Marks, which are strong, distinctive, valid, and enforceable trademarks at common law.

63.     Block, Inc.'s promotion, advertising, offering for sale, and sale of its services in connection with the "BLOCK" mark and the green square logo is likely to cause confusion, to cause mistake, and/or to deceive as to affiliation, connection, or association between Block and Block, Inc., and is likely to cause members of the public to believe, incorrectly, that Block, Inc.'s

Case 4:21-cv-00913-GAF   Document 10   Filed 12/26/21   Page 26 of 83

products and services originate from, or have been authorized, sponsored, approved, or endorsed by Block, or that Block Inc.'s businesses are otherwise connected to, sponsored by, or affiliated with Block in some way; whereas, in fact, Block does not approve of Block Inc.'s appropriation of its trademarks for Block, Inc.'s products, services, or businesses.

64.     Block, Inc.'s use of the confusingly similar "BLOCK" mark and the green square logo is likely to cause irreparable injury to the reputation of Block, as well as the goodwill developed by Block for its services and the BLOCK Marks.

65.     The above described acts and practices constitute infringement of Block's valid and enforceable common law trademarks.

66.     By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of Block's common law trademark and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Block, Inc.'s aforesaid acts.

## COUNT FOUR
## (Unfair Competition)

67.     Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

68.     The BLOCK Marks and the Green Square Marks are distinct and significant, such that the use of the name "BLOCK" and the Green Square Marks identify Block.  Block has an established reputation which is capable of protection.

69.     Block, Inc.'s unfair use of the "BLOCK" mark and the green square logo is likely to deceive consumers, and has in fact actually deceived consumers, in that it is likely to cause members of the public to believe, incorrectly, that Block, Inc.'s products and services originate from, or have been authorized, sponsored, approved, or endorsed by Block, or that Block, Inc.'s businesses are otherwise connected to, sponsored by, or affiliated with Block in some way; whereas, in fact, Block does not approve of Block, Inc.'s appropriation of its trademarks for Block, Inc.'s products, services, or businesses.

70.     Block, Inc., by virtue of its unfair use of the "BLOCK" mark and the green square logo, has violated society's notions of fair play and fundamental fairness.

71.     The above described acts and practices constitute actionable unfair competition under Missouri law.

72.     By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of Block's common law trademark and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Block, Inc.'s aforesaid acts.

## COUNT FIVE
## (Injunctive Relief Under Mo. Rev. Stat. § 417.061)

73.     Block repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

74.     As discussed above, Block is the owner of the BLOCK Marks and the Green Square Marks, which are strong, distinctive, valid, and enforceable trademarks at common law.

75.     Block, Inc.'s use of the "BLOCK" mark and the green square logo is similar to Block's distinctive common law trademarks.

76.     Block, Inc.'s continuing use of the "BLOCK" mark and the green square logo is likely to injure the business reputation of Block and/or dilute the distinctive quality of its trademarks.

77.     The above described acts and practices constitute violations of Mo. Rev. Stat. § 417.061.

78.     By reason of the foregoing, Block is entitled to injunctive relief against Block, Inc., restraining Block, Inc. from further acts of infringement of Block's common law trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Block respectfully demands judgment:

1.     That Block, Inc. and all those in active concert or participation with Block, Inc. (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns, and contracting parties) be temporarily, preliminarily, and then permanently enjoined and restrained from:

i.     using the "BLOCK" mark, or any other logo, device, design, or word mark that is a colorable imitation of, or is similar to, the Block Marks, or any of them, in connection with the advertising, distribution, marketing, offering for sale, or sale of any product or service neither originating from nor authorized by Block;

ii. using the green square logo, or any other logo, device, design, or word mark that is a colorable imitation of, or is similar to, Block's Green Square Marks, in connection with the advertising, distribution, marketing, offering for sale, or sale of any product or service neither originating from nor authorized by Block;

iii. representing in any manner or by any method whatsoever, that goods, services or other products provided by Block, Inc. are sponsored, approved, authorized by or originate from Block or otherwise taking any action likely to cause confusion, mistake or deception as to the origin, approval, sponsorship or certification of such goods, products, or services;

2. That Block, Inc. and all those in active concert or participation with Block, Inc. (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns, and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by their use of the BLOCK mark, including, but not limited to, recalling from any and all channels of distribution any and all advertising, marketing, or promotional material and the like, bearing or distributed under the BLOCK mark, or any confusingly similar variations thereof.

3. That Block, Inc., within thirty days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Block's attorneys a written report under oath setting forth in detail the manner in which Block, Inc. has complied with the above-mentioned paragraphs 1 through 2.

4. That Block, Inc. account to Block for its profits and any damages sustained by

Block, to the extent calculable, arising from the foregoing acts of trademark infringement, false designation of origin, unfair competition and deceptive acts and practices.

5.     That, in accordance with such accounting, Block be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117.

6.     That Block be awarded its reasonable costs and attorneys' fees and disbursements.

7.     That Block have such other and further relief as the Court may deem equitable.

## JURY DEMAND

Block hereby demands a trial by jury on all issues so triable.

<table>
<tr><td colspan="2"><i>/s/ Anthony J. Durone</i></td></tr>
<tr><td>Anthony J. Durone</td><td>MO Bar #43872</td></tr>
<tr><td>Stacey Gilman</td><td>MO Bar #55690</td></tr>
<tr><td>Elizabeth R. Martin</td><td>MO Bar #64129</td></tr>
</table>

BERKOWITZ OLIVER LLP
2600 Grand Blvd., Suite 1200
Kansas City, Missouri 64108
Telephone: (816) 561-7007
Facsimile:  (816) 561-1888


David H. Bernstein (*pro hac vice* forthcoming)
Jyotin Hamid (*pro hac vice* forthcoming)
Jared I. Kagan (*pro hac vice* forthcoming)
Marissa MacAneney(*pro hac vice* forthcoming)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000

**ATTORNEYS FOR PLAINTIFFS**

# EXHIBIT A

# Square, Inc. Changes Name to Block

**DEC 01, 2021**

*The change differentiates the Square brand, which was built for the Seller business, from the corporate entity*

Square, Inc. (NYSE: SQ) announced today that it is changing its name to Block. Block will be the name for the company as a corporate entity. The Square name has become synonymous with the company's Seller business, which provides an integrated ecosystem of commerce solutions, business software, and banking services for sellers, and this move allows the Seller business to own the Square brand it was built for.

The change to Block acknowledges the company's growth. Since its start in 2009, the company has added Cash App, TIDAL, and TBD54566975 as businesses, and the name change creates room for further growth. Block is an overarching ecosystem of many businesses united by their purpose of economic empowerment, and serves many people—individuals, artists, fans, developers, and sellers.

"We built the Square brand for our Seller business, which is where it belongs," said Jack Dorsey, cofounder and CEO of Block. "Block is a new name, but our purpose of economic empowerment remains the same. No matter how we grow or change, we will continue to build tools to help increase access to the economy."

The name change to Block distinguishes the corporate entity from its businesses, or building blocks. There will be no organizational changes, and Square, Cash App, TIDAL, and TBD54566975 will continue to maintain their respective brands. A foundational workforce, which includes teams such as Counsel, People, and Finance, will continue to help guide the ecosystem at the corporate level. As a result of the name change, Square Crypto, a separate initiative of the company dedicated to advancing Bitcoin, will change its name to Spiral.

The name has many associated meanings for the company — building blocks, neighborhood blocks and their local businesses, communities coming together at block parties full of music, a blockchain, a section of code, and obstacles to overcome.

Square, Inc. is referred to as "Block" in this press release. The legal name "Square, Inc." is expected to be legally changed to "Block, Inc." on or about December 10, 2021, upon satisfying all applicable legal requirements. The company's NYSE ticker symbol "SQ" will not change at this time. Any changes in the future will be publicly disclosed. No

action is needed from current stockholders. The Company's Class A common stock will continue to be listed on NYSE and the CUSIP will not be changing.

For more information, please visit **www.block.xyz** or follow company news via Twitter @blocks and @blockIR. For media assets, go to **www.block.xyz/mediakit**. We intend to use the Block investor relations website as well as the Twitter accounts @blocks and @blockIR as means of disclosing material non-public information and for complying with our disclosure obligations under Regulation FD.

**About Block**
Block (NYSE: SQ) is a global technology company with a focus on financial services. Made up of Square, Cash App, Spiral, TIDAL, and TBD54566975, we build tools to help more people access the economy. Square helps sellers run and grow their businesses with its integrated ecosystem of commerce solutions, business software, and banking services. With Cash App, anyone can easily send, spend, or invest their money in stocks or Bitcoin. Spiral (formerly Square Crypto) builds and funds free, open-source Bitcoin projects. Artists use TIDAL to help them succeed as entrepreneurs and connect more deeply with fans. TBD54566975 is building an open developer platform to make it easier to access Bitcoin and other blockchain technologies without having to go through an institution.

**Media Contact**

press@block.xyz

**Investor Relations Contact**

ir@block.xyz

**Payments**

Square Payments

In Person

By Invoice

On Your Computer

On Your Website

Risk Manager

Payment Platform

Payments Security

Transfers

Merchant Services

**Point of Sale**

Point of Sale Overview

Square Point of Sale

Square for Restaurants

Square for Retail

Square Appointments

**Hardware**

Reader for Magstripe

Contactless (NFC) & Chip Reader

Terminal

Stand

Register

Shop Hardware

Rent Hardware

Buy in Store

**More Tools**

Online Store

Online Checkout

Checking

Loans

Savings

Payroll

Team Management

Marketing

Compare Hardware

Messages

Loyalty

Dashboard

Gift Cards

Customer Directory

Inventory Management

Photo Studio

Square KDS

**Developers**

Developer Platform

Reader SDK

In-App Payments SDK

Online Payments APIs

Documentation

Developer Dashboard

**Resources**

Pricing

Contact Sales

Support Center

App Marketplace

Small Business Development

Blog

Guides

Community

Events

Service Status

**Business Types**

Large businesses

Retail

CBD Retail

Coffee Shops

Quick Service

Full Service

Bars & Breweries

**Square**

Home

About

Press and Media

Investor Relations

Affiliate Program

Partner with Square

Careers

Beauty Professionals

Developers

Health & Fitness

Employment Verification

Home & Repair Services

Professional Services

English

© 2021 Square, Inc.

Privacy Notice

Additional California Privacy Disclosure

Terms of Service

Licenses

Government

Square Capital, LLC Licenses

Block, Inc.

# EXHIBIT B



# EXHIBIT C



# Cash App Announces Definitive Agreement to Acquire Credit Karma Tax

## Cash App will provide millions of Americans with the ability to electronically file their taxes

November 25, 2020 09:46 AM Eastern Standard Time

SAN FRANCISCO--(BUSINESS WIRE)--Square, Inc. (NYSE: SQ) has entered into a definitive agreement with Credit Karma to acquire its tax business, Credit Karma Tax, on behalf of Cash App, the financial services app that allows individuals to spend, send, store and invest money. Square will pay $50 million in cash for Credit Karma Tax, which provides a free, do-it-yourself tax filing service for consumers.

Consistent with Square's purpose of economic empowerment, Cash App plans to offer the free tax filing service to millions of Americans. The acquisition provides an opportunity to further digitize and simplify the tax filing process in the United States, expanding access to the one in three households which are unbanked or underbanked. The tax product will expand Cash App's diverse ecosystem of financial tools — which currently includes peer-to-peer payments, Cash Card, direct deposit, as well as fractional investing in traditional stocks and bitcoin — giving customers another way to manage their finances from their pocket.

"We created Cash App to provide more access to the masses of people left out of the financial system and are constantly looking for ways to redefine our customers' relationship with money by making it more relatable, instantly available, and universally accessible," said Brian Grassadonia, Cash App Lead. "That's why we're thrilled to bring this easy-to-use tax product to customers as we continue to build out the suite of tools Cash App offers. With this acquisition, we believe Cash App will be able to ease customers' burden of preparing taxes every year."

"Filing taxes is critical and challenging for all Americans, and in recent years we've seen more customers shift to filing taxes themselves. Credit Karma Tax provides a seamless, mobile-first solution for individuals to file their taxes at no cost," said Patrick Fink, Director of Engineering, Credit Karma Tax. "We're excited to be joining an entrepreneurial team and continue to build simple, innovative tools for Cash App customers."

The number of taxpayers who self prepare and e-File their own tax returns has continued to grow in recent years. According to the IRS, in the 2020 tax filing season, approximately one in two tax filers or 80 million taxpayers prepared and electronically filed their federal tax returns themselves, with an average refund of more than $2,000. Credit Karma Tax helped more than two million filers process their tax returns in the latest filing season.

Cash App launched in 2013 as a peer-to-peer money transfer service. Today, Cash App customers have access to a multitude of services and an integrated ecosystem of relevant financial services for spending, sending, storing, and investing money. In the third quarter of 2020, Cash App generated $385 million in gross profit, or more than $1.5 billion on an annualized basis, and as of June 2020 had more than 30 million monthly active customers.

The completion of this transaction is subject to customary closing conditions. The parties expect to close the transaction before the end of 2020, and until close the two companies will continue to operate independently. Square was advised by Fenwick & West LLP and Cleary Gottlieb Steen & Hamilton LLP as legal advisors and Credit Karma was advised by Goldman Sachs & Co. LLC as financial advisor, with Skadden, Arps, Slate, Meagher & Flom LLP and Wilson Sonsini Goodrich &

**About Square, Inc.**

Square, Inc. (NYSE: SQ) builds tools to empower businesses and individuals to participate in the economy. Sellers use Square to reach buyers online and in-person, manage their business, and access financing. Individuals use Cash App to spend, send, store, and invest money. Square has offices in the United States, Canada, Japan, Australia, Ireland, Spain, and the UK.

**Safe Harbor Statement**

This press release contains forward-looking statements within the meaning of the Safe Harbor provisions of the Private Securities Litigation Reform Act of 1995. All statements other than statements of historical fact could be deemed forward-looking, including, but not limited to, statements regarding the proposed acquisition of Credit Karma Tax by Square (the "Company"), the future performance and expected financial results for future periods of the Company, the Company's ability to integrate Credit Karma Tax's products into its Cash App ecosystem, and the Company's expectations regarding scale, economics, and the demand for or benefits from its current and future products, product features, and services. Such statements are subject to a number of known and unknown risks, uncertainties, assumptions, and other factors that may cause the Company's actual results, performance, or achievements to differ materially from results expressed or implied in this press release, and reported results should not be considered as an indication of future performance. Investors are cautioned not to place undue reliance on these statements.

Risks that contribute to the uncertain nature of the forward-looking statements include, among others, the possibility that the transaction will not close or that the closing may be delayed; the ability to secure required regulatory approvals or otherwise satisfy other closing conditions in a timely manner, or at all; the possibility that the proposed transaction may not advance the parties' business strategies; the ability of Cash App to retain the customers of Credit Karma Tax; the ability to realize the expected benefits from the transaction in the expected time period, or at all; disruptions from the transaction on ongoing operations; inability to retain key personnel; potentially incurring significant transaction costs; and unknown, underestimated, or undisclosed commitments or liabilities, as well as other risks listed or described from time to time in the Company's filings with the Securities and Exchange Commission (the SEC), including the Company's most recently filed Quarterly Report on Form 10-Q or Annual Report on Form 10-K, which is on file with the SEC and available on the Investor Relations page of the Company's website. All forward-looking statements are based on information and estimates available to the Company at the time of this press release and are not guarantees of future performance. Except as required by law, the Company assumes no obligation to update any of the statements in this press release.

# Contacts
Media Contact:
press@squareup.com

# EXHIBIT D

Advisor    Taxes

Advertiser Disclosure

## Credit Karma Tax Is Now Cash App Taxes: What Does That Mean For Old CKT Customers?



**Janet Berry-Johnson**
Contributor
Updated: Nov 1, 2021, 1:25pm

Editorial Note: We earn a commission from partner links on Forbes Advisor. Commissions do not affect our editors' opinions or evaluations.



Getty Images For BET

Case 4:21-cv-00913-YGR   Document 110-4   Filed 12/06/21   Page 45 of 83

In November 2020, Square, Inc., the parent company of the financial services app Cash App, announced an agreement to acquire Credit Karma's free do-it-yourself tax filing service. But why did this happen? And what does this mean for current and former Credit Karma Tax (CKT) customers? We have your answers.

**Featured Partners**



**TurboTax**

Learn More

On intuit's Secure Website

| Federal Filing Fee | $45 |
| State Filing Fee | $40 |

## Why Did Credit Karma Tax Become Cash App Taxes?

First, a little history. In February 2020, Intuit, Inc. said it would buy privately held Credit Karma. The purchase allowed Intuit, maker of the DIY tax software giant TurboTax, to further expand into consumer finance and access financial data on Credit Karma's 100 million members in the U.S., U.K. and Canada.

The U.S. Justice Department (DOJ) effectively said, "Not so fast," when it filed a civil antitrust lawsuit in U.S. District Court to block the transaction. According to the suit, unless Credit Karma divested its tax business, the acquisition would eliminate competition and likely result in higher prices, lower quality products and services and less consumer choice for digital-do-it-yourself tax preparation.

In 2019, around 1.5 million people used Credit Karma Tax to file their taxes. That accounts for a small fraction of the 34 million consumers who use software to prepare and file tax returns each year.

However, the DOJ generally views any merger that gives a company control of more than 70% of the market as a potential monopoly. As Intuit already controls roughly 67% of the DIY tax preparation market, buying CKT would push them closer to that threshold.

As part of a proposed settlement with the DOJ, CKT entered into a deal with Square, Inc. to sell its tax business. Square plans to integrate CKT into its Cash App platform, giving Cash App the ability to offer free tax filing services.

## Why Does Cash App Want to Offer Free Tax Filing?

The acquisition allows Cash App to build a suite of personal financial tools to offer consumers.

Adding tax preparation services to Cash App's existing suite of services provides another way to acquire new users and helps the company generate more profit per user. According to Square's Q3 2020 Shareholder Letter, customers who use two or more products generate three to four times more profit for the company than customers who only use Cash App's peer-to-peer payments.

The acquisition also provides Square with a platform to build a more robust tax service—perhaps a paid service aimed at its small business customers—in the future.

According to IBISWorld, tax preparation services is an $11.3 billion industry in the U.S. But creating a digital-do-it-yourself tax product from scratch—let alone one that can keep up with the complicated and ever-evolving patchwork of federal and state tax laws—is no easy feat.

## Can You Still Access Credit Karma Tax Returns?

Through the end of the 2020 tax filing season, which ended on October 15, 2021, the Credit Karma Tax experience remained the same for users. Customers still had to be Credit Karma customers and log into their Credit Karma accounts to access their CKT data.

Cash App is currently working on integrating the Credit Karma Tax platform, but according to a CKT support page, the tax product will remain the same next year and be 100% free. However, customers will access the tax prep software through Cash App instead of Credit Karma.

If you don't currently have a Cash App account, you'll need to install the app (available on Google Play and the Apple App Store) and create an account on your phone to access prior year returns and prepare and file taxes.

However, don't expect easy access to copies of prior year returns just yet. Previous tax returns filed with CKT won't be readily available within Cash App Taxes until January 2022.

If you need a copy of a previous tax return in the meantime (for example, if you're applying for a mortgage or college financial aid application), you'll have a few options.

### If You Already Have a Cash App Taxes Account

Log into your Cash App account on your desktop and submit a case to Cash App Taxes. You will have to validate your identity before getting a copy of prior year returns filed with Credit Karma Tax. This validation involves entering a code sent by email or text, providing your legal name, date of birth, and the last four digits of your Social Security number.

### If You Don't Have Cash App Taxes But Want to Use It Next Year

Download Cash App on your mobile and create an account. Then log into your account on a desktop and submit a case.

### If You Don't Have a Cash App Taxes Account and Don't Want to Sign Up

Complete a Prior Year Return Request Form. One of Cash App's tax advocates will work with you to validate your identity before sending a copy of your prior Credit Karma Tax return.

Case 4:21-cv-00913-YGR    Document 110-4   Filed 12/06/21   Page 47 of 83

**How to order a tax transcript:** A tax return transcript isn't a complete copy of your tax return, but it does show most line items from your tax return, including your adjusted gross income. A transcript is usually sufficient for a mortgage or financial aid application. You can order a transcript online using the Get Transcript tool on IRS.gov. You can also get a transcript by mail using the online system or by calling 800-908-9946, but it typically takes the IRS five to 10 days to process your request.

**How to order a copy of your tax return:** If you need a full copy of your tax return, complete and mail Form 4506 and pay a $43 fee. It can take up to 75 days to get a copy of your tax return from the IRS. At that rate, you're probably better off saving your $43 and waiting until it's available via Cash App Taxes in January.

## Compare the best tax software of 2021

See our picks

---

⊡ Was this article helpful?        SHARE YOUR FEEDBACK

### Our Guides

Best Tax Software Of 2021

Biden Tax Calculator

Do I Have To File A Tax Return?

How To File Your Taxes For Free

When Will I Get My 2020 Tax Refund?

Tips To Get A Head Start 2021 Taxes

Earned Income Tax Credit: Do You Qualify?

Things to Know About This Tax Season

Common Tax Deductions For Self-Employed

Common Contributions To Write Off On Taxes

# EXHIBIT E

PTO- 1478
Approved for use through 10/31/2024. OMB 0651-0009
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Trademark/Service Mark Application, Principal Register

### Serial Number: 97151246
### Filing Date: 12/01/2021

---

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 97151246 |
| **MARK INFORMATION** | |
| *MARK | [BLOCK](#) |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | BLOCK |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Square, Inc. |
| *MAILING ADDRESS | 1455 Market Street, Suite 600 |
| *CITY | San Francisco |
| *STATE<br>(Required for U.S. applicants) | California |
| *COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| *ZIP/POSTAL CODE<br>(Required for U.S. and certain international addresses) | 94103 |
| *EMAIL ADDRESS | XXXX |
| **LEGAL ENTITY INFORMATION** | |
| TYPE | corporation |
| STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF INCORPORATION | Delaware |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| INTERNATIONAL CLASS | 035 |
| *IDENTIFICATION | Holding company services, namely, providing business management, business administration services for subsidiaries and affiliates which provide tools and resources for economic empowerment; holding company services, namely, providing business management, business administration, business promotion, and business consulting services for subsidiaries; holding company services, namely, providing business management and administration, business operation consulting services, and identifying strategic alliances for affiliates; charitable services, namely, promoting public awareness about |

| | |
|---|---|
| | <span style="color:red">charitable, philanthropic, volunteer, public and community service and humanitarian activities</span> |
| **FILING BASIS** | SECTION 1(b) |
| **FILING BASIS** | SECTION 44(d) |
| **FOREIGN APPLICATION NUMBER** | 84584 |
| **FOREIGN APPLICATION COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | Jamaica |
| **FOREIGN FILING DATE** | 10/15/2021 |
| **INTENT TO PERFECT 44(d)** | At this time, the applicant has another basis for registration (Section 1(a) or Section 1(b)) and does NOT intend to rely on Section 44(e) as the basis for registration, but is only asserting a valid claim of priority. |
| **INTERNATIONAL CLASS** | 036 |
| **\*IDENTIFICATION** | <span style="color:red">Holding company services, namely, investment management; holding company services, namely, financial reporting and financial advising to subsidiaries and affiliated companies; holding company services, namely, provision of investment capital, development, ownership, and operation relative to subsidiaries and affiliates; providing investors with financial information; holding company services, namely, financial management in the nature of allocation of investment capital; holding company services, namely, acquisition, management, and transfer of company stakes as well as the intermediation of equity capital financing of companies, namely, asset acquisition, consultation, development and management services; business administration and management, namely, controlling policies and management of the other companies</span> |
| **FILING BASIS** | SECTION 1(b) |
| **FILING BASIS** | SECTION 44(d) |
| **FOREIGN APPLICATION NUMBER** | 84584 |
| **FOREIGN APPLICATION COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | Jamaica |
| **FOREIGN FILING DATE** | 10/15/2021 |
| **INTENT TO PERFECT 44(d)** | At this time, the applicant has another basis for registration (Section 1(a) or Section 1(b)) and does NOT intend to rely on Section 44(e) as the basis for registration, but is only asserting a valid claim of priority. |
| **ATTORNEY INFORMATION** | |
| **NAME** | Lindsey Furtado |
| **ATTORNEY BAR MEMBERSHIP NUMBER** | XXX |
| **YEAR OF ADMISSION** | XXXX |
| **U.S. STATE/ COMMONWEALTH/ TERRITORY** | XX |
| **FIRM NAME** | Square, Inc. |
| **STREET** | 1455 Market Street, Suite 600 |
| **CITY** | San Francisco |
| **STATE** | California |
| **COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |

| | |
|---|---|
| **ZIP/POSTAL CODE** | 94103 |
| **EMAIL ADDRESS** | trademarks@squareup.com |
| **CORRESPONDENCE INFORMATION** | |
| **NAME** | Lindsey Furtado |
| **PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE** | trademarks@squareup.com |
| **SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES)** | tmdocket@squareup.com |
| **FEE INFORMATION** | |
| **APPLICATION FILING OPTION** | TEAS Standard |
| **NUMBER OF CLASSES** | 2 |
| **APPLICATION FOR REGISTRATION PER CLASS** | 350 |
| ***TOTAL FEES DUE** | 700 |
| ***TOTAL FEES PAID** | 700 |
| **SIGNATURE INFORMATION** | |
| **SIGNATURE** | /Lindsey Furtado/ |
| **SIGNATORY'S NAME** | Lindsey Furtado |
| **SIGNATORY'S POSITION** | IP Counsel |
| **SIGNATORY'S PHONE NUMBER** | 000-000-0000 |
| **DATE SIGNED** | 12/01/2021 |
| **SIGNATURE METHOD** | Sent to third party for signature |

PTO- 1478
Approved for use through 10/31/2024. OMB 0651-0009
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Trademark/Service Mark Application, Principal Register

**Serial Number: 97151246**
**Filing Date: 12/01/2021**

## To the Commissioner for Trademarks:

**MARK:** BLOCK (Standard Characters, see mark)
The literal element of the mark consists of BLOCK. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Square, Inc., a corporation of Delaware, having an address of

    1455 Market Street, Suite 600
    San Francisco, California 94103
    United States
    XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

International Class 035: Holding company services, namely, providing business management, business administration services for subsidiaries and affiliates which provide tools and resources for economic empowerment; holding company services, namely, providing business management, business administration, business promotion, and business consulting services for subsidiaries; holding company services, namely, providing business management and administration, business operation consulting services, and identifying strategic alliances for affiliates; charitable services, namely, promoting public awareness about charitable, philanthropic, volunteer, public and community service and humanitarian activities
Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

Priority based on foreign filing: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services and asserts a claim of priority based on Jamaica application number 84584, filed 10/15/2021.
INTENT TO PERFECT 44(d) : At this time, the applicant has another basis for registration (Section 1(a) or Section 1(b)) and does NOT intend to rely on Section 44(e) as the basis for registration, but is only asserting a valid claim of priority.


International Class 036: Holding company services, namely, investment management; holding company services, namely, financial reporting and financial advising to subsidiaries and affiliated companies; holding company services, namely, provision of investment capital, development, ownership, and operation relative to subsidiaries and affiliates; providing investors with financial information; holding company services, namely, financial management in the nature of allocation of investment capital; holding company services, namely, acquisition, management, and transfer of company stakes as well as the intermediation of equity capital financing of companies, namely, asset acquisition, consultation, development and management services; business administration and management, namely, controlling policies and management of the other companies
Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

Priority based on foreign filing: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services and asserts a claim of priority based on Jamaica application number 84584, filed 10/15/2021.
INTENT TO PERFECT 44(d) : At this time, the applicant has another basis for registration (Section 1(a) or Section 1(b)) and does NOT intend to rely on Section 44(e) as the basis for registration, but is only asserting a valid claim of priority.


The owner's/holder's proposed attorney information: Lindsey Furtado. Lindsey Furtado of Square, Inc., is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

    1455 Market Street, Suite 600
    San Francisco, California 94103

United States
trademarks@squareup.com

Lindsey Furtado submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.
The applicant's current Correspondence Information:

Lindsey Furtado
PRIMARY EMAIL FOR CORRESPONDENCE: trademarks@squareup.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): tmdocket@squareup.com


**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $700 has been submitted with the application, representing payment for 2 class(es).

**Declaration**

☑ **Basis:**
**If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Lindsey Furtado/  Date: 12/01/2021
Signatory's Name: Lindsey Furtado
Signatory's Position: IP Counsel
Signatory's Phone Number: 000-000-0000
Signature method: Sent to third party for signature
Payment Sale Number: 97151246
Payment Accounting Date: 12/01/2021

Serial Number: 97151246
Internet Transmission Date: Wed Dec 01 16:35:04 ET 2021
TEAS Stamp: USPTO/BAS-XXX.XX.XXX.XXX-202112011635043
28110-97151246-7818572e4909311b1a36068c9

dbb16e8e44f26c6849ac1f4290a4272584a93378
84-CC-35030502-20211201145434296739

# BLOCK

PTO- 1478
Approved for use through 10/31/2024. OMB 0651-0009
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Trademark/Service Mark Application, Principal Register

**Serial Number: 97151255**
**Filing Date: 12/01/2021**

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 97151255 |
| **MARK INFORMATION** | |
| *****MARK** | \\TICRS\EXPORT18\IMAGEOUT 18\971\512\97151255\xml1 \ APP0002.JPG |
| **SPECIAL FORM** | YES |
| **USPTO-GENERATED IMAGE** | NO |
| **COLOR MARK** | NO |
| *****DESCRIPTION OF THE MARK** (and Color Location, if applicable) | The mark consists of a twisted cubic design. |
| **PIXEL COUNT ACCEPTABLE** | YES |
| **PIXEL COUNT** | 900 x 900 |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *****OWNER OF MARK** | Square, Inc. |
| *****MAILING ADDRESS** | 1455 Market Street, Suite 600 |
| *****CITY** | San Francisco |
| *****STATE** (Required for U.S. applicants) | California |
| *****COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| *****ZIP/POSTAL CODE** (Required for U.S. and certain international addresses) | 94103 |
| *****EMAIL ADDRESS** | XXXX |
| **LEGAL ENTITY INFORMATION** | |
| **TYPE** | corporation |
| **STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY OF INCORPORATION** | Delaware |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **INTERNATIONAL CLASS** | 035 |
| *****IDENTIFICATION** | Holding company services, namely, providing business management, business administration services for subsidiaries and affiliates which provide tools and resources for economic empowerment; holding company services, namely, providing business management, business administration, business promotion, and business consulting services for subsidiaries; |

| | |
|---|---|
| | holding company services, namely, providing business management and administration, business operation consulting services, and identifying strategic alliances for affiliates; charitable services, namely, promoting public awareness about charitable, philanthropic, volunteer, public and community service and humanitarian activities |
| **FILING BASIS** | SECTION 1(b) |
| **FILING BASIS** | SECTION 44(d) |
| FOREIGN APPLICATION NUMBER | Not Yet Assigned |
| FOREIGN APPLICATION COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | Jamaica |
| FOREIGN FILING DATE | 11/30/2021 |
| INTENT TO PERFECT 44(d) | At this time, the applicant has another basis for registration (Section 1(a) or Section 1(b)) and does NOT intend to rely on Section 44(e) as the basis for registration, but is only asserting a valid claim of priority. |
| **INTERNATIONAL CLASS** | 036 |
| *IDENTIFICATION | Holding company services, namely, investment management; holding company services, namely, financial reporting and financial advising to subsidiaries and affiliated companies; holding company services, namely, provision of investment capital, development, ownership, and operation relative to subsidiaries and affiliates; providing investors with financial information; holding company services, namely, financial management in the nature of allocation of investment capital; holding company services, namely, acquisition, management, and transfer of company stakes as well as the intermediation of equity capital financing of companies, namely, asset acquisition, consultation, development and management services; business administration and management, namely, controlling policies and management of the other companies |
| **FILING BASIS** | SECTION 1(b) |
| **FILING BASIS** | SECTION 44(d) |
| FOREIGN APPLICATION NUMBER | Not Yet Assigned |
| FOREIGN APPLICATION COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | Jamaica |
| FOREIGN FILING DATE | 11/30/2021 |
| INTENT TO PERFECT 44(d) | At this time, the applicant has another basis for registration (Section 1(a) or Section 1(b)) and does NOT intend to rely on Section 44(e) as the basis for registration, but is only asserting a valid claim of priority. |
| **ATTORNEY INFORMATION** | |
| NAME | Lindsey Furtado |
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| FIRM NAME | Square, Inc. |
| STREET | 1455 Market Street, Suite 600 |

| CITY | San Francisco |
|---|---|
| STATE | California |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| ZIP/POSTAL CODE | 94103 |
| EMAIL ADDRESS | trademarks@squareup.com |

## CORRESPONDENCE INFORMATION

| NAME | Lindsey Furtado |
|---|---|
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | trademarks@squareup.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | tmdocket@squareup.com |

## FEE INFORMATION

| APPLICATION FILING OPTION | TEAS Standard |
|---|---|
| NUMBER OF CLASSES | 2 |
| APPLICATION FOR REGISTRATION PER CLASS | 350 |
| *TOTAL FEES DUE | 700 |
| *TOTAL FEES PAID | 700 |

## SIGNATURE INFORMATION

| SIGNATURE | /Lindsey Furtado/ |
|---|---|
| SIGNATORY'S NAME | Lindsey Furtado |
| SIGNATORY'S POSITION | IP Counsel |
| SIGNATORY'S PHONE NUMBER | 000-000-0000 |
| DATE SIGNED | 12/01/2021 |
| SIGNATURE METHOD | Sent to third party for signature |

PTO- 1478

Approved for use through 10/31/2024. OMB 0651-0009

U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Trademark/Service Mark Application, Principal Register

**Serial Number: 97151255**
**Filing Date: 12/01/2021**

## To the Commissioner for Trademarks:

**MARK:** (Stylized and/or Design, see mark) The applicant is not claiming color as a feature of the mark. The mark consists of a twisted cubic design.

The applicant, Square, Inc., a corporation of Delaware, having an address of

    1455 Market Street, Suite 600
    San Francisco, California 94103
    United States
    XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

International Class 035:  Holding company services, namely, providing business management, business administration services for subsidiaries and affiliates which provide tools and resources for economic empowerment; holding company services, namely, providing business management, business administration, business promotion, and business consulting services for subsidiaries; holding company services, namely, providing business management and administration, business operation consulting services, and identifying strategic alliances for affiliates; charitable services, namely, promoting public awareness about charitable, philanthropic, volunteer, public and community service and humanitarian activities

Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

Priority based on foreign filing: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services and asserts a claim of priority based on Jamaica application number Not Yet Assigned, filed 11/30/2021.

INTENT TO PERFECT 44(d) : At this time, the applicant has another basis for registration (Section 1(a) or Section 1(b)) and does NOT intend to rely on Section 44(e) as the basis for registration, but is only asserting a valid claim of priority.

International Class 036:  Holding company services, namely, investment management; holding company services, namely, financial reporting and financial advising to subsidiaries and affiliated companies; holding company services, namely, provision of investment capital, development, ownership, and operation relative to subsidiaries and affiliates; providing investors with financial information; holding company services, namely, financial management in the nature of allocation of investment capital; holding company services, namely, acquisition, management, and transfer of company stakes as well as the intermediation of equity capital financing of companies, namely, asset acquisition, consultation, development and management services; business administration and management, namely, controlling policies and management of the other companies

Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

Priority based on foreign filing: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services and asserts a claim of priority based on Jamaica application number Not Yet Assigned, filed 11/30/2021.

INTENT TO PERFECT 44(d) : At this time, the applicant has another basis for registration (Section 1(a) or Section 1(b)) and does NOT intend to rely on Section 44(e) as the basis for registration, but is only asserting a valid claim of priority.

The owner's/holder's proposed attorney information: Lindsey Furtado. Lindsey Furtado of Square, Inc., is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, is located at

    1455 Market Street, Suite 600
    San Francisco, California 94103

United States
trademarks@squareup.com

Lindsey Furtado submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

The applicant's current Correspondence Information:

Lindsey Furtado
PRIMARY EMAIL FOR CORRESPONDENCE: trademarks@squareup.com
SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): tmdocket@squareup.com

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $700 has been submitted with the application, representing payment for 2 class(es).

**Declaration**

☑ **Basis:**
    **If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

    **And/Or**
    **If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Lindsey Furtado/   Date: 12/01/2021
Signatory's Name: Lindsey Furtado
Signatory's Position: IP Counsel
Signatory's Phone Number: 000-000-0000
Signature method: Sent to third party for signature
Payment Sale Number: 97151255
Payment Accounting Date: 12/01/2021

Serial Number: 97151255
Internet Transmission Date: Wed Dec 01 16:37:27 ET 2021
TEAS Stamp: USPTO/BAS-XXX.XX.XXX.XXX-202112011637274

39957-97151255-781d18a6c784efb61578eb5a5
1f464ab5e8b5da6e7c4583730ecac5462fb5428-
CC-37260557-20211201150709445906



JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
H&R BLOCK, INC.
HRB INNOVATIONS, INC.

**DEFENDANTS**
BLOCK, INC.

**(b)** County of Residence of First Listed Plaintiff   Jackson County, MO
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Anthony J. Durone / Stacey R. Gilman
BERKOWITZ OLIVER LLP, 2600 Grand Boulevard
Suite 1200, Kansas City, Missouri 64108, 816-561-7007

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☐ 2   U.S. Government
Defendant

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                            *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☒ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Act | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
Another District
*(specify)*

☐ 6   Multidistrict
Litigation -
Transfer

☐ 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1114
Brief description of cause:
Trademark Infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
December 16, 2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Anthony J. Durone

**FOR OFFICE USE ONLY**

RECEIPT #

Case 4:21-cv-00913-GAF  Document 1-6  Filed 12/16/21  Page 64 of 83

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions.</u>

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

| TO: | Mail Stop 8<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court    for the Western District of Missouri    on the following

☑ Trademarks or   ☐ Patents.   ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>**21-cv-913** | DATE FILED<br>12/16/2021 | U.S. DISTRICT COURT<br>for the Western District of Missouri |
|---|---|---|
| PLAINTIFF<br><br>H&R BLOCK, INC.<br>HRB INNOVATIONS, INC. | | DEFENDANT<br><br>BLOCK, INC. |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1   See Appendix. | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | |
|---|---|---|
| | ☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director**    **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director**    **Copy 4—Case file copy**

Print     Save As...     Reset

| USPTO Trademark Reg. No. | Date of Patent or Trademark | Holder of Patent or Trademark |
|---|---|---|
| 3,338,962 | Nov. 20, 2007 | HRB Innovations, Inc. |
| 3,392,368 | Mar. 4, 2008 | HRB Innovations, Inc. |
| 3,525,361 | Oct. 28, 2008 | HRB Innovations, Inc. |
| 3,532,084 | Nov. 11, 2008 | HRB Innovations, Inc. |
| 4,769,331 | Jul. 7, 2015 | HRB Innovations, Inc. |
| 5,055,458 | Oct. 4, 2016 | HRB Innovations, Inc. |
| 5,179,142 | Apr. 11, 2017 | HRB Innovations, Inc. |
| 6,003,605 | Mar. 3, 2020 | HRB Innovations, Inc. |

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

|  |  |
|---|---|
| H&R BLOCK, INC. and<br>HRB INNOVATIONS, INC.<br><br>     Plaintiffs,<br><br>  v.<br><br>BLOCK, INC.<br><br>     Defendant. | Case No. 4:21-cv-00913 |

## PLAINTIFFS' CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 7.1 and Local Rule 7.1, Plaintiffs H&R Block, Inc. and HRB Innovations, Inc. hereby disclose the following:

1.  HRB Innovations, Inc. is not a publicly traded company. HRB Innovations, Inc. is a wholly-owned indirect subsidiary of H&R Block, Inc.

2.  H&R Block, Inc. is a publicly traded company and has no parent corporation. BlackRock, Inc.,[1] through its subsidiaries, is the beneficial owner of more than 10 percent of the common stock of H&R Block, Inc. As of this filing, H&R Block Inc. is not aware of any other publicly-held corporation owning 10% or more of H&R Block, Inc.'s stock.

---

[1] Information as to BlackRock, Inc.'s ownership is furnished in reliance on the Schedule 13G/A of BlackRock, Inc. filed with the Securities and Exchange Commission on January 27, 2021.

Dated: December 16, 2021                    Respectfully submitted,


By: ___/s/ Anthony J. Durone_____
    Anthony J. Durone (MO Bar #43872)
    Stacey R. Gilman (MO Bar # 55690)
    **BERKOWITZ OLIVER LLP**
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone:  (816) 561-7007
    Facsimile:   (816) 561-1888
    adurone@berkowitzoliver.com
    sgilman@berkowitzoliver.com

    David H. Bernstein (to be admitted *pro hac vice*)
    Jyotin Hamid (to be admitted *pro hac vice*)
    Jared I. Kagan (to be admitted *pro hac vice*)
    Marissa MacAneney (to be admitted *pro hac vice*)
    **DEBEVOISE & PLIMPTON LLP**
    919 Third Avenue
    New York, New York 10022
    (212) 909-6000
    dhbernstein@debevoise.com
    jhamid@debevoise.com
    jikagan@debevoise.com
    mpmacaneney@debevoise.com
    **Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF, which will generate and send a Notice of Electronic Filing to all counsel of record.

_/s/ Anthony J. Durone_____
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

Case Number: 4:21-cv-00913-GAF

**NOTICE OF INCLUSION IN THE MEDIATION AND ASSESSMENT PROGRAM**

This is notice that your case is included in the Western District of Missouri's Mediation and Assessment Program or "MAP." For MAP requirements, including required in-person attendance, carefully review the Court's General Order attached.

Your case has been randomly assigned to the following category in MAP:

____X__  Outside Mediator

_____  United States Magistrate Judge or United States Bankruptcy Judge

_____  Director of the Mediation and Assessment Program

**OUTSIDE MEDIATOR ASSIGNMENT**

If your case has been assigned to the Outside Mediator category, **the parties have 14 calendar days after the Rule 26 meeting to select an Outside Mediator, schedule the mediation and file a Designation of Mediator** (ADR event in ECF). The Designation of Mediator should contain the name of the Outside Mediator, the date, time and place of the in-person mediation; and it must be signed by or on behalf of each party. The mediation shall occur no later than 75 calendar days after the Rule 26 meeting.

**The Mediator and parties (pro se or by counsel) shall submit a post-mediation status report** to the Director within 10 calendar days after the mediation (separately or jointly, and preferably by email to map@mow.uscourts.gov). The report should state: how long the mediation lasted; whether all required parties were present in person; the outcome of the mediation; and if the case did not settle, whether additional settlement discussions would be productive and at what point in time or after what specific events.

JUDGE ASSIGNMENT

If your case has been assigned to a Judge for mediation, you will be notified by the Judge's office of the date, time and place of a settlement conference. The mediation shall occur no later than 75 calendar days after the Rule 26 meeting, unless otherwise scheduled by the Judge.

DIRECTOR ASSIGNMENT

If your case has been assigned to the Director of MAP for mediation, you will be notified by the Director's office of the date, time and place of either a teleconference or the mediation. The mediation shall occur no later than 75 calendar days after the Rule 26 meeting, unless otherwise scheduled by the Director.

## MEDIATION

Mediation is a process in which a neutral third party assists the parties in developing and exploring their underlying interests, legal positions, and options toward resolving the case through negotiations. As a party to a lawsuit in this Court, you are entitled to pursue all claims or defenses to claims that you have asserted until a disposition of the claims or defenses is made by the Court or a jury. However, most of the lawsuits filed in this and other courts are resolved by voluntary settlement of the parties before trial. With a settlement, the expense and inconvenience of litigation is reduced and the uncertainty of the outcome is eliminated. Good faith participation in MAP is required, but you are not required to settle the case. It is important that you carefully review and evaluate your case prior to the mediation or other ADR option session, and that you come prepared to discuss and negotiate the settlement of your case.

## ATTENDANCE AT MEDIATION

Please note that lead trial counsel and all named parties are required to attend mediation in person. In-person attendance of additional individuals is also required when applicable (e.g. insurance company representatives). See Section V.E. of the General Order. The failure to attend mediation or other ADR option session, or the refusal to cooperate or timely cooperate in MAP, may result in the imposition of sanctions by the assigned Judge.

## CONTINUING OBLIGATIONS

Inclusion in MAP does not relieve you of any obligations or deadlines that you have in this lawsuit. If you have been served, you must file a timely response in order to avoid the risk of a default judgment.

## QUESTIONS

For questions concerning MAP requirements, please review the MAP General Order and the MAP FAQs:

http://www.mow.uscourts.gov/district/map
http://www.mow.uscourts.gov/sites/mow/files/MAP_FAQs.pdf.

You may also contact the MAP office.

Mediation and Assessment Program
Laurel Stevenson, Director
Charles Evans Whittaker Courthouse
400 E. 9th Street, Room 3238
Kansas City, Missouri 64106
map@mow.uscourts.gov (E-mail)
816-512-5080 (Telephone)
816-512-5089 (Facsimile)

**General Order**
**Western District of Missouri**
**Mediation and Assessment Program**
**(Restatement Effective August 1, 2013,**
**Amendment Effective September 1, 2015**
**Amendment Effective November 14, 2019)**

I.  **PURPOSE**

The Court's Mediation and Assessment Program ("MAP" or the "Program") is designed to encourage parties to:  1) confront the facts and issues in their case before engaging in unnecessarily expensive and time-consuming discovery procedures, 2) engage in early and meaningful discussions of the issues, 3) consider the views of the opposing side, 4) consider the projected costs of future proceedings in an effort to settle the case before costs and lawyers' fees have made settlement more difficult, and 5) consider other  methods of resolving their disputes.  It recognizes that full formal litigation of civil claims can impose large economic and other burdens on parties and can delay the resolution of disputes.  It will be administrated by a "Director," and all references herein to "Director" shall be deemed to be referring to the Director of the Program.

II.  **PROGRAM OVERVIEW**

A.  **Mediation.** Mediation is the primary method of Alternative Dispute Resolution ("ADR") offered by the Court under this Program.

   1.  Mediation is a process in which a neutral third party assists the parties in developing and exploring their underlying interests (in addition to their legal positions), promotes the development of options and assists the parties toward settling the case through negotiations.  The mediation process does not normally contemplate presentations by witnesses.

   2.  The Director, Mediating Judge or Outside Mediator (collectively "Mediator") may give to any or all parties:

      a)  an estimate, where feasible, of the likelihood of liability and the dollar range of damages;

      b)  an opinion of the verdict if he or she were the trier of fact;

      c)  an assessment of key evidentiary and tactical issues; and

      d)  a nonbinding, reasoned evaluation of the case on its merits.

   3.  The Mediator does not review or rule upon questions of fact or law, or render any final decision in the case.

1

4. The Mediator does not have power to impose a settlement or to dictate any agreement regarding the pretrial management of the case. This provision shall not preclude the parties from reaching an agreement with assistance from the Mediator as to what information should be exchanged prior to mediation, so long as it does not contradict or conflict with the Scheduling Order or any other order as to the management of the case.

B. **Other Options.** If any participant in the Program is interested in an ADR option other than mediation, such as early neutral evaluation, mini-trials, summary jury trials, arbitration or some other hybrid form of ADR ("other ADR option sessions"), that participant should contact the Director to discuss sufficiently in advance of the mediation or pre-mediation conference, if applicable. If the parties are unable to agree, the Director in his or her discretion, after consultation with one or all the parties, may select some other form of ADR. The Director may not select binding arbitration unless all parties agree in writing.

## III. ROLE OF DIRECTOR

A. **Selection.** The Program Director shall be selected by the Court.

B. **Director Responsibilities.** In addition to any responsibilities or duties noted elsewhere in this General Order or as assigned by the Chief Judge, the Director shall have the following responsibilities:

1. Direct and administer the Program, including developing guidelines and rules consistent with this General Order and coordination of all activities with the office of the Western District Clerk.

2. Set and conduct mediation sessions or other ADR option sessions as time permits. Serve as a mediator at any subsequent mediation or other ADR option sessions in his or her discretion.

3. Oversee the assignment, and where necessary reassignment, of cases in the Mediation and Assessment Program. To the extent not otherwise handled automatically by CM/ECF, assign cases for mediation or for other appropriate ADR option sessions to: United States Magistrate Judges, United States Bankruptcy Judges, Outside Mediators, the Director, and if a United States District Court Judge consents to the assignment, cases may be assigned to a United States District Court Judge.

4. Assist in monitoring the evaluation of the Program, including participation in the development, compilation and analysis of surveys, questionnaires and focus groups for counsel and clients.

5.  Require mediators on the List of Mediators to take selected cases pro bono if needed. Such assignment shall be made using a fair process in the sole discretion of the Director. The Director shall develop guidelines for determining whether a case qualifies for pro bono assignment.

6.  Report to the Court on the status of the Program and make appropriate recommendations for modifications of the Program.

7.  Decide, in his or her discretion, at any time in the process, to exempt, temporarily suspend, extend the deadlines or withdraw a case from the Program, if for any reason, the case is not suitable for the Program.

8.  Permit, in his or her discretion, parties to submit written mediation or other ADR statements, no longer than three pages three business days prior to the session.

9.  Organize and conduct, in his or her discretion, training or other sessions for Mediators and participants as needed and as time permits.

10. Select, organize and lead, in his or her discretion, a group or advisory board to provide input and suggestions for the Program as needed and as time permits.

11. Develop a policy which will address the collection of files, written statements, and other confidential materials for storage and destruction.

## IV.  INCLUDED CASES

A.  **Case Selection.** All non-excluded civil cases filed in the Western District shall be included in the Mediation and Assessment Program.

B.  **Excluded Cases.** The following cases are excluded from the Program:

1.  Multi-district cases

2.  Social Security appeals

3.  Bankruptcy appeals

4.  Habeas Corpus actions

5.  Prisoner pro se cases

6.  Other pro se cases where motion for appointment of counsel is pending

3

   7.   Prisoner cases

   8.   Student Loan cases

   9.   Citizenship or Immigration cases.

 **C.**  **Class and Collective Actions.** The Director may determine in his or her discretion when and how to involve class and collective action cases in the Program.

 **D.**  **Additions.** The Director or any Western District Judge may in his or her discretion add additional cases to the Program which are not automatically assigned to the Program.

**V.**  **GENERAL PROCEDURES**

 **A.**  **Notice to Parties.** Notice to parties of case selection for the Program shall be provided as follows:

   1.   When a non-excluded case is filed, the parties will receive electronic Notice of Inclusion in the Program and assignment of their case to the Program Director, a Western District Judge or the Outside Mediator category for purposes of mediation.

   2.   The Clerk shall mail a copy of the Notice of Inclusion to any pro se litigant who does not utilize CM/ECF.

   3.   In pro se matters or other matters in which the Clerk is required to issue service, the Notice of Inclusion shall be attached by the Clerk to each summons issued in such action.

   4.   Plaintiff's counsel shall serve a copy of the Notice of Inclusion on defense counsel in conjunction with service of the Complaint or, if applicable, Defendant's counsel shall serve a copy of the Notice of Inclusion on Plaintiff's counsel in conjunction with service of the Notice of Removal.

 **B.**  **Timing.** The initial mediation or other ADR option session conducted pursuant to this Program shall occur no later than 75 calendar days after the Rule 26 meeting unless an extension of time is granted pursuant to Section V.C. below.

 **C.**  **Extensions.**

   1.   Extensions of Deadlines and Events in Outside Mediator Cases and Director Cases. Requests for extensions of Program deadlines and events shall be made in writing (email and facsimile are acceptable) to the Director within five business days of receiving notice of the deadline or event, unless another timeframe is set by

4

the Director. The request shall include the detailed good cause reason for the requested extension and the opposing party's position on the requested extension. The Director may grant or deny the request in his or her discretion. Appeals from the Director's decision, while discouraged, may be made by written motion to the Judge to whom the case is assigned.

2. Extensions or Changes to a Mediation Date with a Mediating Judge. If good cause exists to request a change in the mediation date set by the Mediating Judge, such request shall be made in writing to the Mediating Judge within five business days of notice of the mediation or other ADR option session or within the timeframe otherwise required by the Mediating Judge.

3. Mediation Dates Set by Director or Mediating Judges. If the Director or a Mediating Judge schedules a mediation or other ADR option session outside the 75 calendar day period following the Rule 26 meeting, such scheduling will operate as an automatic and acceptable extension under this Section without any additional action on the part of counsel or the parties.

D. **Opting Out.** Cases will not normally be allowed to opt out of the Program. However, there may be cases where good cause can be demonstrated for opting out. All requests to opt out shall be in writing and shall set forth in detail the reasons for the request. A written request (email and facsimile are acceptable) asking to opt out shall be sent to the Director within ten calendar days of receiving the initial Notice of Inclusion that the case is assigned to the Program. Subject to the considerations stated herein, the Director may grant or deny the request in his or her discretion. Appeals from the Director's decision, while discouraged, may be made by written motion to the Judge to whom the case is assigned.

E. **Attendance at Program Sessions and Location.**

1. Parties and Representatives

a) Parties. It is the intent of the Court that the parties attend all mediation or other ADR option sessions in person where there will be significant discussion about resolving the case.

b) Party Alternate. A party other than a natural person satisfies the attendance requirement if represented by a person or persons (other than outside or local counsel) with authority to enter into stipulations, with reasonable settlement authority, and with sufficient stature in the

5

organization to have direct access to those who make the ultimate decision about settlement.

c)    Insurer. If an insurance company's approval is required by any party to settle a case, a representative of the insurance company with significant settlement authority shall attend the mediation or other ADR option sessions in person.

2.    Proper Representative. If it appears to the Mediator that a case is not being reasonably evaluated by the representative present, the Mediator may meet privately with one or both sides to determine the analysis that has gone into the evaluation of the case, including the names and the authority of the individual involved in the analysis. The Mediator may request identified individuals or designate a level of authority to be present if subsequent Program sessions are scheduled.

3.    Counsel. Each party shall be accompanied in person by the lawyer expected to be primarily responsible for handling the trial of the matter ("lead trial counsel"). Local counsel is not typically required to attend the mediation or other ADR option session but may be required to attend the mediation or other ADR session in the Director's discretion. If an individual is not represented by counsel, that party may appear on his or her own behalf.

4.    Attendance. The parties, party alternate (when applicable), insurer (when applicable) and lead trial counsel shall attend all mediations or other ADR option sessions in person unless their attendance has been excused in advance by the Director or Mediating Judge. This attendance requirement reflects the Court's view that a couple of the principle purposes of the Program sessions are to afford litigants an opportunity to articulate their positions and to learn about opposing parties' positions and to be properly positioned to make effective progress toward resolving the case. See Section VI.B.2. for limitations on excusal and modification of these requirements by Outside Mediators.

5.    Location. Mediation shall be held in the city of the divisional office in which the case is pending, unless otherwise agreed to in advance by the parties and approved by the Mediator, or unless otherwise selected by the Mediating Judge or Director.

**F.    Additional Sessions.** Additional mediation sessions or other ADR option sessions may be required at the discretion of the Director, Mediating Judge or the Judge to whom the case is assigned.

G. **Mediation Statements.** If required, mediation statements shall not be filed with the Court, and the Judge assigned to hear the case shall not have access to them.

H. **Mediation-Related Activities.** The Mediator may in his or her discretion conduct pre- and post-mediation activities including but not limited to a pre-mediation conference to discuss, with the parties separately or jointly, what discovery or additional discovery is needed and may devise a plan for sharing the important information and/or conducting the key discovery that will equip them, as expeditiously as possible, to enter meaningful settlement discussions.

I. **Status Reports.** The Director may request a status report from the parties, counsel or the Mediator at any time. Failure of the parties, counsel or Outside Mediator to timely provide requested information may be grounds for sanctions under Section X.

J. **Notice of Settlement.** If the parties settle the case prior to the mediation or other ADR option session, the Mediator, the Director and the Court shall be advised promptly.

K. **Reports of Violations.** Mediators, parties and counsel shall promptly report in writing violations of this General Order to the Director and the Court.

VI. **PROCEDURES APPLICABLE TO CASES MEDIATED BY AN OUTSIDE MEDIATOR**

A. **Selection of Outside Mediator.**

1. Mediator Designation. When a case is assigned for mediation with an Outside Mediator, the parties or their counsel shall within fourteen calendar days after the Rule 26 meeting electronically file a Designation of Mediator notice (as an ADR event in CM/ECF) identifying their selected Outside Mediator and the date, time and specific location of the mediation. If the Director approves, in writing and in advance, the parties may select as a mediator a person not on the List of Mediators.

2. No Agreement. If the parties do not agree on, or choose not to select, an Outside Mediator, the Director will give the parties a list of potential mediators selected by the Director. The number of potential mediators on the list will be twice the number of "sides" in the litigation plus one. (For example, in litigation having two "sides," the list will contain five names.) The parties shall have seven calendar days from the date on the list of potential mediators to:

7

a)      agree as to a mediator on the list and to report the selection of the agreed mediator to the Director in writing, or

b)      designate a "strike" of the names of two potential mediators on the list of potential mediators. The strikes shall be in writing and shall be delivered to the Director, preferably by email or facsimile.

Unless the parties have agreed on a mediator as set out above, the Director shall designate one of the persons remaining on the list of potential mediators and shall promptly notify the parties and the mediator of the designation.

Upon failure of counsel to file the Designation of Mediator with all required information or to secure a mutually agreeable date, the Director may fix the date, time and place for the mediation or other ADR option session.

**B.**      **Mediation with Outside Mediators.**

1.      Date of Mediation. Section V.B. governs the timeframe within which the mediation or other ADR option session shall occur. The Outside Mediator may, with the consent of all parties and counsel, reschedule the mediation to a date certain not later than ten calendar days after the scheduled date. Any continuance beyond that time or any continuance of the mediation deadline itself must be approved by the Director in accordance with Section V.C.

2.      Limits on Excusing Attendance Requirements. Outside Mediators may not excuse the participation or appearance or allow an alternate mode of appearance of a party, party alternate, insurer or lead trial counsel from mediation without written approval from the Director sufficiently in advance of the mediation or other ADR option session.

3.      Post-Mediation Status Report. Within ten calendar days following the conclusion of the mediation or other ADR option session, the Mediator and parties (pro se or by counsel) shall submit a status report to the Director stating whether all required parties were present, the outcome of the session, whether additional settlement discussions would be productive and at what point in time or after what specific events, in addition to other information the Director may require for evaluation or follow-up purposes. The Director may request a status report from the counsel or the Mediator at any time.

8

## VII.  LIST OF OUTSIDE MEDIATORS

A.  **List of Mediators.** The Director shall prepare a list of persons who appear to have the minimum requirements to serve as a Mediator, as described below. The Director may add or delete persons from the List of Mediators. A copy of the List of Mediators will be available on the Court's internet site.  Being on the List of Mediators is not an indication that a person is a qualified mediator.  The Court is not certifying or representing that persons on the List of Mediators are qualified.

B.  **Minimum Requirements to be on the List of Mediators.**

1.  All applicants for the List of Mediators must complete the required application form.

2.  A person may be placed on the List of Mediators if:

a)  the person has been a United States District Judge, a United States Appellate Judge, a United States Magistrate Judge, a United States Bankruptcy Judge, a Missouri Circuit Court Judge, or a Missouri Appellate Judge, has had arbitration or mediation experience, and has not demonstrated any trait or behavior that is reasonably believed by the Director to be contrary to the effective and efficient management of this Program;

b)  the person is currently admitted to the Bar of this Court, has been a member of a state bar for at least eight consecutive years, has completed 16 hours of Continuing Legal Education training, certified under Missouri Supreme Court Rule 17 or by this Court, or the reasonable equivalent thereof, and has not demonstrated any trait or behavior that is reasonably believed by the Director to be contrary to the effective and efficient management of this Program; or

c)  the person is not an attorney but has obtained a degree or extensive specialized training in alternative dispute resolution, conflict management or another discipline, has had mediation experience, is knowledgeable about civil litigation in federal court, and has not demonstrated any trait or behavior that is reasonably believed by the Director to be contrary to the effective and efficient management of this Program.

9

C.    **Removal from List of Mediators.** The Director may remove any person from the List of Mediators for any reason consistent with the effective management of the Program, including but not limited to, the Outside Mediator's failure to: provide required reports, attend any required training sessions, contribute pro bono mediation time if requested, timely mediate cases or enforce applicable requirements for mediation in Outside Mediator cases.

D.    **Oath.** Each Mediator shall take and sign the oath or affirmation prescribed by 28 U.S.C. § 453 before acting as a Mediator.

E.    **Disqualification.**

    1.    Title 28 U.S.C. § 144 may be utilized to seek the disqualification of a Mediator.

    2.    No person shall serve as a Mediator in any action in which any of the circumstances specified in 28 U.S.C. § 455 exist and would apply if the mediator were a "judge."

    3.    Any party who believes that a Mediator has a conflict of interest or should be disqualified shall immediately bring the matter to the attention of the Director.

F.    **Compensation.**

    1.    Normally Outside Mediators shall be compensated at no more than the hourly rate listed by them in their application filed with the Director and shown on the List of Mediators, which may be updated on the List of Mediators at the request of the Outside Mediator. However, if agreed in writing and in advance between the Outside Mediator and the parties, the Outside Mediator may be compensated at a different hourly rate or by an alternative arrangement as stated in such agreement.

    2.    The Director may promulgate additional guidelines for Outside Mediators for allowable charges (e.g., for research, preparation, opinion writing, etc.) and expenses.

    3.    Absent agreement to the contrary, or unless the Director determines otherwise, the cost of the Outside Mediator's services shall be borne equally by the parties.

    4.    Except as provided in this section, a Mediator shall not charge or accept anything of value from any source whatsoever for or relating to acting as a Mediator.

10

5.       As a condition to inclusion on the List of Mediators maintained by the Director, a Mediator shall agree to serve pro bono periodically as assigned by the Director.

**G.      Mediators as Counsel in Other Cases.**  Any person who is designated as an Outside Mediator pursuant to this General Order shall not for that reason be disqualified from appearing as counsel in any other unrelated case pending before the Court.

## VIII.   CONFIDENTIALITY

**A.      General Provision.**  This Court, the parties, their counsel, the Mediator and any other participant in the Program shall treat as confidential the contents of any written mediation statement and anything said in mediation, including any position taken and any views of the case as expressed by any participant or Mediator.  Confidential information shall not be disclosed to: 1) anyone not involved in the litigation; 2) the assigned Judge; or 3) for any impeachment in any pending or future proceeding in this Court or any other forum, unless otherwise excepted in Section VIII.B. below.  The Mediator shall not be inquired of or called as a witness or deponent in any proceeding related to the dispute in which the Mediator served or be compelled to produce documents that the Mediator received or prepared for mediation or other ADR session.

**B.      Exceptions.**  The confidentiality provisions do not prohibit:

1.       Disclosure as stipulated to by all parties, counsel and the Mediator.

2.       Disclosure of a fully executed term sheet, settlement agreement, or resolution placed on the record, to enforce a settlement.

3.       Disclosure as required by law or court order.

4.       Disclosure of a threat or plan to inflict bodily harm or commit a violent crime.

5.       Disclosure made in a subsequent confidential mediation or other ADR session in that same case.

6.       Disclosure, discoverability or admissibility of information or documents otherwise discoverable under the Federal Rules of Civil Procedure simply because of its introduction or use in mediation or other ADR session.

11

7.      The parties and counsel providing ADR status reports or otherwise providing information to the Director regarding a possible violation of this General Order.

8.      The Mediator from providing ADR status reports or otherwise providing information to the Director, the assigned Judge or Court en banc regarding noncompliance by the parties, counsel or the Mediator with this General Order.

9.      The Director from attending any Program session and discussing with any Mediator, party or counsel any communication, comment, assessment, evaluation or recommendation.

10.     The parties, counsel, Mediator or Director from responding to inquiries by persons duly authorized by the Court to analyze and evaluate the Program. The names of the people responding and any information that could be used to identify specific cases or parties shall be confidential.

C.      **No Recording.** No recording shall be made of any of the mediation or other ADR option sessions held under the Program, nor shall parties utilize private court reporters or any other type of recording technology during the Program sessions, unless all parties agree, or unless the recording is made under non-binding arbitration, or unless the parties have agreed to binding arbitration.

D.      **Confidentiality Agreement.** The Mediator may ask counsel, the parties and all persons attending the mediation or other ADR option session to sign a confidentiality agreement.

## IX.     EVALUATION

The Court may require evaluation of the Program to: (a) determine the success of the Program in expediting the processing of cases and reducing costs; (b) measure the satisfaction of the parties with the Program; (c) explore enhancements or changes to the Program; and (d) compare components or elements of the Program.

## X.      SANCTIONS

If a party or counsel fails to make a good faith effort to participate in the Program in accordance with the provisions and spirit of this Order, the assigned Judge or Court may impose appropriate sanctions.