**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

H&R BLOCK, INC. and HRB
INNOVATIONS, INC.,

                   Plaintiffs,

     v.

BLOCK, INC.,

                 Defendant.

Case No. 4:21-cv-00913-NKL

**ORAL ARGUMENT REQUESTED**

<u>**DEFENDANT BLOCK, INC.'S SUGGESTIONS IN SUPPORT OF ITS**</u>
<u>**MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(b)(6)**</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

FACTS ALLEGED IN THE COMPLAINT ......................................................................2

    The Parties: ..................................................................................................................2

    A.    Plaintiffs H&R Block, Inc. and HRB Innovations, Inc. ....................................2

    B.    Defendant Block, Inc. ......................................................................................3

    C.    Plaintiffs' Legal Theories .................................................................................6

LEGAL STANDARD.........................................................................................................7

LEGAL ARGUMENT ........................................................................................................9

I.    PLAINTIFFS DO NOT—AND CANNOT—PLAUSIBLY ALLEGE A
LIKELIHOOD OF CONFUSION ...........................................................................9

    A.    The Complaint Confirms That Defendant Is Merely A Holding Company
That Offers No Block-Branded Products Or Services. .................................10

    B.    The Complaint Confirms That The Tax Preparation Services At Issue In
This Case Are Offered Under the Cash App Brand.......................................11

    C.    No Reasonable Consumer Could Confuse the Cash App Logo As Being
Associated with H&R Block...........................................................................11

II.    EVEN CONSIDERING THE SIX *SQUIRT* FACTORS, PLAINTIFFS CANNOT
PLEAD A PLAUSIBLE INFRINGEMENT CLAIM .............................................12

    A.    The Complaint Fails the "Strength of the Marks" Factor. ....................................13

    B.    The Complaint Fails the "Similarity of the Marks" Factor.....................................14

    C.    The Complaint Fails the "Degree of Competition" Factor. ...................................15

    D.    The Complaint Fails the "Intent" Factor.................................................................16

    E.    The Complaint Fails the "Actual Confusion" Factor.............................................16

    F.    The Complaint Fails the "Other Considerations" Factor. ......................................17

CONCLUSION..................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*,
    307 F. Supp. 3d 260 (S.D.N.Y. 2018)....................................................................................... 10

*Apple Inc. v. Samsung Elec. Co.*,
    786 F.3d 983 (Fed. Cir. 2015), *rev'd on other grounds*, 137 S. Ct. 429 (2016)...................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................ 8, 15, 17

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554 (2007)......................................................................................................................... 8

*Brown v. Medtronic, Inc.*,
    628 F.3d 451 (8th Cir. 2010) ......................................................................................................... 3

*Buckley v. Hennepin Cty.*,
    9 F.4th 757 (8th Cir. 2021) ........................................................................................................... 9

*Busch Inc. v. Balducci Publications*,
    28 F.3d 769 (8th Cir. 1994) ......................................................................................................... 10

*Enter. Rent-A-Car Co. v. U-Haul Int'l, Inc.*,
    327 F. Supp. 2d 1032 (E.D. Mo. 2004)................................................................................ 4, 8, 9, 10

*Eyebobs, LLC v. Snap, Inc.*,
    259 F. Supp. 3d 965 (D. Minn. 2017)....................................................................................... 16

*First Nat. Bank in Sioux Falls v. First Nat. Bank, S. Dakota*,
    153 F.3d 885 (8th Cir. 1998) ....................................................................................................... 18

*Gen. Mills, Inc. v. Kellogg Co.*,
    824 F.2d 622 (8th Cir. 1987) ....................................................................................................... 14

*Gen. Mills, Inc. v. Kellogg Co.*,
    825 F.2d 622 (8th Cir. 1987) ....................................................................................................... 14

*Greenman v. Jessen*,
    787 F.3d 882 (8th Cir. 2015) ......................................................................................................... 9

*H & R Block E. Enterprises, Inc. v. Intuit, Inc.*,
    945 F. Supp. 2d 1033 (W.D. Mo. 2013) ...................................................................................... 8

*Hallmark Indus., Inc. v. Hallmark Licensing, LLC*,
    No. 4:18-CV-00236-DGK, 2018 WL 5828687 (W.D. Mo. Aug. 14, 2018) ............................ 4

*Jacobs v. Fareportal, Inc.*,
    No. 8:17-CV-362, 2018 WL 6113416 (D. Neb. Nov. 21, 2018)............................................ 10

*Jeld-Wen, Inc. v. Dalco Indus., Inc.*,
    198 F.3d 250, 1999 WL 1024002 (8th Cir. 1999) .................................................................. 14

*Johnson v. Gawker Media, LLC*,
  No. 4:15-CV-1137 CAS, 2016 WL 193390 (E.D. Mo. Jan. 15, 2016) .................................... 4

*JTH Tax, Inc. v. Freedom Tax, Inc.*,
  No. 3:19-CV-00085-RGJ, 2019 WL 2062519 (W.D. Ky. May 9, 2019) ................................ 18

*Le Book Pub., Inc. v. Black Book Photography, Inc.*,
  418 F. Supp. 2d 305 (S.D.N.Y. 2005).................................................................................. 13

*Luigino's, Inc. v. Stouffer Corp.*,
  170 F.3d 827 (8th Cir. 1999) ................................................................................. 13, 14, 15

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
  209 F. Supp. 3d 612 (S.D.N.Y. 2016)................................................................................. 17

*McShane Constr. Co., LLC v. Gotham Ins. Co.*,
  867 F.3d 923 (8th Cir. 2017) ................................................................................................. 8

*Michael Jaudes Fitness Edge, Inc. v. Edge Fitness Clubs, LLC*,
  No. 4:19-CV-01987-AGF, 2019 WL 11318383 (E.D. Mo. Sept. 6, 2019) ............................ 15

*Miller v. Redwood Toxicology Lab., Inc.*,
  688 F.3d 928. 931 n. 3 (8th Cir. 2012) ................................................................................... 3

*Nail All., LLC v. Poly-Gel L.L.C.*,
  No. 17-CV-01026-FJG, 2019 WL 5295502 (W.D. Mo. Sept. 27, 2019) ............................... 16

*OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch.*,
  851 F.3d 800 (8th Cir. 2017) ................................................................................................. 9

*Phoenix Ent. Partners, LLC v. Sports Legends, LLC*,
  306 F. Supp. 3d 1112 (E.D. Mo. 2018)..................................................................... 8, 10, 16

*PPW Royalty Tr. v. Barton*,
  No. 14-00513-CV-W-BP, 2015 WL 13263507 (W.D. Mo. Jan. 30, 2015)............................. 9

*Roederer v. J. Garcia Carrion, S.A.*,
  732 F. Supp. 2d 836 (D. Minn. 2010) .................................................................................. 14

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*,
  613 F.3d 754 (8th Cir. 2010) ......................................................................................... 12, 18

*SquirtCo v. Seven-Up*,
  628 F.2d 1086 (8th Cir. 1980) ............................................................................................. 13

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*,
  908 F.3d 313 (8th Cir. 2018) ............................................................................................... 14

*USA Visionary Concepts, LLC v. MR Int'l, LLC*,
  No. 4:09-CV-00874-DGK, 2009 WL 10672094 (W.D. Mo. Nov. 17, 2009) .............. 9, 17, 18

*Warmington v. Bd. of Regents of Univ. of Minnesota*,
  998 F.3d 789 (8th Cir. 2021) ............................................................................................... 15

*ZW USA, Inc. v. PWD Sys., LLC*,
  889 F.3d 441 (8th Cir. 2018) ......................................................................................... 17, 18

**Statutory Authorities**

15 U.S.C. § 1115 ................................................................................................................. 4

26 U.S.C. § 7206(1) ........................................................................................................ 18

Case 4:21-cv-00913-NKL   Document 31   Filed 01/07/22   Page 5 of 24

# INTRODUCTION

The typical trademark infringement case involves the defendant's use of the plaintiff's name to sell competing goods in a manner that is likely to cause confusion. This is not such a case. Plaintiffs H&R Block, Inc. and HRB Innovations, Inc. use the "H&R Block" name to sell income tax services. Defendant Block does not use its Block brand to sell any customer-facing products or services at all. Its wholly-owned subsidiary, Cash App Taxes, Inc. does offer (completely free) income tax preparation services, but it does so under the Cash App name and logo that are federally registered trademarks that have been in use since 2017. Based on the facts Plaintiffs allege, no reasonable consumer could possibly confuse "H&R Block" with "Cash App" or "Cash App Taxes." That alone dooms this lawsuit.

The complaint presses two theories of trademark infringement: (1) that use of Defendant Block's corporate name is likely to cause confusion with H&R Block; and (2) that use of Cash App's dollar sign logo is likely to cause confusion with H&R Block. Neither theory is plausibly alleged.

With respect to their claim regarding the Block name, Plaintiffs engage in sleight of hand, comparing "H&R Block" to Defendant's "Block, Inc." corporate name to create the misleading impression that these are two customer-facing brands that compete with one another. But their complaint confirms that Block, Inc. does not offer consumer goods or services—tax-related or otherwise—under the Block brand. Instead, "Block" is the corporate identity and name, intended to distinguish the corporate "parent" from its separately branded, customer-facing product lines, which include credit card payment processing (Square), peer-to-peer money transfers (Cash App), music streaming (TIDAL), decentralized financial services (TBD54566975), and Bitcoin development (Spiral). Block is a "house of brands"—much like Procter & Gamble is a house of brands that includes independent, customer-facing brands such as Bounty, Crest, Dawn, Febreze,

1

Gillette, and others.  Exhibit A to H&R Block's complaint reveals the meaning behind the Block branding, intended to reflect "an overarching ecosystem of many businesses united by their purpose of economic empowerment" for customers—not to draw associations with a 66-year-old brick-and-mortar tax company like H&R Block.

As for their claim regarding the Cash App dollar sign logo, it is doomed by Plaintiffs' complaint, which confirms that the logo is always used with the Cash App name.  Plaintiffs do not allege that the logo is used alone, nor that the name Cash App—the sole brand under which any of Defendant's businesses offer income tax preparation services—is confusingly similar to "H&R Block."  That would make no sense. And, as a matter of law, rounded rectangle shapes are functional for smartphone apps such as Cash App, and the color green is not one H&R Block can monopolize for financial services.  Again, Plaintiffs have pleaded no plausible claim here.

Each of these defects in Plaintiffs' ill-conceived lawsuit merits dismissal, and cannot be cured.   While H&R Block may not like that it has to compete with a truly free income tax preparation service offered by an established business like Cash App, its appropriate recourse is to take on Cash App in the marketplace, not to fabricate trademark claims that are implausible on their face.  The Court should dismiss the case with prejudice.

## FACTS ALLEGED IN THE COMPLAINT

**<u>The Parties:</u>**

### A.    <u>Plaintiffs H&R Block, Inc. and HRB Innovations, Inc.</u>

Plaintiffs (collectively, "HRB") principally "specialize in income tax preparation" through thousands of franchised businesses located across the United States.  Compl. ¶ 13. Although Plaintiffs allege that they offer some additional services, those additional services are still largely connected to its core business of preparing and filing tax returns.  *Id.* ¶ 14 (identifying offerings of electronic tax filing, tax refund advance loans, tax refund transfers,

2

prepaid debit cards, lines of credit scores, mobile banking platforms, tax refund identity theft

protection, and small business services).

Plaintiffs claim they own the following marks, which they misleadingly identify as the

"BLOCK Marks," even though they do not conduct business under the stand-alone name

"Block":  H&R BLOCK; H&R BLOCK EMERALD CARD; H&R BLOCK EMERALD

SAVINGS; H&R BLOCK EMERALD ADVANCE; BLOCKWORKS; BLOCK ADVISORS;

BLOCK ADVISORS (with green cube logo); BLOCK HAS YOUR BACK.  *Id.* ¶¶ 15–16, 19.[1]

Rather, as the images in its complaint reveal, many of these are used in conjunction with  the

"H&R Block" branding.  *Id.*; *see also* Caruso Decl. Ex. A.

### B. <u>Defendant Block, Inc.</u>

The customer-facing brands of Block, Inc.—Square, Cash App, TIDAL, TBD54566975,

and Spiral—offer tools to empower businesses, sellers, and individuals who have historically

faced barriers to participation in the economy.  *See* Compl. Exs. A, C; *id.* ¶ 37.  Block, Inc. itself

is not a customer-facing brand, but is merely the corporate business name of the company that

offers these brands.  Compl. Ex. A.  Before December 1, 2021, Block, Inc. was known as Square,

Inc.  *Id.* ¶ 32.  In its early days, Square, Inc. had just a single product line and service—Square—

and that product line was often associated with a ubiquitous white square payment card reader

---

[1]  Block respectfully asks the Court to take notice of Plaintiffs' use of the "H&R Block" branding
on Plaintiffs' websites, hrblock.com and blockadvisors.com.  Plaintiffs rely on the appearance of
its websites as evidence for the strength of its marks.  Compl. ¶ 17.  The sites are widely
available to the public, and their appearance cannot be disputed.  *See Miller v. Redwood
Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir. 2012) (in considering 12(b)(6) motion,
"courts additionally consider matters incorporated by reference or integral to the claim, [and]
items subject to judicial notice"); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459–60 (8th Cir.
2010) ("[D]ocuments attached to or incorporated within a complaint are considered part of the
pleadings, and courts may look at such documents for all purposes[.]"); *Johnson v. Gawker
Media, LLC*, No. 4:15-CV-1137 CAS, 2016 WL 193390, at *1 n.2 (E.D. Mo. Jan. 15, 2016)
(taking judicial notice of "widely available internet websites" in granting 12(b) motion); *Enter.
Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1042 (E.D. Mo. 2004) (same).

that could be connected to a smartphone. Compl. Ex. A. Over time, however, Square launched

and acquired more products and services. Its other businesses include:

- Cash App: Cash App launched in 2013 as a peer-to-peer funds transfer service,

  which allows people to send money to other people using mobile devices. Since then,

  it has expanded its services to "spending, sending, storing, and investing." Compl.

  Ex. C ("In the third quarter of 2020, Cash App generated $385 million in gross profit,

  or more than $1.5 billion on an annualized basis, and as of June 2020 had more than

  30 million monthly active customers."). Since 2017, Cash App has been using the

  following name and logo[2]:



- TIDAL: A music streaming platform that helps recording artists succeed as

  entrepreneurs and connect more deeply with their fans. Compl. Ex. A.

- TBD54566975: An open developer platform that enables access to Bitcoin and other

  blockchain technologies without having to go through a bank or other financial

  institution. *Id.*

- Spiral: A platform dedicated to advancing Bitcoin. *Id.*

On December 1, 2021, Defendant changed its corporate/parent name to distinguish the

corporate's identity from its growing "ecosystem" or "building blocks" of businesses, but

retained the "Square" name for its Square payment processing business. *Id.* The Block name

has "many associated meanings for the company—building blocks, neighborhood blocks and

---

[2] Caruso Decl. Ex. B. *See Hallmark Indus., Inc. v. Hallmark Licensing, LLC*, No. 4:18-CV-00236-DGK, 2018 WL 5828687, at *3 (W.D. Mo. Aug. 14, 2018) ("Trademark registrations are public records and the Court may take judicial notice of them"); 15 U.S.C. § 1115.

their local businesses, communities coming together at block parties full of music, a blockchain, a section of code, and obstacles to overcome." *Id.* This name change was done to "distinguish[] the corporate entity from its businesses, or building blocks." *Id.*

Block's new logo is a moving, multicolored and iridescent twisted cube that changes shape and color, but is never a green-colored, static, six-straight-sided cube:



Compl. ¶ 34 (block.xyz website, incorporated by reference); Compl., Ex. B (static screenshot).

### **Product Comparison**[3]

| Product/service | Block, Inc. | H&R Block, Inc. |
|---|---|---|
| Commercial solutions, business software, and banking services for sellers | Square | (None) |
| Peer-to-peer money transfer | Cash App | (None) |
| Debit cards, direct deposit | Cash App | MyBlock (mobile app); H&R Block Emerald Prepaid Master Card |
| Stocks and bitcoin investment | Cash App | (None) |
| Tax preparation and filing | Cash App Taxes | H&R Block |
| Music streaming | TIDAL | (None) |

---

[3] Information about the parties' products and services was taken from paragraphs 20, 30, 34–39 of the complaint and Exhibits A, C, and D.

| Product/service | Block, Inc. | H&R Block, Inc. |
|---|---|---|
| Bitcoin development | Spiral | (None) |
| Bitcoin and blockchain technology | TBD54566975 | (None) |

### C. **Plaintiffs' Legal Theories**

Plaintiffs sued Defendant on December 16, 2021, alleging five claims for relief: (1) infringement of a registered trademark under Section 32 of the Lanham Act; (2) unfair competition under Section 43(a) of the Lanham Act; (3) trademark infringement under Missouri common law; (4) unfair competition under Missouri common law; and (5) injunctive relief under Missouri Rev. Stat., Section 417.061.

Ignoring that Cash App's logo is a registered trademark continuously used since 2017, *see* Caruso Decl. Ex. B, HRB's complaint relies on the implausible inference that suddenly Cash App's logo will cause confusion because Cash App will offer digital tax preparation services, just as H&R Block's offerings include digital tax services. Compl. ¶ 38. Yet, as shown in the complaint, in the marketplace the logos are combined with their associated names "H&R Block" and "Cash App, " respectively, which look and sound nothing alike. *See* Compl. ¶¶ 19, 38.

HRB fails to allege any use by Defendant of "Block" branding in connection with Cash App's tax offering. Instead, its sole allegation relating to the use of the Block name for tax services is a copyright notice, in small gray front on a black background, at the very bottom of the Taxes page of the Cash App website. *Id.* ¶ 40 (reflecting "©2021 Block, Inc." as the copyright owner).[4] As the website makes clear, "Block" is not part of the branding of Cash App

---

[4] Although not germane to this motion, the copyright notice was removed in an abundance of caution, and the website now notes "Tax Filing Preparation services are provided by Cash App

Taxes and is not used as a source identifier. *Id.* ¶¶ 36, 38, 40; *see also* Caruso Decl. Ex. C (screen capture of Cash App Taxes webpage, incorporated by reference, Compl. ¶ 38).

As purported evidence of actual confusion, HRB cites a total of six posts (of the many hundreds) on the social media platform Twitter ("Tweets") relating to Block's name change. *Id.* ¶¶ 43–44. Three of those Tweets appear to be a response to Block's name change announcement on Twitter on December 1, 2021. *Id.* ¶ 43 (replying to @Square, @jack, @CashApp). Significantly, all six, including the three that are not a response to Defendant's announcement, show that their authors readily distinguish between the two corporate entities and suffer from no confusion. *Id.* ("The square rebrand is surely going to piss off @HRBlock …."; "Also, doesn't this seem close to H&R Block with their simple green square logo?"). Thus, these examples confirm how readily the two companies are distinguished, further undercutting HRB's conclusory allegations that confusion is likely between them. The last Tweet is from an individual who identified herself as "Production Designer at Square" and quips that "folks are now going to think I work for H&R Block." *Id.* ¶ 44. This does not evidence actual confusion either. The statement—even if credited as sincere, and not merely a humorous remark—is nothing more than speculation. HRB alleges no other facts to demonstrate confusion or harm.

## LEGAL STANDARD

A complaint cannot survive a motion to dismiss unless it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *H & R Block E. Enterprises, Inc. v. Intuit, Inc.*, 945 F. Supp. 2d 1033, 1035 (W.D. Mo. 2013) (Gaitan, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

Taxes, Inc." Caruso Decl. Ex. C (screen capture of Cash App Taxes webpage, incorporated by reference, Compl. ¶ 38). *See also supra*, note 1.

defendant is liable for the misconduct alleged." *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). Yet "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are insufficient to meet the plausibility standard. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007) (internal quotation marks omitted)); *H & R Block E. Enterprises, Inc.*, 945 F. Supp. 2d at 1035.

"Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires [the] court to draw on its judicial experience and common sense." *Phoenix Ent. Partners, LLC v. Sports Legends, LLC*, 306 F. Supp. 3d 1112, 1115 (E.D. Mo. 2018) (quoting *Iqbal*, 556 U.S. at 678–79) (alterations in original). As to trademark infringement claims, where a court "finds that upon the facts alleged by plaintiffs, there is no possibility that consumers could be confused as to whether plaintiffs endorse or sponsor defendant's products or services," the complaint should be dismissed. *H & R Block E. Enterprises, Inc.*, 945 F. Supp. 2d at 1036.

In evaluating a motion to dismiss, the Court may consider the pleadings, plus materials "necessarily embraced by the pleadings" (*Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760–61 (8th Cir. 2021)), including "items appearing in the record of the case, and exhibits attached to the c." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). Judicially noticeable facts may also be considered. *PPW Royalty Tr. v. Barton*, No. 14-00513-CV-W-BP, 2015 WL 13263507, at *1 (W.D. Mo. Jan. 30, 2015). Where judicially noticeable facts contradict the complaint's allegations, the complaint's contradicted allegations are entitled to no deference and may be disregarded. *See OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch.*, 851 F.3d 800, 807 (8th Cir. 2017) (in a breach of contract case, the district court properly dismissed claims of

reasonable reliance based on "general, conclusory allegations" because they were "squarely contradict[ed]" by the Exclusive Patent License Agreement.).

**LEGAL ARGUMENT**

**I.    PLAINTIFFS DO NOT—AND CANNOT—PLAUSIBLY ALLEGE A LIKELIHOOD OF CONFUSION**

All four of Plaintiffs' substantive counts require proof of a likelihood of consumer confusion.[5] *See USA Visionary Concepts, LLC v. MR Int'l, LLC*, No. 4:09-CV-00874-DGK, 2009 WL 10672094, at *3 (W.D. Mo. Nov. 17, 2009) (citations omitted) (likelihood of confusion is a necessary element of federal and state law trademark infringement and unfair competition claims). Indeed, "The sine qua non of trademark infringement is consumer confusion*." Jacobs v. Fareportal*, *Inc.*, No. 8:17-CV-362, 2018 WL 6113416, *3 (D. Neb. Nov. 21, 2018) (quoting *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 287 (S.D.N.Y. 2018)). Because Plaintiffs' conclusory allegations that Defendant's names and/or images are likely to cause confusion about their source or affiliation are implausible on their face, or are contradicted by judicially noticeable facts, each of Plaintiffs' counts fails.

Indeed, that was the conclusion Judge Gaitan of this District reached in dismissing—at the pleading stage—another trademark infringement claim H&R Block attempted to pursue against a competitor (Intuit's TurboTax) at the beginning of a tax season. Judge Gaitan explained: "Although consumer confusion is typically an issue of fact reserved for summary judgment, the Court finds that upon the facts alleged by plaintiffs, there is no possibility that

---

[5] Plaintiffs' fifth count seeks an injunction under Missouri Rev. Stat., Section 417.061 to prevent Defendant Block from continuing to use its name. That statute provides a remedy, based on a finding of trademark infringement under other sections of Missouri statutory law. Thus, the count does not assert a separate substantive claim, but is merely a remedy for alleged claims for trademark infringement or unfair competition.

9

consumers could be confused as to whether plaintiffs endorse or sponsor defendant's products or services." *H&R Block E. Enterprises, Inc.*, 945 F. Supp. 2d at 1036 (citing *Anheuser–Busch Inc. v. Balducci Publ'ns*, 28 F.3d 769, 773 (8th Cir. 1994)); *see also Phoenix Ent. Partners, LLC*, 306 F. Supp. 3d at 1117 (granting Rule 12(b)(6) motion upon finding that "[t]here is little or no similarity or competition" between the services of plaintiff and defendant).

 HRB's claims here deserve the same fate again: There is no rational possibility that users of Cash App Taxes would think that the service originates from, or is affiliated with, or endorsed or sponsored by, H&R Block.

### A. The Complaint Confirms That Defendant Is Merely A Holding Company That Offers No Block-Branded Products Or Services.

 Plaintiff H&R Block is in the tax return preparation and filing business. *See* Compl. ¶ 13. It asserts that Defendant Block "competes directly" with H&R Block and shares the same target consumer market. *Id.* ¶ 3. But it fails to allege any competitive products offered under the name "Block." Nor can it. Exhibit E to the complaint explains why: The Block brand is merely a "corporate identity" offering "holding company services," such as "business management, business administration services for subsidiaries and affiliates." *See also* Compl. Exs. A (press release announcing Block's name change), D (*Forbes* article about Block's acquisition of Credit Karma Tax). Given these facts, Plaintiffs' claims regarding any alleged confusion arising from the names the parties use to provide tax return preparation and filing services fail for this reason alone.

 Moreover, all of HRB's allegations showing the commercial context of the Block corporate identity and brand reflect imagery that is nothing like the imagery HRB alleges it uses. *Compare* Compl. ¶ 33 (Block brand logos) *with id.* ¶¶ 15, 19–25, 28, 30–31. This is readily apparent upon review of Block's multihued, twisted cube logo. *Id.* Ex. B. Thus, in neither

services nor commercial impression is there similarity between the parties that could give rise to reasonable confusion as to source or affiliation.[6]

**B.** **The Complaint Confirms That The Tax Preparation Services At Issue In This Case Are Offered Under the Cash App Brand.**

HRB's complaint admits that the tax preparation services at issue—the services that "compete directly" with HRB's tax preparation business—are branded as "Cash App," not Block. Compl. ¶¶ 35-39. Indeed, the Cash App tax preparation service webpage HRB references in its complaint illustrates this indisputable point as clear as day. *See* Caruso Decl. Ex. C (screen capture of Cash App Taxes webpage, incorporated by reference, Compl. ¶ 38). Cash App is a name so unlike H&R Block in appearance, sound, and number of syllables that no one plausibly could confuse one for the other.

**C.** **No Reasonable Consumer Could Confuse the Cash App Logo As Being Associated with H&R Block.**

Likewise, the Cash App logo could not plausibly confuse any reasonable consumer. *Cf., e.g.*, Compl. ¶¶ 35, 50, 51. Once again, the facts Plaintiffs allege contradict their conclusory rhetoric. Plaintiffs make no allegation that the Cash App logo is used alone, as opposed to in conjunction with the Cash App name. *See* Compl. ¶¶ 35, 38, 40. This alone dooms their claim because the commercial impression of the challenged mark in the marketplace must be assessed overall, not as a use in isolation. *See, e.g.*, *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 764 (8th Cir. 2010) ("Rather than consider the similarities between the component parts of the marks, we must evaluate the impression that each mark in its entirety is likely to

---

[6] To the extent that HRB is attempting to allege confusion with its allegedly forthcoming "Spruce" offering, the comparison of the commercial impression of that product to anything offered by Defendant reflects no plausible similarity. *Compare* Compl. ¶ 31 *with id.* ¶¶ 33, 35, Ex. B.

have on a purchaser[.]").  And it is indisputable that "Cash App" neither looks nor sounds like "H&R Block."

As the images in the complaint establish, the commercial impression of the Cash App icon—with its prominent italicized dollar sign, lack of 90 degree angled corners, and accompanying "Cash App" text—is so different from HRB's alleged uses of its logo (and name) that no reasonable consumer would be confused as to source or affiliation.  Compl. ¶¶ 35, 38, 40; *see also id.* ¶¶ 15, 19–25, 28, 30–31.

 

As a matter of law, these differences "convey perceptible distinctions between the products."  *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999) (collecting cases); *see also Le Book Pub., Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 311 (S.D.N.Y. 2005) (dismissing, as a matter of law, trademark infringement claim because the dissimilarity between the marks at issue "overwhelms any possibility of confusion"). Tellingly, the Cash App logo has been in use for more than four years, and HRB alleges no prior challenge to it.  *See* Caruso Decl. Ex. B.

## II.  EVEN CONSIDERING THE SIX *SQUIRT* FACTORS, PLAINTIFFS CANNOT PLEAD A PLAUSIBLE INFRINGEMENT CLAIM

Although common sense alone demonstrates the deficiency of Plaintiffs' case, even a cursory review of the six *Squirt* factors courts consider to determine the likelihood of confusion confirms that the facts Plaintiffs have alleged do not plead any colorable claim.  *See SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1090 (8th Cir. 1980); *H & R Block E. Enterprises, Inc.*, 945 F. Supp. 2d at 1035-36 (discussing the *Squirt* factors and concluding, on a Rule 12(b)(6) motion,

that "plaintiffs have not stated a claim upon which relief can be granted for trademark infringement")..

### A.      The Complaint Fails the "Strength of the Marks" Factor.

Plaintiffs do not allege they hold any federal trademarks covering the word "Block" standing alone. *Cf.* Compl. ¶ 15. Instead, and as the complaint demonstrates, H&R Block routinely uses the word "Block" in connection with the distinctive prefix "H&R" (or, in the digital space "hr") and with other words and context signifying "H&R Block." *See* Compl. ¶¶ 17, 19–22; Caruso Decl. Ex. A. Indeed, Plaintiffs admit that they peacefully coexist with other companies that use BLOCK-formative marks, such as BLOCK & COMPANY, INC. Compl. ¶ 27.

Thus, the complaint's allegations support the strength of the "H&R Block" marks for tax preparation services only in their composite ("H&R Block") nature. *See Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 337 (8th Cir. 2018) ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail."). Similarly, the complaint does not allege that Plaintiffs use the green square mark alone in the marketplace without the accompanying "H&R Block" or "HRBlock" name. *See, e.g.,* Compl. ¶ 19; Caruso Decl. Ex. A.

Because Plaintiffs do not allege that Defendant uses either the name "H&R Block" or the dominant and distinctive "H&R" prefix, and Plaintiffs admit the existence of, and peaceful coexistence with, other BLOCK-formative marks in the financial services industry, the strength of HRB's marks does not favor a finding of confusion.[7] *See Luigino's*, 170 F.3d at 831 (finding

---

[7] Even if HRB had plausibly alleged trademark rights in "Block" alone, the word "Block" is inherently a weak mark, given hundreds of registrations for BLOCK formative marks. *See* Caruso Decl. ¶ 5; *see also id.*, Ex. D; *Jeld-Wen, Inc. v. Dalco Indus., Inc.*, 198 F.3d 250 (Table), 1999 WL 1024002, *4 (8th Cir. 1999) (noting that the word "elite" is a weak mark because it is

that the use of two identical dominant words—"Lean" in Lean Cuisine and Lean 'N Tasty—does not render the marks similar because "the prominent display of the house marks convey perceptible distinctions between the products"); *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987) (affirming finding of no likely confusion because both brands are "widely recognized and …both appended their house marks in a sufficiently prominent manner").

### B.   The Complaint Fails the "Similarity of the Marks" Factor.

As discussed above, according to the Complaint Plaintiffs offer tax-related services under the "H&R Block" name.  The Defendant offers no such services.  Defendant owns a company that offers tax return preparation and filing under the name "Cash App Taxes."  *See* Compl. ¶¶ 38–40.  "H&R Block" and "Cash App Taxes" are not similar names.

As to the logos, Plaintiffs allege no instance of the Cash App dollar sign logo appearing separate from the name "Cash App."  *See, e.g.*, *Michael Jaudes Fitness Edge, Inc. v. Edge Fitness Clubs, LLC*, No. 4:19-CV-01987-AGF, 2019 WL 11318383, at *5 (E.D. Mo. Sept. 6, 2019) ("The use of different colors and typefaces, as well as the prominent display of the house marks convey perceptible distinctions between the products.") (quoting *Luigino's, Inc.*, 170 F.3d at 831).  Nor do Plaintiffs allege any instance in which "Block" branding accompanies the Cash App logo.  Plaintiffs' legal conclusions of similarity take a back seat to the facts they have pled.

---

commonly used alone or with other terms to describe many products and services).  Similarly, a green square standing alone is weak.  More than 300 registered marks feature a green square. Caruso Decl. ¶ 6; *see also id.*, Ex. E.  And squares and rounded rectangle shapes have been found functional in the context of mobile apps, and cannot be monopolized to prevent competition.  *Apple Inc. v. Samsung Elec. Co.*, 786 F.3d 983, 995 (Fed. Cir. 2015), *rev'd on other grounds*, 137 S. Ct. 429 (2016).  When a mark's components are so widely used, "the public can easily distinguish slight differences in the marks, even if the goods are related." *Roederer v. J. Garcia Carrion, S.A.*, 732 F. Supp. 2d 836, 865 (D. Minn. 2010) (citing *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626 (8th Cir. 1987).

14

*Warmington v. Bd. of Regents of Univ. of Minnesota*, 998 F.3d 789, 796 (8th Cir. 2021) ("Legal conclusions 'must be supported by factual allegations.'") (quoting *Iqbal*, 556 U.S. at 679).

### C.   The Complaint Fails the "Degree of Competition" Factor.

Plaintiffs fail to allege that Defendant offers services branded with the "Block" name that compete with Plaintiffs' services. Instead, their complaint reveals the fundamental ***asymmetry*** of the parties' respective services. Defendant does not use Block as a brand in connection with *any* customer-facing goods or services. Defendant uses "Block" as the name of a parent corporation whose business units and customer-facing brands, Square, Cash App, TIDAL, TBD54566975, and Spiral offer services Plaintiffs have never offered, including money transfers, cryptocurrency trading, and music streaming. Compl. ¶¶ 33, 34, 37; *id.* Exs. A, E. In contrast, H&R Block is itself the brand under which the eponymous company provides income tax preparation and related services, including electronic filing and refund processing, which continue to be the core of its business. Compl. ¶¶ 13–14.

This absence of an overlap in services offered under a similar same name cannot support a likelihood of confusion. *See Phoenix Ent. Partners, LLC*, 306 F. Supp. 3d at 1118 (dismissing infringement claim by karaoke software developer against karaoke DJ because, though plaintiff and defendant offered karaoke-related services, they did not overlap or compete); *see also Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 965, 976 (D. Minn. 2017) (considering the "similarity of the products, target customers, marketing channels, and advertising" and concluding that small-town eyeglasses retailer would not be confused with a tech company offering glasses with built-in video camera).

Even as to the Cash App brand and business unit, Plaintiffs do not allege that they have offered a competing money transfer service. Compl. ¶¶ 30, 31, 35; *see also* Compl. Ex. A (describing Cash App as a platform where "anyone can easily send, spend, or invest their money

in stocks or Bitcoin").  To the extent Cash App offers services that overlap with HRB's Emerald Card (*see* Compl. ¶¶ 15-16, 20, 30) or Spruce (Compl. ¶ 31), they all have plainly different names, as the face of the complaint confirms.

### D.     The Complaint Fails the "Intent" Factor.

The complaint pleads no facts supporting its conclusory claim that Block intended to trade on Plaintiffs' "H&R Block" name.  *See Nail All., LLC v. Poly-Gel L.L.C.*, No. 17-CV-01026-FJG, 2019 WL 5295502, at *10 (W.D. Mo. Sept. 27, 2019) (finding that the fourth factor weighs in favor of defendant because plaintiff failed to provide evidence that defendant intended to pass off its goods as those of plaintiff).  Instead, the complaint's allegations show that Defendant does not use the name "H&R Block," did not brand any tax services with "Block," and chose a multicolored twisted cube logo that looks starkly different from Plaintiffs' claimed mark.  *See* Compl. Ex. B.

Defendant's knowledge of Plaintiffs' trademark, Compl. ¶ 5, is not sufficient to show that defendant "intended to promote confusion or exploit any goodwill associated with [plaintiff]'s product," *USA Visionary Concepts, LLC*, 2009 WL 10672094, at *4.  *See also ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 447 (8th Cir. 2018) ("[K]nowledge of another's product and an intent to compete with the product is not … equivalent to an intent … to mislead and to cause consumer confusion." (citation omitted)).  Further, the complaint itself acknowledges the true reason for Defendant's adoption of the name Block. Compl. Ex. A ("The change to Block acknowledges the company's growth.").

### E.     The Complaint Fails the "Actual Confusion" Factor.

The complaint reveals no actual confusion—neither from a consumer survey nor from any instances of consumer confusion.  Instead, the complaint offers only conclusory allegations of confusion and deception, Compl. ¶¶ 43, 69, which are belied by the actual text of the six

cherry-picked Tweets or blog posts it cites. *See Iqbal*, 556 U.S. at 644 (when "considering a motion to dismiss … mere conclusions, are not entitled to the assumption of truth").

None of these reflects confusion. Five of the posts state that those who read about Defendant's name change readily distinguished Defendant from Plaintiffs. Compl. ¶¶ 43, 44. The sixth post is an inquiry about the relationship between Plaintiffs and Defendant—"Are you talking about H&R Block?" Compl. ¶ 43. This allegation is "not probative of actual confusion." *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 672 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017). Rather, questions about relationships or affiliations of two companies "indicate[] a ***distinction*** in the mind of the questioner, rather than confusion." *Duluth News-Trib., a Div. of Nw. Publications, Inc., v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) (emphasis added). No actual confusion has been alleged.

### F. <u>The Complaint Fails the "Other Considerations" Factor.</u>

The sixth factor considers "the sophistication of the customers and the nature of the purchasing process[.]" *Sensient Techs.*, 613 F.3d at 765. Plaintiffs do not allege that consumers are careless or unsophisticated when selecting tax preparation services. Such services "require inquiries into one's financial and personal life." *JTH Tax, Inc. v. Freedom Tax, Inc.*, No. 3:19-CV-00085-RGJ, 2019 WL 2062519, at *8 (W.D. Ky. May 9, 2019) (finding consumer care weighed against confusion); *see also First Nat. Bank in Sioux Falls v. First Nat. Bank, S. Dakota*, 153 F.3d 885, 889–90 (8th Cir. 1998) (noting that, because "consumers tend to exercise a relatively high degree of care in selecting banking services," there is "minimal or no likelihood of confusion even where the names of financial institutions share the same dominant terms" and citing cases). A higher level of sophistication and degree of care is required for such services because customers prepare and submit documents under penalty of misrepresentation and other fines. *See, e.g.*, 26 U.S.C. § 7206(1); *United States v. H&R Block, Inc.* 833 F. Supp. 2d 36, 75

(D.C. Cir. 2011) ("[T]ax returns are highly personal documents that carry significant financial and legal consequences for consumers.").

Even where low sophistication is presumed due to inexpensive products, their sale through different websites and within different mobile applications under different trade names (as the complaint and its exhibits confirm here) strongly cuts against a likelihood of confusion. *ZW USA, Inc.*, 889 F.3d at 447–48 ("But the fact that the parties sell their respective products on different websites under different trade names cuts strongly against a likelihood of confusion."); *see also Duluth News-Tribune*, 84 F.3d at 1099 (rejecting argument that consumers exercised minimal care when purchasing newspapers, because it "ignore[d] the reality of defendant's distribution methods," in which 92% of the alleging infringing products were sold via subscriptions, which implicated a greater degree of consumer knowledge).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint, with prejudice.

Dated: January 7, 2022

Respectfully submitted:

By: */s/      David A. Jermann*

David A. Jermann, II (MO Bar #51389)
**ARMSTRONG TEASDALE LLP**
2435 Grand Blvd., Suite 1500
Kansas City, Missouri 64108
Telephone: (816) 221-3420
djermann@atllp.com

Margret Caruso (*pro hac vice*)
Rachel Herrick Kassabian (*pro hac vice*)
**QUINN EMANUEL URQUHART &
SULLIVAN LLP**
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
margretcaruso@quinnemanuel.com
rachelkassabian@quinnemanuel.com

Robert M. Schwartz (*pro hac vice*)
**QUINN EMANUEL URQUHART &**
**SULLIVAN LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000