UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

|  |  |
|---|---|
| H&R BLOCK, INC. and HRB INNOVATIONS, INC.<br><br>    Plaintiffs,<br><br>    v.<br><br>BLOCK, INC.,<br><br>    Defendant. | Case No. 4:21-cv-00913-NKL |

**REBUTTAL DECLARATION OF E. DEBORAH JAY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I, E. Deborah Jay, hereby declare as follows:

1. I submit this rebuttal declaration in support of Plaintiffs' motion for a preliminary injunction against Block, Inc., based on my personal knowledge. I am over the age of 18 and am competent to testify.

**I.    Introduction and Summary**

2. I am a principal and founder of Jay Survey Strategics LLC, a California research firm that specializes in providing survey design, sampling, data collection, and statistical analysis. Jay Survey Strategics was retained on behalf of H&R Block, Inc. and HRB Innovations, Inc. (together, "Plaintiffs") to conduct a survey to assess the extent to which BLOCK is recognized by the general consuming public in the United States as a brand name used in connection with a tax product or service.

3. I understand that, in opposing Plaintiffs' motion for a preliminary injunction, Prof. Yoram Wind has opined, based on his review of Plaintiffs' marketing material, that the

1

name BLOCK (standing alone) does not represent the company H&R Block.[1] Similarly, in opposing Plaintiffs' motion for a preliminary injunction, Prof. Ravi Dhar has opined, based on his review of Plaintiffs' advertising, that "'Block' by itself is not a source identifier for H&R Block."[2]

4. In my opinion, consumers' perception of a name like BLOCK cannot accurately be divined by reviewing the company's marketing material. To the contrary, the best way to assess whether consumers recognize the name BLOCK, standing alone, as a brand of tax products or services (a name used for tax products and services uniquely offered by H&R Block prior to Square's name change), is to survey consumers directly. Accordingly, to evaluate and test empirically Prof. Wind's and Prof. Dhar's unsupported speculation, I designed the Jay Survey. The Jay Survey provides reliable direct information regarding the extent to which the name BLOCK, standing alone, is recognized by the general consuming public in the United States as a brand name used in connection with a tax product or service.

5. The Jay Survey was conducted between January 18, 2022 and January 20, 2022 with a representative sample of adults in the United States.[3] The purpose of the Jay Survey was to provide reliable information regarding the extent to which the name "BLOCK" is recognized

---

[1] Declaration of Dr. Yoram (Jerry) Wind ¶ 60 (Jan. 12, 2022) (ECF No. 42).

[2] Declaration of Professor Ravi Dhar ¶ 54 (Jan. 12, 2022) (ECF No. 43).

[3] Jay Survey Strategics LLC is performing this study on a time and materials basis. Because work in connection with this project is ongoing, I do not yet know the total project costs. The hourly rate that Jay Survey Strategics is charging for my time on this project in 2022 is $700. Jay Survey Strategics' compensation is not dependent on the outcome of this litigation. Appendix A includes a list of cases in which I have testified in deposition and/or at trial during the past four years, and Appendix B includes my resume and a list of publications and presentations I have authored during the past 10 years. The materials I considered in forming my opinions are described in Appendix C.

by the general consuming public in the United States as a brand name used in connection with a tax product or service.

6. In all, 500 adults who were representative of the general consuming public in the United States were interviewed for the Jay Survey. As described in more detail below, after accounting for guessing and other sources of "noise," 45% of the survey respondents indicated they had seen or heard of a tax product or service with the BLOCK brand name. The Jay Survey supports the conclusion that a significant segment (45%) of the general consuming public in the United States recognizes BLOCK as a brand name used in connection with a tax product or service.

### A. Summary of Methodology

7. Jay Survey Strategics developed the questionnaire for the survey to be administered over the internet.[4] Under Jay Survey Strategics' design, direction, and supervision, YouGov, a full-service marketing research firm, programmed the survey questionnaire for internet administration, collected the data for the survey, and ensured that the sample for the survey did not include duplicate respondents. The sample for the Jay Survey was randomly selected from YouGov's online panel, which includes approximately two million adults age 18 and older in the United States.[5] Each adult who was randomly selected from the YouGov panel

---

[4] Appendix D includes sample screenshots showing how the questionnaire appeared on the internet, and Appendix E includes a detailed description of the methods used to conduct the Jay Survey.

[5] An internet or online panel consists of persons who are recruited to participate in internet surveys using a broad range of methods. When persons join an internet panel, they provide demographic and other background information that will be used to select a sample for a specific survey and to ensure the sample for the survey is representative of the target population. The samples for the majority of surveys in trademark disputes now are selected

3

and invited to participate in the Jay Survey was provided with a unique link to the survey, so that no adult could participate in the survey more than once. Survey respondents' IP addresses and other information also were checked to ensure that the sample did not include duplicate respondents.

Eligibility Criteria

8. To be eligible for the Jay Survey, individuals had to be age 18 or older, and they had to indicate that they lived in the United States most of the year.[6] Adults who satisfied these eligibility criteria were told the following:

> The next questions are about some names that <u>may</u> or <u>may not</u> be brand names for a tax preparation and filing product or service. For each name, please indicate whether you <u>have</u> or <u>have not</u> seen or heard of this brand.
>
> We only are interested in your opinions and beliefs. If you do not know the answer to a question or do not have an opinion or belief, please indicate this.

9. Then, survey respondents were asked whether they would agree to answer all survey questions on their own, without asking anyone else for help or referring to reference materials or the internet. Only those respondents who agreed to answer the survey questions on their own were eligible to participate in the Jay Survey. In all, 523 randomly-selected adults in

---

from online panels, and the majority of trademark surveys now are administered over the internet. Appendix F includes background information on the YouGov panel.

[6] At the beginning of the Jay Survey, respondents were asked a CAPTCHA question (survey respondents had to correctly identify the order of four colors in an array). This ensured that the survey respondent was a human (and not a machine) and was paying attention. For validation purposes, the demographic information (the gender and age) that respondents provided in the survey was compared with the demographic information in the YouGov panel data base. Only those survey respondents whose gender and age were consistent with the information in the panel database were eligible to participate in the Jay Survey. In other words, the demographic information was validated for 100% of the persons included in the Jay Survey.

the United States were screened for eligibility, and of these, 500 (96%) qualified for the Jay Survey.

Questions for Qualified Survey Respondents

10. The 500 qualified survey respondents were asked whether they had seen or heard of BLOCK and five other names used in connection with a tax product or service. The other names were: 1040.COM, JACKSON HEWITT, LIBERTY TAX, OLT, and TURBOTAX.[7] The question regarding each name was worded in the following manner:[8]

> Have you seen or heard of this brand of tax product or service: **[NAME]**?
> Yes, have seen or heard of this brand
> No, have not seen or heard of this brand
> Don't know

11. Survey respondents also were asked about a fictitious name for a tax product or service ("DYO RETURNS"). The purpose of the fictitious name was to determine the amount of guessing or "noise" in the Jay Survey.[9] The order of the questions about each name (including the fictitious name) was randomized across survey respondents. The randomization of the order

---

[7] These marks are owned by the following companies: Drake Software, LLC (1040.COM), Jackson Hewitt Inc. (JACKSON HEWITT), JTH Tax LLC (LIBERTY TAX), On-Line Taxes, Inc. (OLT), and Intuit, Inc. (TURBOTAX).

[8] *See*, *e.g.,* Shari Seidman Diamond, *Surveys in Dilution Cases II*, *Trademark and Deceptive Advertising Surveys: Law Science and Design,* 155, 156 (ABA, Eds Diamond & Swann 2012) ("A typical recognition survey… would show respondents a series of brand names in a so-called aided test (i.e., which of the following do you recognize?).... It is appropriate to provide respondents… with a context to assist recognition… (e.g., I am going to show you a list of brands of computers. In each instance, please tell me if you have heard of that brand).").

[9] *Id.* at 156-57 ("To control for false recognition… the brand list should include one or more nonexistent, but plausible, brand names as controls.").

of the questions minimized the potential for the question order to influence the survey responses (known as "order effects" or "order bias").

Survey Administration

12. The Jay Survey was administered in a double-blind manner (neither the persons administering the survey nor the survey respondents were told the name of the sponsors of the survey, that the survey was intended to determine the extent to which BLOCK is recognized by the general consuming public in the United States as a brand name for tax products and services, or that the survey was being conducted in connection with a trademark dispute).

13. The Jay Survey employed an accepted methodology to measure recognition of BLOCK as a brand name for tax products and services,[10] and the survey was performed according to accepted survey standards and in conformity with the guidelines discussed in the *Federal Manual for Complex Litigation*, 4th Ed. §11.493 (2004) and the *Reference Guide on Survey Research, Federal Reference Manual on Scientific Evidence*, 3rd Ed. (2011).[11]

---

[10] For example, the recognition questions in the Jay Survey were phrased in a manner similar to the questions in the surveys credited by the District of Nevada with showing recognition of the VISA brand in connection with payment card services (*Visa Int'l Service Ass'n v. JSL Corp.,* 590 F Supp. 2d 1306, 1315 (D. Nev. 2008)) and the survey credited by the Eastern District of Virginia with showing recognition of the VAGISIL brand in connection with vaginal care products (*Combe Inc., v. Dr. August Wolff GmBH and Co. KG Arzneimittel,* 382 F. Supp. 3d 429, 438-39 (E.D. Va. 2019)). The Jay Survey questions also are similar to those credited by the U.S. Trademark Trial and Appeal Board with showing recognition of the Facebook mark in connection with social networking sites (*Facebook, Inc. v. Think Computer*, 2013 TTAB WL 4397052 at *6 (T.T.A.B. July 23, 2013)).

[11] The universe for the Jay Survey was properly defined as the general consuming public in the United States, and adults interviewed for the Jay Survey were representative of this universe. The questions asked in the Jay Survey were clear and not leading. The data gathered for the Jay Survey were accurately reported, and the data were analyzed in accordance with accepted statistical principles. The Jay Survey was conducted, under my direction, by

**B. Summary of Findings and Conclusions**

14. As described in more detail in this declaration, the Jay Survey found:

- 47% of the survey respondents indicated they had seen or heard of a tax product or service with the BLOCK brand name.

- Only 2% of the survey respondents indicated they had seen or heard of a tax product or service with the fictitious DYO RETURNS brand name. This demonstrates that there was very little guessing or "noise" in the Jay Survey.

- To account for guessing and other sources of "noise," the percentage of survey respondents who indicated they had seen or heard of a tax product or service with the fictitious DYO RETURNS brand name was subtracted from the percentage of survey respondents who indicated they had seen or heard of a tax product or service with the BLOCK brand name.

- The difference between the percentage of survey respondents who indicated they had seen or heard of a tax product or service with the BLOCK brand name and the percentage who indicated the same thing about the fictitious DYO RETURNS brand name is 45 percentage points (47% for BLOCK minus 2% for DYO RETURNS).

- This means that 45% of the survey respondents indicated they had seen or heard of a tax product or service with the BLOCK brand name after accounting for guessing and other sources of "noise."[12]

15. Based on the overall design and execution of the Jay Survey, it provides representative and reliable information regarding the general consuming public in the United States. After accounting for guessing and other sources of "noise," the Jay Survey found the

---

survey research professionals following proper survey procedures, and the entire process was conducted so as to ensure objectivity.

[12] According to the *Reference Guide on Survey Research*, *Federal Reference Manual on Scientific Evidence*, 3rd Ed., 359, 382 (2011), probability sample confidence intervals provide a rough indicator of the value of estimates based on internet surveys, such as this one. Based on an overall sample size of 500 adults, the margin of error for the 45% who recognized the BLOCK brand name is approximately +/- 4 percentage points at the 95% confidence level. In other words, after taking into account sampling variability, we can be highly confident that the level of recognition of BLOCK as a brand name used in connection with a tax product or service is between 41% and 49% among the general consuming public in the United States.

extent of actual recognition of BLOCK as a brand name used in connection with a tax product or service is 45% among the general consuming public in the United States. The Jay Survey supports the conclusion that a significant segment (45%) of the general consuming public recognizes BLOCK as a brand name used in connection with a tax product or service.

16. The findings of the Jay Survey and my conclusions are described in more detail in the remainder of this declaration, which is based on information that I have been provided and analyses that I have performed thus far. I understand that I may be provided with additional information or asked to perform further analyses. If so, I may supplement my declaration.[13]

## II. Credentials

17. I am a principal and founder of Jay Survey Strategics LLC, a California research firm that specializes in providing survey design, sampling, data collection and statistical analysis. I have more than 40 years of experience conducting large-scale surveys of all types (*e.g.*, mail, internet, telephone, and in-person), including surveys for public agencies, nonprofit organizations, private companies, and law firms. During my career, I have designed and directed well over 800 surveys and more than 400 surveys in legal cases. I have testified on behalf of plaintiffs and defendants in many proceedings before state and federal courts and other tribunals (such as the U.S. Patent and Trademark Office and the U.S. International Trade Commission), and routinely have been qualified by courts as an expert in survey methodology. I also have lectured on litigation surveys and survey methods before bar associations, trade associations, and

---

[13] In connection with my anticipated hearing and trial testimony, I may use as exhibits various documents produced in this action that refer to or relate to the matters discussed in this declaration. In addition, I may create or assist in the creation of certain demonstrative exhibits to assist me in testimony. I have not yet selected or created such exhibits.

business and law schools, and been on the faculties of numerous continuing legal education programs.

18. I am past chair of the Council of American Survey Research Organizations (CASRO), a not-for-profit trade association representing more than one hundred commercial survey research companies in the United States, and I chaired the Standards Committee for the American Association for Public Opinion Research (AAPOR), a professional society of over 2,000 individuals engaged in opinion research, market research, and social research at public agencies, nonprofit organizations, and private companies.[14] I have served on the editorial board of several journals, and my publications include articles in the *Trademark Reporter*, the *Encyclopedia of Survey Research Methods*, *Polling America: An Encyclopedia of Public Opinion*, and *Trademark and Deceptive Advertising Surveys: Law, Science and Design*.

19. I hold a bachelor's degree in psychology and political science from the University of California at Los Angeles (magna cum laude) and a master's degree and doctorate in political science from the University of California at Berkeley. Before founding Jay Survey Strategics, I served for 23 years as President and CEO of Field Research Corporation, the highly-respected marketing and opinion research firm started by Mervin Field in 1945. When I was President and CEO of Field Research, we conducted over 100,000 interviews per year with representative samples of the public, consumers, corporate executives, and other populations.[15] I also have

---

[14] CASRO merged with the Marketing Research Association (the MRA) in January 2017 to form the Insights Association.

[15] Field Research also conducted the nationally quoted *Field Poll*, which tracked voter preferences in all major statewide elections in California. During my tenure, the average deviation between *The Field Poll's* final pre-election poll in California and the actual percentage vote in California for the winning candidate in elections for President, Governor and U.S. Senate was approximately two percentage points, and the *Field Poll* received an

9

been a program director at SRI International (formerly Stanford Research Institute), a manager with KPMG Peat Marwick in San Francisco, and a research associate at the Survey Research Center at the University of California at Berkeley.

**III.   Findings**

20.   Below I summarize the findings from the Jay Survey.

   **A.   Recognition of Various Brands of Tax Products and Services**

21.   Table 1 shows the percentage of survey respondents who indicated they had seen or heard of each brand. As shown in Table 1, 47% of the survey respondents indicated they had seen or heard of a tax product or service with the brand name BLOCK. Over half of the survey respondents indicated they had seen or heard of the following brands of tax products or services: TURBOTAX (95%), JACKSON HEWITT (78%) and LIBERTY TAX (62%). Significantly fewer survey respondents indicated they had seen or heard of the 1040.COM and OLT brands (6% and 3%, respectively). As shown in Table 1, only 2% of the survey respondents indicated they had seen or heard of the fictitious DYO RETURNS brand. This demonstrates there was a negligible amount of guessing or "noise" in the Jay Survey.[16]

---

   A+ rating for accuracy from the highly-respected statistician Nate Silver on his www.fivethirtyeight.com website.

[16]   The amount of spurious awareness of the fictitious DYO RETURNS brand name in the Jay Survey is consistent with the level of "noise" found in other brand recognition surveys that courts have relied on. For example, the level of spurious awareness was 2% in the brand recognition survey credited in *Deere & Co. v. FIMCO Inc.*, 302 F. Supp. 3d 837, 874 (W.D. Ky. 2017); and 5.3% in the brand recognition survey credited in *Combe Inc.*, 382 F. Supp. 3d at 439 (E.D. Va. 2019). Note, the inclusion of OLT (a relatively unknown brand for a tax product or service) in the Jay Survey also served a control-like function. In particular, the fact that the Jay Survey found a low recognition rate for OLT (3%) also demonstrated that the survey was not reporting an inflated, artificially high recognition rate for the BLOCK brand name. *See, e.g., Combe Inc.*, 382 F. Supp.3d at 455 (E.D. Va. 2019) (finding the

| Table 1<br>Percentage of Survey Respondents Who Indicated They Had Seen or Heard<br>of Various Brands of Tax Products or Services* | |
|---|---|
| | **Recognition of Each Brand** |
| | *(n = 500)* |
| TURBOTAX | 95% |
| JACKSON HEWITT | 78 |
| LIBERTY TAX | 62 |
| BLOCK | 47 |
| 1040.COM | 6 |
| OLT | 3 |
| DYO RETURNS | 2 |

\* Based on Questions B1-B7.

### B. Recognition After Accounting for Guessing and Other Sources of "Noise"

22. To account for guessing and other sources of "noise," the percentage of survey respondents who indicated they had seen or heard of a tax product or service with the fictitious DYO RETURNS brand name was subtracted from the percentage of survey respondents who indicated they had seen or heard of a tax product or service with the BLOCK brand name. As shown in Table 2, the difference between the percentage of survey respondents who indicated they had seen or heard of a tax product or service with the BLOCK brand name and the percentage who indicated the same thing about the fictitious DYO RETURNS brand name is 45 percentage points (47% for BLOCK minus 2% for DYO RETURNS). This means that 45% of the survey respondents indicated they had seen or heard of a tax product or service with the brand name BLOCK after accounting for guessing and other sources of "noise."

---

inclusion of existing but relatively unknown brand names in the recognition survey served a control-like function and showed that the fictitious control name was not materially underestimating the rate of spurious awareness present in the survey).

| Table 2 Percentage of Survey Respondents Who Indicated They Had Seen or Heard of Various Brands of Tax Products or Services, After Accounting for Noise* | |
|---|---|
| | Recognition, After Accounting for Noise |
| | *(n = 500)* |
| TURBOTAX | 93% |
| JACKSON HEWITT | 76 |
| LIBERTY TAX | 60 |
| BLOCK | 45 |
| 1040.COM | 4 |
| OLT | 1 |

\* Based on Questions B1-B7.

## IV. Conclusions

23. The Jay Survey employed an accepted methodology to measure recognition of BLOCK as a brand name for tax products and services, and the survey was performed according to accepted survey standards and in conformity with the guidelines discussed in the *Federal Manual for Complex Litigation*, 4th Ed. §11.493 (2004) and the *Reference Guide on Survey Research, Federal Reference Manual on Scientific Evidence*, 3rd Ed. (2011). Based on the overall design and execution of the Jay Survey, it provides representative and reliable information regarding the general consuming public in the United States.

24. After accounting for guessing and other sources of "noise," 45% of the survey respondents indicated they had seen or heard of a tax product or service with the brand name BLOCK. In other words, the extent of actual recognition of BLOCK as a brand name used in connection with a tax product or service is 45% among the general consuming public in the United States. The Jay Survey supports the conclusion that a significant segment (45%) of the general consuming public in the United States recognizes BLOCK as a brand name used in connection with a tax product or service. The only brand of tax product or service in the United

States that uses a name containing the word "Block" of which I am aware (prior to Square, Inc.'s name change to Block, Inc.) is H&R Block. The Jay Survey therefore supports the conclusion that 45% of the general consuming public in the United States recognizes that BLOCK is a brand name used by H&R Block for tax products or services, which therefore contradicts, with objective data, the subjective speculation of Profs. Wind and Dhar to the contrary.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21st day of January 2022 at Redwood City, California.

_____
E. Deborah Jay, Ph.D.