# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

H&R BLOCK, INC. and HRB INNOVATIONS, INC.,

    Plaintiffs,

v.

BLOCK, INC.,

    Defendant.

Case No. 4:21-cv-00913-NKL

## REPLY SUGGESTIONS IN FURTHER SUPPORT OF DEFENDANT BLOCK, INC.'S MOTION TO DISMISS

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| FACTS | | 1 |
| ARGUMENT | | 6 |
| I. | PLAINTIFFS' OPPOSITION FAILS TO IDENTIFY ANY PLAUSIBLE ALLEGATIONS OF LIKELIHOOD OF CONFUSION | 6 |
| II. | THE *SQUIRTCO* FACTORS CANNOT SALVAGE H&R BLOCK'S CLAIMS | 13 |
| CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Armstrong Cork Co. v. World Carpets, Inc.*,
   597 F.2d 496 (5th Cir. 1979) .................................................................................... 10, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................... 13, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................... 8, 13

*Calvin Klein Cosms. Corp. v. Lenox Lab'ys, Inc.*,
   815 F.2d 500 (8th Cir. 1987) .............................................................................................. 6

*Eastland Music Grp. LLC v. Lionsgate Entm't Inc.*,
   707 F.3d 869 (7th Cir. 2013) .............................................................................................. 8

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
   947 F. Supp. 2d 922 (N.D. Ind. 2013) ................................................................................ 8

*Gen. Mills, Inc. v. Kellogg Co.*,
   824 F.2d 622 (8th Cir. 1987) .............................................................................................. 7

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
   378 F. Supp. 3d 823 (N.D. Cal. 2019) ............................................................................. 13

*George & Co., LLC v. Imagination Entm't Ltd.*,
   No. 1:07cv498(LMB/TRJ), 2008 WL 2883771 (E.D. Va. 2008)
   *aff'd* 575 F.3d 383 (4th Cir. 2009) ..................................................................................... 8

*H&R Block E Enter., Inc. v. Intuit, Inc.*,
   945 F. Supp. 2d 1033 (W.D. Mo. 2013) ........................................................................... 14

*Le Book Pub., Inc. v. Black Book Photography, Inc.*,
   418 F. Supp. 2d 305 (S.D.N.Y. 2005) ................................................................... 7, 8, 9, 14

*Luigino's, Inc. v. Stouffer Corp.*,
   170 F.3d 827 (8th Cir. 1999) ........................................................................................... 7, 8

*Nabisco, Inc. v. Warner-Lambert Co.*,
   220 F.3d 43 (2d Cir. 2000) .................................................................................................. 9

*Nat'l Customer Eng'g Inc. v. Lockheed Martin Corp.*,
   No. 96-8938-DDP-ANX, 1997 WL 363970 (C.D. Cal. Feb. 14, 1997) .................................. 9

*OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch.*,
　851 F.3d 800 (8th Cir. 2017) .......................................................................................... 14

*R.J. Ants, Inc. v. Marinelli Enterprises, LLC*,
　771 F. Supp. 2d 475 (E.D. Pa. 2011) ............................................................................... 8

*Safeway Stores Inc. v. Safeway Props., Inc.*,
　307 F.2d 495 (2d Cir. 1962)............................................................................................. 9

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*,
　613 F.3d 754 (8th Cir. 2010) ........................................................................................... 6

*Sigma Dynamics, Inc. v. E. Piphany, Inc.*,
　No. 04-0569 MJJ, 2004 WL 2648370 (N.D. Cal. June 25, 2004) .......................................... 13

*Steak Umm Co., LLC v. Steak 'Em Up, Inc.*,
　868 F. Supp. 2d 415 (E.D. Pa. 2012) ............................................................................... 8

*Swatch, S.A. v. Beehive Wholesale, L.L.C.*,
　888 F. Supp. 2d 738 (E.D. Va. 2012) ............................................................................... 8

## **Statutory Authorities**

15 U.S.C. § 1114............................................................................................................... 13

15 U.S.C. § 1125............................................................................................................... 13

# INTRODUCTION

H&R Block's Opposition offers no cognizable legal theory that would convert its deficient allegations into viable claims. As remains clear from the face of the Complaint and the documents it references, the marks for the parties' allegedly competitive services are too dissimilar in their marketplace use to be confusing.



Because any viable claim of infringement must be predicated on the defendant's ***actual use*** of the challenged marks ***in the marketplace*** in a manner that is likely to cause confusion, H&R Block's claims are not plausible and should be dismissed.

# STATEMENT OF FACTS

The Complaint's factual allegations, coupled with the documents it incorporates by reference, reveal the following uses of Defendant's marks:

## Block Inc.'s Website (Compl. Ex. B)



## Block, Inc.'s LinkedIn Profile
(Compl. ¶ 33 (incorporated by reference))



## Block, Inc.'s Twitter Profile
(Compl. ¶ 33 (incorporated by reference))



2

Case 4:21-cv-00913-NKL   Document 78   Filed 02/04/22   Page 6 of 18

**Square Banking Website** (Compl. ¶ 34 (incorporated by reference))



**Cash App Taxes Website** (Compl. ¶¶ 38, 40 (incorporated by reference))[1]



---

[1] The full images of the website are shown in Caruso Decl. in support of Defendant's Mot. to Dismiss, Ex. C, Dkt. 32-3.

**Cash App Name and Logo** (Compl. ¶ 35)



In contrast, H&R Block has pled the following uses of its marks in connection with allegedly competing services:

**H&R Block and Block Advisors Logo** (Compl. ¶¶ 22, 35 )

 

**Block Advisors Website** (Compl. ¶ 17 (incorporated by reference))



4

**H&R Block's Twitter Profile**
(Compl. ¶ 17 (incorporated by reference))

**H&R Block's Facebook Profile**
(Compl. ¶ 17 (incorporated by reference))



**H&R Block's Instagram Profile**
(Compl. ¶ 17 (incorporated by reference))



**H&R Block's Announcement of Spruce** (Compl. ¶ 31)



H&R Block's opposition points to no images of "Block" being used by Defendant as a brand for any of the allegedly competitive services offered under the brands Cash App or Square. Instead,

5

it depicts only: (1) one copyright notice referencing "Block, Inc." in small font at the bottom of a webpage, which has been removed, and (2) various logos, none of which are the Block logo.

## ARGUMENT

I. **PLAINTIFFS' OPPOSITION FAILS TO IDENTIFY ANY PLAUSIBLE ALLEGATIONS OF LIKELIHOOD OF CONFUSION**

A. <u>The Dissimilarity Between The Parties' Marks Compels Dismissal</u>

In its opposition, H&R Block does not dispute the established Eighth Circuit requirement that courts "must evaluate the impression that each mark *in its entirety* is likely to have *on a purchaser*." *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 764 (8th Cir. 2010) (emphasis added) (cited in Def.'s Suggestions in Supp. of Mot. to Dismiss ("Mot.") at 11-12, Dkt. 31). Instead, H&R Block ignores established precedent and invites the Court to consider: (1) the names Block and H&R Block in the abstract, and (2) the parties' respective logos with no marketplace context. *See* Pls.' Suggestions in Opp'n to Mot. to Dismiss ("Opp.") at 1-2, 7, Dkt. 52. H&R Block's proposed approach runs contrary to the law in this Circuit, which requires courts to consider the marks in "the conditions in which buying decisions are made"—not in the abstract, devoid of marketplace context. *Calvin Klein Cosms. Corp. v. Lenox Lab'ys, Inc.*, 815 F.2d 500, 504 (8th Cir. 1987).

As can be seen from the face of the Complaint and the materials it incorporates by reference, Block's corporate name and branding (which it uses for stakeholders, such as employees and investors, not for income tax preparation services or other customer-facing products) is accompanied by visuals that look nothing like any of H&R Block's branding.[2]

---

[2] *Compare* Compl. Ex. A (name change announcement confirming that "[t]he name change to Block distinguishes the corporate entity from its businesses, or building blocks"), *id.* Ex. B (https://block.xyz home page listing tabs for "Careers," "Investors," and "Media Kit"), and *id.* ¶ 33 (referencing https://block.xyz and Ex. B) *with id.* ¶¶ 19, 22, 31, 35 (H&R Block branding).

 

H&R Block's claims cannot survive this motion for the additional reason that they are even more implausible when comparing its marks to the brands Defendant actually does use to market and promote the allegedly competing products and services, Square and Cash App:

 

As seen above, the alleged marketplace uses of the parties' respective marks make this case a nonstarter. *See, e.g.*, *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999) (affirming summary judgment that "Michelina's Lean 'N Tasty" was not likely to cause confusion with "Lean Cuisine" given differences in meaning and sound between names and "visually distinct" packaging) (Mot. at 12); *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987) (affirming denial of preliminary injunction where both brands—"Oatmeal Raisin Crisp" and "Apple Raisin Crisp"—are "widely recognized" and both "appended their house marks in a sufficiently prominent manner"); *Le Book Pub., Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 311 (S.D.N.Y. 2005) (dismissing, at the pleading stage, trademark

infringement claim because the dissimilarity between the marks, which contained the words "Le Book" and "The Black Book," "overwhelms any possibility of confusion").

H&R Block points out that *Luigino's* and *General Mills* were not decided at the pleading stage, but ignores their governing legal principles that the dissimilarity of the marks in the marketplace: (a) is paramount to the confusion inquiry and (b) can be decided by the court. *See* Opp. at 13. Moreover, both decisions predated the U.S. Supreme Court's redefining of the standard for assessing the plausibility of complaints. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557, 570 (2007) (A complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face"; a "formulaic recitation" of the elements of a claim "stops short of the line between possibility and plausibility of entitlement to relief."). Under that standard, those cases could have been resolved at the pleading stage as well—as other asserted trademark claims have been in the intervening years.[3]

H&R Block likewise ignores *Le Book,* which even before *Twombly*, found dissimilarity in the marketplace to be sufficient grounds for granting the defendant's Rule 12(b)(6) motion.

---

[3] *E.g., Eastland Music Grp. LLC v. Lionsgate Entm't Inc.*, 707 F.3d 869, 871 (7th Cir. 2013) (affirming dismissal of trademark case on Rule 12(b)(6) because the complaint "does not allege that the use of '50/50' as a title has caused any confusion about the film's source—and any such allegation would be too implausible to support costly litigation"); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 930-31 (N.D. Ind. 2013) (dismissing a trademark case because consumer confusion between defendant's fictional "Clean Slate" software and plaintiff's "Clean Slate" software was implausible); *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, 868 F. Supp. 2d 415, 432 (E.D. Pa. 2012) (granting defendant's motion for summary judgment on trademark infringement claim because no reasonable jury could find that "Steak Umm" frozen steak dinners and "Steak 'Em Up" carryout dinners were confusing); *George & Co., LLC v. Imagination Entm't Ltd.*, No. 1:07cv498 (LMB/TRJ), 2008 WL 2883771, *7 (E.D. Va. 2008) (same, for "LCR" dice game and "Left Center Right" dice game), *aff'd* 575 F.3d 383 (4th Cir. 2009); *Swatch, S.A. v. Beehive Wholesale, L.L.C.*, 888 F. Supp. 2d 738, 756 (E.D. Va. 2012) (concluding that there was no likelihood of confusion between "Swatch" watches and "Swap" watches); *R.J. Ants, Inc. v. Marinelli Enterprises, LLC*, 771 F. Supp. 2d 475, 500 (E.D. Pa. 2011) (entering judgment in favor of defendant because there was no likelihood of confusion between "A Taste of Philadelphia" gift baskets and "Taste of Philly" pretzels).

418 F. Supp. 2d at 311.  In so doing, it relied on the Second Circuit's decision affirming summary judgment for the defendant due to dissimilarity of the marks in the marketplace.  *Id.* (discussing *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 48 (2d Cir. 2000) ("Having determined that the parties' use of their DENTYNE ICE and ICE BREAKERS marks is so dissimilar as to require judgment for [defendant], we need not examine the remaining Polaroid factors and express no view of the district court's analysis of them.")).  Because neither "Block," "Cash App," nor "Square" as used in their marketplace context can plausibly cause confusion with "H&R Block," "Block Advisors," or any of Plaintiffs' other alleged marks, H&R Block's claims should be dismissed.

> **B.** **H&R Block Provides No Reason To Deviate From Fundamental Trademark Principles Based on Defendant's Corporate Name.**

H&R Block emphasizes the unremarkable proposition that use of a corporate name theoretically may be infringing.  Opp. at 12.  But it cites no precedent finding confusion likely where, as here, the defendant used a *different* customer-facing brand (not the accused corporate name) as the brand for the allegedly infringing products or services.  *Id.*  Instead, H&R Block relies on two cases in which the challenged corporate name was itself used to offer the competing goods or services—without a distinct, non-infringing sub-brand (which might have been analogous to Cash App or Square).  *Id.* (citing *Nat'l Customer Eng'g Inc. v. Lockheed Martin Corp.*, No. 96-8938-DDP-ANX, 1997 WL 363970 (C.D. Cal. Feb. 14, 1997); *Safeway Stores Inc. v. Safeway Props., Inc.*, 307 F.2d 495, 499 (2d Cir. 1962)).  Those cases do not match the alleged facts of this case.

The marketplace context must always be considered, even when a defendant's corporate name is challenged.  The court in *Armstrong Cork Co. v. World Carpets, Inc.*, confirmed this. 597 F.2d 496, 502 (5th Cir. 1979).  There, the owner of the registered trademark WORLD

challenged the junior user's proposed change of its corporate name to "Armstrong World Industries, Inc." *See id.* at 498–99. Following an advisory jury verdict of infringement, the trial court enjoined Armstrong from using the mark World. *Id.* at 499. The Fifth Circuit found this to be clear error: "The mere fact that Armstrong's proposed corporate name contains the word *World* does not, of itself, make the name 'substantially similar' to World's trademark. A mark must be viewed in its entirety and context. It is the overall impression that counts." *Id.* at 502.

To assess the overall impression, the Fifth Circuit examined the label attached to the junior user's carpet. *Id.* at 502–04. It concluded that the use of the corporate name in fine print on the label was not enough to create a likelihood of confusion given the "attention-getting feature" of the label was the junior user's brand—"Armstrong with a circled A." *Id*. at 504. The Fifth Circuit further observed: "There is no showing that Armstrong is seeking to feature either the new name in its entirety or, more significantly, the term *World* to denominate or advertise its carpets." *Id*. at 505.

Here, the record at the pleading stage provides all that is needed to reach the same conclusion. H&R Block does not allege any use by Defendant that features "Block" to denominate or advertise its income tax preparation services (or debit card offerings, or any other allegedly competitive services). As in *Armstrong*, H&R Block has alleged nothing "that suggests that [Block] will deviate from its present policy of promoting its own … trademark[s]"—Cash App and Square—as the names to denominate and advertise these services. *Id.* at 505.

> C. **H&R Block's Opposition Does Not Identify Any Alleged Use Of the Block Name or Cash App's Logo Without The Cash App Name In Connection With Offering Allegedly Competing Goods Or Services For Sale.**

Unable to identify any allegations in the Complaint reflecting use of "Block" as a brand for any product or service that H&R Block allegedly competes with, H&R Block resorts to

pointing out that Defendant's corporate name is visible in different places, such as its website, its social media profiles, the legal notice in the fine print of a website. Opp. at 7–9. This is of no legal consequence. While websites and social media posts are capable of serving as advertising (or packaging) for specific goods and services, H&R Block does not identify any that use the name "Block" to advertise the allegedly competitive services of Cash App or Square. For example, H&R Block attempts to make much of the "building block" collection image that can be reached through Block's website by clicking on the "Media Kit" link that shows the Cash App logo without the Cash App name. Opp. at 8 (citing Compl. ¶ 33); *see also* https://block.xyz/mediakit. However, as that web page states, this is a press asset image that is provided "only for editorial news distribution." *See id*.

**Media Kit on Block Inc.'s Website** (Compl. ¶ 33 (incorporated by reference))



11



As such, it is not used "in connection with the sale, offering for sale, distribution, or advertising of any goods or services," or "in connection with any goods or services" that give rise to Lanham Act claims. 15 U.S.C. §§ 1114, 1125. As alleged, this image of the logo (with a collection of other multicolored logos, but without the Cash App name) was not displayed "for the purpose of influencing consumers to buy" Cash App's services. *Sigma Dynamics, Inc. v. E. Piphany, Inc.*, No. 04-0569 MJJ, 2004 WL 2648370, at *3 (N.D. Cal. June 25, 2004) ("Statements made during an earnings conference call primarily to influence investors that may have an incidental effect of promoting goods to customers are not within the reach of the Lanham Act."). H&R Block did not, and could not plausibly, allege otherwise. *See, e.g., Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 835 (N.D. Cal. 2019) ("[F]or statements on the investor calls to be actionable, plaintiffs would need to allege that consumers attended the investor conference calls and that the purpose of the investor calls was to influence customers to buy defendant's goods or services.") (discussing *Sigma Dynamics, Inc.*, 2004 WL 2648370, at *3). The same is true of

12

Block's press release and social media accounts that H&R Block points to. *See* Opp. at 7, 12. There can be no plausible allegation that these particular displays were done to advertise the Cash App Taxes feature of the Cash App product (or any other allegedly competitive product or service). They do not even mention taxes. *See id.*

## II. THE *SQUIRTCO* FACTORS CANNOT SALVAGE H&R BLOCK'S CLAIMS

In discussing the *SquirtCo* factors, H&R Block's opposition impermissibly rests on "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557); *see also* Opp. at 19–26; *id.* at 17–18 (invoking "alleg[ation] that Block, Inc. is using 'BLOCK' as its name in connection with its tax and other financial services businesses") (citing Compl. ¶ 45); *id.* at 16 ("Block, Inc.'s use of BLOCK is very similar to the family of BLOCK Marks ….") (citing Compl. ¶ 45); *id.* at 24 ("Block, Inc.'s decision … reflects a conscious choice to trade on Block's heritage of consumer trust.") (citing Compl. ¶ 5).

H&R Block also relies on conclusory allegations that are entitled to no deference because they are contradicted by specific alleged facts and judicially noticeable facts. *See OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch.*, 851 F.3d 800, 807 (8th Cir. 2017) (cited in Mot. at 8). For example, H&R Block asserts: "Block, Inc. is promoting the tax preparation and filing services it offers through Cash App as coming from Block, Inc." Opp. at 17 (citing Compl. ¶ 40). However, the cited paragraph actually shows "Block" used only in the copyright notice of the Cash App Taxes website, which, in any event, has been removed. Compl. ¶ 40; *see also* Caruso Decl. in Supp. of Mot. to Dismiss Ex. C, Dkt. 32-3 (full https://cash.app/taxes web page). Similarly, H&R Block alleges the Cash App Taxes website is "using green branding that is similar to Block's branding." Compl. ¶ 38 (cited in Opp. at 18). But as the image in Paragraph

13

38 of the Complaint shows, especially when seen in the context of the full page, that is not correct. *See also* Caruso Decl. Ex. C.

Such hollow and contradicted allegations are insufficient to meet the plausibility standard. *Iqbal*, 556 U.S. at 678. Even if its showing on all the factors other than similarity were strong (which Block disputes), as demonstrated by *Armstrong*, *Le Book* and the other cases cited in Section I.A, when the marketplace uses of the parties' marks are as strikingly different as they are here, the claim is properly dismissed at the pleadings stage. *See H&R Block E Enter., Inc. v. Intuit, Inc.*, 945 F. Supp. 2d 1033, 1036 (W.D. Mo. 2013). Because the facts that H&R Block has alleged reveal its claims are implausible, Defendant's motion should be granted.

## CONCLUSION

The Court should grant Defendant's motion to dismiss.

February 4, 2022                                                Respectfully submitted,


By: */s/ David Jermann*

David Jermann

| | |
|---|---|
| Margret Caruso (*pro hac vice*) | David A. Jermann, II (MO Bar #51389) |
| **QUINN EMANUEL URQUHART & SULLIVAN LLP** | **ARMSTRONG TEASDALE LLP** |
| 555 Twin Dolphin Dr., 5th Floor | 2435 Grand Blvd., Suite 1500 |
| Redwood Shores, California 94065 | Kansas City, Missouri 64108 |
| margretcaruso@quinnemanuel.com | djermann@atllp.com |
| | |
| Robert M. Schwartz (*pro hac vice*) | Rachel Herrick Kassabian (*pro hac vice*) |
| **QUINN EMANUEL URQUHART & SULLIVAN LLP** | **QUINN EMANUEL URQUHART & SULLIVAN LLP** |
| 865 S. Figueroa Street, 10th Floor | 555 Twin Dolphin Dr., 5th Floor |
| Los Angeles, California 90017 | Redwood Shores, California 94065 |
| robertschwartz@quinnemanuel.com | rachelkassabian@quinnemanuel.com |

14