**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

H&R BLOCK, INC. and HRB
INNOVATIONS, INC.,

                    Plaintiffs,

     v.

BLOCK, INC.,

                 Defendant.

Case No. 4:21-cv-00913-NKL

## SUR-REBUTTAL DECLARATION OF DR. YORAM (JERRY) WIND

February 4, 2022

# TABLE OF CONTENTS

         **Page**

I.     SUMMARY OF CONCLUSIONS ................................................................................1

II.    MS. BUTLER'S SURVEY AND OPINIONS ARE FLAWED AND
       CONTRADICT ESTABLISHED SURVEY DESIGN PRINCIPLES.............................4

       A.     Ms. Butler's Survey Contains Significant Errors and Shows That
             Consumers are *Unlikely* to Confuse Block, Inc. and H&R Block ..........................4

            1.     Ms. Butler's Stimuli Violate Basic Survey Design Principles ...................5

            2.     Ms. Butler's Pilot and Pretest Results Confirm Consumers Will
                  Not Confuse Block, Inc. and H&R Block....................................................7

       B.     Ms. Butler's Criticisms of Block, Inc.'s Consumer Experiments Are
             Inconsistent With Accepted Methodology.............................................................13

            1.     Ms. Butler's Arguments About Lack of "Context" Are Wrong ...............13

            2.     Ms. Butler's Arguments About The Stimuli Are Wrong...........................15

            3.     Ms. Butler's Arguments About The Survey Universe Are Wrong............17

       C.     Summary of Conclusions Regarding Ms. Butler's Declaration............................19

III.   DR. JAY'S OPINIONS ARE FLAWED AND CONTRADICT ESTABLISHED
       SURVEY DESIGN PRINCIPLES .........................................................................20

       A.     Dr. Jay's "Perception" Survey Does Not Measure Confusion .............................21

       B.     The Jay Survey Improperly Primed Respondents and Created Demand
             Effects .................................................................................................................22

       C.     Dr. Jay Used An Improper Control........................................................................24

       D.     Survey Evidence Refutes Dr. Jay's Conclusions..................................................25

       E.     Summary of Conclusions Regarding Dr. Jay's Declaration .................................29

IV.   DR. REIBSTEIN'S OPINIONS ARE SPECULATIVE, CONTRARY TO THE
       EVIDENCE, AND CONTAIN SERIOUS ERRORS......................................................30

       A.     Dr. Reibstein Misapplies Consumer Behavior Theory and Relies on a
             Flawed Media Analysis.......................................................................................31

            1.     Dr. Reibstein Ignores the "Consumer Journey".......................................31

2.     Dr. Reibstein's Media Analysis Is Incorrect..............................................32

3.     My Experiments Accurately Tests for Possible Future Confusion............36

B.     Dr. Reibstein Cannot Prove that Consumers Know or Refer to H&R Block as "Block" Alone ..............................................................................................37

1.     Dr. Reibstein's "Google Trends" Analysis Is Incorrect............................37

2.     Dr. Reibstein's Amazon.com Analysis Is Incorrect..................................41

3.     Dr. Reibstein Fails to Respond to My SEO Analysis ...............................42

4.     Dr. Reibstein Ignores that H&R Block Overwhelmingly Markets Its Products With Source-Identifying Language.......................................43

C.     Dr. Reibstein Speculates, Without Foundation, as to the Existence of Linkages Between Cash App and its Corporate Parent .........................................43

1.     Dr. Reibstein's Reliance on Social Media Posts Is Flawed ......................44

2.     My Experiment Results Confirm Consumers Do Not Associate Cash App or Cash App Taxes With Their Corporate Parent ....................46

D.     Dr. Reibstein's "Whatsthatcharge" Analysis Is Incorrect.....................................47

E.     Summary of Conclusions Regarding Dr. Reibstein's Declaration ........................48

V.     CONCLUSION..............................................................................................................49

## I.  SUMMARY OF CONCLUSIONS

1.      I submit this rebuttal declaration in support of Block, Inc.'s Opposition To Plaintiffs' Motion For Preliminary Injunction.  In my January 12 declaration, I explained why consumers are unlikely to confuse Block, Inc., and any of its brands or businesses (such as <u>Cash App</u> or <u>Cash App Taxes</u>)[1] on the one hand, and H&R Block, or any of its brands or businesses, on the other.  My conclusion was supported by the following: (1) a consumer survey I designed showing no confusion between the two sets of brands and businesses, (2) an analysis of H&R Block's own marketing strategy, including on social media and via search engines such as Google, (3) marketing and consumer behavior theory and practice, (4) declarations of Block, Inc. and H&R Block, and (5) the fact that all the data I reviewed pointed toward the same conclusion—what is known as their "convergent validity."[2]

2.      I have reviewed the declarations of Ms. Sarah Butler, Dr. E. Deborah Jay, and Dr. David Reibstein.  Each of these declarations suffers from serious methodological flaws that undermine, and in some cases directly contradict, the declarants' conclusions.  Given these flaws, these declarations do not change the opinions I set forth in my prior declaration.  I briefly summarize my conclusions here:

3.      ***Overall***:  None of these three declarations set out to show, or did show, that consumers (or anyone else) are likely to be confused into thinking that the tax preparation services provided by Block, Inc.'s <u>Cash App</u> mobile app, called <u>Cash App Taxes</u>, are sponsored or provided by H&R Block, or that any other Block, Inc. services are.  None of H&R Block's expert witnesses tested that issue.  They avoided that question and tested other hypotheses.  As a

---

[1]  I underline these brand names throughout for ease of reference.

[2]  *See generally* Wind Declaration ("Wind Decl."), Dkt. No. 42.

result, it is important ***not*** to interpret their results as evidencing consumer confusion between the parties' products and services. A correct reanalysis of the data presented by H&R Block's experts or examination of more relevant data clearly invalidates their conclusions.

4.    ***Ms. Butler***: Ms. Butler's survey results are not probative of confusion. She did not conduct a survey that properly measures the likelihood of confusion because she used an improper stimulus and improperly asked respondents leading questions. Ms. Butler instead conducted what she calls a "consumer perception" survey, with 399 respondents, which essentially tests the respondents' ability to recall facts about stimuli they are shown (in Ms. Butler's experiment, an altered media article). If anything, Ms. Butler's survey results ***confirm*** that consumers are unlikely to be confused: the two early versions of Ms. Butler's experiment (with 100 and 200 respondents, respectively) showed that respondents do ***not*** associate <u>Cash App Taxes</u> or Block, Inc. with H&R Block.[3] Ms. Butler's analyses suffer from other flaws as well, which I detail in this report.

5.    ***Dr. Jay***: Dr. Jay also did not conduct a survey that measures the likelihood of confusion. She instead conducted an "association" survey that purportedly tests whether BLOCK is recognized as a brand for H&R Block for tax and financial services. The survey prompt improperly told respondents ahead of time that they would be asked about tax products and services—as opposed to brands in general—without tying them to a specific industry. She then jumped to the conclusion that 45% of the general consuming public in the United States recognizes that BLOCK is a brand name used by H&R Block for tax products or services. The survey does not show that consumers are likely to confuse Block, Inc. or <u>Cash App Taxes</u> with

---

[3]  By "early versions," I mean the first two iterations of Ms. Butler's surveys: the pilot survey and pretest survey. In those versions, Ms. Butler experimented with her survey to find a version of the study that supported her position, as discussed in more detail below.

H&R Block. Dr. Jay did not test that issue. Rather, Dr. Jay used a survey format that is commonly used to determine whether trademarks are "famous"—a threshold that requires approximately 75% of the general public to recognize the brand name at issue. If anything, Dr. Jay's survey conclusively establishes only that BLOCK is not a famous trademark. And as I explain below, a corrected version of Dr. Jay's survey yields a much lower recognition rate of, at most, approximately 5.4%.

6. ***Dr. Reibstein***: Dr. Reibstein opines that consumers are likely to confuse Block, Inc. or <u>Cash App Taxes</u> with H&R Block, but he offers no consumer survey supporting that conclusion. Instead, Dr. Reibstein relies heavily on an analysis of media coverage and Google Trends, a tool that measures the search terms consumers use when searching for products or services (*i.e.*, whether consumers search for "Block" when looking for tax services). As I show in this report, however, Dr. Reibstein's analyses suffer from methodological flaws that undermine his conclusions. Among other errors, he misapplies consumer behavior theory by understating the degree to which consumers will seek out and understand information about brands, as well as overstating the influence of media on consumers. Dr. Reibstein also improperly extrapolates from unrepresentative data samples, and speculates about the future opinions of consumers. When those flaws are corrected, Dr. Reibstein's analyses confirm consumers are ***unlikely*** to confuse Block, Inc. or <u>Cash App Taxes</u> with H&R Block.

7. Given the flaws in the work of Ms. Butler, Dr. Jay, and Dr. Reibstein, my opinions from my opposition report remain the same. As I detailed there—and in the following analysis—the likelihood of confusion between H&R Block and Block, Inc. is exceedingly low.[4]

---

[4] I have also reviewed the rebuttal Declaration of Dr. Ravi Dhar. It also supports my conclusions.

## II. MS. BUTLER'S SURVEY AND OPINIONS ARE FLAWED AND CONTRADICT ESTABLISHED SURVEY DESIGN PRINCIPLES

### A. Ms. Butler's Survey Contains Significant Errors and Shows That Consumers are *Unlikely* to Confuse Block, Inc. and H&R Block

8. Ms. Butler did not conduct a confusion survey using any accepted methodology. For my work, I employed an *Eveready* survey format, which uses as a test stimulus the defendant's marketing material or packaging. It is routinely used and accepted in trademark infringement cases.[5]

9. Ms. Butler instead conducted what she calls "consumer perception" surveys.[6] The surveys she conducted are not probative of confusion. They are more like a reading comprehension test that asks respondents what they recalled from materials that have been shown to them, in this case, media articles.

10. Ms. Butler conducted *three* surveys: (1) a **pilot**, (2) a **pretest**, and (3) a **final survey**.[7] For all three surveys, Ms. Butler showed respondents a third-party media article about Square, Inc. (Block, Inc.'s prior corporate name), using different articles for the pilot (survey (1)) and the pretest and final test (surveys (2) and (3)).

11. As I explain below, Ms. Butler's surveys use improper stimuli, and—even with their flaws—the surveys do not suggest consumers are likely to be confused. In fact, they demonstrate the opposite.

---

[5] *Eveready* surveys the "gold standard" for assessing confusion. 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 32:174 (5th Ed. 2021) (quoting Jerre B. Swann, *Eveready and Squirt – Cognitively Updated*, 106 Trademark Rptr. 727, 733-734 (2016)).

[6] Declaration of Sarah Butler ("Butler Decl."), Dkt. 56, ¶ 5.

[7] *Id.* ¶¶ 38-42.

1.     **Ms. Butler's Stimuli Violate Basic Survey Design Principles**

12.     It was improper for Ms. Butler's to use third-party media articles referencing Square, Inc., which Ms. Butler altered to mention "Block," for her stimuli.

13.     It is widely accepted that confusion surveys should replicate actual marketplace conditions as closely as possible.[8]  That is why, in my consumer experiments, I used actual screenshots of the Cash App Taxes and Block, Inc. websites, as well as the name and logo that are used in connection with Cash App's offerings, including its mobile app.  I wanted to see how consumers perceived those real-world websites when they encountered them in the actual marketplace.

14.     Ms. Butler's surveys do not approximate actual marketplace conditions.  Instead, she used doctored third-party media articles.  I have never used a similar stimuli in a confusion survey, nor am I aware of any instance in which such stimuli or survey has been accepted on the issue of confusion.  Ms. Butler's use of inappropriate stimuli renders her survey results of no value because they do not show how consumers will react to the branding of Cash App, Cash App Taxes, or Block, Inc. in the marketplace.

15.     One of the reasons a defendant's own marketing or packaging is used as a stimulus is because it is reasonable to expect that potential consumers of the defendant's

---

[8]   *E.g.*, Exhibit O (*Trademark and Deceptive Advertising Surveys Law, Science, and Design*, edited by Shari Seidman Diamond and Jerre B. Swann (2012), Chapter 15, "The Daubert Revolution and Lanham Act Surveys," by G. Kip Edwards, at 346 ("[T]he survey expert must make every reasonable effort to duplicate the marketplace conditions under which consumers are likely to encounter the mark at issue.  At a minimum, this requires the survey expert to find out how the allegedly infringing product is typically encountered in the marketplace.  Not surprisingly, the failure to simulate marketplace conditions is a frequent basis for a *Daubert* challenge." (internal citations omitted)))

products will encounter it.  There can be no such expectation with third-party media stories, and the quality and consistency may vary by news source and even by article.

16.    This is particularly true for niche publications—*i.e.*, publications other than national, widely known news sources such as the *New York Times*, CNN, Fox News, or *Washington Post*.  For her final survey, Ms. Butler used a *Forbes Advisor* article.  However, Ms. Butler did nothing to test whether *Forbes Advisor's* readership (in terms of age, income, and other key attributes) overlaps with prospective purchasers of online tax preparation services, or any other products or services offered by Block, Inc. or H&R Block's business lines.  Nor did Ms. Butler test whether her survey universe was consistent with *Forbes Advisor's* readership.  Further, she did not test whether her respondents had any interest in the topic of the article, would have been interested in reading the article, or trust *Forbes Advisor* as a news source.  She thus cannot conclude that her survey was representative of likely users of <u>Cash App Taxes</u> or H&R Block's services, or even whether her respondents are the type of consumers who would engage with similar stimuli in the real world.  This calls into question Ms. Butler's survey results, even on the issue of "consumer perception," because Ms. Butler has not established that she selected the right universe of respondents.  At a minimum, Ms. Butler should have inquired as to whether the *Forbes Advisor* readership base was consistent with her pool of respondents.

17.    Ms. Butler's use of an altered third-party media source raises still more concerns.  For example, the article does not provide relevant background on Block, Inc. (formerly Square, Inc.), including that it was founded by Jack Dorsey (the founder of Twitter)—something that is often remarked upon in the media and distinguishes Block, Inc. from H&R Block.[9]  The survey

---

[9]  *See, e.g.*, Kellen Browning, *Square, Jack Dorsey's payments company, changes its name to Block*, N.Y. Times (Dec. 1, 2021), https://www.nytimes.com/2021/12/01/technology/square-block-name-change-dorsey.html ("The payments company Square said on Wednesday that it was

thus tests only how respondents responded to this particular doctored article. It does not speak to, and is not representative of, news articles generally. This is another reason that Ms. Butler's stimulus is inappropriate and calls into question her survey results.

       **2.**       **Ms. Butler's Pilot and Pretest Results Confirm Consumers Will Not Confuse Block, Inc. and H&R Block**

18.      Each of Ms. Butler's three surveys demonstrates that consumers are not likely to be confused by the marks at issue in this case.

19.      ***Pilot***: To the extent Ms. Butler's survey has relevance to the question of whether Block, Inc.'s branding is likely to lead to consumer confusion, her pilot survey suggests that consumers will not confuse Block, Inc. and H&R Block. In the pilot, Ms. Butler showed 200 respondents a condensed version of a Yahoo! Finance article (which was accompanied in the real world by a three minute and 27 second video relating to the story).[10]

20.      For the "test" condition, Ms. Butler altered the references from "Square" to "Block" and then gave respondents three opportunities to demonstrate mistake or confusion; first, asking them to identify which companies were described in the article (Butler Decl. Ex. H, Q1); next, asking about "any other[s]" (*id.* Q2); and then, taking a third shot at getting a response, Ms. Butler followed up these open-ended questions by showing a list of companies and asking "Which of the following companies, if any, were mentioned in this article?" (*id.* Q3). This list included "Block" (but not H&R Block), along with other financial brands such as MasterCard, PayPal, and Zelle (*id.*). For respondents who selected "Block," she asked follow-up

---

changing its name to Block, a nod to one of the main focuses of the company's chief executive, Jack Dorsey, an enthusiast for cryptocurrency and the blockchain technology it runs on.").

[10] *See* Butler Decl. Ex. H (pilot materials) (citing to *Yahoo! Finance* article available at https://www.yahoo.com/now/squares-cash-app-vulnerable-to-hackers-customers-claim-113556593.html)

questions, such as "What other company or companies is BLOCK affiliated or associated with?" (*id.* Q7).

21.    But even with the flaws in Ms. Butler's stimulus, ***no one*** who saw the altered article that said "Block" identified "H&R Block."  Only 2 respondents identified H&R Block in response to any question in the survey, and they were only in the control condition, making the net confusion level -2% (negative 2%).[11]  Even though Ms. Butler calls this survey a "pilot," she had a survey population of 200 participants, which is a sufficient number to generate meaningful results.  This establishes the total ***lack*** of any respondent thinking the article had anything to do with H&R Block.  That would explain why Ms. Butler decided to conduct another survey, using a different approach, to find more helpful results.  Ms. Butler calls that second approach the "pretest."

22.    ***Pretest***:  Ms. Butler's pretest had 100 respondents.[12]  For the pretest, Ms. Butler changed the stimuli from an article about potential security breaches affecting Cash App to an article about Square's purchase of Credit Karma Tax and a discussion about tax services.[13]  This decision is methodologically suspect.  Even if it were proper to use a third-party media report as a stimulus, there is no scientific justification for Ms. Butler to have switched from a topic that could, at least in theory, appear in the future with "Block" replacing "Square" (if future security breaches occur), to an article about an event that occurred in the past and that cannot be repeated again (Square's acquisition of Credit Karma).  That is not proper.  Such a manipulation fails to replicate any real world condition that actually occurred.  Further, it is premised on a factual scenario that will never occur, and that no consumer could even plausibly encounter.  As such,

---

[11]   Butler Decl. ¶ 40 n.51.

[12]   *Id.* ¶ 32(j).

[13]   Butler Decl. Ex's F, H.

respondents' perceptions of this fictitious stimuli provide no generalizable information about how consumers are likely to react to Block, Inc.'s or <u>Cash App Taxes'</u> branding.

23.     As to any respondents who mentioned BLOCK in response to that question, Ms. Butler then repeatedly prompted them to call to mind any other companies they associated with BLOCK.  Thus, if a respondent answered Block, Ms. Butler asked:[14]

- "You indicated that the article mentioned BLOCK.  What products or services does BLOCK provide?" (Q4)

- "Any other products or services?" (Q5)

- "If you have an opinion, do you think BLOCK …?" with choices of (1) "is affiliated or associated with some other company," (2) is not, or (3) don't know/no opinion (Q6)

- (For those who chose "is" in response to Q6:) "What other company or companies is BLOCK affiliated or associated with?"  (Q7)

- "What makes you say [insert answers from Q7] is affiliated or associated with BLOCK?" (Q7a)

Thus, respondents would have seen the word BLOCK numerous times and had several chances to identify H&R Block in response.[15]  That is improper priming.

24.     Even with these flaws, in Ms. Butler's second test only ***14% of respondents mentioned H&R Block***.[16]  Even with revisions to the survey that forced respondents to think about brands of companies that provide tax services, and that gave respondents many chances to

---

[14]  Butler Decl. Ex. A.

[15]  *Id.*

[16]  *See* Butler Decl. Ex. G (back-up data).

9

identify "H&R Block," only 14% mentioned the "H&R Block" brand. That 14% constitutes a very low number, especially given H&R Block's current and extensive advertising campaign during the data collection period, including during nationally broadcast football playoff games.

25.     I analyzed the data based on responses to her open-ended questions (Q1 and Q2) as opposed to the closed-end multiple-choice question, which presented the names of various tax companies. Specifically, I examined the data to determine what percentage of respondents: (a) mentioned "Block" in response to her initial two open-ended questions, and (b) also mentioned "H&R Block" anywhere in the survey. As shown in Figure 2 *infra*, Ms. Butler's data show that only *3%* of her respondents mentioned "Block" in response to either of the two open-ended questions and also mentioned "H&R Block." This is a low percentage of respondents, especially given the leading and improper stimulus. It shows that consumers are ***highly unlikely*** to be confused.

26.     One can reasonably conclude that these results were deemed unsatisfactory, as Ms. Butler further revised her approach for a third survey, called the "final" survey.

27.     ***Final Survey***: For the final survey, which involved 399 respondents, Ms. Butler made an additional change to affect the final results.[17] Although the "pretest" survey had included multiple follow-up questions for any "Block" mentions, Ms. Butler added a new question, Q8, which is depicted in Figure 1 below:

---

[17]   Butler Decl. ¶ 39.

**Figure 1:  Butler Q8 Is a Leading and Inappropriate Question**

> Q8. You indicated that the article mentioned BLOCK. What other name(s), if any, is BLOCK known by?
> *(Please type in your response and be as specific as possible)*
>
> **[INCLUDE CHECK BOX FOR DON'T KNOW / NO OPINION; CHECK BOX FOR NO OTHER NAMES; DO NOT ALLOW BLANK UNLESS BOX SELECTED]**

28.     This new Q8 is leading, which is not an acceptable approach to consumer research.  The question suggests to respondents that Block is "known by" another name.[18]  This is so even though the question says "if any."  That qualifier is often missed or ignored.  The very wording of the question suggests that the company *is* known by another name.  To avoid this, the question should have been split into two questions: "Is or isn't BLOCK known by any other name(s)?" and if YES, IT IS, then "By what other name(s) is it known?"  Splitting up these kinds of questions is common in survey design to avoid leading the survey participants and is a far more methodologically sound approach.

29.     The new Q8 also implicates a problem known as "demand effects."  The demand effects problem occurs when respondents infer the response the survey designer expects and then adjust their responses accordingly, which can bias their responses.[19]  It is well recognized that proper survey design should avoid demand effects, because demand effects can improperly skew survey results.  Here, however, by suggesting that "BLOCK" is known by other names, Ms.

---

[18]   *E.g.*, MCCARTHY ON TRADEMARKS § 32.172 ("It may be improperly leading to expose the surveyed person to a desired response before asking the critical question about a connection between the owners of the contesting marks.").

[19]   Exhibit P (*Trademark and Deceptive Advertising Surveys Law, Science, and Design*, edited by Shari Seidman Diamond and Jerre B. Swann (2012), Chapter 11).

Butler created a demand effects problem and improperly created an expectation in respondents that "BLOCK" *was* known by another name.

30.     As noted in her report, Ms. Butler's final survey—reflecting an improper stimulus and a new leading and problematic question (Q8)—claimed what Ms. Butler labels as an "overall net confusion" of approximately 36%.[20]  These results are ***not*** probative of confusion and Ms. Butler should not have put a "confusion" label on her results.  This is because, as Ms. Butler states in Paragraph 5 of her report, she did not conduct a confusion survey, but rather a "consumer perception" survey, and her survey thus, at most, tested whether consumers perceived the stimuli as being associated with some tax-related service, not whether they associated Block, Inc. or any of its brands with H&R Block.  Moreover, as noted, Ms. Butler improperly adjusted her stimuli after the pilot to use a leading article that is unlikely to ever be replicated again in the future and improperly added a new leading question (Q8) to her survey after the pretest.

31.     To assess how much Ms. Butler's addition of Q8 skewed her results, I analyzed her data to determine what percentage of respondents: (a) mentioned "Block" in response to her initial two open-ended questions, and (b) also mentioned "H&R Block" anywhere in the survey. I did this to see if, barring the addition of Q8, a significant portion of respondents discussed both "Block" and "H&R Block."  As shown in Figure 2 below, Ms. Butler's data show that only ***8.5%*** of her respondents mentioned "Block" in response to either of the two open-ended questions and also mentioned "H&R Block."  The numbers are even lower for the pretest (3%) and the pilot (negative 2%).[21]  The weighted average of the three studies is 4.7%.  This is a low percentage of

---

[20]   Butler Decl. ¶ 51.

[21]   The pilot shows a "net confusion" rate of - 2.0% because the only respondents who were "confused" were in the control group, not the test group.

respondents, especially given the leading and improper stimulus. It shows that consumers are *highly unlikely* to be confused.

**Figure 2: Ms. Butler's Data Show Low Confusion**



B.     **Ms. Butler's Criticisms of Block, Inc.'s Consumer Experiments Are Inconsistent With Accepted Methodology**

32.     I have reviewed Ms. Butler's criticisms of the consumer experiments I conducted. I disagree with each one. I also note that although Ms. Butler designed several surveys she described as rebuttal, she chose not to re-run any of my experiments with the "corrections" she suggests were necessary.

1.     **Ms. Butler's Arguments About Lack of "Context" Are Wrong**

33.     Ms. Butler argues that the stimuli in my experiments lack "context."[22] I disagree. Context is not only a function of the stimuli for the experiments, but also of the questions asked

---

[22]  *E.g.*, Butler Decl. ¶¶ 2, 13.

of participants.  The stimuli for experiments N (<u>Cash App Taxes</u>) and X (Block, Inc.) were screenshots based on the actual webpages of <u>Cash App Taxes</u> (Experiment N) and Block, Inc. (Experiment X).  Thus, they provide sufficient context for respondents to assess the relevant issue, which is whether those webpages are confusingly similar to H&R Block's branding. (They are not.)  As to Experiment K (<u>Cash App</u>), the stimuli was for the <u>Cash App</u> name and logo that are used in the <u>Cash App</u> mobile app and on its website as well as <u>Cash App's</u> advertising.  The questions gave the appropriate context to respondents—namely, that the stimulus was the logo for a business.

34.     Although I could have selected different stimuli, such as stimuli showing <u>Cash App</u> in the Google Play store, the results would not have applied so broadly to the diverse contexts where consumers encounter the <u>Cash App</u> logo.  This is not always a viable option because sometimes there is additional real world context that may increase or decrease the likelihood of confusion.  But Ms. Butler identifies no real world context of a <u>Cash App</u> ad or packaging that she believed would have increased confusion over the name and logo.

35.     Ms. Butler opines that the experiment involving the Block, Inc. webpage, Block.xyz, "does not allow respondents to click on the links that appear on the webpage that would enable them to review information about Block, Inc.'s products and services."[23]  But Ms. Butler does not explain why allowing consumers to "click on the links that appear on the webpage" would affect, much less heighten, their confusion.  As a matter of basic marketing theory, consumers clicking on links on the Block, Inc. webpage as part of their consumer journey are *more* likely to understand that they are viewing Block, Inc.'s brands and businesses, rather than those of other companies like H&R Block.

---

[23]  *Id.* ¶ 3.

## 2.    Ms. Butler's Arguments About The Stimuli Are Wrong

36.    Ms. Butler also criticizes the stimuli used in my experiments. She asserts the Cash App experiment "tests only the appearance of the Cash App icon."[24] This ignores the purpose of the experiment, which was to reach generalizable results about how consumers would react to the Cash App logo in different contexts. That is why the stimuli consists of only the Cash App icon. This makes my results generalizable to situations where a consumer might see the Cash App icon (*e.g.*, a webpage, the App store, the Google Play store, advertisements, etc.). And as with the Block.xyz webpage, Ms. Butler does not identify any additional or different context that would make the stimuli more, rather than less, confusing. Moreover, the Cash App name and logo were also featured in a more fulsome context in Experiment N.[25]

37.    Regarding the experiment for Cash App Taxes, Ms. Butler states that the stimuli were too small, and asserts: "given that almost half of the respondents, or 46.4 percent, took this survey on a smartphone, it is not clear whether that copyright notice was even legible."[26] As an initial matter, many consumers will, in fact, encounter the Cash App Taxes webpage on a smartphone.[27] So the fact that many respondents took the survey on a smartphone does not call my results into question. If anything, it reinforces the validity of my conclusions. Moreover, the stimuli were optimized for smartphones, meaning the survey programming platform automatically adjusts image sizes to make them compatible with each device's screen size and they were clearly visible to smartphone users. Respondents could also zoom in to read the copyright notices (or any other part of the stimuli) if they wished to.

---

[24]    *Id.* ¶ 12.

[25]    Wind Decl. Fig. 2, Ex. D.

[26]    Butler Decl. ¶ 13

[27]    Declaration of Owen Jennings ("Jennings Decl."), Dkt. 40, ¶¶ 2, 7, 12.

38.     Further, this overlooks that: (a) in the real world, the copyright notice is small—that is the marketplace condition; and (b) one of the purposes of the experiment was to assess whether the use of the color green caused confusion.  Irrespective of the size of the stimuli, the results show it did not.[28]  Given the almost negligible level of confusion, even if we exclude the respondents who participated in the survey on a smartphone, the results are the same.

39.     Ms. Butler also claims that "in the Cash App Taxes experiment (and also in the third Corporate webpage experiment), respondents were not able to go back and review or reference the webpage" and thus that my "survey is at best a reflection of respondents' ability to read, memorize, and recall a lengthy webpage, all in a survey that took less than 10 minutes to complete."[29]  I disagree.

40.     The trend in advertising is towards short commercials, both in more traditional media like television and on the internet.[30]  Here, survey respondents were required to spend at least five seconds reviewing the stimuli and could review them for longer if they wanted to.[31]  That the average response time was approximately 10 ***minutes*** shows that respondents answered the questions carefully and did not feel rushed.  Indeed, a review of Ms. Butler's back-up data reveals that the average response time for her final survey was approximately 7.7 minutes—significantly less than my experiments, which is surprising given that Ms. Butler's stimuli were much lengthier (multi-page articles, which for the final test, totaled over 800 words) and should

---

[28]   Wind Decl. ¶¶ 41-46; Figs. 4-6 (showing no confusion).

[29]   Butler Decl. ¶ 14.

[30]   *See, e.g.*, David Waterhouse, *Six-Second Ads: How Marketers Can Make Every Second Count*, Green Book (Nov. 6, 2020), https://www.greenbook.org/mr/market-research-trends/six-second-ads-how-marketers-can-make-every-second-count/ ("[T]he six-second ad format is much more in step with today's unforgiving attention economy.").

[31]   Wind Decl. Ex. H.

have taken longer to review than my stimuli (logos and webpages).[32]  Thus, the fact that

respondents took approximately 10 minutes to complete my experiments is not a valid criticism

of my results.

41.     Finally, regarding the Block.xyz webpage, Ms. Butler wrote: "Dr. Wind's data

show that[] over 40% of respondents in the Test Group were unable to provide any description of

the company whose website they viewed."[33]  But Ms. Butler ignores that an inability to describe

the webpage is not probative of confusion; it shows at most that respondents did not associate the

webpage with *any* company or brand.  If anything, these results confirm respondents are unlikely

to be confused, because it shows that respondents did ***not*** associate the Block.xyz webpage with

H&R Block.  Moreover, these results are not unexpected for a website of a company with

multiple product and service offerings in diverse categories.  They show that consumers may not

be able to summarize Block's brand and multiple business lines in one sentence.  But that only

underscores that consumers did not associate Block.xyz with tax preparation services (or any

specific service), as H&R Block alleges they would.

### 3.     Ms. Butler's Arguments About The Survey Universe Are Wrong

42.     Ms. Butler's last set of criticisms focuses on my survey universe.  She asserts that

my "survey likely included some number of respondents who have never used, and do not plan

to use, a mobile app like Cash App or its tax service."[34]  Ms. Butler apparently draws this

conclusion based on the fact that respondents could qualify for my survey if they used certain

eligible services, including "[a] financial platform (via website or mobile app) that allows you to

---

[32]   Butler, Ex's E (back-up data provided to counsel for Block, Inc.), F.

[33]   Butler Decl. ¶ 18

[34]   Butler Decl. ¶ 20

send and receive money (other than through auto-pay for recurring bills)."[35]  I used this as one of the eligible services that could qualify respondents for my survey because I understand that users of <u>Cash App</u> can access its money sending and receiving features (and other features) via the <u>Cash App</u> website once they have downloaded the app and created an account.[36]

43.     Had I excluded such respondents, the survey would have been *under*inclusive. Moreover, even if one assumes such respondents (a) should not have been included *and* (b) that all 25.8% of respondents, claimed by Ms. Butler, who qualified for the survey solely because of this category did so solely on the basis of the web browser option,[37] excluding those respondents will not change the results given the miniscule level of confusion.

44.     Similarly, Ms. Butler asserts that "in Dr. Wind's second experiment in which respondents were shown the <u>Cash App Taxes</u> page, 25.8% of respondents indicated that they had not used, and did not intend to use, mobile or online tax preparation software."[38]  This criticism is not valid, because I understand that <u>Cash App Taxes</u> will be marketed even to consumers who have not used its services in the past, but may have used <u>Cash App</u>.[39]  Thus, including prospective users of this service in my survey universe is appropriate because such respondents may be part of the intended target market for <u>Cash App Taxes</u>.

---

[35]  Wind Ex. H.

[36]  *E.g.*, Jennings Decl. ¶¶ 2-4.

[37]  Butler Decl. ¶ 20

[38]  *Id.* ¶ 21.

[39]  Jennings Decl. ¶¶ 16-17.

45.     Moreover, if valid, this criticism applies to Ms. Butler.  She did not exclude such persons from her survey universe.[40]  Nor did Dr. Jay.[41]  If anything, Ms. Butler's survey universe is even more problematic, because it did not focus on core Cash App users (*i.e.*, respondents could qualify if they "were likely to use bookkeeping and payroll services for a small business").[42]  It appears that Ms. Butler focused on *H&R Block's* customers, rather than Cash App's customers, which further undermines the probative value of her results.

46.     As with Ms. Butler's other criticisms related to my survey universe, removing the 25.8% of respondents who did not use or plan to use mobile or online tax preparation software has no impact on my results.  Even if all respondents that Ms. Butler claims should not have qualified for my survey are excluded, my results are the same.

### C.     Summary of Conclusions Regarding Ms. Butler's Declaration

47.     As summarized in Figure 3 below, Ms. Butler's conclusions are flawed and her criticisms of my experiments are incorrect.  Accordingly, my opinion that consumers are unlikely to confuse Block, Inc. or its businesses with H&R Block remains unchanged.

---

[40]  Butler Decl. ¶ 33(c)) (to qualify, respondents had to "[i]ndicate that they were either likely to get a prepaid debit card for their own personal use in the next twelve months, or indicate they were likely to use tax preparation and filing services or tax software in the next twelve months, or indicate that they were likely to use bookkeeping and payroll services for a small business in the next twelve months").

[41]  Declaration of E. Deborah Jay ("Jay Decl."), Dkt. 55, ¶ 8 ("To be eligible for the Jay Survey, individuals had to be age 18 or older, and they had to indicate that they lived in the United States most of the year.").

[42]  Butler Decl. ¶ 33(c).

**Figure 3: Ms. Butler's Survey and Criticisms Are Flawed**



**Ms. Butler's Survey Is Flawed**

- Ms. Butler's stimuli was improper because it was a doctored news article that does not reflect marketplace realities.

- Pilot and pretest results show consumers are unlikely to be confused.

- Ms. Butler added a leading question (Q8) to her final test to improve her results.

**Ms. Butler's Criticisms Are Incorrect**

- *Context*: My experiments provided sufficient context for respondents and adding more context would only *decrease* the likelihood of confusion.

- *Stimuli*: My stimuli are appropriate and reflect marketplace realities.

- *Survey Universe*: My survey universe is appropriate, and even if it is adjusted as Ms. Butler suggests, the results are virtually identical.

## III.  DR. JAY'S OPINIONS ARE FLAWED AND CONTRADICT ESTABLISHED SURVEY DESIGN PRINCIPLES

48.    I was also asked to comment on Dr. Jay's Declaration ("Jay Decl."), which describes and presents the results of a survey designed by Dr. Jay (the "Jay Survey") "to assess the extent to which BLOCK is recognized by the general consuming public in the United States as a brand name used in connection with a tax product or service."[43]

49.    Dr. Jay's survey has serious flaws.  Her conclusions are not supported by her data; even assuming Dr. Jay is correct, she does not challenge any of my conclusions that H&R Block does not promote "Block" alone and largely promotes "H&R Block."  When the errors in her study are corrected, the results show a significantly lower recognition rate.

---

[43]   Jay Decl. ¶ 1.

### A.    Dr. Jay's "Perception" Survey Does Not Measure Confusion

50.    The Jay Survey interviewed 500 adults representative of the general public about "names that <u>may</u> or <u>may not</u> be brand names for a tax preparation and filing product or service."[44]

51.    Through a series of seven questions, the Jay Survey asked each respondent whether they had seen or heard of: (1) BLOCK and five names used in connection with a tax product or service, plus (2) a fictitious name that served as a control to determine the amount of guessing by respondents.  The tax brand names asked about in the Jay Survey were BLOCK, 1040.COM, JACKSON HEWITT, LIBERTY TAX, OLT, and TURBOTAX.  The invented control name was DYO RETURNS.  The order in which these names, including BLOCK, were presented to respondents was randomized.[45]

52.    The specific question asked was: "Have you seen or heard of this brand of tax product or service: _____?"[46]  The data from the Jay Survey show that 47% of respondents indicated that they had seen or heard of a tax product or service with the BLOCK name and that 2% of respondents answered that they had seen or heard of a tax product or service with the invented DYO RETURNS name.  From the data Dr. Jay concludes "that 45% [47% minus 2%] of the survey respondents indicated that they had seen a product or service with the BLOCK brand name after accounting for guessing and other sources of 'noise.'"[47]

53.    Dr. Jay further concludes that "The only brand of tax product or service in the United States that uses a name containing the word 'Block' of which I am aware (prior to

---

[44]   Jay Decl. App'x D, Instruction A1.

[45]   Jay Decl. ¶ 11.

[46]   Jay Decl., App'x D, Questions B1-7.

[47]   Jay Decl. ¶ 14.

Square, Inc.'s name change to Block, Inc.) is H&R Block. The Jay Survey therefore supports the conclusion that 45% of the general consuming public in the United States recognizes that BLOCK is a brand name used by H&R Block for tax products or services ...."[48]

54.     The Jay Survey does not measure whether consumer recognition of BLOCK means consumer recognition of H&R Block. The Jay Survey never asks respondents any question to ascertain their understanding of the BLOCK name, such as whether they believe that BLOCK is associated or affiliated with any other company or brand. Instead, Dr. Jay relies on her own assumptions and personal "aware[ness]," to conclude that, if one of her respondents recognized BLOCK, they recognized it to be H&R Block.[49] The data from the Jay Survey do not directly support this conclusion.

55.     The design of the Jay Survey is that of surveys used to assess trademark fame, not consumer confusion between two brands.[50] It is my understanding that the level of recognition needed to find a trademark to be famous is approximately 75%.[51] Thus, all that the Jay Survey has conclusively shown is that BLOCK is not a famous brand of tax products or services.

**B.      The Jay Survey Improperly Primed Respondents and Created Demand Effects**

56.     Unlike in fame surveys, where the ***fact*** of recognition of the brand name at issue is usually undisputed and the purpose of the survey is instead to measure the ***level*** of recognition (*i.e.* whether the brand is simply known, or whether it is famous), here the underlying question is

---

[48]   *Id.* ¶ 24.

[49]   *Id.* ¶ 24.

[50]   *Trademark and Deceptive Advertising Surveys Law, Science, and Design*, edited by Shari Seidman Diamond and Jerre B. Swann (2012) at 156-157.

[51]   4 MCCARTHY ON TRADEMARKS § 24:106 (describing standard for "fame" to be "rigorous and demanding" and proposing "minimum threshold survey response should be in the range of 75%").

whether the name BLOCK is or is not recognized—the fact of recognition—is being assessed. To present the at-issue name to respondents with context clues (*i.e.*, "tax product or service") that show the survey is about tax companies is improper.  Having been explicitly told that the category was a tax product or service, and for the majority of respondents, having first been presented with the names of multiple tax brands, respondents were (unfairly) primed to think of tax brands and, by extension, the market leaders—of which H&R Block is one.[52]

57.     Priming is improper.  It occurs when the exposure to a concept or subject (here, a tax product or service, such as the leading brands H&R Block or TURBOTAX) influences a response to a subsequent stimulus (here, the BLOCK name).[53]  The Jay Survey thus did little more than create a word association exercise—or, indeed, a sentence completion game—by which respondents, having been cued to think of H&R Block, potentially reacted to one of its component elements BLOCK and artificially indicated recognition.  It cannot be taken as evidence of confusion or recognition.

58.     Apart from calling out "tax product or service," the way the question was posed, "Have you seen or heard of this brand …?", was also priming; it suggested that the name presented was in fact a brand.  A better approach would have been to ask: "Have you seen or heard of ____ as a brand …"  This would have been less likely to prime respondents.

59.     A better approach would have been to ask respondents simply if they had seen or heard of the brand BLOCK, and then to ask about the type of products and services offered under

---

[52]   *See* Janine Perri, *TurboTax Supercharges Its Market Share During 2021 Tax Season*, BLOOMBERG SECOND MEASURE, https://secondmeasure.com/datapoints/tax-prep-2021-turbotax-hrblock-blucora/.

[53]   Shari Seidman Diamond, *Reference Guide on Survey Research* in REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, at 394 ("[T]he tendency to endorse any assertion made in a question, regardless of its content, is a systematic source of bias.").

that brand.  This approach would have properly explored consumer perceptions as to brand affiliation as opposed to word association.  As designed, however, the data from the Jay Survey do not establish brand recognition of BLOCK as signifying H&R Block in the real world in which consumers may not see the standalone term "BLOCK" without source-identifying language in the context of tax products and services.

60.      Moreover, Dr. Jay's survey also improperly created demand effects by suggesting to consumers that they were expected to link "BLOCK" to tax products and services.  This further diminishes the probative value of Dr. Jay's results.

61.      Even crediting the Jay Survey as valid word association research—which, due to the influence of the improper priming described above, it is not—the results lead only to the unremarkable proposition that some in the general public make a connection between the name H&R BLOCK and the name BLOCK *for a tax product or service*.  But this conclusion is narrow and has no implications for the real-world marketplace.  That is because Defendant Block, Inc. is not using BLOCK as a brand for—or any part of a brand for—any tax product or service.[54]  The data from the Jay Survey lack proper context and thus do not provide useful information about the actual marketplace in which Defendant's prospective consumers (as opposed to disengaged members of the general public) would see BLOCK in connection with Block's products and services.  Dr. Jay's findings are limited to the artificial and suggestive context of the survey and cannot be generalized to the real world.

### C.      Dr. Jay Used An Improper Control

62.      Finally, Dr. Jay's choice of control, DYO TAXES, is flawed.  It is well established in survey design that a proper control "should appear to be a plausible member of the

---

[54] *Compare* https://block.xyz/ (the Block, Inc. website) *with* https://cash.app/taxes (the Cash App Taxes website).

same product category."[55]  The name DYO TAXES for a tax-preparation brand is not credible

from a marketing perspective.  The abbreviation for "Do Your Own" is simplistic and

commonplace.  As such, it does not provide any implied or suggested meaning as would a brand

name.  It thus does not function as a proper control to be netted against—that is, subtracted

from—the recognition level of BLOCK.  Had the survey used a plausible brand name for a tax

product or service, the control would have been a more accurate measure of the level of

respondent guessing throughout the survey.  Because the unrealistic and invented DYO TAXES

name likely did not capture the same level of guessing as may have been behind respondents'

stated recognition of the other brands, Dr. Jay's survey artificially inflated the **_net_** reported

recognition of BLOCK.

        **D.**        **Survey Evidence Refutes Dr. Jay's Conclusions**

    63.      To assess the impacts of the improper priming in the Jay Survey,[56] and of the

unrealistic control, Professor David Franklyn conducted a surrebuttal survey that was responsive

to my criticisms and corrected the flaws I noted in the Jay Survey ("Corrected BLOCK

Recognition Survey").[57]

    64.      I reviewed the work of Professor Franklyn, including the screening and main

questionnaires, selection of control term, data, analysis of the data, and Professor Franklyn's

final report.  The survey and the analysis were conducted using sound methodologies and did not

---

[55] *See*, for example, Diamond, Shari Seidman, "Control Foundations: Rationales and Approaches," in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design*, edited by Shari Seidman Diamond and Jerre B. Swann (2012) at 212.

[56] This priming arose from respondents being told, before they answered, that they would be asked about a tax product or service, and from the suggestion that each name shown was in fact a brand name, as well as from many respondents being presented with the names of major tax brands before seeing BLOCK.

[57] Exhibit Q.

contain the same mistakes as the Jay Survey.[58]  For these reasons, I have considered them in forming my own opinion.  Experts in the field of marketing and consumer behavior routinely rely upon survey data and analysis like those collected by Professor Franklyn.  I thus endorse the Corrected BLOCK Recognition Survey and its findings.

65.     Unlike the Jay Survey, the Corrected BLOCK Recognition Survey did not introduce the tax category to respondents, showed each respondent only one name and adjusted the question phrasing so as not to suggest that that name was necessarily a brand, and used a credible control name for a tax brand.  Specifically:

- The Corrected BLOCK Recognition Survey asked "Have you seen or heard of ____ as a brand?" (Q.B1).

- Then, as a follow-up question asked only of those respondents who had answered affirmatively to having seen or heard of the brand, the survey asked "What products or services are offered under the brand name ____?" (Q.B2).

- The name presented to each respondent in the Corrected BLOCK Recognition Survey was *either* BLOCK, TURBOTAX, or the invented control name SPHERE TAXES.

66.     All other aspects of the Jay Survey were unchanged, with the exception of the name of the company conducting the survey and the addition of two questions at the very end of the survey to determine if the respondents were likely consumers of Block, Inc.'s products or

---

[58]  The survey involved 831 qualified respondents.  Interviewing was conducted on February 2, 2022.

services.[59]  The screening criteria were similar to those used by Dr. Jay.  In this report, I focus only on the total sample.

67.     The results of the Corrected BLOCK Recognition Survey show that 5.4% of respondents recognized BLOCK as a brand *and* specifically identified BLOCK as "H&R Block" or as a brand offering tax products or tax or financial services.  The specific BLOCK recognition level, as "H&R Block," is thus **5.4%.**

68.     More generally, the results of the Corrected BLOCK Recognition Survey show that 9.7% (which includes the 5.4% above) simply recognized BLOCK as a brand.  To account for guessing and other survey noise and to arrive at a net general recognition level, the amount of brand recognition of the invented SPHERE TAXES control is properly subtracted from the amount of recognition of BLOCK.  This amount is 6.2%, and adjusting for the control results in a **net** general **recognition** level of **3.5**%.

69.     Analyzing the data relating to recognition of the TURBOTAX brand shows, as might be expected for such a well-known brand, net recognition of 88.1%.  This level is close to the Jay Survey's 93% net recognition rate for TURBOTAX, which is also to be expected, as the priming in the Jay Survey is not likely to have affected recognition of a leading brand of tax

---

[59] These last two questions were not used to screen out or qualify respondents, but rather to provide useful information for measuring the data against those consumers who would be exposed to Block's products and services in the real-world marketplace.  These questions asked, respectively, whether in the past 12 months or in the next 12 months respondents had used or were likely to use any of the following (in randomized order): "Merchant payment processing services; Mobile or online banking services and payment cards; Mobile stock and cryptocurrency trading, such as a mobile financial platform that allows you to buy and sell Bitcoin; Mobile or online tax preparation, or mobile or online tax preparation software; Music streaming services; A mobile app that allows you to send and receive money (other than through auto-pay for recurring bills) either directly through the app or a website; A mobile app to purchase tickets to a sporting event or concert; or A mobile app to have food delivered to your home."  Exhibit Q, App'x B, Q.B3 and Q.B4.

products and services.  The combined results of the Corrected BLOCK Recognition Survey are

shown in Figure 4.

**Figure 4: Recognition of "BLOCK" Alone Is Low Compared to Leading Tax Brands**



70.     From the Corrected BLOCK Recognition Survey data, I conclude that there is *de
minimis* consumer recognition of BLOCK as a brand name indicating H&R Block.  In other

words, without the artifice of Dr. Jay's suggestive and priming question and flawed control,

respondents do not recognize BLOCK as a brand of tax products and services.

71.     Further, when analyzed against likely consumers of Block Inc.'s services, the

specific recognition level of BLOCK as identifying H&R Block remains 5.4%.[60]  This represents

the specific recognition level among those who have used or are likely to use at least one of

---

[60]   To provide this more detailed lens into the user base of Block, Inc.'s products and services, I
examined the data from the Corrected BLOCK Recognition Survey, Exhibit Q, App'x D, and
isolated respondents who have either used or intend to use the relevant products or services, *id.* at
Q.B3, Q.B4 (options 1-6, shown to respondents in randomized order).

Block, Inc.'s services and thus who are likely to ***actually encounter*** the name Block, as used by Block, Inc., in the real-world marketplace. These data thus support the finding that, when consumers see Block, Inc's "Block"-branded products and services in the real world, it is exceedingly unlikely that they would associate Block, Inc. with H&R Block.

72. The data from the Corrected BLOCK Recognition Survey allow us to estimate the extent to which Dr. Jay's improper methodology affected her findings. Because the corrected survey yields a recognition level of 5.4%, it shows that Dr. Jay's improper methodology accounts for the vast majority of her results—*i.e.*, the difference between a recognition level of 45% and 5.4%.

### E. Summary of Conclusions Regarding Dr. Jay's Declaration

73. In sum, Dr. Jay's survey does not measure confusion and suffers from a number of flaws. Accordingly, my opinion that consumers are unlikely to confuse Block, Inc. or its businesses with H&R Block remains unchanged. My criticisms of Dr. Jay's survey are summarized in Figure 5 below:

**Figure 5: Dr. Jay's Opinion Suffers From Numerous Flaws**



## IV. DR. REIBSTEIN'S OPINIONS ARE SPECULATIVE, CONTRARY TO THE EVIDENCE, AND CONTAIN SERIOUS ERRORS

74.     I have reviewed the criticisms offered by Dr. Reibstein, which I understand are addressed in more detail in the rebuttal declaration of Dr. Ravi Dhar.  I respond here only to the points that relate directly to his critique of my opinions.

75.     As relevant to my opinions, Dr. Reibstein's report (a) speculates about what Block might do in the future and what third-party media in the future may say, (b) assesses the standalone use of "Block" to refer to H&R Block—largely in situations in which H&R Block is also mentioned, and (c) asserts that consumers associate consumer-facing brands (*i.e.*, Cash App Taxes) with differently-named parent companies (*i.e.*, Block, Inc.).  Dr. Reibstein otherwise offers no criticisms of my survey methodology, design, or interpretation of the data.  His conclusions ignore the results of the empirical data collected from more than 1,000 participants concerning real-world uses of Block's branding to assess whether there was any confusion between H&R Block and the Cash App and Cash App Taxes brands, and the Block, Inc. webpage.  The results were clear: virtually no one was confused.[61]  These results were further supported by the corroborating evidence I included in my original report that clearly showed a strong convergence validity of the evidence in this case.[62]

76.     Dr. Reibstein's speculative and theoretical conclusions suffer from analytical flaws and evidentiary gaps.  As discussed in this section, these flaws fall into three primary categories: (A) a misapplication of consumer behavior theory and flawed reliance on media reports, (B) analyses that do not show consumers and the media use the standalone term "Block"

---

[61]   Wind Decl. ¶¶ 42-46.

[62]   *Id.* ¶ 83.

to refer to H&R Block—and indeed often show the opposite, and (C) incorrect speculation about the existence of perceived linkages between <u>Cash App Taxes</u> and its corporate parent.

77.     To reach my conclusions on Dr. Reibstein's analysis, I retained Voluble, a consulting group that specializes in analyses of social media and other Internet data. I instructed Voluble to evaluate aspects of Dr. Reibstein's report, including the (1) Google Trends analysis comparing searches for "block tax" and "H&R Block tax," (2) the analysis of Amazon reviews using "Block" alone, (3) the analysis of media collected from Factiva, and (4) the analysis of online posts on a forum called "whatsthatcharge.com" using "Block" alone.

**A.      Dr. Reibstein Misapplies Consumer Behavior Theory and Relies on a Flawed Media Analysis**

**1.      Dr. Reibstein Ignores the "Consumer Journey"**

78.     As I showed in my opposition report, consumers engage in a "consumer journey" when purchasing products and services, especially "high-involvement" services like tax preparation.[63] Dr. Reibstein asserts that I have not shown that consumers of tax preparation services are "closely attuned to differences between brands, and actively research such differences themselves before making a purchase."[64] That consumers are attuned to differences between brands is a staple of consumer marketing and has been well documented.[65] This is especially true when the product at issue is a "high-involvement" product, meaning that the product (a) is purchased infrequently, (b) has a high cost, and/or (c) high perceived risk.

79.     Paradigmatic high-involvement products include automobiles and insurance policies; paradigmatic low-involvement products include a pack of gum or a magazine, which a

---

[63]    Wind Decl. ¶¶ 9-10, 66-69.

[64]    *See* Declaration of David Reibstein ("Reibstein Decl."), Dkt. 58, ¶ 51.

[65]    *See* Wind Decl. ¶¶ 67-69.

consumer may buy on impulse. Within this framework, I expect consumers would treat a tax return preparation service more like a high involvement product—(a) it is purchased just once per year, (b) though some services are free, overpayment of taxes can have a serious negative economic impact on a taxpayer, and (c) underpayment of taxes carries a risk of serious consequences like civil or criminal penalties.[66]

## 2. Dr. Reibstein's Media Analysis Is Incorrect

80. Dr. Reibstein asserts that my analysis fails to account for the role of the media in shaping consumer brand associations.[67] Although it is correct that media and external events can affect brands, that can only meaningfully be assessed in the context of specific reported events and evidence that a brand's consumers are exposed to that media and draw conclusions from it that affect their purchasing decisions. Further, media coverage is just one part of the overall consumer journey. One cannot assume what consumers see and how they will react. It is critical to know whether consumers actually saw the media stories, whether they read them, how they perceived them, whether they believed them, and how, if at all, it impacted their perceptions, preference, and behavior.

81. Even in the early days of marketing, when the belief was that consumers are passive recipients of information, the simplistic Stimulus-Response model ("consumer sees ad and buys the product") was rejected in favor of the Hierarchy-of-Effects model.[68] These older models suggested that consumers, once exposed to an ad, go through a process such as

---

[66] *Id.*

[67] Reibstein Decl. ¶¶ 75, 90.

[68] The classic paper regarding the Hierarchy-of-Effects model is a 1961 paper by Lavidge and Steiner, *A Model of Predictive Measurement of Advertising Effectiveness*, Journal of Marketing pp. 59-62; *see also* Dalbey, Gross & Wind, Advertising, Measurement, and Decision-making, Allyn & Bacon (1968).

Awareness-Interest-Desire-Action (the "AIDA" model) or Awareness-Interest-Desire-Conviction-Action (the "AIDCA" model).[69]  But advances in technology, the ease of accessing information (*i.e.*, Google or other search platforms), and the increased empowerment of consumers have led to the rejection of the passive consumer myth.  The consumer journey approach captures the idiosyncratic process a consumer goes through before, during, and after a purchase.  It captures the dynamic process and the various sources of information accessed by the consumer.  It is not limited to the cognitive aspects of the process and captures most conceptual and empirical advances in our understanding of consumer such as the importance of experience, word of mouth influence, etc.  The consumer journey approach shows the limited role the media plays in today's consumer behavior.[70]  Dr Reibstein knows better than to advocate in 2022 for a passive consumer "Stimulus-Response" model.  In light of this, it is improper to base understanding of consumer perception on speculation about what *might* occur in the media, particularly to the exclusion of a company's own branding efforts.

82.　　Dr. Reibstein's analysis of media coverage also suffers from serious flaws.  Dr. Reibstein attempted to show that the media has frequently linked <u>Cash App</u> with Square and that the linkage "has become stronger and more prevalent over time."[71]  He did so based on data from Factiva, a news search engine.  However, there are numerous problems with this analysis, which I summarize below and are detailed further in Exhibit S (an analysis of Dr. Reibstein's analysis conducted by Voluble at my direction).

---

[69]　Over the years, there have been numerous variations in the specific stages of the hierarchy. Consider for example the original six-phase model proposed by Lavidge and Steiner: Awareness-Knowledge-Liking-Preference-Conviction-Purchase.

[70]　*See, e.g.*, Wind Decl. ¶¶ 67-69, and the sources cited therein; *see also* Wind & Hays, Beyond Advertising: Creating Value Through All Customer Touchpoints, Wiley 2016.

[71]　Reibstein Decl. ¶ 73

83.     Most critically, I was unable to replicate Dr. Reibstein's analysis.  He did not produce a list of all articles included in the Factiva analysis and does not seem to have reviewed all available data.  Instead, it appears he relied on a summary table showing the number of articles published per year rather than accessing the articles themselves.  If so, that approach is not methodologically sound because, as discussed below, Dr. Reibstein's approach to selecting his samples was flawed.

84.     Dr. Reibstein's sample of media articles also is not representative.  Dr. Reibstein states that he manually reviewed "a sample" of these articles to "confirm the inference" that there is a "substantial linkage between Cash App and Square" in media coverage referencing Cash App.[72]  Although I could not replicate Dr. Reibstein's analysis, and although his report does not describe how the sample was selected, it appears that the sample was not random or representative of all news articles regarding Cash App.  Instead, the sample significantly overrepresents articles published in earlier years and underrepresents articles published in later years.  This is shown in Figure 6 below:

**Figure 6:  Dr. Reibstein's Sample of Articles Is Not Representative**

| Percentage of Articles Sampled Per Year | | | | | |
|---|---|---|---|---|---|
| | 2017 | 2018 | 2019 | 2020 | 2021 |
| Articles in Dataset | 81 | 248 | 326 | 620 | 1,428 |
| No. of Articles in Sample | 65 | 81 | 73 | 73 | 73 |
| Percentage Sampled | 80% | 33% | 22% | 12% | 5% |

| Date Range Included in the Sample | |
|---|---|
| 2017 | February 10 – December 19, 2017 |
| 2018 | August 14 – December 29, 2018 |
| 2019 | October 17 – December 31, 2019 |
| 2020 | November 23 – December 31, 2020 |
| 2021 | November 2– November 30, 2021 |

85.     Dr. Reibstein's reliance on relatively old articles is important because Dr. Reibstein's own analysis (Reibstein Fig. 21, repasted below) shows that relative media coverage mentioning both "Square" (or "Block") and "Cash App" in the same article has *decreased* over

---

[72]  *Id.* ¶¶ 73-74.

time.[73]  This contradicts Dr. Reibstein's statement that "Cash App's linkage to its owner has

become stronger and more prevalent over time."[74]

<p align="center"><strong>Figure 7: Dr. Reibstein's "Historical Linkage"[75]</strong></p>

**Figure 21: Historical Linkage of "Cash App" to "Square" in Media Articles**

|                    | *2017* | *2018* | *2019* | *2020* | *2021* |
|--------------------|--------|--------|--------|--------|--------|
| Cash App AND Square | 81     | 248    | 326    | 620    | 1,428  |
| Cash App            | 100    | 388    | 730    | 2,043  | 3,563  |
| **Ratio**          | 81%    | 64%    | 45%    | 30%    | 40%    |
| **Ratio (Adjusted)** | 81%  | 61%    | 41%    | 27%    | 32%    |

86.    In addition, a detailed analysis of all articles included in Dr. Reibstein's 2021

sample found that most of the articles appear to be from publications targeting professionals in

finance as well as other professionals and investors. These kind of publications target a

specialized audience and may not be representative of media coverage overall.  Absent are social

media as well as articles from publications such as *Time, Vice, Bustle, Complex*, and *Slate*, all of

which published articles about Cash App during the date range covered by Dr. Reibstein's

sample but which he ignored.[76]  Moreover, Dr. Reibstein's sample included multiple Square SEC

filings, transcripts from conferences and interviews, and Square press releases.  Dr. Reibstein

cites no evidence that these documents are representative of how Cash App and Square

---

[73]  *Id.* ¶ 73, Fig. 21.

[74]  *Id.* ¶ 73.

[75]  Reibstein Decl. Fig. 21.

[76]  *Time, Vice, Bustle, Complex*, and *Slate* all appear in Pew Research's list of most visited news outlets of 2019 and 2020, available at https://www.pewresearch.org/journalism/2021/07/27/state-of-the-news-media-methodology/.  Pew has not yet prepared a report for 2021.

customers encounter Block, Inc. or its business lines in the marketplace.  In my experience in studying consumer behavior, consumers are unlikely to be exposed to his materials.

87.     Even with these flaws, as noted above, Dr. Reibstein's analysis confirms that articles mentioning both Square (or Block) and "Cash App" or "Cash App Taxes" have actually *decreased* over time.  This is further illustrated in Figure 8 below, which uses Dr. Reibstein's own calculations to show the decline over time:

**Figure 8: The "Linkage" Between Cash App and Square *Decreased* Over Time**



Dr. Reibstein's Found Linkage Between Cash App & Square

### 3.     My Experiments Accurately Tests for Possible Future Confusion

88.     ***Third***, Dr. Reibstein criticizes my survey for being focused on "a fixed point in time," rather than confusion in the future, which he asserts "may strengthen over time" as consumers learn of Cash App Taxes and as consumers see "linkages between 'Cash App' and 'Block.'"[77]  Dr. Reibstein's critique ignores that it was inherent in the design of my survey that respondents were exposed to Cash App Taxes when they saw the stimulus.  He provides no basis

---

[77]   Reibstein Decl. ¶ 70.

to believe that consumers will be ***more confused*** looking at the Cash App Taxes website at some point in the future than they were in January 2022, especially given that Block does not plan to use its corporate name as part of the branding of its consumer-facing products and services.[78]

**B.** **Dr. Reibstein Cannot Prove that Consumers Know or Refer to H&R Block as "Block" Alone**

89. Dr. Reibstein purports to show that, despite H&R Block's overwhelming marketing focus on the full H&R Block brand, with source-identifying language, consumers still associate H&R Block with the standalone term "Block." But Dr. Reibstein overstates his evidence, and all but ignores the empirical evidence, in the form of a consumer survey, that consumers are not confused between Block and H&R Block.[79]

**1.** **Dr. Reibstein's "Google Trends" Analysis Is Incorrect**

90. Dr. Reibstein's conclusions are flawed because they rely on a mis-portrayal of empirical data. He claims that data from Google Trends shows that consumers search for "block tax" (the blue line) more often than the search for "h&r block tax" (the red line):[80]

---

[78] In some cases, Dr. Reibstein makes no effort to explain how a consumer might confuse Block, Inc.'s businesses with H&R Block. For example, Dr. Reibstein briefly mentions "Wave," a financial services product offered by H&R Block (*id.* ¶ 10) but does not explain why consumers would confuse it with any Block, Inc. business, and even a brief review of "Wave's" website shows its branding is very different from Block, Inc. or any of its businesses. *E.g.*, https://www.waveapps.com/.

[79] Reibstein Decl. ¶¶ 62-64.

[80] *Id.* ¶ 60, Fig. 18.

**Figure 9: Dr. Reibstein's (Incorrect) Presentation of Google Trends Results**[81]



In Dr. Reibstein's original flawed search, it appears that *block tax* is a much more common search term than *h & r block tax.*

91.    However, the blue line of Dr. Reibstein's chart shows not just searches for "block tax" ***alone***, but ***all*** searches that include "block tax." That includes searches for "H&R block tax" and "HR block tax" and any typo or spelling variations, such as "H7R block tax." The blue line will ***always*** be higher because it includes everything in the red line, as shown in Figure 10:

---

[81]    Reibstein Decl. Fig. 18.

**Figure 10: Dr. Reibstein Misinterprets Google Trends Data and Overstates His Results**



92.     Dr. Reibstein's analysis is also based on searches for the arbitrary phrase "block

tax."  In fact, Google Trends data shows consumers more frequently search for "H&R Block"—

meaning they just search for "H&R Block" without adding the word "tax." When "H&R Block"

is included (without "tax") as a search term, the results are dramatic and counter to Dr

Reibstein's conclusion: "H&R Block" is searched significantly more frequently than block tax

(after excluding only two variations of "H&R").  This is shown in Figure 11 below:

**Figure 11: When Dr. Reibstein's Analysis Is Corrected, *H&R Block* Dominates Search Interest**



93.    In addition, I turned to data from Ahrefs, a company that provides tools specifically for the purpose of search engine optimization.  One of its free tools, called "Free Keyword Generator," allows users to discover popular search terms that contain different keywords.  When searching different keywords using the Free Keyword Generator, Ahrefs returns a list of the 100 most popular searches in its database that incorporate the keywords (in the order written).  The list also contains an estimate of the average monthly number of search generated in the last 12 months.  These data can be used to perform a more accurate version of the analysis Dr. Reibstein tried to perform—*i.e.*, determining what keywords consumers use when they research H&R Block.

94.    The Ahrefs data contradict Dr. Reibstein's conclusions.  They show that searches for Block Tax generate only 500 monthly searches, compared to ***1.2 million*** for "H&R Block."

95.    The Ahrefs data also show that of the 20 most popular searches for "block tax" and "block taxes," respectively," all but *one* contain a form of "H&R."

### Figure 12:  Ahrefs' Top *Block Tax, Block Taxes*, and *Block* Searches

The 20 most popular queries in the Ahrefs database that mention *block tax, block taxes,* and *block* are listed below.

**Block Tax Searches\***

| Search Query | Average Monthly Volume |
| --- | --- |
| h&r block tax software | 21,000 |
| hr block tax calculator | 9,400 |
| h&r block tax calculator | 9,300 |
| handr block tax software | 6,800 |
| h&r block tax software deluxe + state 2018 | 6,800 |
| h&r block tax | 4,400 |
| hr block tax estimator | 3,900 |
| h&r block tax return | 3,600 |
| h and r block tax calculator | 3,300 |
| h&r block tax software 2018 | 3,200 |
| h&r block tax software 2019 | 3,200 |
| h & r block tax software | 2,700 |
| h&r block tax estimator | 2,400 |
| h&r block tax course | 2,200 |
| h&r block tax software premium 2018 | 1,600 |
| h&r block tax software deluxe + state 2019 | 1,500 |
| h&r block tax filing | 1,300 |
| h&r block tax software premium & business 2018 | 1,100 |
| h&r block tax cut | 1,100 |
| h&r block tax calculator 2018 | 1,000 |

**Block Taxes Searches†**

| Search Query | Average Monthly Volume |
| --- | --- |
| h&r block taxes | 31,000 |
| h&r block taxes online | 1,400 |
| hr block taxes cost | 800 |
| h&r block taxes free | 600 |
| h & r block taxes | 400 |
| hr block taxes | 350 |
| h & r block taxes online | 300 |
| h and r block taxes cost | 200 |
| h&r block taxes cost | 200 |
| h&r block taxes login | 150 |
| h and r block taxes | 100 |
| h and r block taxes online free | 100 |
| h&r block taxes online free | 60 |
| hr block taxes free | 60 |
| handr block taxes online | 40 |
| h and r block taxes calculator | 40 |
| online h&r block taxes | 40 |
| national block taxes | 40 |
| h an r block taxes | 20 |
| h r block taxes | 20 |

**Block Searches**

| Search Query | Average Monthly Volume |
| --- | --- |
| hr block | 1,400,000 |
| h&r block | 1,200,000 |
| h and r block | 488,000 |
| on my block | 441,000 |
| block chain | 182,000 |
| h & r block | 145,000 |
| on my block cast | 131,000 |
| on my block season 4 | 115,000 |
| block | 112,000 |
| basilica block party | 109,000 |
| handr block | 107,000 |
| butcher block | 85,000 |
| butcher block countertops | 84,000 |
| block island | 80,000 |
| new kids on the block | 80,000 |
| how long is a block | 67,000 |
| h&r block free | 64,000 |
| how to block a number on iphone | 58,000 |
| cinder block | 58,000 |
| h and r block near me | 54,000 |

\* The standalone phrase *block tax* ranked 31st.

† The standalone phrase *block taxes* did not rank in the top 100.

12

## 2. Dr. Reibstein's Amazon.com Analysis Is Incorrect

96.     Dr. Reibstein's attempts to rely on customer reviews to support his assertions are also flawed because Dr. Reibstein cherry-picked a few examples without scientific analysis of all the relevant data.  Dr. Reibstein extrapolates from six Amazon reviews that H&R Block is known just as "block."  While preparing this surrebuttal report, I examined 1,077 consumer reviews of H&R Block's products on Amazon, which go back to November 16, 2020, and found that just *2.3% of those reviews* refer to H&R Block as "block" alone without any use of the "H&R" prefix.  This is shown in Figure 13 below:

**Figure 13: Dr. Reibstein's Amazon Reviews**
**Do Not Reflect Consumer Sentiment of 96% of the Reviews**



### 3. Dr. Reibstein Fails to Respond to My SEO Analysis

97.     Dr. Reibstein did not meaningfully address my report's analysis of H&R Block's search-engine optimization ("SEO") strategies.  SEO refers to efforts a company makes to "optimize" (from their marketing and branding purposes) the results consumers see when running Google searches.  Google sells "key words" to companies (and earns billions of dollars each year from this practice) so that, for example, if someone searches for "cola" or "soda pop" they will be more likely to be presented with search results that include the brand of the company that purchased those terms, such as the Coca Cola Company or PepsiCo, if they had purchased those key words.  This information is publicly available.  As discussed in my January 12 declaration, I found no reference to the standalone word "block" anywhere in H&R Block's website's search-engine optimization strategy.[82]

98.     This shows that H&R Block *itself* does not believe that many customers are likely to search for H&R Block by simply typing the word "block" into a Google search.  That is another way of saying that, when it comes to marketing to current or potential customers, H&R Block itself does not think that consumers think of the company as "Block."  This is confirmed by my analysis of Google trends data, above.  Dr. Reibstein offers no competing analysis or critique of my research or conclusion.

99.     Further, contrary to Dr. Reibstein's assertions, data from the Corrected BLOCK Recognition Survey support my conclusion that consumers do not perceive "Block" as a brand identifier, or even a branding nickname, for "H&R Block."

---

[82]   Wind Decl. ¶¶ 58-60.

### 4. Dr. Reibstein Ignores that H&R Block Overwhelmingly Markets Its Products With Source-Identifying Language

100. Dr. Reibstein criticizes my conclusion that H&R Block is not known by "Block" alone because "many brands can be identified by either a longer form or shorter form name" and likening H&R Block's use of "Block" to Starbucks Coffee's use of "Starbucks."[83] However, this is not true of H&R Block. My review of H&R Block's marketing shows that H&R Block "overwhelmingly markets itself and its services as 'H&R Block' rather than just as 'Block.'"[84] Further, the comparison to Starbucks is inapt—as Dr. Reibstein points out—because Starbucks changed its name to omit the word "Coffee." *Id.* H&R Block has neither done that nor filed trademark applications in the U.S. for just "Block" alone.

### C. Dr. Reibstein Speculates, Without Foundation, as to the Existence of Linkages Between Cash App and its Corporate Parent

101. Dr. Reibstein's final criticism of my analysis was that my survey allegedly did not account for linkages between the Block, Inc. corporate brand and the Cash App brand, particularly that the Block corporate brand uses its name to promote the full family of Block brands.[85] But the absence of any reference to "H&R Block" in the Block corporate advertisements and announcements cited by Dr. Reibstein signals to consumers that H&R Block is not part of the Block family. There is no linkage that can lead to confusion.

102. Dr. Reibstein's criticism also ignores the history of Square, Inc.'s (now Block, Inc.'s) marketing efforts. Cash App was previously known as "Square Cash," so it is hardly surprising that there are older articles that mention both Square and "Cash App."[86] In December

---

[83] Reibstein Decl. ¶ 65.

[84] Wind Decl. ¶ 51.

[85] Reibstein Decl. ¶¶ 83-86.

[86] Jennings Decl. ¶ 4; Declaration of Chrysty Esperanza ("Esperanza Decl."), Dkt. 39, ¶ 12.

2021, Block, Inc. then transitioned to what is sometimes known as a "House of Brands" model, where a parent company (Block, Inc.) oversees a series of differently branded products and services, such as Cash App, Cash App Taxes, Spiral, TIDAL, and TBD54556975.[87]  Given this change in Block, Inc.'s branding, it does not make sense to infer from *past* linkages between "Square, Inc." and "Cash App" that consumers or the media will link "Block, Inc." with Cash App or Cash App Taxes going forward.

1.     **Dr. Reibstein's Reliance on Social Media Posts Is Flawed**

103.     Dr. Reibstein cites Twitter and LinkedIn posts from Block, Inc. to make the point that "Block, Inc. promoted its new 'Block' corporate brand and also promoted linkages between Cash App and 'Block.'"[88]  But many companies following a "House of Brands" model, such as Procter & Gamble, maintain corporate social media accounts, such as Twitter and LinkedIn accounts; but that does not mean consumers link those accounts with specific products, like "Head and Shoulders."[89]  And as a matter of basic marketing theory, it is highly unlikely that consumers would rely heavily on such sources of information—as opposed to other data sources in the consumer journey like advertisements or marketing efforts—in deciding what tax services to purchase.  That is particularly true for the social media accounts of the Block, Inc. employees that Dr. Reibstein cites.  It is extremely unlikely that consumers would go to the trouble of scouring the social media pages of individual employees in determining which online tax preparation services to purchase.[90]

---

[87]  Esperanza Decl. ¶ 17.

[88]  Reibstein Decl. ¶¶ 83-85.

[89]  *E.g.*, https://twitter.com/proctergamble/

[90]  Reibstein Decl. Fig. 36.

104.     That is all the more true for LinkedIn, which is a networking and social media website for professionals to post their resumes, work experience, education, and share information with other professionals.  It is not a search engine, like Google.  It is not a general consumer platform.  It seems highly unlikely that consumers would use LinkedIn as a resource to use in deciding which online tax preparation services to purchase.[91]  But Dr. Reibstein merely assumed, without data, that consumers are likely to view these pages or take them into account as part of their consumer journey to purchase online tax preparation services.[92]  I do not believe that they will.

105.     As for Twitter, Dr. Reibstein cites only three posts from the Block, Inc. Twitter account.[93]  I asked Voluble to evaluate whether these posts were representative of how consumers might encounter Block, Inc. or its brands on Twitter.  I learned that Block, Inc. has a Twitter following of approximately 77,900 users, with only approximately 30 tweets and replies.[94]  In contrast, Cash App has approximately *1.6 million* followers and 3,473 tweets and replies.[95]  Dr. Reibstein's focus on the Block, Inc. Twitter account is thus not representative of Cash App's social media presence and is not probative of whether consumers associate Cash App with Block, Inc.

---

[91]   *See, e.g.*, *What is LinkedIn and How Can I Use It*, LINKEDIN (last updated July 27, 2020), https://www.linkedin.com/help/linkedin/answer/111663/what-is-linkedin-and-how-can-i-use-it-?lang=en ("LinkedIn is the world's largest professional network on the internet. You can use LinkedIn to find the right job or internship, connect and strengthen professional relationships, and learn the skills you need to succeed in your career.").

[92]   *E.g.*, Wind. Decl. ¶¶ 9-10, 66-69.

[93]   Reibstein Decl. Figs. 29-31.

[94]   https://twitter.com/blocks.

[95]   https://twitter.com/CashApp

### 2. My Experiment Results Confirm Consumers Do Not Associate Cash App or Cash App Taxes With Their Corporate Parent

106.    In addition, data from my work confirm that likely Cash App customers do not associate Cash App or Cash App Taxes and their corporate parent (either Square, Inc. or Block, Inc.).  In my experiment, after being exposed to the Cash App logo stimuli, in response to my open-ended question 285 out of 318 respondents (90%) identified Cash App as the source.  Of those same 285 respondents, only 4 (1.4%) mentioned Square, Square, Inc., or Block in response to the questions about business association or connection with, or giving permission or authorization to, the brand depicted in the stimuli.

107.    The results were similar for the Cash App Taxes experiment.  After being exposed to the Cash App Taxes stimuli, in response to my open-ended question, 156 out of 403 respondents (39%) identified Cash App Taxes as the source.  Of those same 156 respondents, only 2 (1.3%) mentioned Square, Square, Inc., or Block in response to the questions about business association or connection with, or giving permission or authorization to, the brand depicted in the stimuli.

**Figure 14: The Vast Majority of Respondents Mentioned
Only the Brand Name and *Not* the Corporate Parent**



108.    These results support only one conclusion: Few consumers have knowledge of Cash App's corporate parent.

### D.    <u>Dr. Reibstein's "Whatsthatcharge" Analysis Is Incorrect</u>

109.    Dr. Reibstein also cites posts from a forum called "whatsthatcharge.com" in which consumers complain about allegedly fraudulent charges on their credit cards, and argues that these posts show consumers associate Cash App and Cash App Taxes with their parent company.[96]  According to Dr. Reibstein, these posts show that consumers often reference both "Cash App" and its parent company (formerly Square, Inc.) in the same post.[97]

110.    However, a review of all 54 posts on the website Dr. Reibstein cited shows that Dr. Reibstein's examples are not representative.[98]  As shown in Figure 15 below, the

---

[96]   *Id.* ¶¶ 79-80.

[97]   *Id.*

[98]   *See* Exhibit R (describing "whatsthatcharge.com" and the methodology for collecting this data).

overwhelming majority of posts on that site—more than 80%—do ***not*** mention both Cash App and its parent company:

**Figure 15: Most Posts on "whatsthatcharge.com" Do Not Mention Cash App or Its Parent**



Dr. Reibstein included four example posts from two pages on whatsthatcharge.com, but these are not representative of the overall discussion.

Of the 54 posts across the two cited pages, 25 mentioned neither company and only nine mentioned both Square and Cash App.

Even posters that mentioned both companies may not know the two are affiliated, as evidenced by the second example on the previous page.

Only 17% of posts mention both Square and Cash App

- Posts mentioning neither Cash App nor Square
- Posts Mentioning Cash App without Square
- Posts mentioning Square without Cash App
- Posts mentioning both (incl. references to Square Cash)

**E.       Summary of Conclusions Regarding Dr. Reibstein's Declaration**

111.    My conclusions regarding Dr. Reibstein's declaration are summarized in Figure 16 below:

**Figure 16: Dr. Reibstein's Opinions Are Flawed**



**Dr. Reibstein misapplies consumer behavior theory**
- Dr. Reibstein ignores the consumer journey and relies on an outdated "stimulus-response" model
- Dr. Reibstein's media analysis shows the media is *less* likely to associate Cash App and Cash App Taxes with their corporate parent over time

**Dr. Reibstein cannot show that consumers associate "Block" with H&R Block**
- Corrected Google Trends data shows consumers do *not* associate "Block" with H&R Block
- Ahrefs data shows that consumers do *not* search for just "Block" when searching for tax services; they often search for "H&R Block" and similar language
- Corrected Amazon.com data shows consumers do *not* associate Block with "H&R Block"

**Dr. Reibstein speculates that consumers associate Cash App Taxes with Block, Inc.**
- Survey evidence shows consumers do *not* do so

**Dr. Reibstein's conclusions from his "Whatsthatcharge" analysis are incorrect**
- A corrected analysis of these reviews *confirm* consumers do not associate Cash App with its corporate parent

## V.    <u>CONCLUSION</u>

112.    As I summarize below, H&R Block's assertions that it is associated with the standalone term "Block" are not borne out by my analyses:

**Figure 17:  H&R Block Is Not Associated With the Standalone Term "Block"**

| H&R Block Claims . . . | But in Fact . . . |
| --- | --- |
| • Consumers confuse the standalone term Block with H&R Block (Ms. Butler) | • Ms. Butler's own pilot and pretest data show consumers do *not* associate Block, Inc. with "H&R Block" |
| • Consumers associate "Block" with a brand of tax products and services (Dr. Jay) | • Dr. Jay's own survey—which is artificial and not in the context of the actual marketplace—shows "Block" is *not* a famous brand of tax products and services and is contradicted by a corrected study. |
| • Consumers use "Block" to search for and comment on H&R Block (Dr. Reibstein) | • Corrected analyses show consumers search for and use source-identifying language like "H&R Block" |

113.    For the reasons stated above, and as explained in Figures 3, 5, 16, and 17, the declarations of Ms. Butler, Dr. Jay, and Dr. Reibstein do not undermine my conclusions, and if anything, support them.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration is executed this 4th day of February 2022 at Philadelphia, Pennsylvania.

_____
Dr. Yoram (Jerry) Wind

## Index of Exhibits:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| N | Materials Relied Upon |
| O | *Trademark and Deceptive Advertising Surveys Law, Science, and Design*, edited by Shari Seidman Diamond and Jerre B. Swann (2012), Chapter 15, p. 346 |
| P | *Trademark and Deceptive Advertising Surveys Law, Science, and Design*, edited by Shari Seidman Diamond and Jerre B. Swann (2012), Chapter 11 |
| Q | Corrected BLOCK Recognition Survey |
| R | Voluble Analysis of David Reibstein Analysis |

# EXHIBIT N

## MATERIALS RELIED UPON[1]

### FILINGS

Complaint.

Suggestions in Support of Plaintiffs' Motion for a Preliminary Injunction.

Declaration of Jeffrey J. Jones II in Support of Plaintiffs' Motion for a Preliminary Injunction.

Suggestions in Support of Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction.

Declaration of Chrysty Esperanza in Support of Defendant Block's Opposition to Plaintiffs' Motion for a Preliminary Injunction.

Declaration of Owen Jennings in Support of Defendant Block's Opposition to Plaintiffs' Motion for a Preliminary Injunction.

Reply Suggestions in Further Support of Plaintiffs' Motion for a Preliminary Injunction.

Rebuttal Declaration of Jeffrey J. Jones II in Further Support of Plaintiffs' Motion for a Preliminary Injunction.

Rebuttal Declaration of Sarah Butler in Support of Plaintiffs' Motion for a Preliminary Injunction.

Rebuttal Declaration of E. Deborah Jay in Support of Plaintiffs' Motion for a Preliminary Injunction.

Rebuttal Declaration of David Reibstein in Support of Plaintiffs' Motion for a Preliminary Injunction.

### DOCUMENTS IN THE PUBLIC DOMAIN

**Books**

Dalbey, Gross & Wind, ADVERTISING, MEASUREMENT, AND DECISION-MAKING (Allyn & Bacon 1968).

---

[1]   This includes all materials contained in Exhibits N-S, even if not expressly listed here, as well as all materials contained in the Declaration of Yoram (Jerry) Wind in Support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction, as well as Exhibits A-M attached thereto.

*Trademark and Deceptive Advertising Surveys Law, Science, and Design*, edited by Shari Seidman Diamond and Jerre B. Swann (2012).

Shari Seidman Diamond, *Reference Guide on Survey Research* in Reference Manual on Scientific Evidence.

Wind & Hays, Beyond Advertising: Creating Value Through All Customer Touchpoints (Wiley 2016).


**Academic Articles**

Lavidge and Steiner, *A Model of Predictive Measurement of Advertising Effectiveness*, Journal of Marketing.

G. Kip Edwards, "The Daubert Revolution and Lanham Act Surveys"

McCarthy on Trademarks And Unfair Competition, § 24:106 (5th Ed. 2021)

McCarthy on Trademarks And Unfair Competition, § 32:172 (5th Ed. 2021)

McCarthy on Trademarks And Unfair Competition, § 32:174 (5th Ed. 2021)

Jerre B. Swann, *Eveready and Squirt – Cognitively Updated*, 106 Trademark Rptr. 727, 733-734 (2016)

**Online Sources**

Block.xyz https://block.xyz/.

Kellen Browning, *Square, Jack Dorsey's payments company, changes its name to Block*, N.Y. Times (Dec. 1, 2021), https://www.nytimes.com/2021/12/01/technology/square-block-name-change-dorsey.html.

Cash App Taxes https://cash.app/taxes.

Janine Perri, *TurboTax Supercharges Its Market Share During 2021 Tax Season*, Bloomberg Second Measure, https://secondmeasure.com/datapoints/tax-prep-2021-turbotax-hrblock-blucora/.

*State of the News Media*, Pew Research Center, https://www.pewresearch.org/journalism/2021/07/27/state-of-the-news-media-methodology/

David Waterhouse, *Six-Second Ads: How Marketers Can Make Every Second Count*, Green Book (Nov. 6, 2020), https://www.greenbook.org/mr/market-research-trends/six-second-ads-how-marketers-can-make-every-second-count/.

https://twitter.com/proctergamble/

Wave, https://www.waveapps.com/.

*What is LinkedIn and How Can I Use It*, LinkedIn (last updated July 27, 2020), https://www.linkedin.com/help/linkedin/answer/111663/what-is-linkedin-and-how-can-i-use-it-?lang=en.

www.whatsthatcharge.com

# EXHIBIT O

# Trademark
### and

# Deceptive
# Advertising
# SURVEYS
## Law, Science, and Design

EDITED BY
Shari Seidman Diamond
and Jerre B. Swann



Section of
Intellectual Property Law
AMERICAN BAR ASSOCIATION

## Presenting the Stimulus and Replicating Market Conditions

Most Lanham Act surveys involve showing survey respondents something—the defendant's mark or trade dress, the plaintiff's mark or trade dress, etc. While the survey setting is necessarily artificial, the survey expert must make every reasonable effort to duplicate the marketplace conditions under which consumers are likely to encounter the mark at issue.[97] At a minimum, this requires the survey expert to find out how the allegedly infringing product is typically encountered in the marketplace. The failure to discharge this obligation will often result in the exclusion of the survey. Not surprisingly, the failure to simulate marketplace conditions is a frequent basis for a *Daubert* challenge.

A common defect is a side-by-side or back-to-back display of the plaintiff's and defendant's products. An example is found in the *Kargo* case.[98] The plaintiff was a distributor of on-line content to providers of wireless devices under the KARGO mark. Defendant (dba Conde Nast) launched a magazine called CARGO with a companion website, cargomag.com. The magazine was targeted at men ages 20 to 45 and occasionally carried articles about wireless goods and services. The plaintiff sued for trademark infringement and related claims.

The plaintiff's survey expert conducted a confusion survey using an Internet survey firm. After qualifying each respondent, each was first shown materials from the CARGO magazine that displayed the CARGO logo and the CARGO website, both of which featured cell phones and advertised the website's service of permitting visitors to download content from the magazine. After three "distracter" questions, each respondent was then shown materials that contained the KARGO mark. After reviewing both sets of materials, each respondent was asked a series of multiple-choice questions designed to discover source, relationship, and sponsorship confusion. Finally, the same survey was administered to a group of "control" respondents who were shown the identical sets of materials with the word "CARRY" substituted for "CARGO."

In response to the defendant's *Daubert* motion, the court excluded the survey. A key vice of the survey was its back-to-back display of the parties' marks:

---

97. WE Media v. General Electric, 218 F. Supp. 2d 463, 474 (S.D.N.Y. 2002) ("Germaine survey evidence should make some effort to compare the impressions the marks have on potential customers under marketplace conditions."); American Footwear Corp. v. General Footwear Co., Ltd., 609 F.2d 655, 660 (2d Cir. 1979) (affirming trial court determination that survey was defective "for failure to conduct it under actual marketplace conditions."); Vista Food Exchange v. Vistar Corp., 2005 U.S. Dist. LEXIS 42541 (E.D.N.Y. 2005) (significant reduction in survey's probative value where it failed to replicate actual marketing conditions). The rule in TTAB proceedings involving confusion surveys is quite different: the survey stimulus consists of a blank card with the mark at issue printed on it in plain type. OMS Investments, Inc. v. Central Garden & Pet Co., 2006 TTAB LEXIS 274 at ** 39–41 (T.T.A.B. 2006); Miles Laboratories, Inc. v. Naturally Vitamin Supplements, Inc., 1986 TTAB LEXIS 173 at **38–40 (T.T.A.B. 1986); Meier's Wine Cellars, Inc. v. Meyer Intellectual Properties Limited, 2008 TTAB LEXIS 678 at ** 11–12 (T.T.A.B. 2008).

98. Kargo Global, Inc. v. Advance Magazine Publishers, Inc., 2007 U.S. Dist. LEXIS 57320 (S.D.N.Y. 2007).

# EXHIBIT P

# Trademark and Deceptive Advertising SURVEYS

## Law, Science, and Design

EDITED BY

## Shari Seidman Diamond and Jerre B. Swann*

*The editors' names are in alphabetical order to reflect the genuine
collaboration, if not always agreement, between the editors in producing
this volume.



Section of
Intellectual Property Law
AMERICAN BAR ASSOCIATION

Cover by Daniel Mazanec/ABA Publishing.

The materials contained herein represent the views of each chapter author in his or her individual capacity and should not be construed as the views of the author's firms, employers, or clients, or of the editors or other chapter authors, or of the American Bar Association or the Section of Intellectual Property Law, unless adopted pursuant to the bylaws of the Association.

Nothing contained in this book is to be considered as the rendering of legal advice for specific cases, and readers are responsible for obtaining such advice from their own legal counsel. This book is intended for educational and informational purposes only.

© 2012 American Bar Association. All rights reserved.

No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the publisher. For permission, contact the ABA Copyrights and Contracts Department by e-mail at copyright@americanbar.org or fax at 312-988-6030, or complete the online request form at http://www.abanet.org/policy/reprints.html.

Printed in the United States of America

24 23 22 21     7 6 5 4

**Library of Congress Cataloging-in-Publication Data**

Trademark and deceptive advertising surveys / edited by Shari S. Diamond and Jerre B. Swann. — 1st ed.
  p. cm.
  Includes bibliographical references and index.
  ISBN 978-1-61438-474-8 (print : alk. paper)
  1. Trademarks—Law and legislation—United States. 2. Deceptive advertising—Law and legislation—United States. 3. Market surveys—Law and legislation—United States. 4. Market surveys—Methodology—United States. I. Diamond, Shari Seidman. II. Swann, Jerre B.
  KF3193.T725 2012
  346.7304'88—dc23

                                                                                      2012021640

Discounts are available for books ordered in bulk. Special consideration is given to state bars, CLE programs, and other bar-related organizations. Inquire at Book Publishing, ABA Publishing, American Bar Association, 321 North Clark Street, Chicago, Illinois 60654-7598.

www.ShopABA.org

# DEMAND EFFECTS IN LIKELIHOOD OF CONFUSION SURVEYS:

## THE IMPORTANCE OF MARKETPLACE CONDITIONS

**11**

By Itamar Simonson and Ran Kivetz

As the use of surveys in litigation in general, and in connection with trademark matters in particular, has increased, courts have come to recognize potential problems that affect the reliability of the surveys' methodology and findings. One potential problem that has received a great deal of attention and has been cited as a key reason for excluding or giving little weight to likelihood of confusion and other surveys[1] is called "demand effects." Demand effects[2] (also referred to as demand artifacts) are produced when respondents use cues provided by the survey procedures and questions to figure out the purpose of the survey and to identify the "correct" answers to the questions they are asked. The respondents may then provide what they perceive as the correct or expected answers, to make sure that the results "come out right."

---

1. Simon Property Group L.P. v. mySimon, Inc., 104 F. Supp. 2d 1033 (S.D. Ind. 2000); Kargo Global, Inc. v. Advance Magazine Publishers, Inc., Opinion & Order, 06 Civ. 550 (S.D.N.Y. 2007); Government Employees Insurance Company v. Google Inc., et al., East. Dist. of Virginia, 2005 U.S. Dist. LEXIS 18642; 77 U.S.P.Q. 2d (BNA) 1841; THOIP v. The Walt Disney Co. et al., Opinion and Order, 08 Civ. 6823 (S.D.N.Y. 2010).

2. The first article to describe the demand effects that can be produced by the demand characteristics of a study is Martin T. Orne, *On the Social Psychology of the Psychological Experiment,* 17 AM. PSYCHOL. 776 (1962).

---

This chapter has benefited from the comments of Dr. Shari Diamond, Dr. Gerald Ford, Dr. AnnaBelle Sartore, and Jerre Swann.

Although demand characteristics are likely to be present to some degree in most surveys and experiments, because the survey context may in some cases elicit hypotheses about the purpose of the research, this chapter focuses on more severe demand effects, those that can largely determine and significantly bias survey findings. Since the objective of a likelihood of confusion survey is usually to estimate the marketplace likelihood of confusion, rather than any confusion that is limited to (or is more pronounced in) the survey's context, severe demand effects can prevent surveys from achieving their goal, potentially leading to incorrect conclusions.

As explained in more detail subsequently, severe demand effects can be particularly problematic when the survey design and related questions (a) suggest the correct answer and/or (b) cause respondents to make comparisons or consider relations and other aspects, which they would not have done outside the context of that study (i.e., in the marketplace). Furthermore, as discussed below, while some demand effects are transparent, others are more subtle but often not less significant. This chapter focuses mainly on demand effects as they apply to likelihood of confusion surveys.

The chapter begins with a brief, general review of prior academic research on demand effects. It then outlines a few principles that pertain to the role of demand effects in the two main types of likelihood of confusion surveys, often referred to as *Eveready* (or *Monadic*) and *Sequential Line-up*[3] (also referred to as *sequential presentation* design). Three specific cases are described below in some detail, focusing on aspects of surveys in these cases that gave rise to severe demand effects.

## ACADEMIC RESEARCH REGARDING DEMAND EFFECTS IN SOCIAL-PSYCHOLOGICAL AND BUYER-BEHAVIOR EXPERIMENTS

A great deal of research in the fields of social psychology and consumer behavior has examined the role and consequences of demand characteristics[4] and resulting demand effects.[5] Much of this research has focused on experimental findings, especially the impact of such effects on the internal validity[6] and external validity (or

---

3. *See*, for example, J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION (September 2007) (MCCARTHY) at § 32:174, § 32:177.

4. Demand characteristics refer to features of the methodology, such as leading questions, that produce demand effects; that is, demand characteristics tend to lead respondents to provide what they perceive as the "correct" or expected answers, thereby producing demand effects.

5. Orne, *supra* note 2; Terence A. Shimp, Eva M. Hyatt, & David J. Snyder, *A Critical Appraisal of Demand Artifacts in Consumer Research*, 18 J. CONSUMER RES. 273 (1991); Stephen J. Weber & Thomas D. Cook, *Subject Effects in Laboratory Research: An Examination of Subject Roles, Demand Characteristics, and Valid Inference*, 77 PSYCHOL. BULL. 273 (1972).

6. Internal validity refers to the degree to which a procedure allows one to draw conclusions regarding causal relations.

generalizability) of laboratory studies. Aronson, Wilson, and Brewer [7] describe the problem of demand characteristics as follows:

> One special form of participant awareness is closely related to the idea of "demand characteristics" as described by Orne (1962).[8] Demand characteristics refer to features introduced into a research setting by virtue of the facts that it *is* a research study and that the participants know that they are part of it. As aware participants, they are motivated to make sense of the experimental situation, to avoid negative evaluation from the experimenter, and perhaps even to cooperate in a way intended to help the experimenter confirm the research hypothesis (Sigall, Aronson & Van Hoose, 1970).[9] Such motivational states are likely to make participants highly responsive to any cues—intended or unintended—in the research situation that suggest what they are supposed to do to appear normal or "to make the study come out right." This problem can present itself in both impact and judgment experiments, particularly those in which each participant is exposed to more than one variation of the stimulus. Such a procedure, by its very nature, increases the probability that the participant will begin to guess which aspects of the experiment are being systematically varied by the experimenter. This is less of a problem in most impact experiments where participants are presented with only one variation of a given independent variable. But, of course, manipulations with high impact may also create problems of participant awareness.

The notion that experimental cues may suggest to participants certain research hypotheses and thereby generate response bias (i.e., demand effects) is not limited to laboratory experiments and may apply to various forms of consumer research. For example, consumers who are shown an advertisement for a new product and asked if they intend to buy it may, in some cases, assume that they are expected to respond favorably to the advertised product. As noted above, and as discussed further below, demands effects are more likely to occur when participants are exposed to more than one variation of the same or related stimuli.

It should be noted that, when demand effects are present, the direction of their impact may not always be easy to predict.

Even if respondents misinterpret what the experimenter has in mind, the mere fact that many study participants form similar beliefs as to what is expected of them may bias the results. That is, demand effects can have a significant impact on research findings whether or not they conform to any particular research hypotheses or study

---

7. Elliot Aronson, Timothy D. Wilson, & Marilyn Brewer, *Experimentation in Social Psychology in* 1 THE HANDBOOK OF SOCIAL PSYCHOLOGY 99–142 (Dan Gilbert, Susan Fiske, & Gordon Lindzey, eds., 4th ed., 1998).

8. Orne, *supra* note 2.

9. Harold Sigall, Elliot Aronson, & Thomas Van Hoose, *The Cooperative Subject: Myth or Reality?* 6 J. EXPERIMENTAL SOC. PSYCHOL. 1 (1970).

objectives. If there are no prior research hypotheses and/or respondents discern the wrong hypotheses, then demand effect biases may be produced as long as a significant percentage of the respondents act on what they believe to be the research hypotheses or the purpose of the study. Furthermore, whereas guessing the precise study hypothesis may often be difficult, participants in consumer research and many other studies can have general notions about what certain tasks entail. For example, when asked for their inputs regarding the performance of marketers and the services or products they offer, respondents can reasonably assume that their role is to provide feedback that is informative and constructive.[10] Such expectations are consistent with the well-established notion that people often try to act in accordance with their perceived roles. (For a detailed discussion and review of Role Theory, see Biddle and Thomas 1966.)[11]

## LEADING SURVEY QUESTIONS AND DEMAND EFFECTS

Demand effects represent a particular type of leading questions/procedures. A leading question (or a leading study procedure) suggests to the respondents particular answers, thus creating a bias and often producing invalid results. In some cases, the leading nature of a question is transparent, whereas in other cases the effect is more subtle though it may not be less potent. For example, respondents in one study[12] were asked, "Do you think the United States should forbid public speeches against democracy?" and 54 percent of them said "yes." A second group of respondents were asked, "Do you think the United States should allow public speeches against democracy?" and 75 percent of them said "no." In this case, the question wording affects the answers because it assumes a different default or status quo.

Another illustration of a leading (though perhaps subtle) question wording was provided by an NBC/*Wall Street Journal* poll,[13] which asked two similar questions with very different results. Some respondents were asked, "Do you favor cutting programs such as social security, Medicare, Medicaid, and farm subsidies to reduce the budget deficit?" The results were: 23 percent favor; 66 percent oppose; 11 percent no opinion. Other respondents were asked, "Do you favor cutting government entitlements to reduce the budget deficit?" The results were: 61 percent favor; 25 percent oppose; 14 percent no opinion. Thus, the former version of the question explicitly mentioned the painful cuts that would need to be made, whereas the latter version used the more abstract, less favorably perceived term of "entitlements." In a similar fashion, a

---

10. *See,* for example, Chezy Ofir, Itamar Simonson & Song-Oh Yoon, *The Robustness of the Effects of Consumers' Participation in Market Research: The Case of Service Quality Evaluations,* 73 J. MARKETING 105 (2009).

11. ROLE THEORY: CONCEPTS AND RESEARCH (Bruce Biddle & Edwin Thomas, eds., 1966).

12. Itamar Simonson, *The Effect of Survey Method on Likelihood of Confusion Estimates: Conceptual Analysis and Empirical Test,* 83 TRADEMARK REP. 364 (1993).

13. Cited in Fritz Scheuren, What Is a Survey? (2004) (available on the Internet at: http://www .whatisasurvey.info/).

question such as "How long was the movie?" produces longer duration estimates than the question "How short was the movie?"[14] Questions may also be leading based on the set of response options they offer. For example, respondents in one study[15] were asked about products (other than the one currently being used) in one of two wordings:

(1a) In terms of the total number of products, how many other products have you tried? 1? 2? 3?

(1b) In terms of the total number of products, how many other products have you tried? 1? 5? 10?

The average number given by those asked the former version was 2.3, compared with 5.2 in the latter group.

As indicated, a question (or a procedure) producing demand effects is one that is leading because it suggests to study participants a conjecture as to the answer expected or desired by the person asking the question (or the designer of the study). A simple example is a question such as, "Don't you see some danger in the new policy?,"[16] which is obviously leading, because it leaves little doubt as to the questioner's opinion and expectation.

In some cases, it may be difficult to know whether a leading question involves merely demand effects reflecting a distortion in reporting or a true change in perceptions or memories. For example, Dr. Loftus and her colleagues[17] studied the impact of question wording on subsequent eyewitness recollection and the sources of such effects. Consider an eyewitness who is asked one of two question versions: (a) How fast were the cars going when they contacted? or (b) How fast were the cars going when they smashed? Loftus et al. showed that the latter version tends to produce higher speed estimates. It is unclear, however, whether this difference arose merely because the respondent inferred from the word "smashed" that the person asking the question assumed that the cars were going fast. Alternatively, the wording of the question might have affected and even changed the eyewitness's recollection of the event, because the word "smashed" calls to mind any evidence that is consistent with the cars going fast.[18] Of course, in this case, either a demand effect or a true change of memory or interpretation of the event might produce the biased response.

14. Elizabeth Loftus, *Leading Questions and the Eyewitness Report,* 7 COGNITIVE PSYCHOL. 550 (1975).

15. *Id.*

16. PAMELA ALRECK & ROBERT SETTLE, SURVEY RESEARCH HANDBOOK 98 (2d ed. 1995).

17. For example, Elizabeth Loftus, Diane Altman & Robert Geballe, *Effects of Questioning Upon a Witness' Later Recollections,* 3 J. POLICE SCI. & ADMIN. 162 (1975); Elizabeth Loftus & Guido Zanni, *Eyewitness Testimony: The Influence of the Wording of a Question,* 5 BULL. PSYCHONOMIC SOC. 86 (1975). For a literature review, *see* Howard I. Weinberg, John Wadsworth & Robert S. Baron, *Demand and the Impact of Leading Questions on Eyewitness Testimony,* 11 MEMORY & COGNITION 101 (1983).

18. This account is related to the concept of the "availability judgment bias"; *see* Amos Tversky & Daniel Kahneman, *Judgment Under Uncertainty: Heuristics and Biases,* 185 SCIENCE 1124 (1974).

## DEMAND EFFECT BIASES IN LIKELIHOOD OF CONFUSION SURVEYS

Likelihood of confusion surveys typically involve the presentation of one or more stimuli that are the subject of questions and provide the basis for confusion estimates. Although demand effects may be triggered by different aspects of the survey and their interactions, it is useful to focus on two related aspects: the presented stimuli and the questions asked about them. That is, strong demand effects may result from the selection of the stimuli being presented to respondents as part of the survey procedure. A closely related key source of potential demand effects pertains to the specific questions being asked regarding the presented stimuli.

However, to illustrate first a rather straightforward demand effect produced primarily by a leading question (regardless of the appropriateness of the presented stimuli), consider the following example from a survey concerning confusion between fitness equipment and a fitness club.[19] Participants were shown five pieces of workout equipment and asked, "Which, if any, equipment brand that you see in this room do you believe is sponsored by, licensed by, or associated with a particular fitness center, fitness club, or fitness center chain?" As the court concluded, "This question clearly led respondents to find, not only a connection or association between the fitness equipment shown and some other product or service, but specifically a fitness center, club, or chain." Indeed, this question was similar in many respects to a question that suffered from demand effects in an earlier case:[20] "Do you believe that this restaurant is connected with or related to any other restaurants?" Such questions clearly suggest the expected answer and may therefore produce demand effects and invalid results. Next, we turn to a discussion of somewhat more subtle, but often not less potent, demand effects.

As described in chapter 4 in this book, although different methodology names have been used, two main types of likelihood of confusion surveys have been used most often (with different variants of each, depending on the conditions and the survey's objectives). With one approach, often referred to as *Eveready* or "monadic," each respondent is presented with just one (test or control) stimulus, which is then the focus of questions designed to estimate the likelihood of confusion.[21] In a "forward confusion" case, the presented product is the "junior" (allegedly infringing) mark (or an appropriate control mark), whereas in a "reverse confusion" case, the "senior" (allegedly infringed) mark is presented.

---

19. Powerhouse Marks, LLC v. Chi Hsin Impex, Inc. et al., F. Supp. 2d, 2006 WL 20523 (E.D. Mich.).

20. Wuv's Intl. Inc. v. Love's Entm't Inc., 208 U.S.P.Q. 736, 755–76 (D. Colo. 1980).

21. Union Carbide Corp. v. Eveready, Inc., 531 F.2d 366, 188 U.S.P.Q. 623 (7th Cir. 1976), *cert. denied,* 429 U.S. 830, 50 L. Ed. 2d 94, 97 S. Ct. 91, 191 U.S.P.Q. 416 (1976). Since the original Eveready case, various changes have been made to the survey methodology (*e.g.,* the inclusion of controls and additional questions, such as regarding affiliation and permission), but the foundation of that method remains essentially the same.

Another basic approach involves a sequential presentation of both the (allegedly infringing) "junior" mark and the (allegedly infringed) "senior" mark alongside additional stimuli.[22] Different approaches, which are not discussed here, have been used with respect to the exact manner of presentation and number of other stimuli shown alongside the junior and/or the senior mark.[23] In addition, although a side-by-side presentation (that might be referred to as a *Squirt* methodology[24]) of both the junior and senior marks could be justified when both are typically seen in the marketplace side by side (for example, if the survey is designed to assess likelihood of confusion between two ketchup or soft drink brands that are normally displayed on store shelves side by side), such a methodology[25] will not be discussed in detail in this chapter.

## Monadic versus Sequential Presentation

The reliance on a monadic versus sequential presentation can have a major impact on the survey results, and in some cases, using the wrong method can produce strong demand effects that may largely determine the survey results. As explained next, the suitable method and the determination of whether a survey creates experimental demand effects and biased results, relative to what is likely to occur in reality, depends largely on the pertinent marketplace conditions. That is, whether a survey creates responses that deviate from what naturally occurs in reality depends on whether the manner in which survey respondents are exposed to the stimuli at issue is fundamentally different from what consumers encounter in the marketplace. Of course, it is rarely possible to recreate all aspects of the real world in a survey environment, but many of the details are not as critical and do not need to be replicated in a survey. However, a monadic presentation of just one mark/product (combined with questions that focus on that mark/product) is often fundamentally different from a sequential presentation of both marks at issue (combined with questions concerning

22. MCCARTHY, *supra* note 3, at §32:177.

23. A variant of the sequential presentation methodology that has been rarely used in recent years and is especially suggestive involves a procedure whereby just one stimulus is presented in the first phase (in a forward confusion case, the senior mark) and just one stimulus is presented in the second phase; for an example of the reasons such a methodology is likely to be rejected, see Tokidoki, LLV v. Fortune Dynamics, Inc., Cent. Dist. of CA, CV-07-1923, Lexis 65655.

24. SquirtCo. v. Seven-Up Co., 628 F.2d 1086, 207 U.S.P.Q. 897, 900 (8th Cir. 1980); Itamar Simonson, *The Effect of Survey Method on Likelihood of Confusion Estimates: Conceptual Analysis and Empirical Test*, 83 TRADEMARK REP. 364 (1993). *See also* Itamar Simonson, *Trademark Infringement from the Buyer Perspective: Conceptual Analysis and Measurement Implications*, 13 J. PUB. POL'Y & MARKETING 181 (1994).

25. A researcher might present respondents with a store display that includes the products sold side by side (the two at issue as well as representative others); after allowing respondents to evaluate the products on display, the allegedly infringing product (in a forward confusion case) is placed in front of the respondent; the question sequence then follows the Eveready question protocol (while leaving the other products in sight). Such a methodology, which might be called "side-by-side display using Eveready questions" or simply "side-by-side Eveready," maintains the marketplace reality without asking potentially leading questions.

any relations among the various presented stimuli), and this methodological choice should therefore be considered carefully. As a general principle and as noted by Professor McCarthy (and numerous courts), "the closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results."[26] Indeed, the purpose of a survey is to provide a reliable estimate of the likelihood of confusion in a relevant marketplace; that is, the selection of the suitable survey method should be based primarily on the marketplace-resemblance criterion.

Consider, for example, a survey in which respondents are exposed to certain toothpaste brands in one room and are asked to evaluate them as they would at a store before purchase. They then go to a second room (often, after being asked "filler" or "distracter" questions) in which they are presented with several toothbrush brands (including the allegedly infringing product), which they also evaluate. Next, the interviewer asks respondents a series of questions that are designed to estimate the likelihood of confusion at issue,[27] such as questions pertaining to source, affiliation, and permission. For example, one question might refer to whether or not any of the products in the second room are made by a company that makes a product shown in the first room; if the respondent answers affirmatively, the interviewer then asks the respondent to point to any product or products made by the same company as a product seen earlier (and explain the answer).

In that situation, the survey procedure corresponds to commonly occurring marketplace conditions (assuming, for example, that the toothpaste and toothbrush at issue are indeed sold in the same areas of the same stores). Sequential exposure to both toothpastes and toothbrushes may thus occur in the marketplace just as it occurs in this hypothetical survey. Furthermore, because the survey reflects common marketplace conditions, the survey procedure is less likely to be suggestive or trigger conjectures regarding the intentions or expectations of the survey designer. In other words, a survey that involves a stimuli presentation that looks "normal" and might be expected given the characteristics of the marketplace and the products at issue is less likely to generate unrepresentative conjectures, unusual interpretations, suspicions, or other responses relating to an artificial survey context (of course, the survey methodology should include a suitable control as well as the appropriate stimulus presentation).

By contrast, consider an alleged confusion between two brands of vacuum cleaner. One brand is sold through stores such as Kmart and Walmart, whereas the other brand is sold exclusively through company-owned stores. Thus, the likelihood that a consumer will be exposed in the marketplace to both brands within a few minutes is very low (even if both brands may, under some very low probability circumstances, appear on the same Internet search results for "vacuum cleaners"). Accordingly, if survey respondents are shown both brands sequentially (alongside

---

26. McCarthy, *supra* note 3, at §32:163.
27. As indicated, the issue of proper controls is not examined in this chapter.

other brands, and even if we assume that a proper control is used), some (or many) respondents may suspect, for example, that the survey designer knows something about the true relations between two brands that the respondents do not know. Once they form such a (demand-based) hypothesis, survey respondents may seek clues (e.g., a similarity on a certain dimension or some other justification) that support the guess that the presented brands are related in some manner. The respondent-provided explanations will often not be very informative in such cases, because they will tend to refer to the available clues and may thus falsely appear to confirm the alleged cause of confusion. Furthermore, while such demand effects may (or may not) be reflected in an unusually high level of "confusion" in the control group, by design, the difference between the test and control stimuli may elicit different explanations.[28]

Similarly, some survey respondents who are shown a brand of yogurt followed by brands of paper towel will likely recognize that this presentation sequence is unusual (despite the fact that supermarkets sell both products). This, in turn, may suggest that one of the presented products is related to another, because these products would have likely not been presented sequentially in the survey otherwise. A similar bias may occur with a sequential presentation of products that, while in the same general category and possibly sold through some of the same outlets, are highly unlikely to be encountered sequentially in reality. Once survey respondents form conjectures about likely relations between sequentially presented products, they are likely to look for confirming evidence, with some of them offering answers suggesting confusion. If, on the other hand, it is not uncommon for the presented products to be encountered at about the same time in reality, such demand effects and spurious responses are much less likely to play a significant role (as noted, a suitable control is needed even when the proper methodology is applied).

Although the selection of a likelihood of confusion survey methodology is often largely determined by the pertinent marketplace conditions (see, e.g., chapter 4 in this book), demand effects are more likely to be observed in surveys in which the survey questions and procedure suggest the possibility that the marks at issue are related. It is noteworthy that demand effects may play some role even if the procedure and questions involve the presentation of just one of the two marks and the questions do not suggest a relationship between the two (e.g., an *Eveready* survey format). Consider, for example, a survey in which respondents are shown a pair of jeans with a stitching design on the back pocket. Assume further that many consumers know that the jeans of the market leader have a stitching design on the back pocket, even though they are unfamiliar with the exact design. In that situation, survey respondents who are shown a pair of jeans with a stitching design (but not the brand name), may

---

28. Some researchers have relied on such differences in provided explanations as a justification for disregarding the high "noise" level in the control, not recognizing that the sheer level of "confusion" in the control may be a sign of a seriously flawed methodology; *see, e.g.,* Kargo Global, Inc. v. Advance Magazine Publishers, Inc., Opinion & Order, 06 Civ. 550 (S.D.N.Y. 2007).

assume that they are being tested on their familiarity with the market leader (i.e., a demand effect). As a result, showing respondents any brand of jeans with a stitching design (without the brand name) may elicit a significant number of mentions of the name of the jeans market leader, which might then be regarded as evidence for confusion. In this example, if the two jeans brands at issue are commonly sold in the same stores, a sequential presentation (or side-by-side presentation, in case they are typically sold side by side in stores) would be in order, as long as a proper control is used. Furthermore, if the two products are not sold in the same stores and an *Eveready* survey is used, a proper control should be able to address concerns about demand effects.

As indicated, the more common demand effects in likelihood of confusion surveys might be expected in surveys that rely on questions and a presentation format that suggest the possibility that the two marks at issue are related. Accordingly, this chapter will next discuss in detail three specific cases in which the presence and implications of demand effects were recognized by the court and were a primary reason for the decision to reject the surveys. The first survey was presented as designed to test for forward confusion in the *Simon Property Group v. mySimon* case, and the second was supposed to test for reverse confusion in the *Kargo Global v. Advance Magazine Publishers* case.[29] Finally, the chapter will briefly review the *Leelanau Wine Cellars v. Black & Red, Inc.*[30] case, which involved products (wines) belonging to the same general category.

## SIMON PROPERTY GROUP V. MYSIMON[31]

The plaintiff, *Simon Property Group* (hereafter SPG), owned and operated brick-and-mortar shopping malls throughout the United States. SPG was well-known among retailers but not among consumers. The defendant, *mySimon*, on the other hand, operated an online comparative shopping service. The *mySimon* website enabled users to search a multitude of websites selling products and services and to compare the prices and other features offered by these competing sellers.

The plaintiff's main claim was that the defendant, by using the name "mySimon," the URL www.mysimon.com, and a cartoon character known as "Simon," infringed on SPG's federal trademarks and created (forward) confusion. The plaintiff's expert proposed to conduct three surveys, to test for likelihood of confusion involving the *mySimon* homepage, print advertisement, and television commercial.

---

29. Simon Property Group L.P. v. mySimon, Inc., 104 F. Supp. 2d 1033 (S.D. Ind. 2000); Kargo Global, Inc. v. Advance Magazine Publishers, Inc., 2007 U.S. Dist. LEXIS 57320 (S.D.N.Y. 2007). In both of these cases, one of the authors of this chapter conducted a survey on behalf of the defendant and evaluated a survey performed or proposed by the other side's expert.

30. Leelanau Wine Cellars v. Black & Red, Inc., 452 F. Supp. 2d 772, 784 (W.D. Mich. 2006).

31. Simon Property Group L.P. v. mySimon, Inc., 104 F. Supp. 2d 1033, *supra* note 29.

All of the three proposed SPG surveys involved a sequential presentation of the *mySimon* and *Simon Property Group* marks. The design of the proposed homepage survey called for first showing respondents a card depicting the *mySimon* homepage and asking a question about the services offered on the website. After returning the first card, respondents were going to be presented with a second card displaying the SPG homepage and asked a similar question. After removing that card from sight, the plan was to ask questions pertaining to the possible relation between the two websites shown sequentially to the respondents, using questions such as "Do you believe that the two web pages just shown to you are put out by (a) two unrelated sources, companies, or organizations; (b) the same source, company, or organization; (c) related but different sources, companies, or organizations; or (d) don't know?" (followed by "Why do you say that?"). The proposed print advertisement survey and TV commercial survey were essentially similar. The SPG expert indicated that he would use as controls ads for such companies as General Motors and the search engine Lycos.

As the court pointed out, SPG's proposed surveys suffered from several fundamental flaws, including: (1) a failure to reflect marketplace conditions; (2) the use of leading questions that generated a strong demand effect; and (3) a failure to use proper controls. Although the court was careful to explain and evaluate each aspect separately, it is useful here to consider the joint impact of the three factors that was likely to produce strong demand effects and results suggesting confusion, whether or not such confusion was likely to occur in reality.

Consistent with the above discussion, the first question we must examine is whether, as the proposed methodology implied, consumers in the marketplace were likely to encounter the *mySimon* and SPG marks one after the other or at about the same time. As the court explained, such an event was highly unlikely, and the plaintiff's proposed homepage survey significantly deviated from common marketplace conditions in several important ways. First, contrary to the survey's sequential presentation of the *mySimon* and SPG homepages, in the actual marketplace consumers were unlikely to view both web pages together or one right after the other. Indeed, the proposed survey did not show respondents any search engine results, and instead, it focused respondents only on the simon.com and mysimon.com homepages. However, in the real marketplace, search results typically did not yield these two websites together, and even when they did, many other websites were also displayed. Many of these other websites also contained the word "Simon" in their name. Thus, consumers would have to sort through many links and websites shown on the results page, and they would not see just the two websites at issue. Accordingly, the court noted that a proper control had to contain the "Simon" name component.

Second, SPG operated brick-and-mortar malls all over the United States, whereas *mySimon* provided its services only over the Internet. Therefore, in the actual

marketplace, even when consumers observe the SPG mark, they are more likely to encounter it in a shopping mall (i.e., offline); by contrast, consumers could only search for and find the *mySimon* service online. Thus, similar to the vacuum cleaner example discussed earlier, the likelihood that a consumer would be exposed in the marketplace to both brands simultaneously or sequentially was extremely low (even if both brands could, under very rare circumstances, appear on the same Internet search results for "Simon" and "shopping"). Accordingly, if both homepages were shown sequentially, many respondents would likely focus on the possible relation between the two and suspect that the survey designer knew something about the true relationship between the two brands that they did not. Once respondents formed that (demand-based) conjecture, they would seek cues (e.g., similarity on some dimension such as the name "Simon") that support the suggestion that the two homepages were related.

Third, even if consumers were to encounter links to simon.com and mysimon.com on the same results page of a search engine, such search results would contain much more information than just domain names (URL addresses). This additional information is designed to affect consumers' selection of websites and is likely to be considered by consumers when making their browsing choices. Thus, the plaintiff's survey method distorted the consumer's experience in the marketplace by removing any information beyond the parties' homepages and URL addresses.

As indicated, these deviations from common marketplace conditions were likely to artificially cause respondents to look for similarities between the two homepages/marks that were singled out, which was likely to generate strong demand effects. Indeed, as the court indicated, the considerable deviation from marketplace conditions would exaggerate the likelihood of "confusion" that would be measured by the proposed SPG survey, rendering the results biased and unreliable. The proposed follow-up questions further exacerbated these demand effects, because they explicitly led respondents to focus on possible relations or connections between *mySimon* and SPG that consumers would have been unlikely to consider outside the context of that survey.

It is also noteworthy that the proposed SPG survey was likely to exacerbate the demand effects by adding (to a conventional list of three response options) the following fourth response option: whether the two homepages were put out by "*related but different* companies or organizations" (emphasis added). This response option was not only ambiguous, but it further implied that there was at least some sort of affiliation between the two homepages.

Overall, SPG's homepage survey suffered from multiple flaws that were likely to generate demand effects. Not surprisingly, the court concluded that the survey proposed by SPG was highly leading and suggestive and excluded the survey, stating that "the proposed survey [is] nothing more than a meaningless memory game or word association exercise that bears no relationship to the marketplace."[32] As should have been clear to SPG's expert, the proper approach in that case was a standard *Eveready*

---

or monadic format, whereby respondents would view only the *mySimon* homepage and answer the typical follow-up questions; such a survey could reveal any confusion with SPG, if it existed.

## KARGO GLOBAL V. ADVANCE MAGAZINE PUBLISHERS SEQUENTIAL PRESENTATION SURVEY[33]

The plaintiff, Kargo Global, Inc. (hereafter Kargo), offered software and services to deliver wireless features, such as magazine text, ringtones, and video games, to cellphones, pagers, and other wireless devices. Kargo's direct customers were wireless carriers, which, in turn, sold the services to their end users. The defendant, Advance Magazine Publishers, Inc. (hereafter "Advance;" d/b/a Condé Nast), on the other hand, published numerous well-known printed magazines. For about two years, Advance had published a men's shopping magazine under the mark "Cargo" and offered its sister website under the mark CargoMag.com (Cargo). Cargo reviewed and promoted (to men) clothes, cars, electronic gadgets, and other items, and only a small percent of its overall content was devoted to wireless devices and services. More importantly, though in most cases there is at least a remote likelihood that any two marks might be seen at about the same time, the probability that the Kargo Global mark and the Cargo mark would be seen by anyone at about the same time was clearly very low.

Kargo claimed that Advance created "reverse confusion" by publishing the Cargo magazine and website, allegedly leading prospective end users of Kargo to believe that its services were provided by, or affiliated with, Cargo magazine. The plaintiff's expert conducted two surveys to test for likelihood of reverse confusion, using respondents from either the plaintiff's or the defendant's universe of prospective users (for the reverse confusion claim, only the Kargo prospective purchasers were potentially relevant).

The Kargo survey involved first showing respondents a cover of a magazine and a page from the magazine. The cover was taken from the 2005 issue of Cargo, which depicted the "Cargo" logo and also prominently displayed a picture of a cell phone next to the headline "World's Most Distinctive Cell Phone." The respondents were then shown a page from the middle of that issue, which promoted various features of the magazine's companion website, CargoMag.com. The page shown to respondents contained a promotional paragraph titled "Cargo-to-Go," depicted a picture of a Blackberry cell phone, and advertised an "Instant Replay" feature, which enabled visitors to CargoMag.com to download onto cell phones various content (e.g., product reviews). After brief "filler" (or "distracter") questions, respondents were told they would next view a "magazine ad that appeared in Premiere magazine." They were

---

33. Kargo Global, Inc. v. Advance Magazine Publishers, Inc., *supra* note 28.

shown an advertisement for "Premiere Mobile," a service that enabled downloading Premiere's content to cell phones. This advertisement included the phrase "Powered by KARGO," and also prominently displayed Kargo's logo. Next, respondents were told that they would see another advertisement, ". . . for a service available for cell phone users." This ad contained a large picture of a Blackberry cell phone with the "KARGO" logo displayed in large font above the picture.

The respondents were then asked three questions pertaining to the possible relation between the company that put out the Cargo magazine and the company that put out the advertisements with the Kargo logo. These three questions were supposed to assess whether respondents believed that the advertisements were produced by (a) the same company that published the magazine; (b) a company that had a business relationship with the company that published the magazine; or (c) a company that had to obtain permission to use the name appearing in the ads from another company (followed by an inquiry into the name of the company giving permission). Respondents who provided an affirmative answer to any of these three questions were asked to explain their answer. If their answers referred to name similarity (in the "test group," between "Kargo" and "Cargo"), they were classified as "confused."

The Kargo survey also included a control group, in which respondents answered the same questions as the test group respondents, but the word "Cargo" (magazine) was replaced with the word "Carry." Similar to the test group, control group respondents were counted as "confused" if they both answered affirmatively one of the aforementioned three questions *and* explained their affirmative answer based on the similarity of the names (i.e., the similarity between "Kargo" and "Carry").

As the court pointed out, the Kargo survey suffered from major flaws, namely failing to reflect marketplace conditions and using improper and unrepresentative stimuli. Both flaws led to severe demand effects. First, as indicated, contrary to the sequential presentation of the two marks in the survey, sequential or simultaneous exposure to the Kargo mark and the Cargo Magazine mark was highly unlikely to occur in reality.[34] That is, in the actual marketplace, a potentially relevant (reverse) confusion scenario that could have been tested involved a case in which a consumer was exposed to the Kargo mark on its own. In other words, *Eveready* was the proper methodology in this case. If such a consumer were confused between Kargo and the Cargo Magazine, then the *Eveready* survey questions would have shown that confusion.

Citing among other cases the *SPG v. mySimon* decision reviewed above, the Kargo court pointed out that the manner of presentation and the subsequent questions misrepresented the marketplace and generated demand effects. By showing both marks sequentially and then asking the questions concerning a possible relation between the two, the Kargo survey was likely to communicate or hint to respondents that the brands indeed had some form of an association. Such a connection or association

---

34. *Id.* at 20.

between the two marks was unlikely to be considered by consumers under natural marketplace conditions. Given this demand effect, the finding that many respondents (about 80 percent) provided answers suggesting they were confused, with many of them explaining their "confusion" based on name similarity, was determined by the survey methodology and the demand effects it produced.

As Advance's expert pointed out, the demand effect created by the Kargo survey was evident in the control group's answers. The control group respondents were shown the same magazine stimuli shown to test group respondents, except that the name "Cargo" was changed to the clearly noninfringing name "Carry." Since Kargo ringtones and a Carry magazine have virtually nothing in common, the measured likelihood of confusion should have been low. Yet, 80 percent of the control group respondents indicated in response to the close-ended questions that they believed that the *Carry* (men's) magazine and the Kargo (wireless) service had some connection involving a common source, business relationship, or sponsorship. Of course, the control group respondents were much less likely to explain their answers suggesting "confusion" based on name similarity, but the mere fact that such a high percentage provided answers implying confusion between Kargo Global and *Carry* magazine was indicative of the survey's fundamental flaws. As the court observed, this result strongly supported the notion that the Kargo survey created a severe demand bias due largely to the artificial sequential presentation of the marks, which clearly deviated from marketplace conditions. Furthermore, the failure to approximate marketplace conditions in that survey was aggravated by the use of unrealistic stimuli, which were likely to magnify the impact of demand effects.

In summary, the survey relied upon to support the claim of confusion in the *Kargo Global v. Advance Magazine Publishers* case used a format and stimuli that significantly deviated from actual marketplace conditions. This flaw, combined with the use of leading questions and unrepresentative stimuli, created severe demand effects, which biased the results in favor of the plaintiff's position. Accordingly, the court excluded the survey as inadmissible under Rule 403.

## LEELANAU WINE CELLARS V. BLACK & RED, INC.

Although both the *SPG v. mySimon* and *Kargo Global v. Advance* cases involved noncompeting goods/services, the principle that a survey should avoid severe demand effects and rely on a methodology that reflects a relevant marketplace equally applies to goods that belong to the same general category. An illustration of such demand effects was provided by the *Leelanau Wine Cellars v. Black & Red, Inc.* case,[35] which involved two wineries. Respondents (both the test and control groups) were first shown an advertisement for "Leelanau Wine Cellars" (LWC) Chardonnay wines. After the ad was removed from sight, participants were shown a display of bottles of

---

35. Leelanau Wine Cellars v. Black & Red, Inc., 452 F. Supp. 2d 772, *supra* note 30, at 784.

Chardonnay wines and asked a series of questions designed to assess the likelihood of confusion between specific wines on display and the wine shown in the ad. In a harsh critique of the survey, the court pointed out the following key survey flaws:

> ... The survey in this case was conducted in a manner that was substantially at odds with the circumstances under which most consumers encounter Defendants' wine. As noted above, Defendants' wine is sold through Defendants' tasting rooms and website, which offer only one brand of wine— Chateau de Leelanau. That is, actual purchasers would not be presented with a situation where Defendants' wine is displayed side-by-side with other wines, and they would be purchasing from a location identified expressly and exclusively with Chateau de Leelanau. *See Juicy Couture, Inc. v. L'Oreal USA, Inc.*[36] ("Most significantly, the survey did not replicate the marketplace conditions in which consumers encounter Lancome's products. Lancome's cosmetics are sold at Lancome counters or department store sections, or over websites, with prominent signage identifying Lancome as the seller, and the product as Lancome products"). Moreover, there is no indication that in the actual marketplace, purchasers of Chateau de Leelanau wine are ever exposed to LWC's advertising shortly before they view or purchase Chateau de Leelanau wine. Thus, the survey, in which participants were shown LWC's advertisement and then asked whether they believed that any of the five wines, including one including the word 'Leelanau' in its name, were the same or came from the same source as the wine in the advertisement, was 'little more than a memory test, testing the ability of the participants to remember the name []of the [wine they had been shown.'[37] ...

> In the present case, the entire survey was suggestive. Participants were first shown LWC's advertisement and then asked whether they believed that any of the wines in the display, only one of which, the Defendants' product, contained the word Leelanau on it, was the same as or came from the same winery as the winery that puts out the wine in the advertisement. These circumstances not only suggested that participants should find a connection between the wine in the display and some other product, but specifically LWC's wine.[38]

As this court opinion indicates, the relevant question for assessing the validity and reliability of a survey is largely determined by the degree to which the survey's setup/procedure and the questions asked suggest the "correct answer," deviate from

---

36. 2006 U.S. Dist. LEXIS 20787, No. 04 Civ. 7203 (DLC), 2006 WL 1012939, at 25 (S.D.N.Y. Apr. 19, 2006).

37. Starter Corp. v. Converse, Inc., 170 F.3d 286, 297 (2d Cir. 1997).

38. *See* Powerhouse Marks, 2006 U.S. Dist. LEXIS 61, 2006 WL 20523, at 6.

marketplace conditions, and create demand effects that produce predictable results.[39] Whether or not the goods at issue belong to the same general category is less important.

## CONCLUSION

The mere fact that there are no perfect surveys or that most surveys might have at least minor demand characteristics does not mean that "anything goes" or that any survey flaw or demand effect can be dismissed. There is a big difference between minor flaws that have little, if any, effect on the survey conclusions and severe demand effects that may largely determine the observed survey results. In this chapter, we focused on more severe demand effects that can have a major impact and potentially determine the findings. Considering that the objective of a likelihood of confusion survey is to estimate the likelihood of confusion in a relevant marketplace, severe demand effects prevent such surveys from achieving their goal and may lead to the wrong conclusions.

Accordingly, a primary criterion for assessing the reliability of surveys and the severity of demand effects is based on the degree to which they alter the fundamental conditions in which the marks or terms at issue are encountered by buyers in reality. For example, if consumers rarely encounter two marks at about the same time in the marketplace, then showing them sequentially (or side by side) in a survey context may generate severe demand effects and a related tendency to seek confirming evidence regarding possible relations between the presented stimuli; these biases, in turn, can often largely determine the survey results. The marketplace-resemblance criterion can thus be used to determine whether a particular situation calls for (a variant of) the monadic (*Eveready*) approach for estimating likelihood of confusion, (a variant of) the sequential presentation (line-up) approach, or, under certain marketplace conditions, either one or both.

---

39. Similar issues were discussed, for example, in THOIP v. The Walt Disney Co. et al., Opinion and Order, (08 Civ. 6823 S.D.N.Y. 2010).

# EXHIBIT Q

# EXPERT REPORT OF DAVID FRANKLYN REGARDING CONSUMER RECOGNITION OF "BLOCK" AS A BRAND NAME

PREPARED BY:

David Franklyn
Feb 03, 2022

# *TABLE OF CONTENTS*

Page #

BACKGROUND AND PURPOSE                                      2
SUMMARY OF OPINIONS                                         3
STUDY AUTHORSHIP AND QUALIFICATIONS                         3
STUDY OVERVIEW                                              5
SURVEY METHODOLOGY                                          6
SURVEY OVERVIEW                                             6
EXPERIMENTAL DESIGN                                         6
THE RELEVANT UNIVERSE OF INTEREST                           9
SAMPLING PLAN                                              12
DOUBLE-BLIND INTERVIEWING                                  13
INTERVIEWING PROCEDURES                                    13
DATA PROCESSING                                            14
INTERVIEWING PERIOD                                        14
QUALITY CONTROL                                            14
DETAILED SURVEY REPORT                                     16
CONCLUSION                                                 20

APPENDIX A:   CURRICULUM VITAE OF STUDY'S AUTHOR
APPENDIX B:   QUESTIONNAIRES/INSTRUCTIONS
APPENDIX C:   SCREENSHOTS OF SURVEY
APPENDIX D:   SURVEY DATA
APPENDIX E:   MATERIALS CONSIDERED

Confidential

## BACKGROUND & PURPOSE

Founded in 1955, H&R Block, Inc. (hereinafter "H&R Block") has offered services traditionally associated with income tax preparation and filing.

Defendant, Block, Inc., was formerly known as Square, Inc. On December 1, 2021, the defendant changed its name to "Block, Inc." to distinguish its corporate/parent identity from its various customer-facing brands. These consumer-facing businesses include Square, Cash App, TIDAL, TBD5466975, and Spiral.

H&R Block sued Block Inc. alleging that Block's name is confusingly similar to H&R Block's name. H&R Block further alleges this purported similarity will lead to consumer confusion as to the origin of Block's products and services, leading consumers to believe they are associated with H&R Block's products and services and therefore constitutes trademark infringement.

I have been retained to evaluate a survey conducted by Dr. E. Deborah Jay and to reassess, using standard and generally accepted statistical and consumer market survey methods, the extent of association between the term "Block," standing alone, and H&R Block for tax and financial services.

For my engagement in this matter associated with the design, fielding, analysis, and creation of the report, the associated fees are $70,000. Subsequent work in this matter is billed at my customary rate of $675 per hour. My compensation is in no way dependent on my opinions or testimony, or the outcome of this proceeding.

Confidential

<u>**SUMMARY OF OPINIONS**</u>

A de minimis portion of respondents associate "Block" with H&R Block directly or with the services they provide.

I.     After controlling for noise, there is a net recognition of 3.5% of "Block" as a brand (9.7% - 6.2%).  3.5% represents a de minimis level of recognition and supports the conclusion that "Block" standing alone has very low recognition among the general public as a brand.

II.    Looking at the data to assess not just net recognition as a brand, but the gross number of how many test respondents both a) identify the Block name as a brand and b) associate the Block brand with H&R Block or the services it provides yields 5.4% recognition. 5.4% represents a de minimis level of and supports the conclusion that Block has very low recognition among the general public as a brand for H&R Block.


<u>**STUDY AUTHORSHIP AND QUALIFICATIONS**</u>

This study was designed, supervised, and implemented under my supervision.

I am currently a Professor of Law at Arizona State University.  I hold an appointment within the Sandra Day O'Connor College of Law.  I am also the Executive Director of the McCarthy Institute, which is focused on scholarship and research in the areas of trademark law, branding, and consumer perception. Furthermore, I am editor-in-chief and co-author of McCarthy's Desk Encyclopedia of Intellectual Property Law.

Confidential

Formerly, between 2000 and 2018, I was a Professor of Law and Executive Director of the McCarthy Institute for Intellectual Property and Technology Law at University of San Francisco and Director of the Center for the Empirical Study of Trademark Law (CEST). Between 2018 and 2021, I held joint appointments in the law and business schools at Golden Gate University in San Francisco. I taught courses in trademarks, advertising, and measuring consumer perceptions.

I have consulted and/or qualified as an expert witness on behalf of clients in numerous cases involving trademark surveys, consumer perception and behavior issues, and related damages issues, including in matters in the United States (federal and various state courts), Asia, East, and South America.

In addition to my survey research experience, I hold a J.D. from University of Michigan Law School. Additional biographical material, including lists of testimony and publications, is provided in Appendix A.

**STUDY OVERVIEW**

In order to provide a clear understanding of consumer recognition of the Block name, I utilized a consumer recognition survey of the name at issue as well as two other names: TurboTax and Sphere Taxes, the latter of which is an invented name that served as my control to filter out survey noise.

After successfully completing screening criteria that were identical to the screening criteria used by Dr. Jay, participants (members of the general public who live in the U.S. most of the year and are above the age of 18) were randomly assigned to one of three cells. After this random assignment, participants were shown either the Block name (the test), the TurboTax name (a competitor of H&R Block in the tax and financial services industry), or the Sphere Taxes name (the control).

Participants were then asked whether they had or had not seen or heard of the brand shown. If participants stated they had seen or heard of the brand, they were then asked to list, with as much detail as possible, the products or services offered by the brand.

In order to account for noise within the dataset, I utilized a test and control methodology. Within all three cells, respondents saw an identical line of questioning. The only variable altered between the three cells was the name shown to respondents.

Confidential

## SURVEY METHODOLOGY

### Survey Overview

A total of 831 qualified respondents participated in my survey. Within Cell 1, 278 respondents were shown an image of the Block name. Within Cell 2, 279 respondents were shown an image of the TurboTax name. Within Cell 3, 274 respondents were shown an image of the Sphere Taxes name.

In addition to the Block name, I included two additional names for testing. TurboTax was included to validate results by confirming that respondents were able to understand the questions and format of the survey.  Sphere Taxes was included as a control, as it contains a reference to a shape/figure, similar to the name at issue, and is a plausible brand name to use for a control.

After reviewing the stimuli, respondents were asked whether they had seen or heard of the name presented, as a brand. If they had seen or heard of the brand, respondents were then asked to describe the products or services offered under that brand name. To ensure clarity of answer, respondents were asked to provide as much detail as possible.

### Experimental Design

After the initial screening/classification portion of the survey, respondents were randomly assigned to see the Block name, the TurboTax name, or the Sphere Taxes name.

Respondents were shown either the Block name, the TurboTax name, or the Sphere Taxes name and were asked if they had seen or heard of that name as a brand.

The following is a screenshot of how the question was presented for the Block name.



If respondents answered "Yes," indicating they had seen or heard of the brand they were shown, they were then asked to describe in as much detail as possible what products or services the brand provides.

The following is a screenshot of how the question was presented for the Block name.



Confidential

Next, respondents were shown a list of various professional services offered and told to select which, if any, they had used within the last 12 months. Respondents were required to select "yes," "no," or "don't know" for each item.



Finally, respondents were shown a list of various professional services offered and told to select which, if any, they intended to use in the next 12 months. Respondents were required to select "yes," "no," or "don't know" for each item.

And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item.

| | Yes | No | Don't Know |
|---|---|---|---|
| Mobile or online tax preparation, or mobile or online tax preparation software | ○ | ○ | ○ |
| A mobile app to have food delivered to your home | ○ | ○ | ○ |
| Merchant payment processing services | ○ | ○ | ○ |
| A mobile app that allows you to send and receive money (other than through auto-pay for recurring bills) either directly through the app or a website | ○ | ○ | ○ |
| Mobile stock and cryptocurrency trading, such as a mobile financial platform that allows you to buy and sell Bitcoin | ○ | ○ | ○ |
| A mobile app to purchase tickets to a sporting event or concert | ○ | ○ | ○ |
| Music streaming services | ○ | ○ | ○ |
| Mobile or online banking services and payment cards | ○ | ○ | ○ |

Next

After completing this question, respondents were shown the following screen where they could then exit the survey.

Thank you for your help with this survey.

Next

## Relevant Universe of Interest

The relevant universe for this survey consisted of consumers aged 18+, who live in the U.S. most of the year. To ensure the sample of respondents fell within the relevant universe, I implemented a series of screening questions identical to those asked by Dr. Jay.

Respondents were first asked to identify their gender.



Then, respondents were asked to indicate their age.



Respondents were required to be over the age of 18 to complete this survey. Respondents indicating that they were under the age of 18 or who preferred not to answer were not allowed to participate in this survey.

Next, respondents were asked to identify where they lived during most of the year. A drop-down list including the following options was shown: Africa or the Middle East, Asia, Australia or New Zealand, Canada, Central or South America, Europe, Mexico, United States, Somewhere Else, Don't Know.

Where do you live most of the year?

- ○ Africa or the Middle East
- ○ Asia
- ○ Australia or New Zealand
- ○ Canada
- ○ Central or South America
- ○ Europe
- ○ Mexico
- ○ United States
- ○ Somewhere else
- ○ Don't know

Next

Respondents were required to live in the United States most of the year to complete this survey. Respondents who did not select "United States" as their answer were not allowed to participate in this survey.

Respondents were then asked in which state they live for most of the year. A drop-down list including the 50 states and the District of Columbia was shown.

In what state do you live most of the year?

-- Please Select --

Next

## Sampling Plan

The sampling plan involved a random selection of consumers who are part of an online panel.

Online surveys are well-accepted in the field of survey research as a standard, reliable methodology. Indeed, online surveys are now the most common method of conducting market research among consumers. Businesses and other organizations routinely make decisions of importance based on the results of online survey research among consumers, and online surveys have been accepted in evidence in numerous U.S. District Court cases. I have personally designed and executed numerous internet surveys that have been accepted by courts.

The sample of panelists used in the survey was provided by Lucid, a leading supplier of online samples for surveys. Lucid offers one of the world's largest pools of global consumers and is highly regarded as a reputable source of consumers for online surveys within the field of market research[1]. Lucid utilizes appropriate industry procedures for ensuring the integrity and quality of its panels. Furthermore, Lucid regularly tracks quality and authentication metrics

---

[1] https://luc.id/marketplace-book/

through a variety of metrics, including survey response metrics, acceptance of buyer-accepted survey completes, and the consistency of responses over time.

Lucid also ensures data integrity through their continued review of their panelists' behavior on a variety of metrics to reduce sampling bias, including their tracking of brand preference, value-seeking behavior, and technology usage[2].

To ensure the applicability of the research findings, quotas were set up in line with census distributions for age, region, and gender.

## Double-Blind Interviewing

It is important to point out that the study was administered under "double-blind" conditions. Respondents were uninformed as to the purpose and sponsorship of the study. The survey is also, by definition, "blind" in that there is no person administering the questions that could know the purpose or sponsorship of the survey and can do anything to influence the results.

## Interviewing Procedures

The online survey questionnaire was constructed, programmed, and hosted under my direction by Halsted Strategy Group, a leading marketing consulting and research company with great expertise in web survey design, programming, and data collection and processing. Halsted Strategy Group staff and I thoroughly tested the programmed survey prior to any potential respondents receiving the invitation to participate in the survey.

---

[2] https://luc.id/quality/

## Data Processing

Data was collected by Halsted Strategy Group through its online portal.

## Interviewing Period

Interviewing was conducted on February 2nd, 2022.

## Quality Control

Several quality control metrics, which were identical to those Dr. Jay used, were employed to ensure the validity of consumer responses.

First, respondents were shown a set of preliminary instructions asking them to complete the survey in one sitting and ensure that during the survey, they wear any vision-correcting eyewear that they normally wear.

We are conducting a short opinion survey for Halsted Strategy Group, an independent research firm. We anticipate that the survey will take approximately 5 to 10 minutes, and we would like you to complete the survey in one sitting. If you usually wear contact lenses or eyeglasses when you use a mobile device, tablet, or computer and are not wearing them, please put them on now.



Second, respondents were required to complete a quality assurance question. Respondents were shown four differently colored shapes and were asked to then select in which order the colors were displayed. This ensures that respondents are actively paying attention to the survey questions.



What order are these colors in? (Note, the image may take a few seconds to load.)

○ Blue, red, green, yellow
○ Blue, yellow, green, red
○ Red, yellow, green, blue
○ Yellow, green, blue, red
○ Green, blue, red, yellow
○ Green, red, blue, yellow
○ None of the above
○ Don't know

Next

Respondents who selected any of the incorrect options were immediately terminated from the survey.

Third, respondents were shown a set of instructions and were required to agree to the instructions.

Do you agree to answer all survey questions on your own, without asking anyone else for help or referring to reference materials or the internet?

○ Yes, I agree
○ No, I do not agree

Next

Confidential

Furthermore, data were cleaned prior to analysis. Standard cleaning techniques included the removal of respondents who completed the survey in less than one-half the median survey duration, or those who took 4x longer than the median survey time to complete the survey. Respondents who answered open-ended questions with non-sensical or gibberish responses were removed prior to analysis.

These respondents have been included as a separate tab within the data file.

## DETAILED SURVEY REPORT

This survey consisted of three cells, a Block name cell, a TurboTax name cell, and a Sphere Taxes control cell. Within the Block test cell, 278 respondents saw the Block name. Within the TurboTax cell, 279 respondents saw the TurboTax name. Within the Sphere taxes control cell, 274 respondents saw the Sphere Taxes name.

As more fully explained in the Experimental Design section, all three cells consisted of showing respondents the respective name and asking whether they had seen or heard of the brand and if so, what services they believed were offered by the brand. Respondents were asked to provide as much detail as possible.

### Relevant Universe of Interest

As more fully described in the Relevant Universe section, the relevant universe for this survey consisted of consumers aged 18+ who live in the United States for most of the year.

<div align="center">**Detailed Survey Results**</div>

A. *After controlling for noise, a de minimis portion of respondents associate Block with H&R Block directly or with the services they provide.*

As explained in the experimental design section, respondents were randomly shown one of three names and were asked whether or not they identified it as a brand.

**Table I – Recognition of brands**

Have you seen or heard of [x] as a brand?

|  | Cell 1 – BLOCK  n = 278 | Cell 2 – TURBOTAX  n = 279 | Cell 3 – SPHERE TAXES  n = 274 |
|---|---|---|---|
| Yes, I have seen or heard of this as a brand | 9.7% | 94.3% | 6.2% |
| No, I have not seen or heard of this as a brand | 84.2% | 3.9% | 89.4% |
| Don't know | 6.1% | 1.8% | 4.4% |

Among respondents who saw the Block name, 9.7% identified Block as a brand they had seen or heard of. Within the control cell of Sphere Taxes, 6.2% identified Sphere Taxes as a brand they have seen or heard of.

**After controlling for noise, there is a net recognition of 3.5% for the Block brand (9.7% - 6.2%). 3.5% represents a de minimis level and supports the conclusion that Block has very low recognition among the general public.**

Confidential

TurboTax generated extremely high levels of recognition as a brand. After controlling for noise, there is a net recognition of 88.1%.

To further assess the relationship between the Block name and the H&R Block brand, I examined the open-ended response data.

As shown in Table 1 above, 9.8% of the 278 respondents in Cell 1 recognized the Block name as a brand. This represents 27 total respondents. Their individual responses, when asked to identify what products/services are offered by the Block brand, are shown below.

**Table II – Rationale for Block brand recognition**

In the prior question, you mentioned that you had seen or heard of Block. What products or services are offered under the brand name Block? Please answer with as much detail as possible.

| Respondent ID | Response | Classification |
|---|---|---|
| 399 | Hrblock | Direct Mention of H&R Block |
| 488 | H r block | Direct Mention of H&R Block |
| 533 | H&R Block    For tax help etc. | Direct Mention of H&R Block |
| 713 | H&R Block the income tax Service | Direct Mention of H&R Block |
| 874 | H an R Block  a tax service | Direct Mention of H&R Block |
| 966 | i think of H & R block. | Direct Mention of H&R Block |
| 142 | Tax Services. | Taxes / Finances / Accounting |
| 191 | Income tax returns  . | Taxes / Finances / Accounting |
| 260 | tax services | Taxes / Finances / Accounting |
| 280 | Tax and accounting services if I'm correct | Taxes / Finances / Accounting |
| 527 | Accounting | Taxes / Finances / Accounting |
| 756 | Insurance and tax returns | Taxes / Finances / Accounting |
| 870 | tax company | Taxes / Finances / Accounting |
| 785 | I think it a financial service | Taxes / Finances / Accounting |
| 869 | Block Art Supply.   Block tax | Taxes / Finances / Accounting |

| | | |
|---|---|---|
| 97 | Block China | Other |
| 354 | They serveany products such as clothing | Other |
| 440 | Square | Other |
| 448 | Idk | Other |
| 534 | offers by block | Other |
| 576 | They offer building sets | Other |
| 591 | Sunglasses | Other |
| 709 | I'm not sure | Other |
| 744 | Children's books | Other |
| 766 | Everything | Other |
| 978 | many things | Other |
| 985 | Jewelry | Other |

Among these responses, there are direct mentions of H&R Block. Based on my review of the data, six respondents directly mentioned H&R Block by name. These six represent 2.2% of the respondents (6 out of 278). Furthermore, based on my review of the data, nine respondents mentioned taxes, accounting, or financial services. These nine represent 3.2% of the respondents (9 out of 278). The combined gross total is 5.4% (15 out of 278). This calculation, which is based on only respondents who responded to an open-ended question by identifying the Block brand with H&R Block or the services it provides, does not have a deduction for noise.

In sum, this 5.4% are those who:

a)      Identify the Block name as a brand <u>and</u>

b)      Associate the Block brand with H&R Block or the services it provides.

**5.4% represents a de minimis level of respondents and supports the conclusion that Block has very low recognition among the general public.**

## *CONCLUSION*

Based on the extensive consumer research and statistical analysis I describe in this report, it is clear that there is de minimis recognition of the Block name with H&R Block or the products or services H&R Block provides.

After controlling for noise, there is a net recognition of 3.5% for the name Block as a brand. When asked specifically about products or services provided by Block, 5.4% of respondents associate the name Block with H&R Block or the products or services H&R Block provides.

David J. Franklyn, February 3, 2022

# APPENDIX A

**David J. Franklyn**

5602 East Via Buena Vista
Paradise Valley AZ 85253

(650) 436-2815 (mobile)
f r a n k l y n i p l a w @ g m a i l . c o m

## <u>Academic Appointments</u>

**Arizona State University**
**Sandra Day O'Connor College of Law**

Professor of Intellectual Property Law, June 2021- present
Executive Director, McCarthy Institute, June 2021 - present

**Golden Gate University**
**School of Law**, August 2018-2021

Professor of Intellectual Property Law, July 2018- June 2021

**Golden Gate University,**
**Edward S. Ageno School of Business**

Professor of Business, Marketing and Advertising – July 2018- June 2021

**Golden Gate University**
**School of Law and Edward S. Ageno School of Business**

Director, McCarthy Institute, July 2018- June 2021

Director, Center for Empirical Study of Consumer Perceptions, July 2018- June 2021

**University of San Francisco School of Law**

Professor of Intellectual Property Law, 2000 – June 2018

Subjects Taught: Trademark Law; Copyright Law; Right of Publicity; International IP Law;

IP Survey; IP Theory Seminar; Moral Philosophy Seminar

Director, J. Thomas McCarthy Institute for IP & Technology Law

Director, Center for Empirical Study of Trademark Law (CEST)

Director, Domestic and International LL.M. Program in IP Law

**University of California, Hastings College of Law**

Visiting Professor of Law, January 2006 – May 2006; January 2007 – June 2007

**Salmon P. Chase College of Law, Northern Kentucky University**

Associate Professor of Law, 1999 – 2000

Assistant Professor of Law, 1996 – 2000

*Lukowsky Award for Outstanding Professor of the Year*, 1999

**University of Cincinnati College of Law**

Visiting Assistant Professor of Law, August 1999 – December 1999

**Pater Noster High School, Los Angeles**

Teacher & Dean of Students, 1984-87

## Education and State Bar Admissions

Admitted to practice in California and Illinois

University of Michigan Law School, J.D., 1990, *cum laude*, Order of the Coif

Evangel College, B.A., 1983, *magna cum laude*, History, Philosophy, Religion; Outstanding Philosophy
Graduate; Baccalaureate Speaker, 1983

## Publications/Research

*Revisiting Consumer Perceptions of Google Search Results As Google Shifts Labeling Practices* (in progress)

*Can On-line Consumers tell the Difference between Real News and Paid Commercial or Political Advertorials Masquerading as News?*

*Going Native: Can Consumers Recognize Advertising?*, 19 YALE JOURNAL OF LAW & TECHNOLOGY 77
(2017) (with David Hyman and Calla Yee)

*The Problem of Mop Heads in the Era of Apps: Toward More Rigorous Standards of Value Apportionment in
Contemporary Patent Law*, 98 JOURNAL OF THE PATENT AND TRADEMARK OFFICE SOCIETY (2016) (with
Adam Kuhn) (2016 Rossman Award winning article for most significant contribution to IP scholarship)

*Trademarks As Search Engine Keywords: Much Ado About Something?*, 26 HARVARD JOURNAL OF LAW
& TECHNOLOGY 481 (2013) (with David A. Hyman)

*Trademark Surveys: An Undulating Path,* 92 TEXAS LAW REVIEW 2117 (2014) (with Shari Diamond)

*Owning Oneself In a World of Others — Towards a Paid-For First Amendment,* 49 WAKE FOREST LAW REVIEW
977 (2014) (with Adam H. Kuhn)

*Trademarks as Keywords: Who Buys Them,* 92 TEXAS LAW REVIEW 2019 (2014) (with David A. Hyman)

*Trademark Surveys and Icebergs – It's What's Under the Water* ___ TRADEMARK REPORTER ___
(forthcoming) (with Shari Diamond)

*Search Bias and the Limits of Antitrust: An Empirical Perspective on Remedies,* ILLINOIS PROGRAM IN LAW, BEHAVIOR, AND SOCIAL SCIENCE (2015) (with David A. Hyman)

*An Empirical Analysis of Google's Antitrust Settlement in the EU* (forthcoming) (with David A. Hyman)

*An Empirical Study of Search Results Labeling and Arrangement* (multi-scale empirical research underway in Europe and U.S.)

*An Empirical Study of the Right of Publicity and the First Amendment* (review of all U.S. right of publicity cases involving first amendment/free speech issues since 1980 to determine common decisional factors)

*The European Court of Justice Rules on Keyword Ads and Trademark Rights,* 14 INTELLECTUAL PROPERTY LAW BULLETIN 89 (2010)

*The New Federal Anti-Dilution Act: Reinstating the Myth of 'Likely' Dilutive Harm as a Mask for Anti-Free-Rider Liability,* 11 INTELLECTUAL PROPERTY LAW BULLETIN 199 (2007)

MCCARTHY'S DESK ENCYCLOPEDIA OF INTELLECTUAL PROPERTY LAW, editor-in-chief and coauthor with J. Thomas McCarthy and Roger Schechter (3d ed. 2005)

*Debunking Dilution Doctrine: Justifying the Anti-Free-Rider Principle in American Trademark Law,* 56 HASTINGS LAW JOURNAL 117 (2004)

*Owning Words in Cyberspace: The Accidental Trademark Regime,* 2001 WISCONSIN LAW REVIEW 1251 (2001)

*The Apparent Manufacturer Doctrine, Trademark Licensors & the Third Restatement of Torts,* 49 CASE WESTERN RESERVE LAW REVIEW 762 (1999)

*The Third Restatement of Torts: Symposium Introduction,* 26 NORTHERN KENTUCKY LAW REVIEW 531 (1999)

*Toward A Coherent Theory of Strict Tort Liability for Trademark Licensors,* 72 SOUTHERN CALIFORNIA LAW REVIEW 1 (1998)

*A Property Theory of Trademark Law* (in progress)

*Trademarks as Keywords: Beyond Confusion* (in progress)

*The First Amendment as a Market Allocation Device in Right of Publicity Cases: Towards a Comprehensive Theory of Add- On Value, Collateral Rights and Free Riding in Intellectual Property Law* (in progress)

## Professional Consulting Experience

I have written expert reports, been deposed, drafted briefs, designed, conducted and analyzed trademark and

other consumer perception surveys, counseled clients on USPTO matters, drafted license agreements, drafted settlement agreements, prepared counsel for oral argument and offered counsel on litigation strategy in a wide variety of intellectual property matters.

**Keystone Strategy LLC**, San Francisco and New York, December 2013 – present

> Function as a trademark and empirical survey expert and IP consultant in a number of trademark and patent matters.

**Franklyn IP Consulting**, San Francisco, 2000 – present

> I have served as an independent consultant and expert witness in numerous IP cases (including patent, trade secret, antitrust, copyright, trademark, and right of publicity) on behalf of individuals and corporations, including, among others:

**Representative Clients and Matters:**

OVERHEAD GARAGE DOOR INC.

OTIS MCCALLISTER

NEWMARK REALTY CAPITAL

BOBCAT

YETI

DEFENDER

ICANN

MAHINDRA (v. Jeep)

APPLE

AMAZON

THE COCA-COLA COMPANY

THE BUFFALO BILLS

ORACLE

FREEFLY SYSTEMS (MOVI)

ROCKWELL AUTOMATION

CROCS

DIRECTV

GREWAL

MERIT MEDICAL SYSTEMS

NOVADAQ

NUSENDA

POLO RALPH LAUREN

REINSDORF

SERVICE NOW

SPOTIFY

THE THINK GROUP

JOIN

KIMBERLY-CLARK

AMAZON

DIAGEO BRANDS

PALM RESTAURANTS

INTERNATIONAL OLYMPIC COMMITTEE (consultation for 2016 Olympics- trademarks and copyrights)

FAIRSEARCH.org (conducted consumer perception surveys in UK)

FACEBOOK

3-FORM CHROMA (3-D trademark)

POM WONDERFUL

BUGATTI (international trademark issues)

RAYTHEON (filed affidavits in 10 foreign countries re: PAVEWAY mark)

FORAY TECHNOLGIES

FLOWIL, INTERNATIONAL (SYLVANIA – international mark analysis)

HERBALIFE

ALLERGEN (BOTOX)

MAUI PINEAPPLE

CONVERSE

BELVEDERE VODKA

MOET HENNESEY

MICROSOFT

SONIA DAKAR COSMETICS

KING OF THAI NOODLES

LSI INDUSTRIES

PIZZA MAN

GoGo SPORTS

LEVI STRAUSS

NIKE

NISSAN (dealership franchises and co-branding analysis)

VOLKSWAGEN USA

ION MEDIA NETWORKS

PURITY COSMETICS

ESTATE OF SIR ARTHUR CONNAN DOYLE (protecting SHERLOCK HOLMES)

ESTATE OF WILLIAM CASTE (producer of Rosemary's Baby)

HARD ROCK CAFÉ (international licensing issues)

ING FERTILITY

FIRST NIAGRA INSURANCE

CRISTOFF (against TASTERS CHOICE (owned by NESTLE))

DIOPTI CS MEDICAL PRODUCTS WINDOW WORLD

BAD BOY INC (filed affidavits in several foreign countries) SILVERS (GOOGLE children's books)

DUFF (against True Religion Jeans) SUNDBERG

ISABELA'S KITCHEN

BIG ISLAND CANDIES

BLUE SHIELD OF CALIFORNIA

IGB ENERGY GROUP

HOOD RIVER DISTILLERIES

THE ROLL GROUP/Paramount Citrus (CUTIES brand oranges)

GERAWAN FARMS (PRIMA brand fruit)

GLIDEWELL Labs (BruxZir dental crown mark)

ROCKWELL INDUSTRIES

BOMBARDIER RECREATIONAL PRODUCTS

MAHINDRA

ALCON

HUBERT HANSEN FAMILY TRUST

SEAPORT HOTELS

FIX-IT AUTO

KITCHEN CAFÉ

FLORABAMA

LENS.COM

HYBRID ATHLETICS

HEARTLAND FOODS (SPLENDA)

EMERSON RADIO

BONDURANT HIGH PERFORMANCE DRIVING SCHOOL

**Prior Deposition, Court or Arbitration Testimony**

Chanel Inc V. WGACA LLC, et al., Case 1:18-cv-02253-LLS, June 2021 Deposition

Nike Inc. V. Vans Inc. TTAB Opposition No. 91253064, June 2021 Deposition

MGFB Properties Inc. v. Viacom CBS Inc, Case No. 5:19-cv-00257, District Court, N.D. Florida, April 2021

Emerson Radio Corporation v. Emerson Quiet Kool Co. Ltd., et al., Case 2:17-cv-05358-SDW-LDW, October 2020 Deposition

Hubert Hansen Family Trust v. Coca-Cola, San Diego County Superior Court, January 2020, No. 37-2016-00021046-CU-MC-CTL (Jury Trial Testimony and Deposition)

OGD Equip Co. v. Overhead Door Corp., Eastern District of Texas, November 2019, No. 4:17-cv-0898-ALM-KPJ (Deposition)

Fix Auto USA v. Mondofix Inc. , Montreal Arbitration, October 2019 (Arbitration Testimony)

FCA v. Mahindra, Eastern District of Michigan, June 2019, No. 2:2018cv12645, (Trial Testimony - ITC Matter; Deposition in both matters)

JLG v. BRP, Eastern District of Michigan, January 2019 2:16-cv-13386-gAD-SDD (Trial Testimony and Deposition)

Mitchell Hyman v. Linda Cummings-Ramone, WL 2447709 (Arbitration Testimony)

Coca-Cola v. Internal Revenue Service, DC Tax Court, 2018, Docket No. 31183-15 (Trial Testimony and Deposition)

Gary Ganzi et al v. Walter Ganzi, New York State Court, 2017 653074/2012 (Trial Testimony and Deposition)

Sound View v. Facebook, Northern District of California, 2017, No: 2:2017cv04275 (Deposition)

Rockwell v. Radwell, US International Trade Commission, 2018, Civil No. 15-5246(RBK/JS) (Deposition)

Rockwell v. Radwell, US District Court, District of New Jersey, 2018, Civil No. 1:15-cv-05246-rbk-js (Deposition)

Singh Management Co., v. Singh Building et al., Eastern District of Michigan, 2016, No: 2:2015cv11478 (Deposition and Arbitration Testimony)

Polo Ralph Lauren USA Holdings v. United States Polo Association, Southern District of New York, 2016, No. 1:2013cv07147 (Deposition)

Pom Wonderful v. Pur Pom, Federal Court Case in Central District of California, May 2016, CASE NO. CV 13–06917 MMM (CWx) (Deposition)

Reinsdorf v. Lavely & Singer, Los Angeles, March 2016 121003141440 (Deposition and Arbitration Testimony)

Gerawan v. Townsend, Townsend & Crew, Superior Court of the State of California – Fresno, 10cecg03427, December 2015, (Deposition)

BMC Software v. ServiceNow, Eastern District of Texas, December 2015, 2:14-CV-903-JRG (Deposition)

Novidaq v. Karl Storz, Northern District of California, July 2015, 333244 (Deposition)

Indacon v. Facebook, Eastern District of Texas, August 2014, SA-10-CA-00966-OLG (Deposition)

Major Brands v. Diageo, Missouri State Court, St. Louis, September 2014, No. 1322-CC00534 (Deposition)

Amazon v. IRS, Federal Tax Court, Seattle, November 2014, No. 17-72922 (Trial Testimony and Deposition)

Rembrandt v. Facebook, Eastern District of Virginia, July 2013, 1:13–CV–158 (Deposition)

Glidewell Labs v Keating, Southern District of California, 2012, SACV 11-1309-DOC ANX (Deposition)

FTC v Direct TV, United States District Court, for the Northern District of California San Francisco Division, 2016, 3:15-cv-01129 HSG (Deposition)

Sun Pacific Group v. Paramount Group, American Arbitration Association Commercial Arbitration Tribunal, 2012, 72/180/y/01187-11, (Deposition and Arbitration Testimony)

Millennium v. Reed Smith, New York State Court, New York City, November 2012 (Deposition)

Milton Okun v. Peter Morton, California Superior Court, Los Angeles, 2010, BC369660 (Deposition)

PWI v. Horizonte, US District Court, Southern District of Florida, 2009, 08-20738CIV-jordan\mcALLIEY (Deposition)

## Law Firm Experience

**Mayer Brown**, *Litigation Attorney*, Chicago, IL, 1991-1996

**United States District Court for the Eastern District of Michigan,** *Law Clerk to the Honorable John Feikens*, 1990 -1991

**Sonnenschein, Nath & Rosenthal**, *Summer Associate*, Chicago, IL, 1990

**O'Melveny & Myers**, *Summer Associate*, Los Angeles, CA, 1989

**Mayer Brown**, *Summer Associate*, Chicago, IL, 1988

## Presentations, Symposiums, and Conferences

*Non-traditional Trademarks in the United States,* Presented at the European Union Intellectual Property Office Conference in

Alicante Spain (May 2018)

*Tutorial on the Use of Empirical Surveys in United States Trademark Registration and Litigation,* Presented to Judges and staff of

the European Union Intellectual Property Office, in Alicante Spain (May 2018)

The McCarthy Institute Goes to Google: Trademark Law and its Challenges in 2018. Planned, organized, presented and

hosted annual conference on trademark law (February 2018).

*Northern Kentucky University Law Review Symposium.* Presented published research findings on native

advertising and consumer perceptions (March, 2017).

*The McCarthy Institute Goes to Seattle: Trademark Law and its Challenges in 2017.* Planned, organized, spoke, and

presented at trademark conference co-hosted by Microsoft & INTA and held at Amazon Corporate

Conference Center (February 17, 2017).

*The McCarthy Institute Goes to San Francisco: Trademark Law and its Challenges in 2015.* Planned, organized, spoke, and presented at trademark conference co-hosted by Microsoft & INTA and held at The University of San Francisco (September 26, 2015).

*Trademark Year in Review,* Los Angeles IP Lawyers Assoc. January, 2015

*New Paradigms in Patent Monetization and Damages,* Hanson & Bridget, 2015

*The McCarthy Institute Goes to London: Trademark Law and its Challenges in 2014.* Planned, organized, spoke, and presented empirical research on Internet search regulation at conference co-hosted by Microsoft and Oxford held at the British Library in London and at Oxford University (March 13-14, 2014).

*The Use of Surveys in Trademark Litigation,* University of Texas Law Review Symposium (January, 2014).

*The Purchase of Trademarks as Keywords,* University of Texas Law Review Symposium (January, 2014).

*Trademarks as Keywords: Much Ado About Something?* Oxford/NYU Empirical Trademark Conference, USPTO, Washington, D.C. (September 26, 2013).

*Patent Trolls,* Keynote Speaker, ABA IP Section Lunch, San Francisco (August, 2013).

*Trademarks as Keywords, Much Ado About Something?* Association of Law and Economics Annual Conference, Vanderbilt Law School (May 9, 2013).

*The McCarthy Institute Goes to L.A.: Trademark Law and its Challenges in 2013* Planned, organized, and spoke at conference co-hosted by Fox and Microsoft held at Fox Entertainment in Los Angeles (February 28, 2013).

*Presented Empirical scholarship on Internet search algorithms,* Stanford Law School (November, 2012).

*The McCarthy Institute Goes to New York City: Trademark Law and its Challenges in 2012.* Planned, organized, spoke, and presented on topics covering gTLDS, DMCA, and SOPA/PIPA legislation at conference co-hosted by Time Warner and Microsoft at Time Warner in New York (February 9, 2012).

*The McCarthy Institute Goes to Redmond: Trademark Law and its Challenges in 2011.* Planned, sponsored, moderated, and presented empirical research on keyword advertising, trademarks, and consumer perceptions of the online advertising environment at conference co-hosted by Microsoft held at Microsoft in Redmond, Washington. Organized panels on dilution; keyword advertising; Chinese trademark law; ICANN's planned roll-out of new gTLds; keynote address by J. Thomas McCarthy; Horacio

Gutierrez (Head of Global IP, Microsoft); and Judge Kong (Chief Judge, Chinese Supreme Court for

IP) (February, 2011)

Hosted Horacio Gutierrez (Head of IP-Global; Microsoft) in a discussion on IP in the cloud, USF School of

Law (October, 2010).

*Keywords, Trademarks and Consumer Perceptions: What do Consumers Really Want When They Use Trademark as Keyword*

*Search Terms?* USF School of Law Presentation with McCarthy Institute Academic Affiliates,

Professors David Hyman (University of Illinois School of Law) and Ben Edelman (Harvard Business

School) (November, 2010).

*The Right of Publicity in Film*, co-presenter with top in-house IP attorneys for PIXAR and LUCAS FILM at

ABA meeting, San Francisco (August, 2010).

*The Effect on Trademark Owners of ICANN's planned roll-out of new top-level generic domain names (gTLDs)*,

sponsored by the Center for Domain Name Abuse (CADA) meeting, San Francisco (June 2,

2010).

*Trademark Year in Review 2010*, Los Angeles Intellectual Property Lawyer's Meeting, Las Vegas (May, 2010).

*Trademark Year in Review 2010*, San Francisco Intellectual Property Lawyer's Meeting, Napa (May, 2010).

*Trademark Year in Review 2009*, California Bar Association IP Section Annual Meeting, San Diego (November

14, 2009).

*The Brand as Property: Trademark Law and its Challenges in the New Era,* organizer, moderator, and speaker;

international trademark law symposium co-sponsored by McCarthy Institute, Microsoft, WIPO

and Unitalen (a prominent Chinese IP law firm) (November 4, 2009).

*Trademark Use, Wonder Doctrine or Wrong Turn?* Vail Colorado IP Lawyers Association Retreat (January, 2009).

*INTA Conference*, Panelist on Trademark and Internet Blogging, Seattle (May, 2009).

*Symposium on Derivative Works and Fair Use in Copyright Law,* Speaker, moderator, and organizer, McCarthy

Institute for IP & Technology Law, USF School of Law (November 1, 2008).

*International Trademark and Copyright Law*, guest lecturer, St. Charles University, Prague (July,

2008). Speaker, California Bar Association Meeting, Intellectual Property Section, (November,

2008).

Speaker, International Association of Trademark Lawyers, Meeting in Aspen Colorado (January, 2009).

*Trademark Year in Review*, California Intellectual Property Lawyer's Association, Santa Barbara (May, 2008).

*Network Neutrality – What is It?* Symposium planner and moderator, University of San Francisco School of Law (January, 2008).

*Trademark Year in Review 2007*, San Francisco Intellectual Property Lawyers Association, Napa (May, 2007).

*Trademark Year in Review 2006*, Silicon Valley Intellectual Property Lawyers Association, Palo Alto (November,

2006).

*Trademark Trends*, California Intellectual Property Lawyers Conference, Santa Barbara (November, 2006).

*The Google Library Project: Fair Use or Misappropriation?* USF School of Law (October, 2006).

*International IP: Who Should be Responsible for Top-Level Domain Name Governance*, Speaker and Panel Moderator, Bay Area High Tech Conference, Stanford Law School (April, 2005).

*Trademark and Copyright Update 2005*, Andrews IP Conference, San Francisco (October, 2005).

*The Anti-Free-Rider Impulse in Intellectual Property Law*, Katz-Kiley Distinguished IP Lecturer, University of Houston Law School (November, 2004).

*Trends in Trademark Law*, Northern and Southern California Associations of Intellectual Property Attorneys, Palm Springs (June, 2005).

*Trademark Year in Review 2005*, Cooley, Gotlieb, San Francisco (June, 2005).

*The Right of Publicity and First Amendment*; panelist with Judge Alex Kozinski; Northern California Chapter of the Copyright Society of America (May, 2005).

*Trademark Update: 2004 Year in Review*, San Francisco Intellectual Property Annual Meeting, Lake Tahoe (June,

2004).

*Toward a New Understanding of Dilution and the Anti-Free Rider Impulse,* Silicon Valley Intellectual Property Lawyer's Association (October, 2003).

*Exploring the Anti-Free-Rider Impulse in American Dilution Law*, Salmon P. Chase College of Law Lecture Series (September, 2003).

*Symposium on Comparative Analysis of Business Method and Software Patenting in the European Union and the United States,* moderator and organizer; co-sponsored by the McCarthy Institute and Kilburn & Strode, a London IP firm (June, 2003).

*Symposium on Biotech Patent Issues*, moderator and organizer; co-sponsored by the McCarthy Institute and

Morrison Foerster (March, 2003).

*Victoria's Secret and Dastar: Remaking Trademark Law,* Los Angeles Association of IP Attorneys (June, 2003).

*The Right of Publicity and the First Amendment*, Golden Gate University IP Symposium, San Francisco (October, 2002).

*First Amendment Limits on the Right of Publicity*, ABA Intellectual Property Section Annual Meeting, Philadelphia

(June, 2002).


*The Boundaries of Language Commodification On-Line*, Northern Kentucky Law Review Symposium on

Trademark and Cyberlaw Issues (February, 2001).

*Symposium on Intellectual Property Law*, moderator and coordinator, Northern Kentucky Law Review (February, 2000).

*Symposium on the Third Restatement of Torts,* moderator, Northern Kentucky Law Review (February, 1999).

*Symposium on the Regulation of Media Violence & the First Amendment*, moderator and coordinator, Northern

Kentucky Law Review (November, 1999).


*Trends in Mass Tort Litigation*, Panel on Mass Tort Litigation Joint Meeting of ABA Products Liability and

Litigation Sections, Dallas (April, 1999).

# APPENDIX B

**SHOW ALL**

**S0.** We are conducting a short opinion survey for Halsted Strategy Group, an independent research firm. We anticipate that the survey will take approximately 5 to 10 minutes, and we would like you to complete the survey in one sitting. If you usually wear contact lenses or eyeglasses when you use a mobile device, tablet, or computer and are not wearing them, please put them on now.

**ASK ALL**
**SINGLE PUNCH**
**RANDOMIZE ORDER**
**S1. What is your gender?**

1. Male
2. Female

**ASK ALL**
**OPEN END**
**S2. What is your age?**

**OPEN ENDED TEXT BOX**
**NUMERIC VALIDATION, TERMINATE IF RESPONDENT IS NOT 18 YEARS OF AGE OR OLDER**

**ASK ALL**
**SINGLE PUNCH**
**S3.** Where do you live most of the year?

1. Africa or the Middle East
2. Asia
3. Australia or New Zealand
4. Canada
5. Central or South America
6. Europe
7. Mexico
8. United States
9. Somewhere else
10. Don't know

**TERMINATE IF RESPONDENT DOES NOT SELECT "UNITED STATES"**

**ASK ALL**

**DROPDOWN, SINGLE PUNCH**
**S4.** In what state do you live most of the year?

**INSERT DROPDOWN LIST OF 50 STATES AND DISTRICT OF COLUMBIA**


**ASK ALL**
**SINGLE PUNCH, RANDOMIZE 1-6**
**S5.** What order are these colors in? (Note, the image may take a few seconds to load.)



1. Green, red, blue, yellow
2. Blue, red, green, yellow
3. Red, yellow, green, blue
4. Yellow, green, blue, red
5. Green, blue, red, yellow
6. Blue, yellow, green, red
7. None of the above
8. Don't know

<span style="color:red">**TERMINATE IF RESPONDENT SELECTS 2-8**</span>


<div style="background:#1f3864;color:white;text-align:center;font-weight:bold;padding:6px;">INTRODUCTION</div>

**SHOW ALL**

A1. The next questions are about a term that <u>may</u> or <u>may not</u> be a brand name. Please indicate whether you <u>have</u> or <u>have not</u> seen or heard of a brand by this name.


We only are interested in your opinions and beliefs. If you do not know the answer to a question or do not have an opinion or belief, please indicate this.


**ASK ALL**

**SINGLE PUNCH**

A2. Do you agree to answer all survey questions on your own, without asking anyone else for help or referring to reference materials or the internet?

1. Yes, I agree
2. No, I do not agree

**TERMINATE IF RESPONDENT SELECTS 2.**

<div style="background-color:#1F3864;color:white;text-align:center;padding:8px;">

**QUESTIONNAIRE**

</div>

**HID_CELL. RANDOMLY ASSIGN RESPONDENT TO ONE OF THREE CELLS. CREATE VARIABLE TO DENOTE CELL**

- **CELL 1 – BLOCK**
- **CELL 2 – TURBOTAX**
- **CELL 3 – SPHERE TAXES**

**ASK ALL**
**SINGLE PUNCH**
**B1.** Have you seen or heard of **INSERT BRAND** as a brand?

1. Yes, have seen or heard of this as a brand
2. No, have not seen or heard of this as a brand
3. Don't know

**ASK IF B1 = 1**
**OPEN END**
**B2.** In the prior question, you mentioned that you had seen or heard of **INSERT BRAND**. What products or services are offered under the brand name **INSERT BRAND**? Please answer with as much detail as possible.

**OPEN END PARAGRAPH FORM**

**ASK ALL**

**MATRIX**

**B3.** Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don't know for each item.

**COLUMNS**

1. Yes
2. No

3. Don't Know

**ROWS (RANDOMIZE)**
1. Merchant payment processing services
2. Mobile or online banking services and payment cards
3. Mobile stock and cryptocurrency trading, such as a mobile financial platform that allows you to buy and sell Bitcoin
4. Mobile or online tax preparation, or mobile or online tax preparation software
5. Music streaming services
6. A mobile app that allows you to send and receive money (other than through auto-pay for recurring bills) either directly through the app or a website
7. A mobile app to purchase tickets to a sporting event or concert
8. A mobile app to have food delivered to your home

**ASK ALL**

**MATRIX**

**B4.** And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item.

**COLUMNS**
1. Yes
2. No
3. Don't Know

**ROWS (RANDOMIZE)**
1. Merchant payment processing services
2. Mobile or online banking services and payment cards
3. Mobile stock and cryptocurrency trading, such as a mobile financial platform that allows you to buy and sell Bitcoin
4. Mobile or online tax preparation, or mobile or online tax preparation software
5. Music streaming services
6. A mobile app that allows you to send and receive money (other than through auto-pay for recurring bills) either directly through the app or a website
7. A mobile app to purchase tickets to a sporting event or concert
8. A mobile app to have food delivered to your home

**C0. Thank you for your help with this survey.**

# APPENDIX C

S0.

We are conducting a short opinion survey for Halsted Strategy Group, an independent research firm. We anticipate that the survey will take approximately 5 to 10 minutes, and we would like you to complete the survey in one sitting. If you usually wear contact lenses or eyeglasses when you use a mobile device, tablet, or computer and are not wearing them, please put them on now.

[ Next ]

S1.

What is your gender?

○ Male

○ Female

[ Next ]

S2.

What is your age?

[                    ]

[ Next ]

S3.

Where do you live most of the year?

○ Africa or the Middle East

○ Asia

○ Australia or New Zealand

○ Canada

○ Central or South America

○ Europe

○ Mexico

○ United States

○ Somewhere else

○ Don't know

Next

S4.

In what state do you live most of the year?

-- Please Select --

Next

S5.

What order are these colors in? (Note, the image may take a few seconds to load.)



○ Blue, red, green, yellow

○ Blue, yellow, green, red

○ Red, yellow, green, blue

○ Yellow, green, blue, red

○ Green, blue, red, yellow

○ Green, red, blue, yellow

○ None of the above

○ Don't know

Next

A1.

The next questions are about a term that <u>may</u> or <u>may not</u> be a brand name. Please indicate whether you <u>have</u> or <u>have not</u> seen or heard of a brand by this name.

We only are interested in your opinions and beliefs. If you do not know the answer to a question or do not have an opinion or belief, please indicate this.

Next

A2.

Do you agree to answer all survey questions on your own, without asking anyone else for help or referring to reference materials or the internet?

○ Yes, I agree

○ No, I do not agree

Next

**B1_BLOCK.**

Have you seen or heard of **BLOCK** as a brand?

○ Yes, have seen or heard of this as a brand

○ No, have not seen or heard of this as a brand

○ Don't know

Next

**B1_TURBOTAX.**

Have you seen or heard of **TURBOTAX** as a brand?

○ Yes, have seen or heard of this as a brand

○ No, have not seen or heard of this as a brand

○ Don't know

Next

**B1_SPHERE_TAXES.**

Have you seen or heard of **SPHERE TAXES** as a brand?

○ Yes, have seen or heard of this as a brand

○ No, have not seen or heard of this as a brand

○ Don't know

Next

B2_BLOCK.

In the prior question, you mentioned that you had seen or heard of **BLOCK**.   What products or services are offered under the brand name **BLOCK**?   Please answer with as much detail as possible.

Next

B2_TURBOTAX.

In the prior question, you mentioned that you had seen or heard of **TURBOTAX**.   What products or services are offered under the brand name **TURBOTAX**?   Please answer with as much detail as possible.

Next

B2_SPHERE_TAXES.

In the prior question, you mentioned that you had seen or heard of **SPHERE TAXES**. What products or services are offered under the brand name **SPHERE TAXES**? Please answer with as much detail as possible.

[text box]

[Next]

B3.

Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don't know for each item.

|  | Yes | No | Don't Know |
|---|---|---|---|
| A mobile app to have food delivered to your home | ○ | ○ | ○ |
| A mobile app that allows you to send and receive money (other than through auto-pay for recurring bills) either directly through the app or a website | ○ | ○ | ○ |
| Mobile or online tax preparation, or mobile or online tax preparation software | ○ | ○ | ○ |
| Music streaming services | ○ | ○ | ○ |
| Merchant payment processing services | ○ | ○ | ○ |
| Mobile stock and cryptocurrency trading, such as a mobile financial platform that allows you to buy and sell Bitcoin | ○ | ○ | ○ |
| A mobile app to purchase tickets to a sporting event or concert | ○ | ○ | ○ |
| Mobile or online banking services and payment cards | ○ | ○ | ○ |

[Next]

B4.

And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item.

| | Yes | No | Don't Know |
|---|---|---|---|
| Mobile or online tax preparation, or mobile or online tax preparation software | ○ | ○ | ○ |
| A mobile app to have food delivered to your home | ○ | ○ | ○ |
| Merchant payment processing services | ○ | ○ | ○ |
| A mobile app that allows you to send and receive money (other than through auto-pay for recurring bills) either directly through the app or a website | ○ | ○ | ○ |
| Mobile stock and cryptocurrency trading, such as a mobile financial platform that allows you to buy and sell Bitcoin | ○ | ○ | ○ |
| A mobile app to purchase tickets to a sporting event or concert | ○ | ○ | ○ |
| Music streaming services | ○ | ○ | ○ |
| Mobile or online banking services and payment cards | ○ | ○ | ○ |

Next

## C1.

Thank you for your help with this survey.

Next

# APPENDIX D

| Vrid | Date_Started | Date_Completed |
|------|--------------|----------------|

| Response ID | Start Date | End Date |
|-------------|------------|----------|
| 23 | 2/1/2022 8:06:45 AM | 2/1/2022 8:09:01 AM |
| 24 | 2/1/2022 8:06:53 AM | 2/1/2022 8:08:11 AM |
| 25 | 2/1/2022 8:06:59 AM | 2/1/2022 8:08:22 AM |
| 26 | 2/1/2022 8:07:09 AM | 2/1/2022 8:10:13 AM |
| 27 | 2/1/2022 8:07:09 AM | 2/1/2022 8:09:00 AM |
| 28 | 2/1/2022 8:07:24 AM | 2/1/2022 8:09:49 AM |
| 29 | 2/1/2022 8:07:18 AM | 2/1/2022 8:09:34 AM |
| 31 | 2/1/2022 8:07:36 AM | 2/1/2022 8:09:45 AM |
| 32 | 2/1/2022 8:07:34 AM | 2/1/2022 8:08:51 AM |
| 33 | 2/1/2022 8:07:46 AM | 2/1/2022 8:09:58 AM |
| 34 | 2/1/2022 8:07:48 AM | 2/1/2022 8:10:00 AM |
| 35 | 2/1/2022 8:07:44 AM | 2/1/2022 8:11:20 AM |
| 36 | 2/1/2022 8:07:51 AM | 2/1/2022 8:11:51 AM |
| 37 | 2/1/2022 8:07:51 AM | 2/1/2022 8:10:00 AM |
| 39 | 2/1/2022 8:07:54 AM | 2/1/2022 8:10:02 AM |
| 41 | 2/1/2022 8:07:59 AM | 2/1/2022 8:09:31 AM |
| 42 | 2/1/2022 8:08:04 AM | 2/1/2022 8:10:05 AM |
| 43 | 2/1/2022 8:08:02 AM | 2/1/2022 8:09:16 AM |
| 44 | 2/1/2022 8:08:12 AM | 2/1/2022 8:10:57 AM |
| 45 | 2/1/2022 8:08:11 AM | 2/1/2022 8:11:07 AM |
| 46 | 2/1/2022 8:08:16 AM | 2/1/2022 8:09:20 AM |
| 47 | 2/1/2022 8:08:11 AM | 2/1/2022 8:10:02 AM |
| 48 | 2/1/2022 8:08:14 AM | 2/1/2022 8:11:51 AM |
| 51 | 2/1/2022 8:08:31 AM | 2/1/2022 8:09:40 AM |
| 53 | 2/1/2022 8:08:35 AM | 2/1/2022 8:11:03 AM |
| 54 | 2/1/2022 8:08:43 AM | 2/1/2022 8:11:09 AM |
| 55 | 2/1/2022 8:08:43 AM | 2/1/2022 8:10:40 AM |
| 57 | 2/1/2022 8:08:48 AM | 2/1/2022 8:11:37 AM |
| 58 | 2/1/2022 8:08:49 AM | 2/1/2022 8:11:57 AM |
| 59 | 2/1/2022 8:08:59 AM | 2/1/2022 8:11:04 AM |
| 60 | 2/1/2022 8:08:49 AM | 2/1/2022 8:10:04 AM |
| 61 | 2/1/2022 8:08:57 AM | 2/1/2022 8:11:12 AM |
| 62 | 2/1/2022 8:09:09 AM | 2/1/2022 8:10:50 AM |
| 64 | 2/1/2022 8:09:03 AM | 2/1/2022 8:10:59 AM |
| 65 | 2/1/2022 8:09:01 AM | 2/1/2022 8:10:41 AM |

| | | |
|---|---|---|
| 66 | 2/1/2022 8:09:05 AM | 2/1/2022 8:10:54 AM |
| 67 | 2/1/2022 8:09:19 AM | 2/1/2022 8:10:44 AM |
| 68 | 2/1/2022 8:09:18 AM | 2/1/2022 8:11:11 AM |
| 69 | 2/1/2022 8:09:29 AM | 2/1/2022 8:11:34 AM |
| 72 | 2/1/2022 8:09:34 AM | 2/1/2022 8:11:47 AM |
| 74 | 2/1/2022 8:09:40 AM | 2/1/2022 8:12:14 AM |
| 75 | 2/1/2022 8:09:40 AM | 2/1/2022 8:11:24 AM |
| 76 | 2/1/2022 8:09:38 AM | 2/1/2022 8:11:06 AM |
| 77 | 2/1/2022 8:09:51 AM | 2/1/2022 8:11:33 AM |
| 78 | 2/1/2022 8:09:44 AM | 2/1/2022 8:11:10 AM |
| 79 | 2/1/2022 8:09:52 AM | 2/1/2022 8:12:08 AM |
| 80 | 2/1/2022 8:09:58 AM | 2/1/2022 8:12:14 AM |
| 81 | 2/1/2022 8:09:58 AM | 2/1/2022 8:11:13 AM |
| 82 | 2/1/2022 8:10:09 AM | 2/1/2022 8:12:15 AM |
| 83 | 2/1/2022 8:09:57 AM | 2/1/2022 8:12:42 AM |
| 84 | 2/1/2022 8:10:11 AM | 2/1/2022 8:14:25 AM |
| 85 | 2/1/2022 8:09:59 AM | 2/1/2022 8:12:32 AM |
| 86 | 2/1/2022 8:10:17 AM | 2/1/2022 8:12:54 AM |
| 87 | 2/1/2022 8:10:12 AM | 2/1/2022 8:14:11 AM |
| 88 | 2/1/2022 8:10:24 AM | 2/1/2022 8:13:42 AM |
| 89 | 2/1/2022 8:10:25 AM | 2/1/2022 8:12:38 AM |
| 90 | 2/1/2022 8:10:11 AM | 2/1/2022 8:11:30 AM |
| 92 | 2/1/2022 8:10:28 AM | 2/1/2022 8:12:25 AM |
| 93 | 2/1/2022 8:10:37 AM | 2/1/2022 8:13:36 AM |
| 94 | 2/1/2022 8:10:38 AM | 2/1/2022 8:11:58 AM |
| 95 | 2/1/2022 8:10:42 AM | 2/1/2022 8:14:41 AM |
| 96 | 2/1/2022 8:10:50 AM | 2/1/2022 8:15:07 AM |
| 97 | 2/1/2022 8:10:51 AM | 2/1/2022 8:15:18 AM |
| 98 | 2/1/2022 8:10:41 AM | 2/1/2022 8:17:30 AM |
| 99 | 2/1/2022 8:10:52 AM | 2/1/2022 8:14:52 AM |
| 100 | 2/1/2022 8:10:54 AM | 2/1/2022 8:17:05 AM |
| 102 | 2/1/2022 8:11:02 AM | 2/1/2022 8:13:14 AM |
| 103 | 2/1/2022 8:10:58 AM | 2/1/2022 8:13:23 AM |
| 104 | 2/1/2022 8:11:05 AM | 2/1/2022 8:12:59 AM |
| 105 | 2/1/2022 8:10:58 AM | 2/1/2022 8:13:23 AM |
| 106 | 2/1/2022 8:11:05 AM | 2/1/2022 8:13:02 AM |
| 107 | 2/1/2022 8:11:11 AM | 2/1/2022 8:13:10 AM |
| 109 | 2/1/2022 8:11:16 AM | 2/1/2022 8:13:15 AM |
| 110 | 2/1/2022 8:11:20 AM | 2/1/2022 8:14:06 AM |
| 111 | 2/1/2022 8:11:20 AM | 2/1/2022 8:12:46 AM |
| 112 | 2/1/2022 8:11:11 AM | 2/1/2022 8:12:54 AM |
| 113 | 2/1/2022 8:11:21 AM | 2/1/2022 8:13:01 AM |
| 114 | 2/1/2022 8:11:22 AM | 2/1/2022 8:13:11 AM |
| 115 | 2/1/2022 8:11:23 AM | 2/1/2022 8:13:13 AM |
| 116 | 2/1/2022 8:11:26 AM | 2/1/2022 8:13:54 AM |
| 117 | 2/1/2022 8:11:31 AM | 2/1/2022 8:14:08 AM |
| 118 | 2/1/2022 8:11:32 AM | 2/1/2022 8:13:45 AM |

| | | |
|---|---|---|
| 119 | 2/1/2022 8:11:36 AM | 2/1/2022 8:13:40 AM |
| 120 | 2/1/2022 8:11:34 AM | 2/1/2022 8:14:50 AM |
| 121 | 2/1/2022 8:11:38 AM | 2/1/2022 8:13:29 AM |
| 122 | 2/1/2022 8:11:42 AM | 2/1/2022 8:13:49 AM |
| 123 | 2/1/2022 8:11:46 AM | 2/1/2022 8:15:49 AM |
| 124 | 2/1/2022 8:11:46 AM | 2/1/2022 8:13:48 AM |
| 125 | 2/1/2022 8:11:37 AM | 2/1/2022 8:13:20 AM |
| 126 | 2/1/2022 8:11:45 AM | 2/1/2022 8:13:22 AM |
| 128 | 2/1/2022 8:11:49 AM | 2/1/2022 8:13:40 AM |
| 129 | 2/1/2022 8:11:52 AM | 2/1/2022 8:14:36 AM |
| 130 | 2/1/2022 8:11:53 AM | 2/1/2022 8:13:35 AM |
| 131 | 2/1/2022 8:11:54 AM | 2/1/2022 8:15:11 AM |
| 132 | 2/1/2022 8:11:56 AM | 2/1/2022 8:14:35 AM |
| 134 | 2/1/2022 8:11:56 AM | 2/1/2022 8:13:33 AM |
| 136 | 2/1/2022 8:12:03 AM | 2/1/2022 8:13:38 AM |
| 137 | 2/1/2022 8:12:13 AM | 2/1/2022 8:14:17 AM |
| 138 | 2/1/2022 8:12:12 AM | 2/1/2022 8:14:11 AM |
| 139 | 2/1/2022 8:12:08 AM | 2/1/2022 8:14:17 AM |
| 140 | 2/1/2022 8:12:12 AM | 2/1/2022 8:14:07 AM |
| 141 | 2/1/2022 8:12:15 AM | 2/1/2022 8:13:59 AM |
| 142 | 2/1/2022 8:12:17 AM | 2/1/2022 8:15:03 AM |
| 143 | 2/1/2022 8:12:19 AM | 2/1/2022 8:14:32 AM |
| 144 | 2/1/2022 8:12:26 AM | 2/1/2022 8:13:44 AM |
| 145 | 2/1/2022 8:12:23 AM | 2/1/2022 8:13:39 AM |
| 146 | 2/1/2022 8:12:25 AM | 2/1/2022 8:14:50 AM |
| 147 | 2/1/2022 8:12:31 AM | 2/1/2022 8:14:41 AM |
| 148 | 2/1/2022 8:12:41 AM | 2/1/2022 8:15:01 AM |
| 149 | 2/1/2022 8:12:42 AM | 2/1/2022 8:14:17 AM |
| 150 | 2/1/2022 8:12:40 AM | 2/1/2022 8:15:02 AM |
| 151 | 2/1/2022 8:12:42 AM | 2/1/2022 8:15:00 AM |
| 152 | 2/1/2022 8:12:35 AM | 2/1/2022 8:14:12 AM |
| 153 | 2/1/2022 8:12:32 AM | 2/1/2022 8:15:19 AM |
| 154 | 2/1/2022 8:12:42 AM | 2/1/2022 8:16:21 AM |
| 155 | 2/1/2022 8:12:48 AM | 2/1/2022 8:15:02 AM |
| 156 | 2/1/2022 8:12:48 AM | 2/1/2022 8:15:20 AM |
| 157 | 2/1/2022 8:12:53 AM | 2/1/2022 8:14:19 AM |
| 158 | 2/1/2022 8:12:55 AM | 2/1/2022 8:15:43 AM |
| 159 | 2/1/2022 8:12:55 AM | 2/1/2022 8:14:07 AM |
| 161 | 2/1/2022 8:12:49 AM | 2/1/2022 8:15:08 AM |
| 163 | 2/1/2022 8:13:07 AM | 2/1/2022 8:17:52 AM |
| 164 | 2/1/2022 8:13:03 AM | 2/1/2022 8:16:19 AM |
| 165 | 2/1/2022 8:13:01 AM | 2/1/2022 8:14:37 AM |
| 166 | 2/1/2022 8:13:04 AM | 2/1/2022 8:15:13 AM |
| 167 | 2/1/2022 8:13:10 AM | 2/1/2022 8:15:31 AM |
| 168 | 2/1/2022 8:13:12 AM | 2/1/2022 8:14:40 AM |
| 169 | 2/1/2022 8:13:01 AM | 2/1/2022 8:17:14 AM |
| 170 | 2/1/2022 8:13:13 AM | 2/1/2022 8:15:43 AM |

| | | |
|---|---|---|
| 172 | 2/1/2022 8:13:15 AM | 2/1/2022 8:15:30 AM |
| 173 | 2/1/2022 8:13:19 AM | 2/1/2022 8:16:47 AM |
| 174 | 2/1/2022 8:13:22 AM | 2/1/2022 8:15:44 AM |
| 177 | 2/1/2022 8:13:24 AM | 2/1/2022 8:15:21 AM |
| 178 | 2/1/2022 8:13:17 AM | 2/1/2022 8:15:34 AM |
| 179 | 2/1/2022 8:13:28 AM | 2/1/2022 8:18:59 AM |
| 180 | 2/1/2022 8:13:24 AM | 2/1/2022 8:14:46 AM |
| 181 | 2/1/2022 8:13:28 AM | 2/1/2022 8:14:58 AM |
| 182 | 2/1/2022 8:13:28 AM | 2/1/2022 8:15:34 AM |
| 183 | 2/1/2022 8:13:29 AM | 2/1/2022 8:15:32 AM |
| 185 | 2/1/2022 8:13:21 AM | 2/1/2022 8:15:00 AM |
| 186 | 2/1/2022 8:13:29 AM | 2/1/2022 8:19:24 AM |
| 187 | 2/1/2022 8:13:36 AM | 2/1/2022 8:14:53 AM |
| 188 | 2/1/2022 8:13:32 AM | 2/1/2022 8:15:32 AM |
| 189 | 2/1/2022 8:13:32 AM | 2/1/2022 8:18:23 AM |
| 190 | 2/1/2022 8:13:36 AM | 2/1/2022 8:15:54 AM |
| 191 | 2/1/2022 8:13:40 AM | 2/1/2022 8:17:32 AM |
| 192 | 2/1/2022 8:13:30 AM | 2/1/2022 8:15:39 AM |
| 193 | 2/1/2022 8:13:34 AM | 2/1/2022 8:15:32 AM |
| 195 | 2/1/2022 8:13:39 AM | 2/1/2022 8:19:16 AM |
| 196 | 2/1/2022 8:13:43 AM | 2/1/2022 8:20:52 AM |
| 197 | 2/1/2022 8:13:49 AM | 2/1/2022 8:15:22 AM |
| 199 | 2/1/2022 8:13:43 AM | 2/1/2022 8:16:42 AM |
| 200 | 2/1/2022 8:13:49 AM | 2/1/2022 8:14:59 AM |
| 201 | 2/1/2022 8:13:50 AM | 2/1/2022 8:17:44 AM |
| 202 | 2/1/2022 8:13:51 AM | 2/1/2022 8:16:25 AM |
| 204 | 2/1/2022 8:13:53 AM | 2/1/2022 8:17:15 AM |
| 205 | 2/1/2022 8:13:47 AM | 2/1/2022 8:15:35 AM |
| 206 | 2/1/2022 8:13:50 AM | 2/1/2022 8:15:52 AM |
| 208 | 2/1/2022 8:14:01 AM | 2/1/2022 8:16:19 AM |
| 210 | 2/1/2022 8:14:05 AM | 2/1/2022 8:15:09 AM |
| 213 | 2/1/2022 8:14:07 AM | 2/1/2022 8:16:06 AM |
| 214 | 2/1/2022 8:14:06 AM | 2/1/2022 8:15:16 AM |
| 215 | 2/1/2022 8:14:11 AM | 2/1/2022 8:16:01 AM |
| 217 | 2/1/2022 8:14:13 AM | 2/1/2022 8:16:25 AM |
| 218 | 2/1/2022 8:14:13 AM | 2/1/2022 8:16:50 AM |
| 219 | 2/1/2022 8:14:13 AM | 2/1/2022 8:16:55 AM |
| 221 | 2/1/2022 8:14:16 AM | 2/1/2022 8:16:23 AM |
| 223 | 2/1/2022 8:14:30 AM | 2/1/2022 8:16:25 AM |
| 224 | 2/1/2022 8:14:26 AM | 2/1/2022 8:15:53 AM |
| 225 | 2/1/2022 8:14:28 AM | 2/1/2022 8:16:00 AM |
| 226 | 2/1/2022 8:14:30 AM | 2/1/2022 8:17:17 AM |
| 227 | 2/1/2022 8:14:31 AM | 2/1/2022 8:16:43 AM |
| 228 | 2/1/2022 8:14:28 AM | 2/1/2022 8:16:38 AM |
| 229 | 2/1/2022 8:14:35 AM | 2/1/2022 8:17:07 AM |
| 230 | 2/1/2022 8:14:46 AM | 2/1/2022 8:17:20 AM |
| 231 | 2/1/2022 8:14:49 AM | 2/1/2022 8:16:06 AM |

| | | |
|---|---|---|
| 233 | 2/1/2022 8:14:45 AM | 2/1/2022 8:20:02 AM |
| 234 | 2/1/2022 8:14:48 AM | 2/1/2022 8:18:12 AM |
| 235 | 2/1/2022 8:14:49 AM | 2/1/2022 8:17:25 AM |
| 237 | 2/1/2022 8:14:42 AM | 2/1/2022 8:17:00 AM |
| 238 | 2/1/2022 8:14:47 AM | 2/1/2022 8:20:14 AM |
| 239 | 2/1/2022 8:14:50 AM | 2/1/2022 8:17:16 AM |
| 240 | 2/1/2022 8:14:49 AM | 2/1/2022 8:16:29 AM |
| 241 | 2/1/2022 8:14:33 AM | 2/1/2022 8:17:19 AM |
| 242 | 2/1/2022 8:15:02 AM | 2/1/2022 8:17:55 AM |
| 243 | 2/1/2022 8:14:56 AM | 2/1/2022 8:16:56 AM |
| 244 | 2/1/2022 8:14:57 AM | 2/1/2022 8:16:21 AM |
| 246 | 2/1/2022 8:14:55 AM | 2/1/2022 8:18:45 AM |
| 247 | 2/1/2022 8:15:00 AM | 2/1/2022 8:17:25 AM |
| 248 | 2/1/2022 8:14:46 AM | 2/1/2022 8:18:33 AM |
| 249 | 2/1/2022 8:14:57 AM | 2/1/2022 8:16:38 AM |
| 250 | 2/1/2022 8:14:57 AM | 2/1/2022 8:18:27 AM |
| 251 | 2/1/2022 8:15:02 AM | 2/1/2022 8:16:37 AM |
| 252 | 2/1/2022 8:15:08 AM | 2/1/2022 8:16:33 AM |
| 254 | 2/1/2022 8:15:16 AM | 2/1/2022 8:17:59 AM |
| 255 | 2/1/2022 8:15:09 AM | 2/1/2022 8:16:27 AM |
| 256 | 2/1/2022 8:15:10 AM | 2/1/2022 8:16:59 AM |
| 257 | 2/1/2022 8:15:14 AM | 2/1/2022 8:16:44 AM |
| 258 | 2/1/2022 8:15:24 AM | 2/1/2022 8:19:27 AM |
| 259 | 2/1/2022 8:15:27 AM | 2/1/2022 8:17:24 AM |
| 260 | 2/1/2022 8:15:28 AM | 2/1/2022 8:17:22 AM |
| 261 | 2/1/2022 8:15:27 AM | 2/1/2022 8:18:23 AM |
| 264 | 2/1/2022 8:15:34 AM | 2/1/2022 8:18:47 AM |
| 265 | 2/1/2022 8:15:33 AM | 2/1/2022 8:17:38 AM |
| 266 | 2/1/2022 8:15:36 AM | 2/1/2022 8:17:54 AM |
| 267 | 2/1/2022 8:15:35 AM | 2/1/2022 8:17:44 AM |
| 268 | 2/1/2022 8:15:45 AM | 2/1/2022 8:17:20 AM |
| 269 | 2/1/2022 8:15:45 AM | 2/1/2022 8:20:06 AM |
| 270 | 2/1/2022 8:15:46 AM | 2/1/2022 8:18:00 AM |
| 271 | 2/1/2022 8:15:46 AM | 2/1/2022 8:20:06 AM |
| 272 | 2/1/2022 8:15:47 AM | 2/1/2022 8:17:12 AM |
| 273 | 2/1/2022 8:15:49 AM | 2/1/2022 8:19:03 AM |
| 274 | 2/1/2022 8:15:50 AM | 2/1/2022 8:17:36 AM |
| 275 | 2/1/2022 8:15:38 AM | 2/1/2022 8:18:24 AM |
| 277 | 2/1/2022 8:15:53 AM | 2/1/2022 8:19:07 AM |
| 278 | 2/1/2022 8:15:57 AM | 2/1/2022 8:19:04 AM |
| 279 | 2/1/2022 8:15:58 AM | 2/1/2022 8:18:21 AM |
| 280 | 2/1/2022 8:16:02 AM | 2/1/2022 8:18:05 AM |
| 282 | 2/1/2022 8:15:56 AM | 2/1/2022 8:17:51 AM |
| 283 | 2/1/2022 8:16:00 AM | 2/1/2022 8:20:05 AM |
| 284 | 2/1/2022 8:16:06 AM | 2/1/2022 8:21:21 AM |
| 285 | 2/1/2022 8:16:05 AM | 2/1/2022 8:20:13 AM |
| 287 | 2/1/2022 8:16:08 AM | 2/1/2022 8:18:07 AM |

| | | |
|---|---|---|
| 288 | 2/1/2022 8:16:14 AM | 2/1/2022 8:18:44 AM |
| 289 | 2/1/2022 8:16:17 AM | 2/1/2022 8:18:14 AM |
| 290 | 2/1/2022 8:16:17 AM | 2/1/2022 8:17:57 AM |
| 291 | 2/1/2022 8:16:18 AM | 2/1/2022 8:17:33 AM |
| 292 | 2/1/2022 8:16:03 AM | 2/1/2022 8:17:32 AM |
| 293 | 2/1/2022 8:16:19 AM | 2/1/2022 8:18:05 AM |
| 295 | 2/1/2022 8:16:16 AM | 2/1/2022 8:18:07 AM |
| 296 | 2/1/2022 8:16:21 AM | 2/1/2022 8:17:44 AM |
| 297 | 2/1/2022 8:16:22 AM | 2/1/2022 8:19:25 AM |
| 298 | 2/1/2022 8:16:27 AM | 2/1/2022 8:18:15 AM |
| 299 | 2/1/2022 8:16:24 AM | 2/1/2022 8:18:25 AM |
| 300 | 2/1/2022 8:16:29 AM | 2/1/2022 8:22:09 AM |
| 301 | 2/1/2022 8:16:30 AM | 2/1/2022 8:19:53 AM |
| 303 | 2/1/2022 8:16:22 AM | 2/1/2022 8:17:43 AM |
| 304 | 2/1/2022 8:16:20 AM | 2/1/2022 8:21:25 AM |
| 305 | 2/1/2022 8:16:40 AM | 2/1/2022 8:18:16 AM |
| 306 | 2/1/2022 8:16:42 AM | 2/1/2022 8:18:27 AM |
| 307 | 2/1/2022 8:16:43 AM | 2/1/2022 8:19:55 AM |
| 308 | 2/1/2022 8:16:44 AM | 2/1/2022 8:19:48 AM |
| 309 | 2/1/2022 8:16:47 AM | 2/1/2022 8:18:38 AM |
| 312 | 2/1/2022 8:16:47 AM | 2/1/2022 8:21:06 AM |
| 313 | 2/1/2022 8:16:37 AM | 2/1/2022 8:18:49 AM |
| 314 | 2/1/2022 8:16:39 AM | 2/1/2022 8:18:48 AM |
| 315 | 2/1/2022 8:16:44 AM | 2/1/2022 8:19:06 AM |
| 316 | 2/1/2022 8:16:54 AM | 2/1/2022 8:18:57 AM |
| 317 | 2/1/2022 8:16:53 AM | 2/1/2022 8:19:08 AM |
| 318 | 2/1/2022 8:16:50 AM | 2/1/2022 8:18:35 AM |
| 320 | 2/1/2022 8:17:00 AM | 2/1/2022 8:19:48 AM |
| 321 | 2/1/2022 8:17:01 AM | 2/1/2022 8:18:52 AM |
| 322 | 2/1/2022 8:17:01 AM | 2/1/2022 8:19:43 AM |
| 323 | 2/1/2022 8:17:01 AM | 2/1/2022 8:19:06 AM |
| 324 | 2/1/2022 8:16:52 AM | 2/1/2022 8:19:13 AM |
| 325 | 2/1/2022 8:16:53 AM | 2/1/2022 8:23:58 AM |
| 326 | 2/1/2022 8:16:59 AM | 2/1/2022 8:19:28 AM |
| 327 | 2/1/2022 8:17:00 AM | 2/1/2022 8:18:16 AM |
| 329 | 2/1/2022 8:17:06 AM | 2/1/2022 8:19:28 AM |
| 330 | 2/1/2022 8:17:10 AM | 2/1/2022 8:19:19 AM |
| 332 | 2/1/2022 8:17:05 AM | 2/1/2022 8:18:40 AM |
| 333 | 2/1/2022 8:17:12 AM | 2/1/2022 8:18:57 AM |
| 334 | 2/1/2022 8:17:04 AM | 2/1/2022 8:19:21 AM |
| 335 | 2/1/2022 8:17:04 AM | 2/1/2022 8:18:28 AM |
| 337 | 2/1/2022 8:17:06 AM | 2/1/2022 8:19:51 AM |
| 338 | 2/1/2022 8:17:17 AM | 2/1/2022 8:19:41 AM |
| 339 | 2/1/2022 8:17:17 AM | 2/1/2022 8:19:43 AM |
| 340 | 2/1/2022 8:17:19 AM | 2/1/2022 8:19:40 AM |
| 341 | 2/1/2022 8:17:17 AM | 2/1/2022 8:22:07 AM |
| 342 | 2/1/2022 8:17:24 AM | 2/1/2022 8:20:08 AM |

| | | |
|---|---|---|
| 343 | 2/1/2022 8:17:24 AM | 2/1/2022 8:19:47 AM |
| 344 | 2/1/2022 8:17:25 AM | 2/1/2022 8:20:19 AM |
| 346 | 2/1/2022 8:17:20 AM | 2/1/2022 8:18:29 AM |
| 347 | 2/1/2022 8:17:25 AM | 2/1/2022 8:19:16 AM |
| 348 | 2/1/2022 8:17:22 AM | 2/1/2022 8:19:42 AM |
| 349 | 2/1/2022 8:17:24 AM | 2/1/2022 8:18:33 AM |
| 350 | 2/1/2022 8:17:24 AM | 2/1/2022 8:18:54 AM |
| 352 | 2/1/2022 8:17:28 AM | 2/1/2022 8:20:02 AM |
| 353 | 2/1/2022 8:17:31 AM | 2/1/2022 8:22:13 AM |
| 354 | 2/1/2022 8:17:33 AM | 2/1/2022 8:19:12 AM |
| 355 | 2/1/2022 8:17:32 AM | 2/1/2022 8:19:31 AM |
| 356 | 2/1/2022 8:17:39 AM | 2/1/2022 8:21:07 AM |
| 357 | 2/1/2022 8:17:32 AM | 2/1/2022 8:19:43 AM |
| 358 | 2/1/2022 8:17:34 AM | 2/1/2022 8:18:54 AM |
| 359 | 2/1/2022 8:17:39 AM | 2/1/2022 8:19:32 AM |
| 360 | 2/1/2022 8:17:43 AM | 2/1/2022 8:19:45 AM |
| 361 | 2/1/2022 8:17:22 AM | 2/1/2022 8:19:08 AM |
| 362 | 2/1/2022 8:17:37 AM | 2/1/2022 8:20:40 AM |
| 363 | 2/1/2022 8:17:38 AM | 2/1/2022 8:19:02 AM |
| 364 | 2/1/2022 8:17:39 AM | 2/1/2022 8:19:54 AM |
| 365 | 2/1/2022 8:17:43 AM | 2/1/2022 8:19:29 AM |
| 366 | 2/1/2022 8:17:32 AM | 2/1/2022 8:18:49 AM |
| 367 | 2/1/2022 8:17:41 AM | 2/1/2022 8:19:32 AM |
| 368 | 2/1/2022 8:17:43 AM | 2/1/2022 8:20:48 AM |
| 369 | 2/1/2022 8:17:42 AM | 2/1/2022 8:19:35 AM |
| 370 | 2/1/2022 8:17:50 AM | 2/1/2022 8:19:36 AM |
| 371 | 2/1/2022 8:17:54 AM | 2/1/2022 8:22:07 AM |
| 372 | 2/1/2022 8:17:55 AM | 2/1/2022 8:21:34 AM |
| 373 | 2/1/2022 8:17:48 AM | 2/1/2022 8:21:36 AM |
| 374 | 2/1/2022 8:17:57 AM | 2/1/2022 8:22:27 AM |
| 375 | 2/1/2022 8:17:56 AM | 2/1/2022 8:19:28 AM |
| 376 | 2/1/2022 8:17:56 AM | 2/1/2022 8:19:26 AM |
| 377 | 2/1/2022 8:17:57 AM | 2/1/2022 8:20:07 AM |
| 378 | 2/1/2022 8:17:59 AM | 2/1/2022 8:20:19 AM |
| 381 | 2/1/2022 8:18:00 AM | 2/1/2022 8:20:40 AM |
| 384 | 2/1/2022 8:18:07 AM | 2/1/2022 8:19:33 AM |
| 385 | 2/1/2022 8:17:58 AM | 2/1/2022 8:19:52 AM |
| 386 | 2/1/2022 8:18:00 AM | 2/1/2022 8:20:12 AM |
| 387 | 2/1/2022 8:18:02 AM | 2/1/2022 8:19:56 AM |
| 388 | 2/1/2022 8:18:07 AM | 2/1/2022 8:19:21 AM |
| 390 | 2/1/2022 8:18:09 AM | 2/1/2022 8:19:47 AM |
| 391 | 2/1/2022 8:18:08 AM | 2/1/2022 8:20:34 AM |
| 392 | 2/1/2022 8:17:59 AM | 2/1/2022 8:21:03 AM |
| 393 | 2/1/2022 8:18:03 AM | 2/1/2022 8:20:32 AM |
| 394 | 2/1/2022 8:18:04 AM | 2/1/2022 8:19:49 AM |
| 395 | 2/1/2022 8:18:13 AM | 2/1/2022 8:19:41 AM |
| 396 | 2/1/2022 8:18:22 AM | 2/1/2022 8:20:20 AM |

| | | |
|---|---|---|
| 397 | 2/1/2022 8:18:16 AM | 2/1/2022 8:21:40 AM |
| 398 | 2/1/2022 8:18:16 AM | 2/1/2022 8:23:14 AM |
| 399 | 2/1/2022 8:18:22 AM | 2/1/2022 8:20:04 AM |
| 400 | 2/1/2022 8:18:23 AM | 2/1/2022 8:20:08 AM |
| 402 | 2/1/2022 8:18:24 AM | 2/1/2022 8:20:36 AM |
| 403 | 2/1/2022 8:18:25 AM | 2/1/2022 8:20:38 AM |
| 404 | 2/1/2022 8:18:26 AM | 2/1/2022 8:20:09 AM |
| 405 | 2/1/2022 8:18:26 AM | 2/1/2022 8:19:52 AM |
| 406 | 2/1/2022 8:18:21 AM | 2/1/2022 8:20:09 AM |
| 407 | 2/1/2022 8:18:23 AM | 2/1/2022 8:19:44 AM |
| 408 | 2/1/2022 8:18:26 AM | 2/1/2022 8:21:10 AM |
| 409 | 2/1/2022 8:18:34 AM | 2/1/2022 8:22:46 AM |
| 410 | 2/1/2022 8:18:33 AM | 2/1/2022 8:22:35 AM |
| 411 | 2/1/2022 8:18:29 AM | 2/1/2022 8:20:50 AM |
| 412 | 2/1/2022 8:18:31 AM | 2/1/2022 8:19:43 AM |
| 413 | 2/1/2022 8:18:38 AM | 2/1/2022 8:21:26 AM |
| 414 | 2/1/2022 8:18:39 AM | 2/1/2022 8:20:52 AM |
| 415 | 2/1/2022 8:18:32 AM | 2/1/2022 8:22:07 AM |
| 416 | 2/1/2022 8:18:37 AM | 2/1/2022 8:21:43 AM |
| 417 | 2/1/2022 8:18:40 AM | 2/1/2022 8:20:01 AM |
| 418 | 2/1/2022 8:18:28 AM | 2/1/2022 8:20:07 AM |
| 419 | 2/1/2022 8:18:40 AM | 2/1/2022 8:22:35 AM |
| 420 | 2/1/2022 8:18:32 AM | 2/1/2022 8:21:48 AM |
| 421 | 2/1/2022 8:18:35 AM | 2/1/2022 8:20:25 AM |
| 423 | 2/1/2022 8:18:53 AM | 2/1/2022 8:20:19 AM |
| 424 | 2/1/2022 8:18:52 AM | 2/1/2022 8:21:07 AM |
| 425 | 2/1/2022 8:18:43 AM | 2/1/2022 8:21:11 AM |
| 427 | 2/1/2022 8:18:52 AM | 2/1/2022 8:23:07 AM |
| 428 | 2/1/2022 8:18:52 AM | 2/1/2022 8:22:14 AM |
| 429 | 2/1/2022 8:18:55 AM | 2/1/2022 8:20:54 AM |
| 430 | 2/1/2022 8:18:55 AM | 2/1/2022 8:21:09 AM |
| 432 | 2/1/2022 8:18:48 AM | 2/1/2022 8:20:15 AM |
| 433 | 2/1/2022 8:18:50 AM | 2/1/2022 8:20:06 AM |
| 434 | 2/1/2022 8:18:55 AM | 2/1/2022 8:20:47 AM |
| 435 | 2/1/2022 8:18:50 AM | 2/1/2022 8:21:59 AM |
| 436 | 2/1/2022 8:18:51 AM | 2/1/2022 8:26:25 AM |
| 437 | 2/1/2022 8:19:04 AM | 2/1/2022 8:21:24 AM |
| 440 | 2/1/2022 8:19:04 AM | 2/1/2022 8:20:20 AM |
| 443 | 2/1/2022 8:19:00 AM | 2/1/2022 8:20:28 AM |
| 444 | 2/1/2022 8:19:03 AM | 2/1/2022 8:20:15 AM |
| 445 | 2/1/2022 8:19:11 AM | 2/1/2022 8:23:14 AM |
| 446 | 2/1/2022 8:19:22 AM | 2/1/2022 8:21:32 AM |
| 447 | 2/1/2022 8:19:23 AM | 2/1/2022 8:21:22 AM |
| 448 | 2/1/2022 8:19:15 AM | 2/1/2022 8:21:28 AM |
| 449 | 2/1/2022 8:19:34 AM | 2/1/2022 8:21:07 AM |
| 450 | 2/1/2022 8:19:35 AM | 2/1/2022 8:23:04 AM |
| 451 | 2/1/2022 8:19:26 AM | 2/1/2022 8:21:23 AM |

| | | |
|---|---|---|
| 452 | 2/1/2022 8:19:31 AM | 2/1/2022 8:22:53 AM |
| 453 | 2/1/2022 8:19:31 AM | 2/1/2022 8:22:09 AM |
| 454 | 2/1/2022 8:19:34 AM | 2/1/2022 8:21:17 AM |
| 455 | 2/1/2022 8:19:33 AM | 2/1/2022 8:20:41 AM |
| 456 | 2/1/2022 8:19:37 AM | 2/1/2022 8:22:09 AM |
| 457 | 2/1/2022 8:19:40 AM | 2/1/2022 8:22:14 AM |
| 459 | 2/1/2022 8:19:42 AM | 2/1/2022 8:22:11 AM |
| 460 | 2/1/2022 8:19:45 AM | 2/1/2022 8:22:25 AM |
| 461 | 2/1/2022 8:19:45 AM | 2/1/2022 8:21:00 AM |
| 463 | 2/1/2022 8:19:40 AM | 2/1/2022 8:21:13 AM |
| 464 | 2/1/2022 8:19:48 AM | 2/1/2022 8:22:19 AM |
| 465 | 2/1/2022 8:19:50 AM | 2/1/2022 8:21:12 AM |
| 467 | 2/1/2022 8:19:41 AM | 2/1/2022 8:20:49 AM |
| 468 | 2/1/2022 8:19:42 AM | 2/1/2022 8:21:46 AM |
| 469 | 2/1/2022 8:19:49 AM | 2/1/2022 8:24:25 AM |
| 471 | 2/1/2022 8:19:49 AM | 2/1/2022 8:21:41 AM |
| 473 | 2/1/2022 8:19:41 AM | 2/1/2022 8:21:52 AM |
| 474 | 2/1/2022 8:19:48 AM | 2/1/2022 8:21:29 AM |
| 475 | 2/1/2022 8:19:50 AM | 2/1/2022 8:22:11 AM |
| 478 | 2/1/2022 8:20:00 AM | 2/1/2022 8:22:02 AM |
| 480 | 2/1/2022 8:19:49 AM | 2/1/2022 8:22:23 AM |
| 481 | 2/1/2022 8:19:56 AM | 2/1/2022 8:23:18 AM |
| 482 | 2/1/2022 8:20:01 AM | 2/1/2022 8:21:40 AM |
| 487 | 2/1/2022 8:20:03 AM | 2/1/2022 8:21:31 AM |
| 488 | 2/1/2022 8:20:06 AM | 2/1/2022 8:27:12 AM |
| 489 | 2/1/2022 8:20:05 AM | 2/1/2022 8:27:04 AM |
| 490 | 2/1/2022 8:20:08 AM | 2/1/2022 8:21:51 AM |
| 491 | 2/1/2022 8:20:01 AM | 2/1/2022 8:23:07 AM |
| 493 | 2/1/2022 8:20:12 AM | 2/1/2022 8:23:01 AM |
| 494 | 2/1/2022 8:20:11 AM | 2/1/2022 8:22:28 AM |
| 495 | 2/1/2022 8:20:08 AM | 2/1/2022 8:21:46 AM |
| 496 | 2/1/2022 8:20:17 AM | 2/1/2022 8:22:11 AM |
| 498 | 2/1/2022 8:20:18 AM | 2/1/2022 8:22:30 AM |
| 500 | 2/1/2022 8:20:21 AM | 2/1/2022 8:22:12 AM |
| 501 | 2/1/2022 8:20:29 AM | 2/1/2022 8:22:04 AM |
| 505 | 2/1/2022 8:20:26 AM | 2/1/2022 8:21:51 AM |
| 506 | 2/1/2022 8:20:29 AM | 2/1/2022 8:22:19 AM |
| 507 | 2/1/2022 8:20:34 AM | 2/1/2022 8:22:51 AM |
| 508 | 2/1/2022 8:20:35 AM | 2/1/2022 8:23:29 AM |
| 509 | 2/1/2022 8:20:22 AM | 2/1/2022 8:21:59 AM |
| 510 | 2/1/2022 8:20:33 AM | 2/1/2022 8:23:39 AM |
| 511 | 2/1/2022 8:20:34 AM | 2/1/2022 8:26:12 AM |
| 512 | 2/1/2022 8:20:34 AM | 2/1/2022 8:22:56 AM |
| 514 | 2/1/2022 8:20:44 AM | 2/1/2022 8:23:35 AM |
| 516 | 2/1/2022 8:20:38 AM | 2/1/2022 8:22:20 AM |
| 517 | 2/1/2022 8:20:39 AM | 2/1/2022 8:22:06 AM |
| 518 | 2/1/2022 8:20:41 AM | 2/1/2022 8:21:58 AM |

| | | |
|---|---|---|
| 519 | 2/1/2022 8:20:45 AM | 2/1/2022 8:22:20 AM |
| 520 | 2/1/2022 8:20:36 AM | 2/1/2022 8:26:39 AM |
| 521 | 2/1/2022 8:20:46 AM | 2/1/2022 8:22:31 AM |
| 523 | 2/1/2022 8:20:49 AM | 2/1/2022 8:22:52 AM |
| 524 | 2/1/2022 8:20:42 AM | 2/1/2022 8:22:53 AM |
| 526 | 2/1/2022 8:20:50 AM | 2/1/2022 8:21:56 AM |
| 527 | 2/1/2022 8:20:50 AM | 2/1/2022 8:22:27 AM |
| 528 | 2/1/2022 8:20:52 AM | 2/1/2022 8:27:55 AM |
| 529 | 2/1/2022 8:20:53 AM | 2/1/2022 8:24:30 AM |
| 530 | 2/1/2022 8:20:55 AM | 2/1/2022 8:23:16 AM |
| 531 | 2/1/2022 8:20:54 AM | 2/1/2022 8:22:18 AM |
| 533 | 2/1/2022 8:20:58 AM | 2/1/2022 8:23:31 AM |
| 534 | 2/1/2022 8:20:59 AM | 2/1/2022 8:22:24 AM |
| 535 | 2/1/2022 8:21:00 AM | 2/1/2022 8:22:44 AM |
| 536 | 2/1/2022 8:21:02 AM | 2/1/2022 8:23:00 AM |
| 537 | 2/1/2022 8:20:53 AM | 2/1/2022 8:23:08 AM |
| 538 | 2/1/2022 8:20:54 AM | 2/1/2022 8:22:52 AM |
| 539 | 2/1/2022 8:20:56 AM | 2/1/2022 8:22:47 AM |
| 540 | 2/1/2022 8:20:56 AM | 2/1/2022 8:23:20 AM |
| 541 | 2/1/2022 8:21:00 AM | 2/1/2022 8:22:27 AM |
| 542 | 2/1/2022 8:21:04 AM | 2/1/2022 8:23:05 AM |
| 543 | 2/1/2022 8:21:05 AM | 2/1/2022 8:23:32 AM |
| 544 | 2/1/2022 8:21:09 AM | 2/1/2022 8:22:48 AM |
| 545 | 2/1/2022 8:21:07 AM | 2/1/2022 8:22:47 AM |
| 546 | 2/1/2022 8:21:10 AM | 2/1/2022 8:23:18 AM |
| 547 | 2/1/2022 8:21:11 AM | 2/1/2022 8:23:37 AM |
| 548 | 2/1/2022 8:21:13 AM | 2/1/2022 8:26:39 AM |
| 549 | 2/1/2022 8:21:04 AM | 2/1/2022 8:23:41 AM |
| 550 | 2/1/2022 8:21:08 AM | 2/1/2022 8:23:06 AM |
| 551 | 2/1/2022 8:21:07 AM | 2/1/2022 8:23:15 AM |
| 552 | 2/1/2022 8:21:07 AM | 2/1/2022 8:22:52 AM |
| 553 | 2/1/2022 8:21:09 AM | 2/1/2022 8:23:14 AM |
| 554 | 2/1/2022 8:21:14 AM | 2/1/2022 8:23:01 AM |
| 555 | 2/1/2022 8:21:14 AM | 2/1/2022 8:23:25 AM |
| 556 | 2/1/2022 8:21:15 AM | 2/1/2022 8:24:25 AM |
| 557 | 2/1/2022 8:21:15 AM | 2/1/2022 8:22:35 AM |
| 558 | 2/1/2022 8:21:17 AM | 2/1/2022 8:24:26 AM |
| 559 | 2/1/2022 8:21:10 AM | 2/1/2022 8:23:21 AM |
| 561 | 2/1/2022 8:21:14 AM | 2/1/2022 8:23:23 AM |
| 562 | 2/1/2022 8:21:16 AM | 2/1/2022 8:22:48 AM |
| 563 | 2/1/2022 8:21:17 AM | 2/1/2022 8:22:25 AM |
| 564 | 2/1/2022 8:21:24 AM | 2/1/2022 8:24:41 AM |
| 565 | 2/1/2022 8:21:24 AM | 2/1/2022 8:23:48 AM |
| 567 | 2/1/2022 8:21:20 AM | 2/1/2022 8:23:00 AM |
| 568 | 2/1/2022 8:21:22 AM | 2/1/2022 8:23:30 AM |
| 569 | 2/1/2022 8:21:27 AM | 2/1/2022 8:24:24 AM |
| 572 | 2/1/2022 8:21:30 AM | 2/1/2022 8:23:00 AM |

| | | |
|---|---|---|
| 573 | 2/1/2022 8:21:30 AM | 2/1/2022 8:24:39 AM |
| 574 | 2/1/2022 8:21:29 AM | 2/1/2022 8:23:00 AM |
| 575 | 2/1/2022 8:21:20 AM | 2/1/2022 8:23:04 AM |
| 576 | 2/1/2022 8:21:25 AM | 2/1/2022 8:22:51 AM |
| 577 | 2/1/2022 8:21:34 AM | 2/1/2022 8:24:34 AM |
| 578 | 2/1/2022 8:21:40 AM | 2/1/2022 8:23:53 AM |
| 579 | 2/1/2022 8:21:35 AM | 2/1/2022 8:23:44 AM |
| 580 | 2/1/2022 8:21:41 AM | 2/1/2022 8:23:52 AM |
| 581 | 2/1/2022 8:21:43 AM | 2/1/2022 8:23:36 AM |
| 582 | 2/1/2022 8:21:34 AM | 2/1/2022 8:24:07 AM |
| 583 | 2/1/2022 8:21:35 AM | 2/1/2022 8:24:34 AM |
| 584 | 2/1/2022 8:21:42 AM | 2/1/2022 8:23:01 AM |
| 585 | 2/1/2022 8:21:40 AM | 2/1/2022 8:24:13 AM |
| 586 | 2/1/2022 8:21:44 AM | 2/1/2022 8:24:44 AM |
| 587 | 2/1/2022 8:21:35 AM | 2/1/2022 8:23:04 AM |
| 588 | 2/1/2022 8:21:36 AM | 2/1/2022 8:23:11 AM |
| 589 | 2/1/2022 8:21:39 AM | 2/1/2022 8:22:57 AM |
| 590 | 2/1/2022 8:21:43 AM | 2/1/2022 8:23:50 AM |
| 591 | 2/1/2022 8:21:47 AM | 2/1/2022 8:24:13 AM |
| 593 | 2/1/2022 8:21:53 AM | 2/1/2022 8:23:29 AM |
| 594 | 2/1/2022 8:21:48 AM | 2/1/2022 8:23:25 AM |
| 595 | 2/1/2022 8:21:55 AM | 2/1/2022 8:23:32 AM |
| 596 | 2/1/2022 8:21:58 AM | 2/1/2022 8:24:17 AM |
| 597 | 2/1/2022 8:21:49 AM | 2/1/2022 8:23:46 AM |
| 600 | 2/1/2022 8:21:59 AM | 2/1/2022 8:24:41 AM |
| 601 | 2/1/2022 8:21:47 AM | 2/1/2022 8:23:08 AM |
| 603 | 2/1/2022 8:22:00 AM | 2/1/2022 8:23:34 AM |
| 604 | 2/1/2022 8:22:01 AM | 2/1/2022 8:24:05 AM |
| 605 | 2/1/2022 8:22:02 AM | 2/1/2022 8:24:27 AM |
| 606 | 2/1/2022 8:22:04 AM | 2/1/2022 8:24:36 AM |
| 607 | 2/1/2022 8:22:07 AM | 2/1/2022 8:23:45 AM |
| 608 | 2/1/2022 8:22:01 AM | 2/1/2022 8:23:21 AM |
| 609 | 2/1/2022 8:22:04 AM | 2/1/2022 8:24:27 AM |
| 610 | 2/1/2022 8:22:10 AM | 2/1/2022 8:24:46 AM |
| 611 | 2/1/2022 8:22:05 AM | 2/1/2022 8:25:58 AM |
| 612 | 2/1/2022 8:22:07 AM | 2/1/2022 8:23:29 AM |
| 613 | 2/1/2022 8:22:12 AM | 2/1/2022 8:23:25 AM |
| 614 | 2/1/2022 8:22:12 AM | 2/1/2022 8:25:46 AM |
| 615 | 2/1/2022 8:22:15 AM | 2/1/2022 8:24:22 AM |
| 617 | 2/1/2022 8:22:21 AM | 2/1/2022 8:24:24 AM |
| 618 | 2/1/2022 8:22:15 AM | 2/1/2022 8:24:32 AM |
| 619 | 2/1/2022 8:22:24 AM | 2/1/2022 8:24:46 AM |
| 622 | 2/1/2022 8:22:21 AM | 2/1/2022 8:23:39 AM |
| 623 | 2/1/2022 8:22:27 AM | 2/1/2022 8:25:58 AM |
| 624 | 2/1/2022 8:22:19 AM | 2/1/2022 8:23:38 AM |
| 625 | 2/1/2022 8:22:20 AM | 2/1/2022 8:24:23 AM |
| 626 | 2/1/2022 8:22:26 AM | 2/1/2022 8:23:58 AM |

| | | |
|---|---|---|
| 627 | 2/1/2022 8:22:27 AM | 2/1/2022 8:24:00 AM |
| 628 | 2/1/2022 8:22:20 AM | 2/1/2022 8:24:19 AM |
| 629 | 2/1/2022 8:22:26 AM | 2/1/2022 8:26:14 AM |
| 630 | 2/1/2022 8:22:30 AM | 2/1/2022 8:24:26 AM |
| 631 | 2/1/2022 8:22:38 AM | 2/1/2022 8:24:02 AM |
| 633 | 2/1/2022 8:22:41 AM | 2/1/2022 8:25:21 AM |
| 634 | 2/1/2022 8:22:36 AM | 2/1/2022 8:24:06 AM |
| 637 | 2/1/2022 8:22:39 AM | 2/1/2022 8:29:02 AM |
| 638 | 2/1/2022 8:22:43 AM | 2/1/2022 8:24:32 AM |
| 639 | 2/1/2022 8:22:35 AM | 2/1/2022 8:24:31 AM |
| 640 | 2/1/2022 8:22:45 AM | 2/1/2022 8:25:11 AM |
| 641 | 2/1/2022 8:22:52 AM | 2/1/2022 8:24:42 AM |
| 643 | 2/1/2022 8:22:47 AM | 2/1/2022 8:24:59 AM |
| 644 | 2/1/2022 8:22:47 AM | 2/1/2022 8:26:43 AM |
| 645 | 2/1/2022 8:22:47 AM | 2/1/2022 8:25:56 AM |
| 646 | 2/1/2022 8:22:54 AM | 2/1/2022 8:26:05 AM |
| 647 | 2/1/2022 8:22:47 AM | 2/1/2022 8:24:18 AM |
| 648 | 2/1/2022 8:22:49 AM | 2/1/2022 8:24:20 AM |
| 649 | 2/1/2022 8:22:49 AM | 2/1/2022 8:24:49 AM |
| 650 | 2/1/2022 8:22:51 AM | 2/1/2022 8:24:25 AM |
| 652 | 2/1/2022 8:22:59 AM | 2/1/2022 8:26:26 AM |
| 653 | 2/1/2022 8:23:00 AM | 2/1/2022 8:26:29 AM |
| 655 | 2/1/2022 8:23:00 AM | 2/1/2022 8:30:22 AM |
| 656 | 2/1/2022 8:23:06 AM | 2/1/2022 8:25:17 AM |
| 657 | 2/1/2022 8:22:58 AM | 2/1/2022 8:24:39 AM |
| 658 | 2/1/2022 8:23:04 AM | 2/1/2022 8:25:03 AM |
| 659 | 2/1/2022 8:23:04 AM | 2/1/2022 8:25:18 AM |
| 660 | 2/1/2022 8:23:08 AM | 2/1/2022 8:25:07 AM |
| 662 | 2/1/2022 8:23:01 AM | 2/1/2022 8:26:24 AM |
| 663 | 2/1/2022 8:23:10 AM | 2/1/2022 8:25:58 AM |
| 664 | 2/1/2022 8:23:13 AM | 2/1/2022 8:26:37 AM |
| 665 | 2/1/2022 8:23:07 AM | 2/1/2022 8:25:10 AM |
| 666 | 2/1/2022 8:23:13 AM | 2/1/2022 8:24:52 AM |
| 667 | 2/1/2022 8:23:19 AM | 2/1/2022 8:25:07 AM |
| 668 | 2/1/2022 8:23:16 AM | 2/1/2022 8:24:44 AM |
| 669 | 2/1/2022 8:23:15 AM | 2/1/2022 8:24:59 AM |
| 670 | 2/1/2022 8:23:19 AM | 2/1/2022 8:24:51 AM |
| 671 | 2/1/2022 8:23:26 AM | 2/1/2022 8:25:37 AM |
| 672 | 2/1/2022 8:23:26 AM | 2/1/2022 8:25:55 AM |
| 673 | 2/1/2022 8:23:24 AM | 2/1/2022 8:25:23 AM |
| 674 | 2/1/2022 8:23:34 AM | 2/1/2022 8:27:21 AM |
| 675 | 2/1/2022 8:23:28 AM | 2/1/2022 8:24:45 AM |
| 676 | 2/1/2022 8:23:32 AM | 2/1/2022 8:26:28 AM |
| 679 | 2/1/2022 8:23:32 AM | 2/1/2022 8:25:54 AM |
| 680 | 2/1/2022 8:23:32 AM | 2/1/2022 8:25:17 AM |
| 682 | 2/1/2022 8:23:37 AM | 2/1/2022 8:25:18 AM |
| 685 | 2/1/2022 8:23:41 AM | 2/1/2022 8:25:09 AM |

| | | |
|---|---|---|
| 686 | 2/1/2022 8:23:42 AM | 2/1/2022 8:25:34 AM |
| 687 | 2/1/2022 8:23:41 AM | 2/1/2022 8:25:44 AM |
| 688 | 2/1/2022 8:23:41 AM | 2/1/2022 8:25:31 AM |
| 689 | 2/1/2022 8:23:47 AM | 2/1/2022 8:25:33 AM |
| 690 | 2/1/2022 8:23:51 AM | 2/1/2022 8:26:17 AM |
| 691 | 2/1/2022 8:23:51 AM | 2/1/2022 8:26:38 AM |
| 692 | 2/1/2022 8:23:53 AM | 2/1/2022 8:27:37 AM |
| 693 | 2/1/2022 8:23:51 AM | 2/1/2022 8:25:30 AM |
| 694 | 2/1/2022 8:23:47 AM | 2/1/2022 8:26:29 AM |
| 695 | 2/1/2022 8:23:50 AM | 2/1/2022 8:25:18 AM |
| 696 | 2/1/2022 8:23:43 AM | 2/1/2022 8:25:04 AM |
| 698 | 2/1/2022 8:23:45 AM | 2/1/2022 8:26:39 AM |
| 699 | 2/1/2022 8:23:55 AM | 2/1/2022 8:26:08 AM |
| 700 | 2/1/2022 8:23:56 AM | 2/1/2022 8:25:18 AM |
| 702 | 2/1/2022 8:23:58 AM | 2/1/2022 8:26:26 AM |
| 703 | 2/1/2022 8:24:07 AM | 2/1/2022 8:27:24 AM |
| 704 | 2/1/2022 8:24:04 AM | 2/1/2022 8:25:36 AM |
| 706 | 2/1/2022 8:24:08 AM | 2/1/2022 8:25:13 AM |
| 707 | 2/1/2022 8:24:09 AM | 2/1/2022 8:26:57 AM |
| 708 | 2/1/2022 8:24:01 AM | 2/1/2022 8:25:45 AM |
| 709 | 2/1/2022 8:24:07 AM | 2/1/2022 8:26:09 AM |
| 710 | 2/1/2022 8:24:06 AM | 2/1/2022 8:26:01 AM |
| 711 | 2/1/2022 8:24:21 AM | 2/1/2022 8:26:47 AM |
| 712 | 2/1/2022 8:24:23 AM | 2/1/2022 8:27:00 AM |
| 713 | 2/1/2022 8:24:23 AM | 2/1/2022 8:29:16 AM |
| 714 | 2/1/2022 8:24:23 AM | 2/1/2022 8:26:55 AM |
| 715 | 2/1/2022 8:24:22 AM | 2/1/2022 8:26:38 AM |
| 716 | 2/1/2022 8:24:22 AM | 2/1/2022 8:29:12 AM |
| 717 | 2/1/2022 8:24:13 AM | 2/1/2022 8:25:54 AM |
| 718 | 2/1/2022 8:24:15 AM | 2/1/2022 8:27:20 AM |
| 721 | 2/1/2022 8:24:19 AM | 2/1/2022 8:25:27 AM |
| 722 | 2/1/2022 8:24:26 AM | 2/1/2022 8:27:35 AM |
| 723 | 2/1/2022 8:24:25 AM | 2/1/2022 8:25:46 AM |
| 724 | 2/1/2022 8:24:22 AM | 2/1/2022 8:25:55 AM |
| 725 | 2/1/2022 8:24:34 AM | 2/1/2022 8:28:07 AM |
| 726 | 2/1/2022 8:24:27 AM | 2/1/2022 8:25:37 AM |
| 727 | 2/1/2022 8:24:34 AM | 2/1/2022 8:26:15 AM |
| 728 | 2/1/2022 8:24:37 AM | 2/1/2022 8:26:53 AM |
| 729 | 2/1/2022 8:24:33 AM | 2/1/2022 8:26:47 AM |
| 730 | 2/1/2022 8:24:38 AM | 2/1/2022 8:26:44 AM |
| 732 | 2/1/2022 8:24:27 AM | 2/1/2022 8:25:43 AM |
| 733 | 2/1/2022 8:24:35 AM | 2/1/2022 8:28:28 AM |
| 734 | 2/1/2022 8:24:37 AM | 2/1/2022 8:26:46 AM |
| 735 | 2/1/2022 8:24:33 AM | 2/1/2022 8:26:36 AM |
| 736 | 2/1/2022 8:24:34 AM | 2/1/2022 8:26:22 AM |
| 737 | 2/1/2022 8:24:36 AM | 2/1/2022 8:28:41 AM |
| 738 | 2/1/2022 8:24:40 AM | 2/1/2022 8:27:14 AM |

| | | |
|---|---|---|
| 740 | 2/1/2022 8:24:46 AM | 2/1/2022 8:32:47 AM |
| 741 | 2/1/2022 8:24:42 AM | 2/1/2022 8:26:26 AM |
| 742 | 2/1/2022 8:24:42 AM | 2/1/2022 8:27:40 AM |
| 744 | 2/1/2022 8:24:48 AM | 2/1/2022 8:26:06 AM |
| 745 | 2/1/2022 8:24:48 AM | 2/1/2022 8:28:04 AM |
| 746 | 2/1/2022 8:24:50 AM | 2/1/2022 8:26:28 AM |
| 747 | 2/1/2022 8:24:52 AM | 2/1/2022 8:29:19 AM |
| 748 | 2/1/2022 8:24:51 AM | 2/1/2022 8:28:19 AM |
| 749 | 2/1/2022 8:24:42 AM | 2/1/2022 8:27:24 AM |
| 750 | 2/1/2022 8:24:43 AM | 2/1/2022 8:28:14 AM |
| 751 | 2/1/2022 8:24:44 AM | 2/1/2022 8:27:16 AM |
| 753 | 2/1/2022 8:24:44 AM | 2/1/2022 8:27:42 AM |
| 754 | 2/1/2022 8:24:46 AM | 2/1/2022 8:27:18 AM |
| 755 | 2/1/2022 8:24:43 AM | 2/1/2022 8:26:10 AM |
| 756 | 2/1/2022 8:24:55 AM | 2/1/2022 8:26:52 AM |
| 757 | 2/1/2022 8:24:56 AM | 2/1/2022 8:27:35 AM |
| 759 | 2/1/2022 8:25:03 AM | 2/1/2022 8:27:57 AM |
| 760 | 2/1/2022 8:24:57 AM | 2/1/2022 8:26:37 AM |
| 761 | 2/1/2022 8:24:58 AM | 2/1/2022 8:27:48 AM |
| 762 | 2/1/2022 8:25:02 AM | 2/1/2022 8:26:49 AM |
| 763 | 2/1/2022 8:25:03 AM | 2/1/2022 8:28:07 AM |
| 764 | 2/1/2022 8:25:05 AM | 2/1/2022 8:27:59 AM |
| 765 | 2/1/2022 8:25:08 AM | 2/1/2022 8:26:50 AM |
| 766 | 2/1/2022 8:25:09 AM | 2/1/2022 8:26:54 AM |
| 767 | 2/1/2022 8:25:09 AM | 2/1/2022 8:27:12 AM |
| 768 | 2/1/2022 8:25:13 AM | 2/1/2022 8:27:07 AM |
| 769 | 2/1/2022 8:25:11 AM | 2/1/2022 8:27:00 AM |
| 770 | 2/1/2022 8:25:11 AM | 2/1/2022 8:27:08 AM |
| 773 | 2/1/2022 8:25:19 AM | 2/1/2022 8:27:30 AM |
| 774 | 2/1/2022 8:25:19 AM | 2/1/2022 8:27:29 AM |
| 775 | 2/1/2022 8:25:22 AM | 2/1/2022 8:27:12 AM |
| 776 | 2/1/2022 8:25:21 AM | 2/1/2022 8:26:55 AM |
| 777 | 2/1/2022 8:25:23 AM | 2/1/2022 8:27:18 AM |
| 778 | 2/1/2022 8:25:15 AM | 2/1/2022 8:29:03 AM |
| 779 | 2/1/2022 8:25:16 AM | 2/1/2022 8:28:59 AM |
| 780 | 2/1/2022 8:25:21 AM | 2/1/2022 8:28:14 AM |
| 783 | 2/1/2022 8:25:32 AM | 2/1/2022 8:26:46 AM |
| 784 | 2/1/2022 8:25:31 AM | 2/1/2022 8:27:24 AM |
| 785 | 2/1/2022 8:25:32 AM | 2/1/2022 8:27:12 AM |
| 786 | 2/1/2022 8:25:25 AM | 2/1/2022 8:26:53 AM |
| 787 | 2/1/2022 8:25:28 AM | 2/1/2022 8:27:13 AM |
| 788 | 2/1/2022 8:25:28 AM | 2/1/2022 8:27:01 AM |
| 789 | 2/1/2022 8:25:37 AM | 2/1/2022 8:27:50 AM |
| 790 | 2/1/2022 8:25:38 AM | 2/1/2022 8:30:02 AM |
| 791 | 2/1/2022 8:25:41 AM | 2/1/2022 8:27:42 AM |
| 794 | 2/1/2022 8:25:38 AM | 2/1/2022 8:30:11 AM |
| 795 | 2/1/2022 8:25:38 AM | 2/1/2022 8:28:57 AM |

| | | |
|---|---|---|
| 796 | 2/1/2022 8:25:42 AM | 2/1/2022 8:27:13 AM |
| 797 | 2/1/2022 8:25:44 AM | 2/1/2022 8:28:03 AM |
| 800 | 2/1/2022 8:25:47 AM | 2/1/2022 8:28:27 AM |
| 801 | 2/1/2022 8:25:44 AM | 2/1/2022 8:27:07 AM |
| 802 | 2/1/2022 8:25:49 AM | 2/1/2022 8:29:17 AM |
| 803 | 2/1/2022 8:25:51 AM | 2/1/2022 8:27:21 AM |
| 805 | 2/1/2022 8:25:47 AM | 2/1/2022 8:26:52 AM |
| 806 | 2/1/2022 8:25:46 AM | 2/1/2022 8:27:23 AM |
| 808 | 2/1/2022 8:25:56 AM | 2/1/2022 8:28:58 AM |
| 809 | 2/1/2022 8:25:57 AM | 2/1/2022 8:28:04 AM |
| 810 | 2/1/2022 8:25:58 AM | 2/1/2022 8:28:32 AM |
| 811 | 2/1/2022 8:26:01 AM | 2/1/2022 8:34:25 AM |
| 812 | 2/1/2022 8:25:55 AM | 2/1/2022 8:28:15 AM |
| 813 | 2/1/2022 8:25:59 AM | 2/1/2022 8:28:59 AM |
| 815 | 2/1/2022 8:25:54 AM | 2/1/2022 8:31:41 AM |
| 816 | 2/1/2022 8:26:05 AM | 2/1/2022 8:27:55 AM |
| 817 | 2/1/2022 8:25:53 AM | 2/1/2022 8:29:18 AM |
| 818 | 2/1/2022 8:25:54 AM | 2/1/2022 8:27:15 AM |
| 819 | 2/1/2022 8:26:02 AM | 2/1/2022 8:28:04 AM |
| 820 | 2/1/2022 8:26:03 AM | 2/1/2022 8:28:26 AM |
| 821 | 2/1/2022 8:26:03 AM | 2/1/2022 8:27:33 AM |
| 822 | 2/1/2022 8:25:54 AM | 2/1/2022 8:27:57 AM |
| 823 | 2/1/2022 8:25:57 AM | 2/1/2022 8:29:43 AM |
| 824 | 2/1/2022 8:26:05 AM | 2/1/2022 8:29:13 AM |
| 826 | 2/1/2022 8:26:08 AM | 2/1/2022 8:27:48 AM |
| 827 | 2/1/2022 8:26:09 AM | 2/1/2022 8:27:34 AM |
| 829 | 2/1/2022 8:26:13 AM | 2/1/2022 8:28:03 AM |
| 830 | 2/1/2022 8:26:16 AM | 2/1/2022 8:27:52 AM |
| 831 | 2/1/2022 8:26:19 AM | 2/1/2022 8:28:52 AM |
| 832 | 2/1/2022 8:26:14 AM | 2/1/2022 8:27:59 AM |
| 833 | 2/1/2022 8:26:17 AM | 2/1/2022 8:28:24 AM |
| 835 | 2/1/2022 8:26:25 AM | 2/1/2022 8:28:33 AM |
| 836 | 2/1/2022 8:26:26 AM | 2/1/2022 8:28:12 AM |
| 837 | 2/1/2022 8:26:27 AM | 2/1/2022 8:32:30 AM |
| 838 | 2/1/2022 8:26:28 AM | 2/1/2022 8:28:45 AM |
| 839 | 2/1/2022 8:26:22 AM | 2/1/2022 8:28:19 AM |
| 840 | 2/1/2022 8:26:27 AM | 2/1/2022 8:29:39 AM |
| 841 | 2/1/2022 8:26:21 AM | 2/1/2022 8:27:53 AM |
| 842 | 2/1/2022 8:26:23 AM | 2/1/2022 8:28:12 AM |
| 843 | 2/1/2022 8:26:25 AM | 2/1/2022 8:28:09 AM |
| 844 | 2/1/2022 8:26:32 AM | 2/1/2022 8:28:47 AM |
| 845 | 2/1/2022 8:26:22 AM | 2/1/2022 8:28:26 AM |
| 848 | 2/1/2022 8:26:28 AM | 2/1/2022 8:27:57 AM |
| 849 | 2/1/2022 8:26:21 AM | 2/1/2022 8:29:56 AM |
| 850 | 2/1/2022 8:26:28 AM | 2/1/2022 8:28:28 AM |
| 851 | 2/1/2022 8:26:36 AM | 2/1/2022 8:27:59 AM |
| 853 | 2/1/2022 8:26:42 AM | 2/1/2022 8:28:40 AM |

| | | |
|---|---|---|
| 854 | 2/1/2022 8:26:47 AM | 2/1/2022 8:28:34 AM |
| 855 | 2/1/2022 8:26:39 AM | 2/1/2022 8:28:07 AM |
| 856 | 2/1/2022 8:26:47 AM | 2/1/2022 8:33:58 AM |
| 857 | 2/1/2022 8:26:38 AM | 2/1/2022 8:27:54 AM |
| 858 | 2/1/2022 8:26:43 AM | 2/1/2022 8:28:01 AM |
| 860 | 2/1/2022 8:26:47 AM | 2/1/2022 8:28:46 AM |
| 862 | 2/1/2022 8:26:36 AM | 2/1/2022 8:28:44 AM |
| 863 | 2/1/2022 8:26:52 AM | 2/1/2022 8:29:11 AM |
| 864 | 2/1/2022 8:26:51 AM | 2/1/2022 8:28:49 AM |
| 865 | 2/1/2022 8:26:50 AM | 2/1/2022 8:28:42 AM |
| 866 | 2/1/2022 8:27:02 AM | 2/1/2022 8:28:45 AM |
| 867 | 2/1/2022 8:27:03 AM | 2/1/2022 8:29:23 AM |
| 868 | 2/1/2022 8:27:00 AM | 2/1/2022 8:28:33 AM |
| 869 | 2/1/2022 8:26:57 AM | 2/1/2022 8:30:33 AM |
| 870 | 2/1/2022 8:26:59 AM | 2/1/2022 8:29:16 AM |
| 871 | 2/1/2022 8:27:07 AM | 2/1/2022 8:31:18 AM |
| 872 | 2/1/2022 8:27:07 AM | 2/1/2022 8:29:19 AM |
| 873 | 2/1/2022 8:27:06 AM | 2/1/2022 8:29:00 AM |
| 874 | 2/1/2022 8:27:13 AM | 2/1/2022 8:31:08 AM |
| 875 | 2/1/2022 8:27:17 AM | 2/1/2022 8:29:43 AM |
| 876 | 2/1/2022 8:27:06 AM | 2/1/2022 8:29:48 AM |
| 877 | 2/1/2022 8:27:07 AM | 2/1/2022 8:29:28 AM |
| 879 | 2/1/2022 8:27:17 AM | 2/1/2022 8:29:26 AM |
| 880 | 2/1/2022 8:27:07 AM | 2/1/2022 8:28:25 AM |
| 881 | 2/1/2022 8:27:11 AM | 2/1/2022 8:28:40 AM |
| 882 | 2/1/2022 8:27:11 AM | 2/1/2022 8:29:07 AM |
| 883 | 2/1/2022 8:27:14 AM | 2/1/2022 8:29:33 AM |
| 884 | 2/1/2022 8:27:15 AM | 2/1/2022 8:28:41 AM |
| 885 | 2/1/2022 8:27:18 AM | 2/1/2022 8:29:23 AM |
| 886 | 2/1/2022 8:27:19 AM | 2/1/2022 8:28:34 AM |
| 889 | 2/1/2022 8:27:30 AM | 2/1/2022 8:31:25 AM |
| 891 | 2/1/2022 8:27:29 AM | 2/1/2022 8:31:39 AM |
| 892 | 2/1/2022 8:27:29 AM | 2/1/2022 8:28:55 AM |
| 893 | 2/1/2022 8:27:30 AM | 2/1/2022 8:29:28 AM |
| 894 | 2/1/2022 8:27:32 AM | 2/1/2022 8:31:10 AM |
| 895 | 2/1/2022 8:27:20 AM | 2/1/2022 8:28:44 AM |
| 896 | 2/1/2022 8:27:20 AM | 2/1/2022 8:28:52 AM |
| 898 | 2/1/2022 8:27:41 AM | 2/1/2022 8:29:02 AM |
| 899 | 2/1/2022 8:27:39 AM | 2/1/2022 8:31:35 AM |
| 900 | 2/1/2022 8:27:40 AM | 2/1/2022 8:29:24 AM |
| 901 | 2/1/2022 8:27:42 AM | 2/1/2022 8:31:25 AM |
| 902 | 2/1/2022 8:27:38 AM | 2/1/2022 8:29:00 AM |
| 903 | 2/1/2022 8:27:43 AM | 2/1/2022 8:30:17 AM |
| 904 | 2/1/2022 8:27:38 AM | 2/1/2022 8:29:00 AM |
| 905 | 2/1/2022 8:27:44 AM | 2/1/2022 8:29:47 AM |
| 906 | 2/1/2022 8:27:37 AM | 2/1/2022 8:30:31 AM |
| 907 | 2/1/2022 8:27:40 AM | 2/1/2022 8:31:59 AM |

| | | |
|---|---|---|
| 908 | 2/1/2022 8:27:39 AM | 2/1/2022 8:30:32 AM |
| 909 | 2/1/2022 8:27:39 AM | 2/1/2022 8:29:12 AM |
| 910 | 2/1/2022 8:27:39 AM | 2/1/2022 8:33:52 AM |
| 912 | 2/1/2022 8:27:51 AM | 2/1/2022 8:30:06 AM |
| 916 | 2/1/2022 8:27:59 AM | 2/1/2022 8:31:10 AM |
| 917 | 2/1/2022 8:27:47 AM | 2/1/2022 8:30:11 AM |
| 918 | 2/1/2022 8:27:52 AM | 2/1/2022 8:31:31 AM |
| 920 | 2/1/2022 8:28:01 AM | 2/1/2022 8:30:09 AM |
| 921 | 2/1/2022 8:27:38 AM | 2/1/2022 8:30:12 AM |
| 922 | 2/1/2022 8:28:05 AM | 2/1/2022 8:30:17 AM |
| 923 | 2/1/2022 8:28:03 AM | 2/1/2022 8:30:32 AM |
| 924 | 2/1/2022 8:28:03 AM | 2/1/2022 8:30:34 AM |
| 925 | 2/1/2022 8:28:03 AM | 2/1/2022 8:29:47 AM |
| 926 | 2/1/2022 8:28:11 AM | 2/1/2022 8:29:34 AM |
| 927 | 2/1/2022 8:28:16 AM | 2/1/2022 8:29:39 AM |
| 928 | 2/1/2022 8:28:03 AM | 2/1/2022 8:32:06 AM |
| 929 | 2/1/2022 8:28:11 AM | 2/1/2022 8:30:02 AM |
| 932 | 2/1/2022 8:28:21 AM | 2/1/2022 8:31:10 AM |
| 934 | 2/1/2022 8:28:17 AM | 2/1/2022 8:31:02 AM |
| 936 | 2/1/2022 8:28:28 AM | 2/1/2022 8:31:36 AM |
| 938 | 2/1/2022 8:28:18 AM | 2/1/2022 8:30:49 AM |
| 940 | 2/1/2022 8:28:42 AM | 2/1/2022 8:31:28 AM |
| 941 | 2/1/2022 8:28:34 AM | 2/1/2022 8:30:01 AM |
| 942 | 2/1/2022 8:28:48 AM | 2/1/2022 8:34:28 AM |
| 943 | 2/1/2022 8:30:09 AM | 2/1/2022 8:34:08 AM |
| 946 | 2/1/2022 8:30:15 AM | 2/1/2022 8:31:21 AM |
| 947 | 2/1/2022 8:30:23 AM | 2/1/2022 8:33:44 AM |
| 948 | 2/1/2022 8:30:30 AM | 2/1/2022 8:31:57 AM |
| 949 | 2/1/2022 8:30:33 AM | 2/1/2022 8:33:33 AM |
| 950 | 2/1/2022 8:30:46 AM | 2/1/2022 8:34:25 AM |
| 951 | 2/1/2022 8:30:48 AM | 2/1/2022 8:33:30 AM |
| 952 | 2/1/2022 8:30:54 AM | 2/1/2022 8:32:19 AM |
| 953 | 2/1/2022 8:30:56 AM | 2/1/2022 8:34:42 AM |
| 956 | 2/1/2022 8:32:30 AM | 2/1/2022 8:34:29 AM |
| 959 | 2/1/2022 8:37:30 AM | 2/1/2022 8:38:51 AM |
| 962 | 2/1/2022 8:38:48 AM | 2/1/2022 8:40:04 AM |
| 963 | 2/1/2022 8:39:38 AM | 2/1/2022 8:41:01 AM |
| 965 | 2/1/2022 8:41:21 AM | 2/1/2022 8:43:55 AM |
| 966 | 2/1/2022 8:41:23 AM | 2/1/2022 8:43:14 AM |
| 967 | 2/1/2022 8:41:34 AM | 2/1/2022 8:43:17 AM |
| 968 | 2/1/2022 8:41:31 AM | 2/1/2022 8:44:32 AM |
| 969 | 2/1/2022 8:44:10 AM | 2/1/2022 8:46:19 AM |
| 970 | 2/1/2022 8:46:30 AM | 2/1/2022 8:49:16 AM |
| 971 | 2/1/2022 8:47:37 AM | 2/1/2022 8:52:15 AM |
| 972 | 2/1/2022 8:50:34 AM | 2/1/2022 8:53:23 AM |
| 973 | 2/1/2022 8:52:02 AM | 2/1/2022 8:54:32 AM |
| 977 | 2/1/2022 9:08:45 AM | 2/1/2022 9:11:20 AM |

| | | |
|---|---|---|
| 978 | 2/1/2022 9:14:49 AM | 2/1/2022 9:17:38 AM |
| 979 | 2/1/2022 9:14:45 AM | 2/1/2022 9:18:04 AM |
| 980 | 2/1/2022 9:16:12 AM | 2/1/2022 9:18:08 AM |
| 981 | 2/1/2022 9:16:23 AM | 2/1/2022 9:19:54 AM |
| 984 | 2/1/2022 9:20:09 AM | 2/1/2022 9:23:56 AM |
| 985 | 2/1/2022 9:35:38 AM | 2/1/2022 9:40:14 AM |
| 986 | 2/1/2022 9:37:44 AM | 2/1/2022 9:41:28 AM |
| 987 | 2/1/2022 9:39:02 AM | 2/1/2022 9:42:03 AM |
| 988 | 2/1/2022 9:43:44 AM | 2/1/2022 9:45:35 AM |
| 989 | 2/1/2022 9:44:24 AM | 2/1/2022 9:45:53 AM |
| 990 | 2/1/2022 9:48:25 AM | 2/1/2022 9:50:14 AM |
| 991 | 2/1/2022 9:49:36 AM | 2/1/2022 9:51:47 AM |
| 992 | 2/1/2022 9:57:00 AM | 2/1/2022 9:58:22 AM |
| 993 | 2/1/2022 9:59:45 AM | 2/1/2022 10:02:22 AM |
| 994 | 2/1/2022 10:02:17 AM | 2/1/2022 10:06:55 AM |
| 995 | 2/1/2022 10:02:30 AM | 2/1/2022 10:04:46 AM |
| 997 | 2/1/2022 10:21:45 AM | 2/1/2022 10:25:09 AM |
| 1002 | 2/1/2022 11:42:54 AM | 2/1/2022 11:45:37 AM |
| 1003 | 2/1/2022 12:23:01 PM | 2/1/2022 12:24:44 PM |
| 1004 | 2/1/2022 12:33:38 PM | 2/1/2022 12:35:04 PM |
| 1005 | 2/1/2022 1:10:47 PM | 2/1/2022 1:12:24 PM |
| 1007 | 2/1/2022 1:46:26 PM | 2/1/2022 1:48:44 PM |
| 1008 | 2/1/2022 1:46:36 PM | 2/1/2022 1:48:18 PM |
| 1009 | 2/1/2022 1:51:19 PM | 2/1/2022 1:52:57 PM |
| 1010 | 2/1/2022 1:54:17 PM | 2/1/2022 1:58:09 PM |
| 1011 | 2/1/2022 1:56:03 PM | 2/1/2022 1:58:43 PM |
| 1013 | 2/1/2022 2:03:24 PM | 2/1/2022 2:06:35 PM |
| 1016 | 2/1/2022 2:23:42 PM | 2/1/2022 2:25:14 PM |
| 1017 | 2/1/2022 2:44:22 PM | 2/1/2022 2:48:08 PM |
| 1018 | 2/1/2022 2:49:56 PM | 2/1/2022 2:51:49 PM |
| 1021 | 2/1/2022 3:51:41 PM | 2/1/2022 3:53:36 PM |
| 1022 | 2/1/2022 3:59:58 PM | 2/1/2022 4:02:21 PM |
| 1023 | 2/1/2022 4:19:58 PM | 2/1/2022 4:23:10 PM |
| 1024 | 2/1/2022 4:42:17 PM | 2/1/2022 4:44:31 PM |
| 1026 | 2/1/2022 4:58:20 PM | 2/1/2022 4:59:44 PM |
| 1027 | 2/1/2022 5:20:50 PM | 2/1/2022 5:22:49 PM |
| 1028 | 2/1/2022 5:32:02 PM | 2/1/2022 5:34:10 PM |
| 1029 | 2/1/2022 6:05:04 PM | 2/1/2022 6:07:10 PM |
| 1031 | 2/1/2022 6:22:48 PM | 2/1/2022 6:24:48 PM |
| 1032 | 2/1/2022 8:05:01 PM | 2/1/2022 8:07:46 PM |
| 1034 | 2/1/2022 8:46:05 PM | 2/1/2022 8:47:56 PM |
| 1035 | 2/1/2022 9:35:27 PM | 2/1/2022 9:43:02 PM |
| 1036 | 2/1/2022 9:43:50 PM | 2/1/2022 9:45:37 PM |
| 1038 | 2/1/2022 10:43:51 PM | 2/1/2022 10:46:55 PM |

| Duration | Vstatus | S1 |
|----------|---------|-----|

| Duration | Status | What is your gender? |
|----------|--------|----------------------|
| 0:02:16 | Complete | Female |
| 0:01:18 | Complete | Male |
| 0:01:23 | Complete | Male |
| 0:03:04 | Complete | Female |
| 0:01:51 | Complete | Female |
| 0:02:25 | Complete | Female |
| 0:02:16 | Complete | Female |
| 0:02:09 | Complete | Male |
| 0:01:17 | Complete | Female |
| 0:02:12 | Complete | Male |
| 0:02:12 | Complete | Female |
| 0:03:36 | Complete | Male |
| 0:04:00 | Complete | Female |
| 0:02:09 | Complete | Male |
| 0:02:08 | Complete | Female |
| 0:01:32 | Complete | Male |
| 0:02:01 | Complete | Female |
| 0:01:14 | Complete | Male |
| 0:02:45 | Complete | Female |
| 0:02:56 | Complete | Female |
| 0:01:04 | Complete | Female |
| 0:01:51 | Complete | Female |
| 0:03:37 | Complete | Male |
| 0:01:09 | Complete | Male |
| 0:02:28 | Complete | Female |
| 0:02:26 | Complete | Female |
| 0:01:57 | Complete | Male |
| 0:02:49 | Complete | Female |
| 0:03:08 | Complete | Female |
| 0:02:05 | Complete | Male |
| 0:01:15 | Complete | Male |
| 0:02:15 | Complete | Male |
| 0:01:41 | Complete | Female |
| 0:01:56 | Complete | Female |
| 0:01:40 | Complete | Female |

| | | |
|---|---|---|
| 0:01:49 | Complete | Male |
| 0:01:25 | Complete | Female |
| 0:01:53 | Complete | Male |
| 0:02:05 | Complete | Male |
| 0:02:13 | Complete | Female |
| 0:02:34 | Complete | Female |
| 0:01:44 | Complete | Female |
| 0:01:28 | Complete | Female |
| 0:01:42 | Complete | Male |
| 0:01:26 | Complete | Male |
| 0:02:16 | Complete | Male |
| 0:02:16 | Complete | Female |
| 0:01:15 | Complete | Male |
| 0:02:06 | Complete | Male |
| 0:02:45 | Complete | Male |
| 0:04:14 | Complete | Female |
| 0:02:33 | Complete | Male |
| 0:02:37 | Complete | Female |
| 0:03:59 | Complete | Male |
| 0:03:18 | Complete | Female |
| 0:02:13 | Complete | Male |
| 0:01:19 | Complete | Female |
| 0:01:57 | Complete | Male |
| 0:02:59 | Complete | Female |
| 0:01:20 | Complete | Male |
| 0:03:59 | Complete | Female |
| 0:04:17 | Complete | Female |
| 0:04:27 | Complete | Female |
| 0:06:49 | Complete | Female |
| 0:04:00 | Complete | Female |
| 0:06:11 | Complete | Male |
| 0:02:12 | Complete | Male |
| 0:02:25 | Complete | Female |
| 0:01:54 | Complete | Female |
| 0:02:25 | Complete | Female |
| 0:01:57 | Complete | Male |
| 0:01:59 | Complete | Female |
| 0:01:59 | Complete | Male |
| 0:02:46 | Complete | Female |
| 0:01:26 | Complete | Female |
| 0:01:43 | Complete | Female |
| 0:01:40 | Complete | Female |
| 0:01:49 | Complete | Female |
| 0:01:50 | Complete | Male |
| 0:02:28 | Complete | Female |
| 0:02:37 | Complete | Male |
| 0:02:13 | Complete | Female |

| | | |
|---|---|---|
| 0:02:04 | Complete | Female |
| 0:03:16 | Complete | Male |
| 0:01:51 | Complete | Male |
| 0:02:07 | Complete | Male |
| 0:04:03 | Complete | Female |
| 0:02:02 | Complete | Male |
| 0:01:43 | Complete | Male |
| 0:01:37 | Complete | Female |
| 0:01:51 | Complete | Male |
| 0:02:44 | Complete | Female |
| 0:01:42 | Complete | Female |
| 0:03:17 | Complete | Male |
| 0:02:39 | Complete | Female |
| 0:01:37 | Complete | Male |
| 0:01:35 | Complete | Female |
| 0:02:04 | Complete | Male |
| 0:01:59 | Complete | Female |
| 0:02:09 | Complete | Male |
| 0:01:55 | Complete | Female |
| 0:01:44 | Complete | Male |
| 0:02:46 | Complete | Female |
| 0:02:13 | Complete | Female |
| 0:01:18 | Complete | Male |
| 0:01:16 | Complete | Male |
| 0:02:25 | Complete | Female |
| 0:02:10 | Complete | Male |
| 0:02:20 | Complete | Male |
| 0:01:35 | Complete | Female |
| 0:02:22 | Complete | Male |
| 0:02:18 | Complete | Female |
| 0:01:37 | Complete | Male |
| 0:02:47 | Complete | Female |
| 0:03:39 | Complete | Female |
| 0:02:14 | Complete | Female |
| 0:02:32 | Complete | Female |
| 0:01:26 | Complete | Female |
| 0:02:48 | Complete | Male |
| 0:01:12 | Complete | Female |
| 0:02:19 | Complete | Male |
| 0:04:45 | Complete | Female |
| 0:03:16 | Complete | Male |
| 0:01:36 | Complete | Male |
| 0:02:09 | Complete | Female |
| 0:02:21 | Complete | Female |
| 0:01:28 | Complete | Female |
| 0:04:13 | Complete | Male |
| 0:02:30 | Complete | Female |

| | | |
|---|---|---|
| 0:02:15 | Complete | Female |
| 0:03:28 | Complete | Female |
| 0:02:22 | Complete | Female |
| 0:01:57 | Complete | Male |
| 0:02:17 | Complete | Male |
| 0:05:31 | Complete | Female |
| 0:01:22 | Complete | Female |
| 0:01:30 | Complete | Female |
| 0:02:06 | Complete | Male |
| 0:02:03 | Complete | Male |
| 0:01:39 | Complete | Female |
| 0:05:55 | Complete | Male |
| 0:01:17 | Complete | Female |
| 0:02:00 | Complete | Female |
| 0:04:51 | Complete | Female |
| 0:02:18 | Complete | Female |
| 0:03:52 | Complete | Male |
| 0:02:09 | Complete | Female |
| 0:01:58 | Complete | Female |
| 0:05:37 | Complete | Female |
| 0:07:09 | Complete | Male |
| 0:01:33 | Complete | Female |
| 0:02:59 | Complete | Male |
| 0:01:10 | Complete | Female |
| 0:03:54 | Complete | Male |
| 0:02:34 | Complete | Male |
| 0:03:22 | Complete | Male |
| 0:01:48 | Complete | Female |
| 0:02:02 | Complete | Female |
| 0:02:18 | Complete | Male |
| 0:01:04 | Complete | Male |
| 0:01:59 | Complete | Female |
| 0:01:10 | Complete | Male |
| 0:01:50 | Complete | Female |
| 0:02:12 | Complete | Male |
| 0:02:37 | Complete | Female |
| 0:02:42 | Complete | Male |
| 0:02:07 | Complete | Female |
| 0:01:55 | Complete | Male |
| 0:01:27 | Complete | Female |
| 0:01:32 | Complete | Male |
| 0:02:47 | Complete | Female |
| 0:02:12 | Complete | Female |
| 0:02:10 | Complete | Male |
| 0:02:32 | Complete | Male |
| 0:02:34 | Complete | Female |
| 0:01:17 | Complete | Female |

| | | |
|---|---|---|
| 0:05:17 | Complete | Male |
| 0:03:24 | Complete | Male |
| 0:02:36 | Complete | Male |
| 0:02:18 | Complete | Male |
| 0:05:27 | Complete | Female |
| 0:02:26 | Complete | Female |
| 0:01:40 | Complete | Female |
| 0:02:46 | Complete | Female |
| 0:02:53 | Complete | Female |
| 0:02:00 | Complete | Male |
| 0:01:24 | Complete | Female |
| 0:03:50 | Complete | Female |
| 0:02:25 | Complete | Female |
| 0:03:47 | Complete | Female |
| 0:01:41 | Complete | Female |
| 0:03:30 | Complete | Female |
| 0:01:35 | Complete | Male |
| 0:01:25 | Complete | Female |
| 0:02:43 | Complete | Male |
| 0:01:18 | Complete | Male |
| 0:01:49 | Complete | Female |
| 0:01:30 | Complete | Male |
| 0:04:03 | Complete | Male |
| 0:01:57 | Complete | Male |
| 0:01:54 | Complete | Female |
| 0:02:56 | Complete | Female |
| 0:03:13 | Complete | Female |
| 0:02:05 | Complete | Female |
| 0:02:18 | Complete | Male |
| 0:02:09 | Complete | Male |
| 0:01:35 | Complete | Female |
| 0:04:21 | Complete | Female |
| 0:02:14 | Complete | Female |
| 0:04:20 | Complete | Male |
| 0:01:25 | Complete | Male |
| 0:03:14 | Complete | Female |
| 0:01:46 | Complete | Male |
| 0:02:46 | Complete | Male |
| 0:03:14 | Complete | Male |
| 0:03:07 | Complete | Female |
| 0:02:23 | Complete | Female |
| 0:02:03 | Complete | Female |
| 0:01:55 | Complete | Female |
| 0:04:05 | Complete | Female |
| 0:05:15 | Complete | Female |
| 0:04:08 | Complete | Female |
| 0:01:59 | Complete | Male |

| | | |
|---|---|---|
| 0:02:30 | Complete | Male |
| 0:01:57 | Complete | Female |
| 0:01:40 | Complete | Male |
| 0:01:15 | Complete | Female |
| 0:01:29 | Complete | Female |
| 0:01:46 | Complete | Female |
| 0:01:51 | Complete | Female |
| 0:01:23 | Complete | Male |
| 0:03:03 | Complete | Female |
| 0:01:48 | Complete | Male |
| 0:02:01 | Complete | Female |
| 0:05:40 | Complete | Male |
| 0:03:23 | Complete | Female |
| 0:01:21 | Complete | Male |
| 0:05:05 | Complete | Female |
| 0:01:36 | Complete | Male |
| 0:01:45 | Complete | Female |
| 0:03:12 | Complete | Male |
| 0:03:04 | Complete | Male |
| 0:01:51 | Complete | Male |
| 0:04:19 | Complete | Male |
| 0:02:12 | Complete | Female |
| 0:02:09 | Complete | Male |
| 0:02:22 | Complete | Female |
| 0:02:03 | Complete | Female |
| 0:02:15 | Complete | Male |
| 0:01:45 | Complete | Male |
| 0:02:48 | Complete | Male |
| 0:01:51 | Complete | Female |
| 0:02:42 | Complete | Male |
| 0:02:05 | Complete | Male |
| 0:02:21 | Complete | Female |
| 0:07:05 | Complete | Female |
| 0:02:29 | Complete | Female |
| 0:01:16 | Complete | Female |
| 0:02:22 | Complete | Male |
| 0:02:09 | Complete | Female |
| 0:01:35 | Complete | Male |
| 0:01:45 | Complete | Female |
| 0:02:17 | Complete | Female |
| 0:01:24 | Complete | Male |
| 0:02:45 | Complete | Female |
| 0:02:24 | Complete | Male |
| 0:02:26 | Complete | Female |
| 0:02:21 | Complete | Male |
| 0:04:50 | Complete | Female |
| 0:02:44 | Complete | Female |

| | | |
|---|---|---|
| 0:02:23 | Complete | Male |
| 0:02:54 | Complete | Male |
| 0:01:09 | Complete | Female |
| 0:01:51 | Complete | Female |
| 0:02:20 | Complete | Female |
| 0:01:09 | Complete | Male |
| 0:01:30 | Complete | Male |
| 0:02:34 | Complete | Male |
| 0:04:42 | Complete | Female |
| 0:01:39 | Complete | Male |
| 0:01:59 | Complete | Male |
| 0:03:28 | Complete | Male |
| 0:02:11 | Complete | Male |
| 0:01:20 | Complete | Female |
| 0:01:53 | Complete | Male |
| 0:02:02 | Complete | Male |
| 0:01:46 | Complete | Female |
| 0:03:03 | Complete | Female |
| 0:01:24 | Complete | Female |
| 0:02:15 | Complete | Male |
| 0:01:46 | Complete | Female |
| 0:01:17 | Complete | Female |
| 0:01:51 | Complete | Male |
| 0:03:05 | Complete | Female |
| 0:01:53 | Complete | Male |
| 0:01:46 | Complete | Male |
| 0:04:13 | Complete | Female |
| 0:03:39 | Complete | Male |
| 0:03:48 | Complete | Female |
| 0:04:30 | Complete | Female |
| 0:01:32 | Complete | Male |
| 0:01:30 | Complete | Female |
| 0:02:10 | Complete | Female |
| 0:02:20 | Complete | Female |
| 0:02:40 | Complete | Female |
| 0:01:26 | Complete | Female |
| 0:01:54 | Complete | Male |
| 0:02:12 | Complete | Male |
| 0:01:54 | Complete | Female |
| 0:01:14 | Complete | Female |
| 0:01:38 | Complete | Male |
| 0:02:26 | Complete | Female |
| 0:03:04 | Complete | Male |
| 0:02:29 | Complete | Male |
| 0:01:45 | Complete | Female |
| 0:01:28 | Complete | Female |
| 0:01:58 | Complete | Male |

| | | |
|---|---|---|
| 0:03:24 | Complete | Male |
| 0:04:58 | Complete | Female |
| 0:01:42 | Complete | Female |
| 0:01:45 | Complete | Female |
| 0:02:12 | Complete | Female |
| 0:02:13 | Complete | Female |
| 0:01:43 | Complete | Male |
| 0:01:26 | Complete | Male |
| 0:01:48 | Complete | Female |
| 0:01:21 | Complete | Female |
| 0:02:44 | Complete | Male |
| 0:04:12 | Complete | Female |
| 0:04:02 | Complete | Male |
| 0:02:21 | Complete | Male |
| 0:01:12 | Complete | Male |
| 0:02:48 | Complete | Female |
| 0:02:13 | Complete | Female |
| 0:03:35 | Complete | Male |
| 0:03:06 | Complete | Female |
| 0:01:21 | Complete | Female |
| 0:01:39 | Complete | Female |
| 0:03:55 | Complete | Female |
| 0:03:16 | Complete | Female |
| 0:01:50 | Complete | Male |
| 0:01:26 | Complete | Female |
| 0:02:15 | Complete | Female |
| 0:02:28 | Complete | Male |
| 0:04:15 | Complete | Male |
| 0:03:22 | Complete | Male |
| 0:01:59 | Complete | Female |
| 0:02:14 | Complete | Female |
| 0:01:27 | Complete | Female |
| 0:01:16 | Complete | Female |
| 0:01:52 | Complete | Female |
| 0:03:09 | Complete | Female |
| 0:07:34 | Complete | Female |
| 0:02:20 | Complete | Female |
| 0:01:16 | Complete | Male |
| 0:01:28 | Complete | Male |
| 0:01:12 | Complete | Female |
| 0:04:03 | Complete | Female |
| 0:02:10 | Complete | Female |
| 0:01:59 | Complete | Female |
| 0:02:13 | Complete | Female |
| 0:01:33 | Complete | Female |
| 0:03:29 | Complete | Female |
| 0:01:57 | Complete | Male |

| | | |
|---|---|---|
| 0:03:22 | Complete | Female |
| 0:02:38 | Complete | Male |
| 0:01:43 | Complete | Female |
| 0:01:08 | Complete | Female |
| 0:02:32 | Complete | Female |
| 0:02:34 | Complete | Female |
| 0:02:29 | Complete | Male |
| 0:02:40 | Complete | Male |
| 0:01:15 | Complete | Male |
| 0:01:33 | Complete | Female |
| 0:02:31 | Complete | Male |
| 0:01:22 | Complete | Male |
| 0:01:08 | Complete | Male |
| 0:02:04 | Complete | Male |
| 0:04:36 | Complete | Female |
| 0:01:52 | Complete | Male |
| 0:02:11 | Complete | Female |
| 0:01:41 | Complete | Male |
| 0:02:21 | Complete | Male |
| 0:02:02 | Complete | Male |
| 0:02:34 | Complete | Female |
| 0:03:22 | Complete | Male |
| 0:01:39 | Complete | Male |
| 0:01:28 | Complete | Female |
| 0:07:06 | Complete | Female |
| 0:06:59 | Complete | Male |
| 0:01:43 | Complete | Male |
| 0:03:06 | Complete | Female |
| 0:02:49 | Complete | Male |
| 0:02:17 | Complete | Female |
| 0:01:38 | Complete | Female |
| 0:01:54 | Complete | Female |
| 0:02:12 | Complete | Male |
| 0:01:51 | Complete | Male |
| 0:01:35 | Complete | Female |
| 0:01:25 | Complete | Female |
| 0:01:50 | Complete | Female |
| 0:02:17 | Complete | Male |
| 0:02:54 | Complete | Female |
| 0:01:37 | Complete | Male |
| 0:03:06 | Complete | Male |
| 0:05:38 | Complete | Female |
| 0:02:22 | Complete | Female |
| 0:02:51 | Complete | Male |
| 0:01:42 | Complete | Male |
| 0:01:27 | Complete | Female |
| 0:01:17 | Complete | Female |

| | | |
|---|---|---|
| 0:01:35 | Complete | Female |
| 0:06:03 | Complete | Female |
| 0:01:45 | Complete | Male |
| 0:02:03 | Complete | Female |
| 0:02:11 | Complete | Male |
| 0:01:06 | Complete | Male |
| 0:01:37 | Complete | Female |
| 0:07:03 | Complete | Male |
| 0:03:37 | Complete | Male |
| 0:02:21 | Complete | Male |
| 0:01:24 | Complete | Male |
| 0:02:33 | Complete | Male |
| 0:01:25 | Complete | Female |
| 0:01:44 | Complete | Female |
| 0:01:58 | Complete | Female |
| 0:02:15 | Complete | Male |
| 0:01:58 | Complete | Female |
| 0:01:51 | Complete | Female |
| 0:02:24 | Complete | Male |
| 0:01:27 | Complete | Female |
| 0:02:01 | Complete | Male |
| 0:02:27 | Complete | Female |
| 0:01:39 | Complete | Female |
| 0:01:40 | Complete | Female |
| 0:02:08 | Complete | Female |
| 0:02:26 | Complete | Female |
| 0:05:26 | Complete | Female |
| 0:02:37 | Complete | Female |
| 0:01:58 | Complete | Male |
| 0:02:08 | Complete | Male |
| 0:01:45 | Complete | Male |
| 0:02:05 | Complete | Male |
| 0:01:47 | Complete | Female |
| 0:02:11 | Complete | Male |
| 0:03:10 | Complete | Male |
| 0:01:20 | Complete | Male |
| 0:03:09 | Complete | Male |
| 0:02:11 | Complete | Male |
| 0:02:09 | Complete | Female |
| 0:01:32 | Complete | Female |
| 0:01:08 | Complete | Male |
| 0:03:17 | Complete | Female |
| 0:02:24 | Complete | Male |
| 0:01:40 | Complete | Female |
| 0:02:08 | Complete | Female |
| 0:02:57 | Complete | Female |
| 0:01:30 | Complete | Male |

| | | |
|---|---|---|
| 0:03:09 | Complete | Female |
| 0:01:31 | Complete | Male |
| 0:01:44 | Complete | Male |
| 0:01:26 | Complete | Male |
| 0:03:00 | Complete | Male |
| 0:02:13 | Complete | Male |
| 0:02:09 | Complete | Male |
| 0:02:11 | Complete | Female |
| 0:01:53 | Complete | Female |
| 0:02:33 | Complete | Female |
| 0:02:59 | Complete | Female |
| 0:01:19 | Complete | Male |
| 0:02:33 | Complete | Male |
| 0:03:00 | Complete | Female |
| 0:01:29 | Complete | Female |
| 0:01:35 | Complete | Male |
| 0:01:18 | Complete | Male |
| 0:02:07 | Complete | Male |
| 0:02:26 | Complete | Female |
| 0:01:36 | Complete | Female |
| 0:01:37 | Complete | Male |
| 0:01:37 | Complete | Female |
| 0:02:19 | Complete | Female |
| 0:01:57 | Complete | Male |
| 0:02:42 | Complete | Male |
| 0:01:21 | Complete | Male |
| 0:01:34 | Complete | Male |
| 0:02:04 | Complete | Male |
| 0:02:25 | Complete | Male |
| 0:02:32 | Complete | Female |
| 0:01:38 | Complete | Male |
| 0:01:20 | Complete | Female |
| 0:02:23 | Complete | Female |
| 0:02:36 | Complete | Female |
| 0:03:53 | Complete | Female |
| 0:01:22 | Complete | Female |
| 0:01:13 | Complete | Female |
| 0:03:34 | Complete | Female |
| 0:02:07 | Complete | Female |
| 0:02:03 | Complete | Male |
| 0:02:17 | Complete | Female |
| 0:02:22 | Complete | Male |
| 0:01:18 | Complete | Female |
| 0:03:31 | Complete | Male |
| 0:01:19 | Complete | Male |
| 0:02:03 | Complete | Male |
| 0:01:32 | Complete | Female |

| | | |
|---|---|---|
| 0:01:33 | Complete | Female |
| 0:01:59 | Complete | Female |
| 0:03:48 | Complete | Female |
| 0:01:56 | Complete | Female |
| 0:01:24 | Complete | Female |
| 0:02:40 | Complete | Female |
| 0:01:30 | Complete | Female |
| 0:06:23 | Complete | Female |
| 0:01:49 | Complete | Female |
| 0:01:56 | Complete | Female |
| 0:02:26 | Complete | Female |
| 0:01:50 | Complete | Male |
| 0:02:12 | Complete | Female |
| 0:03:56 | Complete | Female |
| 0:03:09 | Complete | Female |
| 0:03:11 | Complete | Female |
| 0:01:31 | Complete | Female |
| 0:01:31 | Complete | Female |
| 0:02:00 | Complete | Female |
| 0:01:34 | Complete | Female |
| 0:03:27 | Complete | Male |
| 0:03:29 | Complete | Female |
| 0:07:22 | Complete | Female |
| 0:02:11 | Complete | Female |
| 0:01:41 | Complete | Male |
| 0:01:59 | Complete | Female |
| 0:02:14 | Complete | Male |
| 0:01:59 | Complete | Female |
| 0:03:23 | Complete | Female |
| 0:02:48 | Complete | Male |
| 0:03:24 | Complete | Male |
| 0:02:03 | Complete | Female |
| 0:01:39 | Complete | Male |
| 0:01:48 | Complete | Female |
| 0:01:28 | Complete | Female |
| 0:01:44 | Complete | Female |
| 0:01:32 | Complete | Female |
| 0:02:11 | Complete | Male |
| 0:02:29 | Complete | Male |
| 0:01:59 | Complete | Female |
| 0:03:47 | Complete | Female |
| 0:01:17 | Complete | Male |
| 0:02:56 | Complete | Male |
| 0:02:22 | Complete | Male |
| 0:01:45 | Complete | Male |
| 0:01:41 | Complete | Male |
| 0:01:28 | Complete | Female |

| | | |
|---|---|---|
| 0:01:52 | Complete | Male |
| 0:02:03 | Complete | Male |
| 0:01:50 | Complete | Male |
| 0:01:46 | Complete | Female |
| 0:02:26 | Complete | Female |
| 0:02:47 | Complete | Male |
| 0:03:44 | Complete | Female |
| 0:01:39 | Complete | Male |
| 0:02:42 | Complete | Male |
| 0:01:28 | Complete | Female |
| 0:01:21 | Complete | Male |
| 0:02:54 | Complete | Male |
| 0:02:13 | Complete | Female |
| 0:01:22 | Complete | Male |
| 0:02:28 | Complete | Male |
| 0:03:17 | Complete | Female |
| 0:01:32 | Complete | Female |
| 0:01:05 | Complete | Male |
| 0:02:48 | Complete | Male |
| 0:01:44 | Complete | Female |
| 0:02:02 | Complete | Female |
| 0:01:55 | Complete | Female |
| 0:02:26 | Complete | Female |
| 0:02:37 | Complete | Male |
| 0:04:53 | Complete | Female |
| 0:02:32 | Complete | Female |
| 0:02:16 | Complete | Female |
| 0:04:50 | Complete | Male |
| 0:01:41 | Complete | Female |
| 0:03:05 | Complete | Male |
| 0:01:08 | Complete | Male |
| 0:03:09 | Complete | Female |
| 0:01:21 | Complete | Male |
| 0:01:33 | Complete | Male |
| 0:03:33 | Complete | Male |
| 0:01:10 | Complete | Male |
| 0:01:41 | Complete | Female |
| 0:02:16 | Complete | Female |
| 0:02:14 | Complete | Female |
| 0:02:06 | Complete | Female |
| 0:01:16 | Complete | Male |
| 0:03:53 | Complete | Female |
| 0:02:09 | Complete | Male |
| 0:02:03 | Complete | Female |
| 0:01:48 | Complete | Male |
| 0:04:05 | Complete | Male |
| 0:02:34 | Complete | Female |

| | | |
|---|---|---|
| 0:08:01 | Complete | Female |
| 0:01:44 | Complete | Male |
| 0:02:58 | Complete | Female |
| 0:01:18 | Complete | Male |
| 0:03:16 | Complete | Female |
| 0:01:38 | Complete | Male |
| 0:04:27 | Complete | Female |
| 0:03:28 | Complete | Male |
| 0:02:42 | Complete | Male |
| 0:03:31 | Complete | Female |
| 0:02:32 | Complete | Male |
| 0:02:58 | Complete | Female |
| 0:02:32 | Complete | Female |
| 0:01:27 | Complete | Male |
| 0:01:57 | Complete | Female |
| 0:02:39 | Complete | Female |
| 0:02:54 | Complete | Male |
| 0:01:40 | Complete | Female |
| 0:02:50 | Complete | Female |
| 0:01:47 | Complete | Female |
| 0:03:04 | Complete | Female |
| 0:02:54 | Complete | Female |
| 0:01:42 | Complete | Male |
| 0:01:45 | Complete | Male |
| 0:02:03 | Complete | Female |
| 0:01:54 | Complete | Female |
| 0:01:49 | Complete | Female |
| 0:01:57 | Complete | Male |
| 0:02:11 | Complete | Female |
| 0:02:10 | Complete | Female |
| 0:01:50 | Complete | Male |
| 0:01:34 | Complete | Female |
| 0:01:55 | Complete | Female |
| 0:03:48 | Complete | Female |
| 0:03:43 | Complete | Female |
| 0:02:53 | Complete | Female |
| 0:01:14 | Complete | Male |
| 0:01:53 | Complete | Male |
| 0:01:40 | Complete | Male |
| 0:01:28 | Complete | Female |
| 0:01:45 | Complete | Female |
| 0:01:33 | Complete | Male |
| 0:02:13 | Complete | Male |
| 0:04:24 | Complete | Female |
| 0:02:01 | Complete | Male |
| 0:04:33 | Complete | Female |
| 0:03:19 | Complete | Female |

| | | |
|---|---|---|
| 0:01:31 | Complete | Female |
| 0:02:19 | Complete | Male |
| 0:02:40 | Complete | Male |
| 0:01:23 | Complete | Male |
| 0:03:28 | Complete | Male |
| 0:01:30 | Complete | Female |
| 0:01:05 | Complete | Male |
| 0:01:37 | Complete | Female |
| 0:03:02 | Complete | Male |
| 0:02:07 | Complete | Male |
| 0:02:34 | Complete | Male |
| 0:08:24 | Complete | Female |
| 0:02:20 | Complete | Male |
| 0:03:00 | Complete | Female |
| 0:05:47 | Complete | Male |
| 0:01:50 | Complete | Male |
| 0:03:25 | Complete | Female |
| 0:01:21 | Complete | Male |
| 0:02:02 | Complete | Male |
| 0:02:23 | Complete | Female |
| 0:01:30 | Complete | Male |
| 0:02:03 | Complete | Male |
| 0:03:46 | Complete | Female |
| 0:03:08 | Complete | Female |
| 0:01:40 | Complete | Female |
| 0:01:25 | Complete | Female |
| 0:01:50 | Complete | Female |
| 0:01:36 | Complete | Male |
| 0:02:33 | Complete | Female |
| 0:01:45 | Complete | Female |
| 0:02:07 | Complete | Female |
| 0:02:08 | Complete | Male |
| 0:01:46 | Complete | Female |
| 0:06:03 | Complete | Female |
| 0:02:17 | Complete | Male |
| 0:01:57 | Complete | Male |
| 0:03:12 | Complete | Female |
| 0:01:32 | Complete | Female |
| 0:01:49 | Complete | Male |
| 0:01:44 | Complete | Male |
| 0:02:15 | Complete | Female |
| 0:02:04 | Complete | Male |
| 0:01:29 | Complete | Female |
| 0:03:35 | Complete | Male |
| 0:02:00 | Complete | Female |
| 0:01:23 | Complete | Female |
| 0:01:58 | Complete | Male |

| | | |
|---|---|---|
| 0:01:47 | Complete | Male |
| 0:01:28 | Complete | Female |
| 0:07:11 | Complete | Male |
| 0:01:16 | Complete | Female |
| 0:01:18 | Complete | Female |
| 0:01:59 | Complete | Male |
| 0:02:08 | Complete | Female |
| 0:02:19 | Complete | Female |
| 0:01:58 | Complete | Female |
| 0:01:52 | Complete | Female |
| 0:01:43 | Complete | Female |
| 0:02:20 | Complete | Male |
| 0:01:33 | Complete | Male |
| 0:03:36 | Complete | Male |
| 0:02:17 | Complete | Female |
| 0:04:11 | Complete | Female |
| 0:02:12 | Complete | Male |
| 0:01:54 | Complete | Female |
| 0:03:55 | Complete | Female |
| 0:02:26 | Complete | Female |
| 0:02:42 | Complete | Male |
| 0:02:21 | Complete | Male |
| 0:02:09 | Complete | Female |
| 0:01:18 | Complete | Male |
| 0:01:29 | Complete | Female |
| 0:01:56 | Complete | Male |
| 0:02:19 | Complete | Male |
| 0:01:26 | Complete | Male |
| 0:02:05 | Complete | Female |
| 0:01:15 | Complete | Female |
| 0:03:55 | Complete | Male |
| 0:04:10 | Complete | Male |
| 0:01:26 | Complete | Female |
| 0:01:58 | Complete | Male |
| 0:03:38 | Complete | Female |
| 0:01:24 | Complete | Female |
| 0:01:32 | Complete | Male |
| 0:01:21 | Complete | Female |
| 0:03:56 | Complete | Female |
| 0:01:44 | Complete | Male |
| 0:03:43 | Complete | Female |
| 0:01:22 | Complete | Female |
| 0:02:34 | Complete | Male |
| 0:01:22 | Complete | Male |
| 0:02:03 | Complete | Female |
| 0:02:54 | Complete | Male |
| 0:04:19 | Complete | Male |

| | | |
|---|---|---|
| 0:02:53 | Complete | Female |
| 0:01:33 | Complete | Female |
| 0:06:13 | Complete | Male |
| 0:02:15 | Complete | Female |
| 0:03:11 | Complete | Female |
| 0:02:24 | Complete | Female |
| 0:03:39 | Complete | Female |
| 0:02:08 | Complete | Female |
| 0:02:34 | Complete | Male |
| 0:02:12 | Complete | Female |
| 0:02:29 | Complete | Male |
| 0:02:31 | Complete | Female |
| 0:01:44 | Complete | Male |
| 0:01:23 | Complete | Male |
| 0:01:23 | Complete | Female |
| 0:04:03 | Complete | Female |
| 0:01:51 | Complete | Female |
| 0:02:49 | Complete | Female |
| 0:02:45 | Complete | Female |
| 0:03:08 | Complete | Female |
| 0:02:31 | Complete | Female |
| 0:02:46 | Complete | Female |
| 0:01:27 | Complete | Male |
| 0:05:40 | Complete | Male |
| 0:03:59 | Complete | Female |
| 0:01:06 | Complete | Male |
| 0:03:21 | Complete | Male |
| 0:01:27 | Complete | Male |
| 0:03:00 | Complete | Female |
| 0:03:39 | Complete | Female |
| 0:02:42 | Complete | Male |
| 0:01:25 | Complete | Male |
| 0:03:46 | Complete | Male |
| 0:01:59 | Complete | Male |
| 0:01:21 | Complete | Male |
| 0:01:16 | Complete | Female |
| 0:01:23 | Complete | Female |
| 0:02:34 | Complete | Female |
| 0:01:51 | Complete | Male |
| 0:01:43 | Complete | Male |
| 0:03:01 | Complete | Female |
| 0:02:09 | Complete | Female |
| 0:02:46 | Complete | Female |
| 0:04:38 | Complete | Male |
| 0:02:49 | Complete | Male |
| 0:02:30 | Complete | Female |
| 0:02:35 | Complete | Male |

| | | |
|---|---|---|
| 0:02:49 | Complete | Male |
| 0:03:19 | Complete | Male |
| 0:01:56 | Complete | Female |
| 0:03:31 | Complete | Male |
| 0:03:47 | Complete | Female |
| 0:04:36 | Complete | Male |
| 0:03:44 | Complete | Female |
| 0:03:01 | Complete | Female |
| 0:01:51 | Complete | Female |
| 0:01:29 | Complete | Female |
| 0:01:49 | Complete | Female |
| 0:02:11 | Complete | Female |
| 0:01:22 | Complete | Male |
| 0:02:37 | Complete | Female |
| 0:04:38 | Complete | Female |
| 0:02:16 | Complete | Female |
| 0:03:24 | Complete | Male |
| 0:02:43 | Complete | Female |
| 0:01:43 | Complete | Female |
| 0:01:26 | Complete | Female |
| 0:01:37 | Complete | Male |
| 0:02:18 | Complete | Female |
| 0:01:42 | Complete | Male |
| 0:01:38 | Complete | Female |
| 0:03:52 | Complete | Male |
| 0:02:40 | Complete | Male |
| 0:03:11 | Complete | Female |
| 0:01:32 | Complete | Male |
| 0:03:46 | Complete | Female |
| 0:01:53 | Complete | Male |
| 0:01:55 | Complete | Male |
| 0:02:23 | Complete | Female |
| 0:03:12 | Complete | Female |
| 0:02:14 | Complete | Female |
| 0:01:24 | Complete | Female |
| 0:01:59 | Complete | Female |
| 0:02:08 | Complete | Male |
| 0:02:06 | Complete | Female |
| 0:02:00 | Complete | Male |
| 0:02:45 | Complete | Female |
| 0:01:51 | Complete | Female |
| 0:07:35 | Complete | Female |
| 0:01:47 | Complete | Male |
| 0:03:04 | Complete | Male |

|  | **S2** | **S3** | **S4** |
|---|---|---|---|
| **What is your age?** | | **Where do you live most of the year?** | **In what state do you live most of the year?** |
| 21 | | United States | New Jersey |
| 22 | | United States | New York |
| 25 | | United States | New York |
| 62 | | United States | Colorado |
| 40 | | United States | Pennsylvania |
| 66 | | United States | North Carolina |
| 53 | | United States | Florida |
| 55 | | United States | Illinois |
| 40 | | United States | North Carolina |
| 46 | | United States | Hawaii |
| 30 | | United States | Michigan |
| 55 | | United States | Texas |
| 49 | | United States | Arizona |
| 76 | | United States | Florida |
| 21 | | United States | Georgia |
| 71 | | United States | North Carolina |
| 55 | | United States | Illinois |
| 51 | | United States | Rhode Island |
| 41 | | United States | Texas |
| 22 | | United States | Pennsylvania |
| 42 | | United States | Pennsylvania |
| 71 | | United States | Pennsylvania |
| 34 | | United States | Illinois |
| 66 | | United States | Georgia |
| 64 | | United States | Minnesota |
| 71 | | United States | Georgia |
| 44 | | United States | Indiana |
| 28 | | United States | Ohio |
| 32 | | United States | Florida |
| 48 | | United States | Mississippi |
| 22 | | United States | California |
| 67 | | United States | Kentucky |
| 42 | | United States | Pennsylvania |
| 22 | | United States | North Carolina |
| 21 | | United States | Florida |

| | | |
|---|---|---|
| 20 | United States | Virginia |
| 71 | United States | Connecticut |
| 50 | United States | New York |
| 62 | United States | Arizona |
| 70 | United States | Michigan |
| 32 | United States | Florida |
| 52 | United States | Georgia |
| 65 | United States | Florida |
| 64 | United States | Illinois |
| 54 | United States | Georgia |
| 18 | United States | North Carolina |
| 59 | United States | Pennsylvania |
| 66 | United States | Tennessee |
| 33 | United States | Virginia |
| 58 | United States | Florida |
| 51 | United States | North Carolina |
| 26 | United States | Florida |
| 44 | United States | Florida |
| 28 | United States | Ohio |
| 33 | United States | Texas |
| 45 | United States | Pennsylvania |
| 49 | United States | Michigan |
| 43 | United States | West Virginia |
| 65 | United States | Connecticut |
| 65 | United States | Ohio |
| 56 | United States | Illinois |
| 24 | United States | Missouri |
| 20 | United States | Ohio |
| 31 | United States | Missouri |
| 38 | United States | Florida |
| 55 | United States | Iowa |
| 60 | United States | Texas |
| 46 | United States | Louisiana |
| 36 | United States | Ohio |
| 22 | United States | Michigan |
| 72 | United States | Maryland |
| 51 | United States | New York |
| 34 | United States | Minnesota |
| 28 | United States | Florida |
| 44 | United States | Connecticut |
| 40 | United States | California |
| 18 | United States | Illinois |
| 40 | United States | Montana |
| 45 | United States | Pennsylvania |
| 44 | United States | West Virginia |
| 67 | United States | Maryland |
| 48 | United States | North Carolina |

| | | |
|---|---|---|
| 36 | United States | California |
| 62 | United States | California |
| 56 | United States | South Carolina |
| 30 | United States | Kentucky |
| 35 | United States | Ohio |
| 70 | United States | Texas |
| 63 | United States | Pennsylvania |
| 71 | United States | Missouri |
| 21 | United States | California |
| 64 | United States | New York |
| 48 | United States | Michigan |
| 74 | United States | North Carolina |
| 25 | United States | California |
| 67 | United States | Texas |
| 19 | United States | California |
| 80 | United States | South Carolina |
| 72 | United States | Massachusetts |
| 45 | United States | California |
| 46 | United States | New York |
| 59 | United States | Virginia |
| 59 | United States | Pennsylvania |
| 74 | United States | Texas |
| 65 | United States | Illinois |
| 79 | United States | Connecticut |
| 30 | United States | South Carolina |
| 72 | United States | South Carolina |
| 50 | United States | Nevada |
| 27 | United States | South Carolina |
| 39 | United States | Louisiana |
| 75 | United States | Illinois |
| 29 | United States | Florida |
| 61 | United States | Florida |
| 86 | United States | Florida |
| 52 | United States | Texas |
| 40 | United States | Arizona |
| 65 | United States | Florida |
| 52 | United States | Pennsylvania |
| 38 | United States | California |
| 53 | United States | Arizona |
| 61 | United States | Michigan |
| 62 | United States | Oregon |
| 68 | United States | North Carolina |
| 21 | United States | Florida |
| 34 | United States | Pennsylvania |
| 21 | United States | Wisconsin |
| 29 | United States | New Jersey |
| 25 | United States | Florida |

| | | |
|---|---|---|
| 64 | United States | Maryland |
| 71 | United States | Pennsylvania |
| 63 | United States | California |
| 25 | United States | Arkansas |
| 22 | United States | Illinois |
| 32 | United States | Florida |
| 25 | United States | Texas |
| 31 | United States | Ohio |
| 61 | United States | Oregon |
| 32 | United States | Arizona |
| 27 | United States | Maryland |
| 36 | United States | New York |
| 59 | United States | Virginia |
| 53 | United States | Illinois |
| 26 | United States | Connecticut |
| 60 | United States | Arizona |
| 36 | United States | Kentucky |
| 31 | United States | Georgia |
| 32 | United States | Missouri |
| 55 | United States | Pennsylvania |
| 20 | United States | South Carolina |
| 48 | United States | Michigan |
| 24 | United States | Colorado |
| 60 | United States | New Jersey |
| 36 | United States | Delaware |
| 72 | United States | California |
| 67 | United States | Utah |
| 41 | United States | Oklahoma |
| 21 | United States | Ohio |
| 30 | United States | Kentucky |
| 63 | United States | New York |
| 38 | United States | California |
| 37 | United States | New Jersey |
| 50 | United States | Georgia |
| 53 | United States | New York |
| 32 | United States | Texas |
| 66 | United States | Oregon |
| 33 | United States | Michigan |
| 53 | United States | Indiana |
| 30 | United States | Washington |
| 25 | United States | Pennsylvania |
| 54 | United States | Florida |
| 40 | United States | Colorado |
| 36 | United States | Pennsylvania |
| 26 | United States | California |
| 23 | United States | New Jersey |
| 33 | United States | Ohio |

| | | |
|---|---|---|
| 29 | United States | California |
| 29 | United States | Michigan |
| 77 | United States | Missouri |
| 39 | United States | Michigan |
| 62 | United States | Michigan |
| 57 | United States | New York |
| 77 | United States | California |
| 66 | United States | Texas |
| 29 | United States | Arizona |
| 57 | United States | New York |
| 67 | United States | Texas |
| 54 | United States | Illinois |
| 44 | United States | Georgia |
| 49 | United States | Kansas |
| 32 | United States | Michigan |
| 45 | United States | Nebraska |
| 47 | United States | Montana |
| 62 | United States | Texas |
| 28 | United States | Florida |
| 63 | United States | Massachusetts |
| 42 | United States | Maryland |
| 61 | United States | New York |
| 40 | United States | Florida |
| 53 | United States | Colorado |
| 61 | United States | Connecticut |
| 63 | United States | North Carolina |
| 44 | United States | Arkansas |
| 55 | United States | Massachusetts |
| 30 | United States | Virginia |
| 32 | United States | New Jersey |
| 50 | United States | Oregon |
| 61 | United States | Delaware |
| 44 | United States | California |
| 39 | United States | Alabama |
| 52 | United States | Ohio |
| 26 | United States | Indiana |
| 35 | United States | Texas |
| 31 | United States | Pennsylvania |
| 69 | United States | Delaware |
| 29 | United States | New Jersey |
| 33 | United States | Minnesota |
| 38 | United States | Pennsylvania |
| 20 | United States | Florida |
| 53 | United States | Kentucky |
| 67 | United States | Texas |
| 84 | United States | Texas |
| 84 | United States | Nevada |

| | | |
|---|---|---|
| 41 | United States | Florida |
| 28 | United States | North Carolina |
| 35 | United States | New Mexico |
| 27 | United States | Connecticut |
| 53 | United States | Minnesota |
| 70 | United States | Maryland |
| 30 | United States | South Carolina |
| 24 | United States | Wisconsin |
| 66 | United States | South Carolina |
| 29 | United States | Iowa |
| 32 | United States | Connecticut |
| 37 | United States | California |
| 18 | United States | Mississippi |
| 51 | United States | Georgia |
| 31 | United States | Ohio |
| 52 | United States | North Carolina |
| 70 | United States | Alaska |
| 28 | United States | Connecticut |
| 38 | United States | Michigan |
| 46 | United States | Illinois |
| 25 | United States | Georgia |
| 42 | United States | Michigan |
| 44 | United States | Maryland |
| 66 | United States | Iowa |
| 42 | United States | Arkansas |
| 23 | United States | North Carolina |
| 51 | United States | Pennsylvania |
| 29 | United States | Illinois |
| 38 | United States | California |
| 53 | United States | Texas |
| 38 | United States | Nevada |
| 67 | United States | Ohio |
| 21 | United States | Connecticut |
| 32 | United States | Virginia |
| 39 | United States | New Jersey |
| 35 | United States | South Carolina |
| 60 | United States | Missouri |
| 73 | United States | Ohio |
| 62 | United States | South Carolina |
| 53 | United States | North Carolina |
| 29 | United States | Alaska |
| 66 | United States | Kentucky |
| 50 | United States | New Hampshire |
| 33 | United States | Florida |
| 23 | United States | Florida |
| 30 | United States | Arkansas |
| 65 | United States | Florida |

| | | |
|---|---|---|
| 44 | United States | Virginia |
| 48 | United States | Texas |
| 26 | United States | Wisconsin |
| 64 | United States | Florida |
| 51 | United States | California |
| 32 | United States | Texas |
| 44 | United States | Arizona |
| 40 | United States | Oklahoma |
| 45 | United States | Pennsylvania |
| 46 | United States | Mississippi |
| 57 | United States | Ohio |
| 25 | United States | North Carolina |
| 25 | United States | Virginia |
| 43 | United States | Michigan |
| 53 | United States | New Jersey |
| 56 | United States | New York |
| 48 | United States | New Mexico |
| 71 | United States | Illinois |
| 56 | United States | Arizona |
| 74 | United States | Michigan |
| 29 | United States | Rhode Island |
| 41 | United States | Wisconsin |
| 62 | United States | Michigan |
| 59 | United States | Florida |
| 47 | United States | California |
| 35 | United States | Virginia |
| 57 | United States | Florida |
| 34 | United States | California |
| 56 | United States | Virginia |
| 73 | United States | New Jersey |
| 62 | United States | Texas |
| 27 | United States | Minnesota |
| 67 | United States | Oregon |
| 45 | United States | Nevada |
| 59 | United States | Illinois |
| 59 | United States | Florida |
| 37 | United States | California |
| 53 | United States | North Carolina |
| 52 | United States | Alabama |
| 55 | United States | Tennessee |
| 48 | United States | New Jersey |
| 52 | United States | Pennsylvania |
| 51 | United States | California |
| 50 | United States | New York |
| 39 | United States | California |
| 60 | United States | Connecticut |
| 46 | United States | Texas |

| | | |
|---|---|---|
| 46 | United States | Texas |
| 29 | United States | Connecticut |
| 64 | United States | Minnesota |
| 39 | United States | Louisiana |
| 48 | United States | North Carolina |
| 58 | United States | South Carolina |
| 74 | United States | Oregon |
| 40 | United States | New Jersey |
| 69 | United States | Hawaii |
| 76 | United States | North Carolina |
| 29 | United States | Louisiana |
| 42 | United States | Tennessee |
| 66 | United States | California |
| 48 | United States | Illinois |
| 54 | United States | Georgia |
| 37 | United States | Illinois |
| 56 | United States | Washington |
| 68 | United States | Ohio |
| 66 | United States | North Carolina |
| 20 | United States | Florida |
| 65 | United States | Massachusetts |
| 44 | United States | New York |
| 70 | United States | Florida |
| 62 | United States | California |
| 36 | United States | Indiana |
| 40 | United States | Michigan |
| 45 | United States | Alabama |
| 29 | United States | Indiana |
| 31 | United States | New York |
| 52 | United States | West Virginia |
| 52 | United States | Minnesota |
| 36 | United States | Illinois |
| 37 | United States | Ohio |
| 34 | United States | Massachusetts |
| 42 | United States | Pennsylvania |
| 21 | United States | Georgia |
| 65 | United States | Wisconsin |
| 46 | United States | Ohio |
| 35 | United States | Pennsylvania |
| 21 | United States | Virginia |
| 33 | United States | Kansas |
| 25 | United States | Maryland |
| 36 | United States | New York |
| 45 | United States | Georgia |
| 60 | United States | Minnesota |
| 55 | United States | Florida |
| 22 | United States | Oregon |

| | | |
|---|---|---|
| 31 | United States | Georgia |
| 49 | United States | Connecticut |
| 56 | United States | Oklahoma |
| 39 | United States | South Carolina |
| 30 | United States | Nebraska |
| 54 | United States | Utah |
| 30 | United States | Illinois |
| 31 | United States | Texas |
| 66 | United States | Nevada |
| 44 | United States | Texas |
| 38 | United States | Pennsylvania |
| 43 | United States | Wisconsin |
| 46 | United States | Kentucky |
| 63 | United States | Wisconsin |
| 21 | United States | Texas |
| 36 | United States | Pennsylvania |
| 41 | United States | Wisconsin |
| 27 | United States | Arizona |
| 79 | United States | North Carolina |
| 50 | United States | Pennsylvania |
| 56 | United States | Washington |
| 72 | United States | California |
| 75 | United States | Florida |
| 60 | United States | New Jersey |
| 38 | United States | Michigan |
| 27 | United States | Washington |
| 65 | United States | California |
| 25 | United States | Texas |
| 77 | United States | Florida |
| 66 | United States | Tennessee |
| 32 | United States | Georgia |
| 33 | United States | Oklahoma |
| 40 | United States | Massachusetts |
| 44 | United States | Texas |
| 28 | United States | Arkansas |
| 44 | United States | Minnesota |
| 45 | United States | Maryland |
| 53 | United States | Florida |
| 31 | United States | Wisconsin |
| 28 | United States | Kentucky |
| 28 | United States | Florida |
| 38 | United States | Florida |
| 18 | United States | Texas |
| 34 | United States | Ohio |
| 67 | United States | Illinois |
| 72 | United States | Florida |
| 40 | United States | Mississippi |

| | | |
|---|---|---|
| 69 | United States | Vermont |
| 34 | United States | Wisconsin |
| 54 | United States | Michigan |
| 22 | United States | California |
| 42 | United States | New York |
| 44 | United States | Louisiana |
| 54 | United States | Georgia |
| 39 | United States | Connecticut |
| 45 | United States | Texas |
| 48 | United States | Ohio |
| 43 | United States | Florida |
| 31 | United States | Delaware |
| 35 | United States | Colorado |
| 20 | United States | Illinois |
| 65 | United States | Hawaii |
| 65 | United States | Delaware |
| 24 | United States | North Carolina |
| 41 | United States | Massachusetts |
| 68 | United States | California |
| 49 | United States | Texas |
| 33 | United States | Ohio |
| 50 | United States | Texas |
| 52 | United States | Massachusetts |
| 68 | United States | Colorado |
| 73 | United States | New Mexico |
| 41 | United States | Georgia |
| 35 | United States | North Carolina |
| 21 | United States | South Carolina |
| 68 | United States | South Carolina |
| 36 | United States | New Mexico |
| 66 | United States | New York |
| 42 | United States | Arizona |
| 62 | United States | Florida |
| 68 | United States | Ohio |
| 42 | United States | New York |
| 48 | United States | Kentucky |
| 57 | United States | Florida |
| 56 | United States | Iowa |
| 55 | United States | Pennsylvania |
| 45 | United States | New Jersey |
| 27 | United States | Ohio |
| 31 | United States | Georgia |
| 62 | United States | California |
| 63 | United States | New York |
| 63 | United States | Texas |
| 38 | United States | New Jersey |
| 45 | United States | North Carolina |

| | | |
|---|---|---|
| 42 | United States | Ohio |
| 46 | United States | Kentucky |
| 64 | United States | New Jersey |
| 18 | United States | Ohio |
| 61 | United States | Kentucky |
| 43 | United States | New York |
| 22 | United States | Ohio |
| 43 | United States | Arizona |
| 67 | United States | Delaware |
| 28 | United States | Michigan |
| 49 | United States | Ohio |
| 68 | United States | Florida |
| 47 | United States | Louisiana |
| 40 | United States | Pennsylvania |
| 35 | United States | New Jersey |
| 43 | United States | California |
| 50 | United States | Iowa |
| 62 | United States | Tennessee |
| 46 | United States | Maryland |
| 57 | United States | North Carolina |
| 52 | United States | Florida |
| 62 | United States | Nevada |
| 43 | United States | Georgia |
| 32 | United States | California |
| 74 | United States | New York |
| 77 | United States | New York |
| 57 | United States | Nebraska |
| 41 | United States | Nevada |
| 59 | United States | Missouri |
| 48 | United States | California |
| 36 | United States | Ohio |
| 41 | United States | New Jersey |
| 44 | United States | Tennessee |
| 43 | United States | Pennsylvania |
| 45 | United States | Pennsylvania |
| 43 | United States | Alabama |
| 61 | United States | Massachusetts |
| 62 | United States | Kansas |
| 48 | United States | Wisconsin |
| 25 | United States | California |
| 32 | United States | South Carolina |
| 60 | United States | Michigan |
| 31 | United States | California |
| 22 | United States | Maryland |
| 73 | United States | Florida |
| 47 | United States | Michigan |
| 55 | United States | Minnesota |

| | | |
|---|---|---|
| 70 | United States | Illinois |
| 29 | United States | California |
| 61 | United States | North Carolina |
| 73 | United States | Florida |
| 72 | United States | District of Columbia |
| 70 | United States | Wisconsin |
| 32 | United States | Pennsylvania |
| 45 | United States | New York |
| 34 | United States | Georgia |
| 45 | United States | North Carolina |
| 53 | United States | Virginia |
| 35 | United States | Pennsylvania |
| 48 | United States | California |
| 32 | United States | California |
| 39 | United States | Illinois |
| 54 | United States | Wisconsin |
| 26 | United States | Wisconsin |
| 45 | United States | Oklahoma |
| 44 | United States | Ohio |
| 53 | United States | Arkansas |
| 38 | United States | Tennessee |
| 23 | United States | North Carolina |
| 19 | United States | Mississippi |
| 64 | United States | Texas |
| 54 | United States | Illinois |
| 63 | United States | North Carolina |
| 33 | United States | Connecticut |
| 23 | United States | New York |
| 65 | United States | New Jersey |
| 46 | United States | West Virginia |
| 35 | United States | Kansas |
| 62 | United States | South Carolina |
| 28 | United States | Pennsylvania |
| 39 | United States | Ohio |
| 60 | United States | Illinois |
| 40 | United States | Florida |
| 35 | United States | Virginia |
| 28 | United States | South Dakota |
| 23 | United States | California |
| 54 | United States | Wyoming |
| 49 | United States | New York |
| 48 | United States | Alaska |
| 74 | United States | Ohio |
| 64 | United States | Pennsylvania |
| 37 | United States | New Jersey |
| 39 | United States | North Carolina |
| 51 | United States | New York |

| | | |
|---|---|---|
| 21 | United States | Pennsylvania |
| 63 | United States | Colorado |
| 39 | United States | Missouri |
| 35 | United States | Texas |
| 35 | United States | Texas |
| 32 | United States | Pennsylvania |
| 23 | United States | Ohio |
| 30 | United States | Virginia |
| 61 | United States | Florida |
| 31 | United States | Kentucky |
| 48 | United States | Mississippi |
| 35 | United States | Minnesota |
| 60 | United States | Arizona |
| 29 | United States | Florida |
| 69 | United States | Minnesota |
| 73 | United States | Ohio |
| 26 | United States | Pennsylvania |
| 18 | United States | New Mexico |
| 38 | United States | Arkansas |
| 61 | United States | Ohio |
| 44 | United States | Florida |
| 58 | United States | New York |
| 49 | United States | Washington |
| 44 | United States | Florida |
| 34 | United States | Minnesota |
| 66 | United States | Tennessee |
| 85 | United States | Idaho |
| 56 | United States | Florida |
| 25 | United States | Florida |
| 40 | United States | Virginia |
| 64 | United States | Missouri |
| 49 | United States | Maine |
| 44 | United States | Mississippi |
| 59 | United States | Arkansas |
| 23 | United States | New York |
| 60 | United States | Maryland |
| 26 | United States | Florida |
| 23 | United States | Maryland |
| 37 | United States | California |
| 42 | United States | California |
| 38 | United States | Kentucky |
| 68 | United States | Indiana |
| 62 | United States | Delaware |
| 27 | United States | Ohio |
| 65 | United States | New York |
| 23 | United States | Connecticut |
| 78 | United States | Florida |

| | | |
|---|---|---|
| 30 | United States | Pennsylvania |
| 52 | United States | Virginia |
| 34 | United States | Oregon |
| 35 | United States | Tennessee |
| 51 | United States | Massachusetts |
| 27 | United States | New York |
| 44 | United States | Arizona |
| 43 | United States | Wisconsin |
| 36 | United States | Nevada |
| 47 | United States | South Carolina |
| 35 | United States | New York |
| 27 | United States | Oregon |
| 55 | United States | Kentucky |
| 69 | United States | Arizona |
| 62 | United States | Florida |
| 64 | United States | Georgia |
| 80 | United States | New York |
| 72 | United States | Florida |
| 70 | United States | Wisconsin |
| 25 | United States | New Hampshire |
| 44 | United States | Florida |
| 44 | United States | Pennsylvania |
| 57 | United States | New Mexico |
| 56 | United States | Tennessee |
| 28 | United States | Ohio |
| 29 | United States | New Mexico |
| 63 | United States | California |
| 30 | United States | California |
| 56 | United States | Utah |
| 25 | United States | Virginia |
| 67 | United States | Massachusetts |
| 32 | United States | Pennsylvania |
| 21 | United States | California |
| 21 | United States | California |
| 57 | United States | New York |
| 33 | United States | Michigan |
| 26 | United States | California |
| 57 | United States | Pennsylvania |
| 73 | United States | Pennsylvania |
| 49 | United States | Texas |
| 31 | United States | New Jersey |
| 25 | United States | Texas |
| 73 | United States | West Virginia |
| 43 | United States | Indiana |
| 71 | United States | Texas |
| 29 | United States | Texas |
| 49 | United States | Florida |

| | | |
|---|---|---|
| 78 | United States | Arizona |
| 58 | United States | Kentucky |
| 85 | United States | South Dakota |
| 70 | United States | Florida |
| 50 | United States | New Jersey |
| 69 | United States | Illinois |
| 44 | United States | New York |
| 20 | United States | Washington |
| 36 | United States | New Jersey |
| 27 | United States | Michigan |
| 46 | United States | New York |
| 47 | United States | Florida |
| 65 | United States | Massachusetts |
| 35 | United States | Illinois |
| 46 | United States | New York |
| 63 | United States | South Dakota |
| 47 | United States | New York |
| 60 | United States | Arizona |
| 62 | United States | Montana |
| 67 | United States | Louisiana |
| 47 | United States | Indiana |
| 65 | United States | Tennessee |
| 32 | United States | Massachusetts |
| 34 | United States | Indiana |
| 40 | United States | Washington |
| 60 | United States | Florida |
| 31 | United States | Ohio |
| 70 | United States | Maryland |
| 68 | United States | Texas |
| 36 | United States | Michigan |
| 66 | United States | Florida |
| 49 | United States | Texas |
| 32 | United States | Mississippi |
| 58 | United States | North Carolina |
| 40 | United States | Connecticut |
| 39 | United States | Virginia |
| 40 | United States | Oregon |
| 63 | United States | New York |
| 61 | United States | Illinois |
| 53 | United States | Florida |
| 66 | United States | Kentucky |
| 34 | United States | North Carolina |
| 62 | United States | Kentucky |
| 32 | United States | Florida |
| 72 | United States | West Virginia |
| 83 | United States | Maine |
| 47 | United States | Oklahoma |

| | | |
|---|---|---|
| 56 | United States | Arizona |
| 28 | United States | California |
| 31 | United States | Texas |
| 58 | United States | Texas |
| 74 | United States | Mississippi |
| 28 | United States | Texas |
| 35 | United States | Florida |
| 26 | United States | Ohio |
| 22 | United States | New York |
| 38 | United States | California |
| 52 | United States | New Mexico |
| 73 | United States | California |
| 55 | United States | Georgia |
| 63 | United States | Florida |
| 30 | United States | North Carolina |
| 49 | United States | Virginia |
| 33 | United States | New Hampshire |
| 34 | United States | California |
| 49 | United States | Georgia |
| 30 | United States | Kentucky |
| 25 | United States | Pennsylvania |
| 52 | United States | Pennsylvania |
| 57 | United States | Alaska |
| 67 | United States | California |
| 29 | United States | South Carolina |
| 48 | United States | Louisiana |
| 54 | United States | Louisiana |
| 38 | United States | New Jersey |
| 37 | United States | New York |
| 25 | United States | Illinois |
| 33 | United States | Pennsylvania |
| 62 | United States | Maryland |
| 49 | United States | New Mexico |
| 50 | United States | Wisconsin |
| 71 | United States | New York |
| 58 | United States | Louisiana |
| 51 | United States | North Carolina |
| 19 | United States | California |
| 69 | United States | Florida |
| 68 | United States | Ohio |
| 50 | United States | Georgia |
| 61 | United States | Pennsylvania |
| 70 | United States | Missouri |
| 74 | United States | Texas |
| 67 | United States | Georgia |
| 65 | United States | Florida |
| 42 | United States | Florida |

| | | |
|---|---|---|
| 57 | United States | Florida |
| 55 | United States | Illinois |
| 65 | United States | Illinois |
| 67 | United States | New York |
| 35 | United States | Florida |
| 29 | United States | Colorado |
| 72 | United States | Oregon |
| 28 | United States | Georgia |
| 56 | United States | Florida |
| 70 | United States | Texas |
| 28 | United States | Minnesota |
| 32 | United States | Wisconsin |
| 67 | United States | California |
| 60 | United States | Massachusetts |
| 19 | United States | Arizona |
| 23 | United States | Virginia |
| 76 | United States | Texas |
| 28 | United States | New Jersey |
| 49 | United States | Ohio |
| 64 | United States | Ohio |
| 55 | United States | Pennsylvania |
| 65 | United States | Maryland |
| 41 | United States | Missouri |
| 70 | United States | Florida |
| 62 | United States | Arizona |
| 66 | United States | North Carolina |
| 43 | United States | Texas |
| 39 | United States | New York |
| 63 | United States | Georgia |
| 36 | United States | California |
| 46 | United States | California |
| 61 | United States | New Jersey |
| 71 | United States | California |
| 21 | United States | Massachusetts |
| 45 | United States | Michigan |
| 18 | United States | Missouri |
| 40 | United States | Texas |
| 35 | United States | Florida |
| 35 | United States | Florida |
| 23 | United States | California |
| 52 | United States | Utah |
| 61 | United States | California |
| 67 | United States | Arkansas |
| 33 | United States | California |
| 41 | United States | Florida |
| 37 | United States | Pennsylvania |
| 24 | United States | Illinois |

| | | |
|---|---|---|
| 72 | United States | Ohio |
| 55 | United States | Georgia |
| 23 | United States | New Hampshire |
| 47 | United States | Indiana |
| 61 | United States | Georgia |
| 23 | United States | Pennsylvania |
| 18 | United States | New York |
| 25 | United States | Georgia |
| 40 | United States | Idaho |
| 59 | United States | Arizona |
| 52 | United States | Oregon |
| 21 | United States | Florida |
| 59 | United States | Texas |
| 36 | United States | Colorado |
| 49 | United States | California |
| 38 | United States | Georgia |
| 38 | United States | Tennessee |
| 69 | United States | Ohio |
| 20 | United States | Virginia |
| 42 | United States | New York |
| 39 | United States | California |
| 56 | United States | California |
| 30 | United States | California |
| 70 | United States | Indiana |
| 57 | United States | California |
| 69 | United States | Pennsylvania |
| 27 | United States | Florida |
| 47 | United States | Missouri |
| 24 | United States | Michigan |
| 46 | United States | Pennsylvania |
| 36 | United States | California |
| 52 | United States | California |
| 21 | United States | Ohio |
| 66 | United States | Michigan |
| 50 | United States | North Carolina |
| 63 | United States | Georgia |
| 44 | United States | Michigan |
| 67 | United States | New Mexico |
| 24 | United States | Arkansas |
| 33 | United States | California |
| 36 | United States | Virginia |
| 35 | United States | California |
| 39 | United States | Pennsylvania |
| 30 | United States | California |

| What order are these colors in? (Note, the image may take a few seconds to load ) | Do you agree to answer all survey questions on your own, without asking anyone else for help or referring to reference materials or the internet? | HID_CELL |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |

| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| --- | --- | --- |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |

| Green, red, blue, yellow | Yes, I agree | BLOCK |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |

| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |

| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |

| Green, red, blue, yellow | Yes, I agree | BLOCK |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |

| | | |
|---|---|---|
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | BLOCK |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |
| Green, red, blue, yellow | Yes, I agree | SPHERE TAXES |
| Green, red, blue, yellow | Yes, I agree | TURBOTAX |

| B1 | B2 | B3_1 |
|---|---|---|
| **Have you seen or heard of [question('option title'), id='HID_CELL'] as a brand?** | **In the prior question, you mentioned that you had seen or heard of [question('option title'), id='HID_CELL']   What products or services are offered under the brand name [question('option title'), id='HID_CELL']?  Please answer with as much detail as possible** | **Merchant payment processing services:Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don't know for each item** |
| No, have not seen or heard of this as a brand |  | No |
| No, have not seen or heard of this as a brand |  | No |
| Yes, have seen or heard of this a | Na | Yes |
| Yes, have seen or heard of this a | Tax software to complete tax re | Don't Know |
| No, have not seen or heard of this as a brand |  | Don't Know |
| Yes, have seen or heard of this a | Tax prep program | Yes |
| Yes, have seen or heard of this a | Tax services | Don't Know |
| No, have not seen or heard of this as a brand |  | Yes |
| Yes, have seen or heard of this a | tax | Don't Know |
| Yes, have seen or heard of this a | Prepare taxes | Yes |
| No, have not seen or heard of this as a brand |  | No |
| No, have not seen or heard of this as a brand |  | Yes |
| No, have not seen or heard of this as a brand |  | Yes |
| Dont know |  | Yes |
| No, have not seen or heard of this as a brand |  | Yes |
| No, have not seen or heard of this as a brand |  | Yes |
| Dont know |  | Yes |
| No, have not seen or heard of this as a brand |  | No |
| Dont know |  | Yes |
| Yes, have seen or heard of this a | home and business, deluxe stat | Yes |
| No, have not seen or heard of this as a brand |  | Yes |
| No, have not seen or heard of this as a brand |  | Yes |
| No, have not seen or heard of this as a brand |  | Yes |
| Yes, have seen or heard of this a | Sphere taxes | Yes |
| No, have not seen or heard of this as a brand |  | Don't Know |
| Yes, have seen or heard of this a | Programs to let you file your ow | No |
| No, have not seen or heard of this as a brand |  | No |
| Yes, have seen or heard of this a | tax software | Yes |
| Yes, have seen or heard of this a | They do taxes and they do them | Don't Know |
| No, have not seen or heard of this as a brand |  | No |
| No, have not seen or heard of this as a brand |  | Yes |
| No, have not seen or heard of this as a brand |  | No |
| No, have not seen or heard of this as a brand |  | Yes |
| No, have not seen or heard of this as a brand |  | Yes |
| No, have not seen or heard of this as a brand |  | Yes |

| | |
|---|---|
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿filing taxes | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Income tax preparation | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Tax services, accounting and bo | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Insurance | Yes |
| Yes, have seen or heard of this ¿sphere | No |
| Yes, have seen or heard of this ¿I'm aware of and use TurboTax': | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿A company that does tax return | No |
| Yes, have seen or heard of this ¿I use Turbotax every year to do | No |
| Yes, have seen or heard of this ¿I use Turbotax to file my taxes e | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Tax software | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Tax software | Yes |
| Yes, have seen or heard of this ¿turbotax is a tax program that c | No |
| Yes, have seen or heard of this ¿I just know its a fast way to file | No |
| Yes, have seen or heard of this ¿Block China | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿don't now | No |
| Yes, have seen or heard of this ¿It a preparation of tax | Yes |
| Yes, have seen or heard of this ¿Turbo tax is a software where y | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿They offer tax related products | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿forms to do your taxes on line | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Tax returns | Don't Know |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿Tax return | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Yax returns | Yes |

| | |
|---|---|
| Yes, have seen or heard of this a Tax preparation | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Dont know | Yes |
| Yes, have seen or heard of this a Ayudando a preparar los taxes , | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Dont know | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a its a program that helps you do | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a you can file income taxes with t | Don't Know |
| Yes, have seen or heard of this a Tax Services. | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a You can file your taxes online fr | No |
| Yes, have seen or heard of this a Tax filing | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Tax preparation and filings. | Yes |
| Yes, have seen or heard of this a Tax services. Annual tax done e | Yes |
| Yes, have seen or heard of this a Taxes | Yes |
| Yes, have seen or heard of this a Help with filing your taxes. | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a It does your taxes for free | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a I have seen this advertisement l | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Software for preparing taxes | No |
| Dont know | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Returns filling of income taxes a | Yes |
| No, have not seen or heard of this as a brand | No |

| | |
|---|---|
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; Its a software so you can do you | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; Tax prep, credit and professiona | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; Income tax | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ; I'm not sure | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; Turbotax is a tax preparation se | No |
| Yes, have seen or heard of this ; E-file tax return | Yes |
| Yes, have seen or heard of this ; They offer tax software. | No |
| Yes, have seen or heard of this ; Income tax returns . | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ; Tax returns | Yes |
| Yes, have seen or heard of this ; my son uses | No |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; A software program where you | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; You can do your taxes on line us | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; They help handle state and fede | Don't Know |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ; Due your personal taxes | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ; They are a tax filling service. | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ; Tax return business | Yes |
| Yes, have seen or heard of this ; Taxes | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |

| | |
|---|---|
| Yes, have seen or heard of this ¿ I saw TurboTax advertised on tv | Yes |
| Yes, have seen or heard of this ¿ Internet tax software! | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Tax preparation | Yes |
| Yes, have seen or heard of this ¿ Tax filing services | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿ Loans | Yes |
| Yes, have seen or heard of this ¿ Federal and State tax returns. | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿ I only know the name. I think it | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ tax services | No |
| Yes, have seen or heard of this ¿ It's a app you can use to file you | No |
| Yes, have seen or heard of this ¿ TurboTax is a program to do you | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ They offer products that help yo | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ To do your taxes | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Tax prep | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ Tax and accounting services if I'i | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ income tax prep online | No |
| Yes, have seen or heard of this ¿ They help you with income taxe | No |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | Yes |

| | |
|---|---|
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this a Filing taxes | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a To file taxes | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a Tax returns | No |
| Yes, have seen or heard of this a Tax preparation | No |
| Yes, have seen or heard of this a Online tax preparation software | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a What is taxes | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a Tax return services | Yes |
| Yes, have seen or heard of this a Taxes filling softwares | Yes |
| Yes, have seen or heard of this a TurboTax offers services of filing | Yes |
| Yes, have seen or heard of this a They help you with your taxes a | Don't Know |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this a Taxes | Yes |
| Yes, have seen or heard of this a I file with them going on 4 years | No |
| Yes, have seen or heard of this a E-filing with the the IRS | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a Taxes services | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a Your taxes done | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Tax preparation software | Don't Know |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a Tax filing | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Preparation of tax returns for in | No |

| | |
|---|---|
| Yes, have seen or heard of this ; Filing of income taxes | Don't Know |
| Yes, have seen or heard of this ; Tax help and question and prep | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ; Income tax | No |
| Yes, have seen or heard of this ; Tax preparation software. | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; Tax preparation services. | No |
| Yes, have seen or heard of this ; This helps provide you ways to f | Yes |
| Yes, have seen or heard of this ; They serveany products such as | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; I thinking about you doing this y | Yes |
| Yes, have seen or heard of this ; Only heard a little bit about hov | Yes |
| Yes, have seen or heard of this ; Geico | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; A service that is available for yo | No |
| Yes, have seen or heard of this ; Filing taxes | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ; tax filling | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ; TurboTax offers tax preparation | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ; Tax help | No |
| Yes, have seen or heard of this ; I like them a lot | No |
| Yes, have seen or heard of this ; Tax preparation | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ; They help file your taxes online | Yes |
| Yes, have seen or heard of this ; tax return processing | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ; TurboTax, quickbooks | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Dont know | Don't Know |

| | |
|---|---|
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Hrblock | Yes |
| Yes, have seen or heard of this ¿TurboTax is quick and wsy | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Tax help filling out forms | No |
| Yes, have seen or heard of this ¿tax return services through onli | No |
| Yes, have seen or heard of this ¿Income tax | No |
| Yes, have seen or heard of this ¿income tax return preparation | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿They do tax returns for people | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿tax refund | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿only know of the tax software | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Square | No |
| Yes, have seen or heard of this ¿Free file | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Files Taxes | Don't Know |
| Yes, have seen or heard of this ¿Idk | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿I actually have a turbo tax card | Yes |
| No, have not seen or heard of this as a brand | No |

| | |
|---|---|
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Tax preparation software and h | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿ Liberty tax | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ I currently use turbotax to do al | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ income tax filing | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ I don't know details. | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ On the internet and tv | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿ H r block | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ free filing | No |
| Yes, have seen or heard of this ¿ I use TurboTax to do my taxes | Yes |
| No, have not seen or heard of this as a brand | No |
| Dont know | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Income tax assistance and filing | Yes |
| Yes, have seen or heard of this ¿ Tax services | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Tax preparation software | Yes |
| No, have not seen or heard of this as a brand | No |
| Dont know | No |
| Yes, have seen or heard of this ¿ Federal and state Tax prep on li | Yes |
| Yes, have seen or heard of this ¿ Free Tax services online | Yes |
| Yes, have seen or heard of this ¿ Tax | Yes |

| | |
|---|---|
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Turbotax provides tax preparati | Yes |
| Yes, have seen or heard of this ¿Tax filing with the Federal Gove | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿Doing your taxes online | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Accounting | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿You can file for your taxes every | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿H&R Block    For tax help etc. | Yes |
| Yes, have seen or heard of this ¿offers by block | Yes |
| Yes, have seen or heard of this ¿Yes tax service | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿tax prep | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Get my taxes done fast | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Help filing taxes | Yes |
| Yes, have seen or heard of this ¿Not sure | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Income tax software | No |
| Yes, have seen or heard of this ¿They offer a wide range of softv | Don't Know |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿Tax filing | Yes |
| Yes, have seen or heard of this ¿The ability to do your taxes you | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Tax filing tax deduction itemizin | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿The vaule and pricing | Yes |
| Yes, have seen or heard of this ¿During your taxes faster and qui | Yes |
| Yes, have seen or heard of this ¿tax service  loan advances | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |

| | |
|---|---|
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ tax prep | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ They offer building sets | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Doing your taxes | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Tax preparation  services | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ Incomes tax services | No |
| Yes, have seen or heard of this ¿ Income tax preperation | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Do it yourself tax service for filir | Yes |
| Yes, have seen or heard of this ¿ Tax preparation softward | No |
| Yes, have seen or heard of this ¿ tax preparation | No |
| Yes, have seen or heard of this ¿ Sunglasses | No |
| Yes, have seen or heard of this ¿ Tax | Yes |
| Yes, have seen or heard of this ¿ I file my last 10 years of taxes th | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Products which allow people to | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Home tax software | Yes |
| Yes, have seen or heard of this ¿ Tax preparation tools and assist | Yes |
| Yes, have seen or heard of this ¿ tax filing | Yes |
| Yes, have seen or heard of this ¿ Tax help | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Filing taxes | Yes |
| Yes, have seen or heard of this ¿ Free tax filing | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ Ability to do your own taxes | Yes |
| Dont know | Yes |

| | |
|---|---|
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿They process tax refund and oth | Yes |
| Yes, have seen or heard of this ¿Its online easy | Yes |
| Yes, have seen or heard of this ¿none | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿File income tax | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ¿You do it yourself | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Completing tax forms, and elect | Yes |
| Yes, have seen or heard of this ¿A way to access your account | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Tax preparation software | No |
| Dont know | Don't Know |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿They have a few versions.  Also | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Turbo taxes helps with your tax | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿I used them to do my taxes. The | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Doing your taxes | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Tax filing | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿Help business and personal file | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿Tax preparation that you can do | Yes |
| Yes, have seen or heard of this ¿For filing taxes. | Yes |
| Yes, have seen or heard of this ¿I use it for my W2 every year | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |

| | |
|---|---|
| Dont know | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this : Taxes | Yes |
| Dont know | No |
| Yes, have seen or heard of this : Are used TurboTax to do my tax | Don't Know |
| Yes, have seen or heard of this : Its great | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this : Free filing | Yes |
| Yes, have seen or heard of this : Taxes | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this : Tax prep and filing | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this : Tax filing | No |
| Yes, have seen or heard of this : I'm not sure | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this : H&R Block the income tax Servi | No |
| Yes, have seen or heard of this : Prepared taxes | Don't Know |
| Yes, have seen or heard of this : Turbo tax is an online tax filing s | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this : you can file your taxes by yours | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this : They offer tax services | Yes |
| Yes, have seen or heard of this : Income tax | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this : You can file your taxes, you can | Don't Know |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this : Getting your taxes done quickly | No |
| Yes, have seen or heard of this : A tax help software | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this : Software program to calculate a | No |
| Yes, have seen or heard of this : Filing tax returns | No |

| | |
|---|---|
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this as Children's books | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this as they had different commercials | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this as The TurboTax app I've been usir | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this as They do tax returns | Yes |
| Yes, have seen or heard of this as Income tax | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this as Insurance and tax returns | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this as Assistance filing taxes | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this as Tax preparation | No |
| Yes, have seen or heard of this as They allow Americans to file the | Don't Know |
| Yes, have seen or heard of this as Tax prep | Yes |
| Yes, have seen or heard of this as Everything | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this as It's an easy way to file your taxe | Yes |
| Yes, have seen or heard of this as Intuit | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this as This is a tax service | Yes |
| Yes, have seen or heard of this as We have used turbo tax produc | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this as I think it a financial service | Yes |
| Yes, have seen or heard of this as Income tax returns | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this as None idea | Yes |
| Yes, have seen or heard of this as Tax software | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this as Tax preparation | Yes |
| No, have not seen or heard of this as a brand | No |

| | |
|---|---|
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ʒ Filing taxes | No |
| Yes, have seen or heard of this ʒ This brand helps people with th⸱ | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ʒ Intuit and turbo tax personal cp | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ʒ Income tax | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ʒ I love turbotax is such a great w | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ʒ How to do your taxes on line yo | Yes |
| Yes, have seen or heard of this ʒ Federal and state tax software | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ʒ Tax filing services | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ʒ Don't know | Yes |
| Dont know | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Dont know | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ʒ Free tax filing | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ʒ It's software to help you do you | No |
| Yes, have seen or heard of this ʒ File taxes | Yes |
| Yes, have seen or heard of this ʒ Turbotax offers a software whe⸱ | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ʒ All about taxes | Yes |
| Yes, have seen or heard of this ʒ Tax | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this ʒ Tax preparer | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ʒ It's an insurance company I'm s⸱ | Yes |
| No, have not seen or heard of this as a brand | Yes |

| | |
|---|---|
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Not sure haven't used it | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ Tax filing | No |
| No, have not seen or heard of this as a brand | No |
| Dont know | Yes |
| Yes, have seen or heard of this ¿ Block Art Supply.   Block tax | Yes |
| Yes, have seen or heard of this ¿ tax company | Yes |
| Yes, have seen or heard of this ¿ Tax prep | Yes |
| Yes, have seen or heard of this ¿ taxes services | Yes |
| Yes, have seen or heard of this ¿ income tax | No |
| Yes, have seen or heard of this ¿ H an R Block  a tax service | No |
| Yes, have seen or heard of this ¿ A program to do you own taxes | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ Taxes | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ tax filing software | No |
| Yes, have seen or heard of this ¿ I don't know | Yes |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Tax filing | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Dont know | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this ¿ Usually Tax Services | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this ¿ Tax returns | Yes |
| Dont know | No |

| | |
|---|---|
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Tax prep | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a File income taxes for people | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a Tax preparation | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Filing softwre | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this a don't. Use it for my taxes, for no | Yes |
| Dont know | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a Tax filing and bill keepup | Don't Know |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Tax professional and accounting | Yes |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a income tax software | Yes |
| Yes, have seen or heard of this a Taxes | No |
| Yes, have seen or heard of this a Its a tax service to file federal ta | No |
| Yes, have seen or heard of this a tax prep | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Dont know | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a i think of H & R block. | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Tax return processing and produ | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Turbo Tax helps you do you taxe | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a Helps you with your taxes easily | No |
| No, have not seen or heard of this as a brand | No |

| | |
|---|---|
| Yes, have seen or heard of this a many  things | Yes |
| Yes, have seen or heard of this a Tax file service and expert servi | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a They are advertising there comp | Yes |
| Yes, have seen or heard of this a Online tax filing | No |
| Yes, have seen or heard of this a Jewelry | Yes |
| Yes, have seen or heard of this a They help you with your taxes | Don't Know |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this a Turbotax is an online app that c | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a I saw a commercial for it on the | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Tax processing | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a Income taxes online | Don't Know |
| Dont know | No |
| Yes, have seen or heard of this a File taxes | No |
| Yes, have seen or heard of this a Taxes | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a tax experts | Yes |
| No, have not seen or heard of this as a brand | No |
| Yes, have seen or heard of this a No idea, I just heard the name | No |
| No, have not seen or heard of this as a brand | No |
| Dont know | No |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | No |
| No, have not seen or heard of this as a brand | Yes |
| No, have not seen or heard of this as a brand | Don't Know |
| Yes, have seen or heard of this a Filing Tax Return using Turbo Ta | No |
| No, have not seen or heard of this as a brand | Yes |
| Yes, have seen or heard of this a To file taxes. | Don't Know |

| B3_2 | B3_3 | B3_4 |
|---|---|---|
| **Mobile or online banking services and payment cards:Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don't know for each item** | **Mobile stock and cryptocurrency trading, such as a mobile financial platform that allows you to buy and sell Bitcoin:Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don't know for each item** | **Mobile or online tax preparation, or mobile or online tax preparation software:Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don't know for each item** |
| No | No | No |
| No | Yes | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Don't Know | No | Don't Know |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| No | Yes | No |
| Yes | No | Don't Know |
| Yes | No | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| No | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Don't Know | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Don't Know | Don't Know | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |

| | | |
|---|---|---|
| No | No | No |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | No |
| No | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | No | No |
| No | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |

| | | |
|---|---|---|
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| No | No | Yes |
| Yes | No | No |
| No | Don't Know | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | Don't Know |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Don't Know | Don't Know |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Don't Know | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | Don't Know | Yes |
| Yes | Don't Know | Don't Know |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Don't Know | Don't Know | Don't Know |

| | | |
|---|---|---|
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | No |
| No | No | Yes |
| Don't Know | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Don't Know |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | No |
| Don't Know | Don't Know | Don't Know |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| No | No | No |
| Yes | Yes | No |
| Don't Know | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| No | Don't Know | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| No | Yes | No |
| No | No | No |
| No | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Don't Know | Don't Know | No |

| | | |
|---|---|---|
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Don't Know |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| Don't Know | Don't Know | Don't Know |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| No | Yes | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Don't Know | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |

| | | |
|---|---|---|
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |

| | | |
|---|---|---|
| No | Yes | Don't Know |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Don't Know | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Don't Know | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Don't Know |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | No | Yes |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Don't Know | Don't Know |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| Yes | No | Yes |
| Don't Know | Don't Know | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Don't Know | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| No | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | No | No |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| No | No | Yes |
| Yes | Yes | Don't Know |
| Yes | No | No |
| No | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | Don't Know |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| No | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| No | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |

| Music streaming services:Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don't know for each item | A mobile app that allows you to send and receive money (other than through auto-pay for recurring bills) either directly through the app or a website:Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don' | A mobile app to purchase tickets to a sporting event or concert:Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don't know for each item |
|---|---|---|
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| No | Yes | No |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| No | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| No | Yes | No |
| No | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |

| | | |
|---|---|---|
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | Yes | No |
| No | No | No |
| No | Yes | No |
| Yes | Yes | Don't Know |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Don't Know | Don't Know | Don't Know |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |

| | | |
|---|---|---|
| Yes | No | No |
| No | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| No | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| No | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| No | Yes | No |
| Yes | Yes | Don't Know |
| Yes | No | No |
| No | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| No | Yes | No |
| No | No | No |
| Yes | Yes | No |
| No | Yes | No |
| No | No | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Don't Know | Don't Know |
| No | No | No |
| No | No | No |
| No | Don't Know | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | No |
| No | No | No |
| Yes | Yes | No |
| No | Yes | No |
| No | No | No |
| No | Don't Know | No |
| Don't Know | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Don't Know | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Don't Know |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Don't Know |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| No | Yes | No |
| No | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Don't Know | Don't Know |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |

| | | |
|---|---|---|
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | Yes |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Don't Know | Don't Know | Don't Know |

| | | |
|---|---|---|
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Don't Know | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | No |
| No | No | No |
| No | Yes | No |
| No | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | No | No |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | Yes | No |
| No | No | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Don't Know | Don't Know | Don't Know |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |

| | | |
|---|---|---|
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| No | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| No | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | Don't Know | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | Yes | No |
| No | No | No |
| Yes | No | No |
| Yes | Yes | No |
| No | Yes | No |

| | | |
|---|---|---|
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Don't Know | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | No |
| No | No | No |
| No | No | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Don't Know |

| | | |
|---|---|---|
| Yes | Yes | No |
| Yes | No | No |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Don't Know |
| No | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Don't Know | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Don't Know | No |
| Yes | Yes | No |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Don't Know | No | Don't Know |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Don't Know | Yes | Yes |
| No | No | No |
| Yes | Yes | No |

| | | |
|---|---|---|
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | No | No |
| No | No | No |
| No | No | Yes |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| No | Don't Know | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |

| | | |
|---|---|---|
| Yes | Yes | No |
| No | Yes | No |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| No | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Don't Know |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Don't Know |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Don't Know | Don't Know | Don't Know |
| No | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Don't Know |
| Yes | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| No | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Don't Know | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | No | No |
| Yes | No | Yes |
| Don't Know | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | Yes | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Don't Know |
| Yes | Yes | No |
| Yes | Yes | No |
| No | Yes | Yes |
| No | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |

| B3_8 | B4_1 | B4_2 |
|---|---|---|
| **A mobile app to have food delivered to your home:Within the last 12 months, which of the following, if any, have you used? Please select yes, no or don't know for each item** | **Merchant payment processing services:And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item** | **Mobile or online banking services and payment cards:And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item** |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | No |
| No | Don't Know | No |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Don't Know | Don't Know | Don't Know |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Don't Know | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |

| | | |
|---|---|---|
| Yes | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| No | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Don't Know | Don't Know |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Don't Know | No |
| Yes | No | Yes |
| No | Don't Know | No |
| No | No | Yes |
| Don't Know | No | No |
| No | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |

| | | |
|---|---|---|
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | Yes | No |
| No | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Don't Know |
| No | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | No |
| No | Yes | Yes |
| No | Yes | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| No | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| No | Don't Know | No |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Don't Know | Don't Know |
| Yes | Don't Know | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| No | Yes | No |
| Yes | Don't Know | Don't Know |
| No | Don't Know | Yes |
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | Don't Know |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | No | No |
| No | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Don't Know | Yes |
| No | No | No |
| Yes | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |

| | | |
|---|---|---|
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | No | Yes |
| No | Don't Know | Yes |
| No | Yes | Yes |
| Yes | Yes | Don't Know |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Don't Know |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Don't Know | Don't Know | Yes |
| No | Yes | No |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Don't Know | Don't Know |
| No | Don't Know | Yes |

| Don't Know | Don't Know | Yes |
|---|---|---|
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Don't Know | Don't Know | Don't Know |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | No |
| No | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | No |
| No | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Don't Know | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Don't Know | Don't Know |
| Yes | Don't Know | Yes |
| Yes | No | No |
| Yes | No | Yes |
| No | No | Yes |
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| Don't Know | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| No | Don't Know | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |

| | | |
|---|---|---|
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Don't Know |
| No | No | Yes |
| No | No | Don't Know |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Don't Know | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| No | Don't Know | Yes |
| No | No | No |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Don't Know | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| No | Yes | Don't Know |
| No | Don't Know | Yes |
| No | No | No |
| No | No | Yes |
| No | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | No |
| Yes | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | No |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Don't Know |

| | | |
|---|---|---|
| No | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Don't Know | Yes | Don't Know |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Don't Know | Don't Know | Don't Know |
| No | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Don't Know | Yes |
| No | Don't Know | Yes |
| No | Yes | Yes |
| Yes | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |

| | | |
|---|---|---|
| Yes | Don't Know | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Don't Know | No |
| No | No | No |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| No | No | No |
| No | No | No |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Don't Know | Yes |
| No | Don't Know | Yes |
| Yes | No | Yes |
| No | No | No |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| No | Don't Know | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | No |
| Yes | No | Yes |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Don't Know | Yes | No |
| Yes | Don't Know | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| No | Don't Know | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Don't Know | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Don't Know |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |

| | | |
|---|---|---|
| No | Yes | Yes |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| Yes | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | No | No |
| No | Yes | Yes |
| No | Don't Know | Don't Know |
| Don't Know | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Don't Know | Yes |
| Yes | No | No |
| No | Yes | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| Yes | No | Yes |
| Don't Know | Don't Know | Don't Know |
| No | Yes | Yes |
| Don't Know | Don't Know | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Don't Know | Yes |
| No | No | No |
| No | Don't Know | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | No |
| No | Don't Know | Yes |
| Yes | Yes | Don't Know |
| No | Yes | Yes |
| No | Don't Know | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | No | Yes |
| Yes | Don't Know | Don't Know |
| No | Yes | Yes |
| No | Don't Know | Yes |
| No | Don't Know | Don't Know |
| Don't Know | No | No |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| No | Don't Know | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| No | No | Yes |
| Yes | No | No |
| Yes | Don't Know | No |
| No | Yes | Yes |
| Yes | No | No |
| No | No | No |
| No | Don't Know | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| No | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | Yes | No |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | Yes | No |
| No | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |

| B4_3 | B4_4 | B4_5 |
|---|---|---|
| **Mobile stock and cryptocurrency trading, such as a mobile financial platform that allows you to buy and sell Bitcoin:And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item** | **Mobile or online tax preparation, or mobile or online tax preparation software:And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item** | **Music streaming services:And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item** |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |
| No | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Don't Know | No |
| No | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | Yes | No |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | No |
| No | No | No |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |
| Yes | Yes | No |
| No | Don't Know | No |
| No | Yes | No |
| Yes | Yes | No |
| Yes | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |

| | | |
|---|---|---|
| Yes | No | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Don't Know | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | No | No |
| No | No | No |
| No | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | No |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| No | No | Yes |
| No | No | No |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Don't Know | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| No | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| No | No | Yes |
| Yes | No | Yes |
| No | No | No |
| No | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | No | No |
| Yes | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | No | No |
| Don't Know | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Don't Know | Don't Know | Yes |
| No | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Don't Know | No | Don't Know |
| No | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Don't Know | Yes | Don't Know |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | Yes | No |
| No | Yes | Yes |
| No | No | Yes |
| Don't Know | No | Yes |
| No | No | No |
| No | No | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| No | Yes | Yes |
| No | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Don't Know | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | No | Yes |
| Yes | No | Yes |
| No | No | No |
| Don't Know | Yes | No |
| No | Yes | Yes |
| No | No | No |
| Don't Know | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | No |
| No | No | No |
| No | No | No |
| No | No | No |
| No | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | No | No |
| No | No | Yes |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | No | No |
| Don't Know | Don't Know | Don't Know |
| Don't Know | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |

| | | |
|---|---|---|
| No | No | Yes |
| Yes | Don't Know | Yes |
| No | No | Yes |
| Don't Know | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| No | Yes | No |
| Yes | No | Yes |
| No | Yes | No |
| No | No | No |
| No | Yes | No |
| No | No | Don't Know |
| No | Yes | No |
| No | No | No |
| Don't Know | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | No | Yes |
| Yes | No | Don't Know |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | No |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | No | No |
| No | No | Don't Know |
| No | No | Yes |
| Don't Know | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| No | Yes | No |
| No | No | Yes |
| Don't Know | Don't Know | Yes |
| No | No | No |

| | | |
|---|---|---|
| No | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | Yes | No |
| Don't Know | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Don't Know | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| Don't Know | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Yes | No |
| Don't Know | Yes | Yes |
| Don't Know | No | No |
| No | No | No |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | No |
| No | No | No |
| No | No | Yes |
| No | Yes | No |
| No | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Don't Know | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Don't Know |
| No | Yes | Yes |
| Don't Know | Don't Know | Don't Know |
| No | Yes | No |
| No | Yes | Yes |
| Don't Know | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| No | No | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | Yes | No |
| No | No | Yes |
| Don't Know | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Don't Know | No | No |
| No | Yes | Yes |
| Don't Know | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Don't Know | Don't Know | Yes |
| No | Yes | No |
| No | Don't Know | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| No | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | No |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| No | Yes | Yes |
| No | Don't Know | Don't Know |

| | | |
|---|---|---|
| No | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | No | Yes |
| Yes | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| No | No | Yes |
| Don't Know | Don't Know | Don't Know |
| No | Don't Know | Don't Know |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Don't Know | Yes |
| No | No | No |
| No | No | No |
| No | Yes | No |
| No | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | No |
| Don't Know | No | No |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Don't Know | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Don't Know |
| No | No | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| No | Yes | Yes |
| No | Yes | No |
| Don't Know | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | No |
| No | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Don't Know | No | Yes |
| No | No | Yes |
| Don't Know | Don't Know | Don't Know |
| Don't Know | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Don't Know |
| No | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| No | No | No |
| No | Yes | Yes |
| Yes | No | Yes |
| No | Don't Know | Don't Know |
| No | Yes | Yes |
| No | Yes | No |
| No | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |

| | | |
|---|---|---|
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | No | No |
| Don't Know | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Don't Know | Yes |
| No | Don't Know | Don't Know |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| No | No | Yes |
| No | Yes | Yes |
| No | Yes | No |
| No | Yes | Don't Know |
| No | No | Yes |
| No | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| No | No | Don't Know |
| No | No | Yes |
| No | Don't Know | Yes |
| Yes | Yes | No |
| No | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| No | No | No |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| Yes | No | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Don't Know | Yes | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Don't Know | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| No | No | No |
| Don't Know | Don't Know | Don't Know |
| Yes | No | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Don't Know | No |
| No | No | No |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| No | No | Yes |
| No | No | Yes |
| No | Yes | No |
| No | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Don't Know | Don't Know | Don't Know |
| No | Yes | Yes |
| No | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Don't Know | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Don't Know | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |

| | | |
|---|---|---|
| Don't Know | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | No |
| No | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | No |
| No | No | Yes |
| Yes | No | Yes |
| Don't Know | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Don't Know | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| Don't Know | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Don't Know |
| No | No | Yes |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | Yes | No |
| Yes | No | No |
| No | No | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Don't Know | Don't Know | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | Yes | No |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | Yes | No |
| Don't Know | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| No | No | Yes |
| Don't Know | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| No | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Don't Know |
| No | No | Yes |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | Yes | Yes |
| No | No | No |
| No | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Don't Know | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | Yes | No |
| No | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | No |
| No | No | Yes |
| No | Yes | Yes |
| No | Yes | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| No | Don't Know | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| No | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | Yes | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | No | No |
| Yes | No | Yes |
| No | No | Don't Know |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Don't Know | Yes | Yes |
| Don't Know | Don't Know | Yes |
| Don't Know | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | No |

| | | |
|---|---|---|
| No | Yes | Yes |
| Don't Know | Don't Know | Don't Know |
| No | Yes | No |
| No | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| No | Don't Know | Yes |
| No | No | No |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Don't Know | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| No | No | No |
| No | Yes | No |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| No | No | No |
| No | Yes | Yes |
| Don't Know | Yes | Yes |
| No | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Don't Know |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | No | No |
| No | No | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | Don't Know | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Don't Know | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | No | No |
| No | No | Yes |
| No | No | Yes |
| No | Yes | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | No | No |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| No | No | Yes |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| No | Yes | Yes |

| B4_6 | B4_7 | B4_8 |
|---|---|---|
| **A mobile app that allows you to send and receive money (other than through auto-pay for recurring bills) either directly through the app or a website:And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or** | **A mobile app to purchase tickets to a sporting event or concert:And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item** | **A mobile app to have food delivered to your home:And in the next 12 months which of the following, if any, do you intend to use? Please select yes, no or don't know for each item** |
| No | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Don't Know | No | No |
| No | Yes | No |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| No | No | No |
| Yes | Yes | No |
| No | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |

| | | |
|---|---|---|
| Yes | Don't Know | Yes |
| Yes | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |
| Yes | No | No |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| No | Yes | No |
| Yes | No | No |
| Yes | No | Yes |
| Don't Know | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | No |

| | | |
|---|---|---|
| No | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| No | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| No | No | No |
| No | No | No |
| No | No | No |
| Yes | Don't Know | Don't Know |
| Yes | No | No |
| Yes | Yes | Yes |
| Don't Know | Don't Know | Don't Know |
| No | No | No |
| Yes | Yes | Don't Know |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| No | Yes | No |
| Yes | Don't Know | Don't Know |
| No | No | No |
| Yes | No | No |
| Yes | No | Yes |
| No | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |
| Yes | No | No |
| Don't Know | Don't Know | Don't Know |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | No | Don't Know |
| Yes | No | No |
| No | Don't Know | No |
| Don't Know | Don't Know | Don't Know |
| Yes | Don't Know | Yes |
| Yes | No | No |
| No | No | No |
| No | No | Yes |
| No | No | No |
| No | No | No |
| Yes | Don't Know | Don't Know |
| Yes | No | Yes |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Don't Know | Yes |
| No | No | No |
| No | No | No |
| Don't Know | Don't Know | Don't Know |
| Yes | Don't Know | Don't Know |
| Yes | Don't Know | Yes |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | Don't Know | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Don't Know | No | No |
| Yes | No | Yes |
| No | No | Don't Know |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Don't Know | Don't Know |
| No | No | No |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| No | No | Yes |
| Don't Know | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Don't Know | Don't Know | No |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | No | Yes |
| Yes | No | No |
| Yes | Don't Know | Yes |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Don't Know | Yes |
| No | Yes | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | No |
| No | No | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| No | Yes | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | No |
| No | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Don't Know | Don't Know |
| Don't Know | Don't Know | Don't Know |
| No | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Don't Know | No | Don't Know |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Don't Know | No |

| | | |
|---|---|---|
| Yes | No | Don't Know |
| Yes | No | No |
| Yes | Don't Know | Don't Know |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Don't Know | No |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | No |
| Yes | Don't Know | Yes |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Don't Know | Don't Know |
| Yes | Don't Know | Don't Know |
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| No | No | No |
| No | No | No |
| No | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| No | No | Yes |
| Don't Know | Don't Know | Don't Know |

| | | |
|---|---|---|
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Don't Know | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Don't Know |
| No | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | Yes |
| No | No | No |
| Yes | Don't Know | Yes |
| No | No | No |
| No | No | No |
| Don't Know | Don't Know | Don't Know |
| No | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Don't Know |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | No | Yes |
| Don't Know | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| No | No | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Don't Know |
| Yes | Yes | Yes |
| Don't Know | Don't Know | Yes |
| Yes | No | Yes |
| Don't Know | Don't Know | Don't Know |
| Don't Know | Don't Know | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Don't Know |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| No | No | No |
| No | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Don't Know | Don't Know | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Don't Know | Don't Know |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |

| | | |
|---|---|---|
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | No |
| Don't Know | No | No |
| No | No | No |
| No | No | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Don't Know |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | No |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Don't Know |
| Yes | No | No |
| Yes | Yes | No |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Don't Know |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Don't Know | Don't Know | Yes |
| No | No | Yes |
| Yes | No | No |
| Yes | No | Yes |

| | | |
|---|---|---|
| No | No | Don't Know |
| Yes | No | Don't Know |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| No | Yes | Yes |
| No | No | Yes |
| No | No | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | Yes | No |
| Don't Know | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| No | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | No |
| No | No | No |
| No | No | No |
| Yes | Don't Know | Don't Know |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| Yes | Don't Know | No |
| Yes | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Don't Know | Don't Know | Don't Know |
| Yes | Don't Know | Don't Know |
| Yes | Don't Know | Yes |
| Yes | Don't Know | Don't Know |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | Don't Know | No |
| Yes | No | No |
| Yes | No | No |
| Yes | No | Don't Know |
| Yes | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Don't Know | Don't Know | Don't Know |
| Yes | Yes | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |
| Yes | Yes | Don't Know |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Don't Know | Yes | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| No | No | No |
| Yes | No | No |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |
| Yes | No | No |
| No | No | No |
| Yes | No | Don't Know |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Don't Know | Yes |
| Yes | Don't Know | Don't Know |
| Yes | No | No |
| Don't Know | Yes | Don't Know |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Don't Know |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Don't Know | No | No |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | Don't Know | Yes |
| No | No | No |
| Yes | No | Yes |
| No | No | No |
| Don't Know | Don't Know | Yes |
| No | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | No |
| Yes | No | Yes |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| No | No | Yes |
| Yes | No | Yes |
| Don't Know | Don't Know | Yes |
| Yes | Yes | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Don't Know | Don't Know | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | Yes |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Don't Know | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Don't Know |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | Don't Know | No |
| Don't Know | No | No |
| Yes | No | Yes |
| No | No | Don't Know |
| No | No | No |
| No | Yes | No |
| No | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | Yes |
| Don't Know | Don't Know | Don't Know |
| Yes | No | Yes |
| Yes | Don't Know | No |
| Yes | No | Yes |
| Yes | No | No |
| Yes | Yes | Don't Know |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Don't Know | Don't Know |
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | No |

| | | |
|---|---|---|
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | Yes |
| No | No | No |
| No | No | No |
| No | No | No |
| Yes | Don't Know | Yes |
| Yes | Don't Know | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | No | Don't Know |
| No | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Yes |
| Yes | No | Yes |
| Yes | Don't Know | No |
| No | No | No |
| Yes | Yes | Yes |
| Don't Know | Don't Know | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | Don't Know | Yes |
| Yes | No | No |
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | Don't Know |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Don't Know | Don't Know | Don't Know |
| Yes | No | No |
| Yes | No | Yes |
| No | No | No |
| Yes | Don't Know | Yes |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | Yes | No |
| No | No | No |
| No | No | No |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Don't Know | Don't Know | Don't Know |
| Yes | No | Yes |
| No | No | No |
| Yes | No | No |
| Yes | No | No |
| Yes | Yes | Yes |
| Yes | Yes | Yes |
| No | No | Don't Know |
| Yes | Yes | Yes |
| Yes | No | No |
| No | No | No |
| Yes | Don't Know | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Don't Know | Don't Know | Yes |
| Yes | Yes | No |
| Yes | Don't Know | No |
| No | No | Don't Know |
| No | No | No |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| Don't Know | Don't Know | Don't Know |
| Yes | Yes | Yes |
| Yes | Don't Know | Yes |
| Yes | No | No |
| No | No | No |
| No | Yes | Yes |
| No | No | No |

| | | |
|---|---|---|
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | Don't Know | Don't Know |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | No |
| No | No | Yes |
| No | No | No |
| No | No | No |
| Yes | No | Yes |
| Yes | No | Don't Know |
| Yes | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| Yes | No | No |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Yes | No | No |
| Yes | No | No |
| No | No | No |
| Yes | Yes | No |
| Yes | Yes | Yes |
| Yes | No | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | Yes | Yes |
| No | No | No |
| Yes | Yes | Yes |
| No | No | No |
| Yes | No | Yes |
| Yes | Yes | Yes |
| Yes | No | Yes |
| Yes | No | Yes |
| Don't Know | Yes | Yes |
| Yes | No | No |
| Yes | No | Don't Know |
| Yes | Don't Know | No |

# APPENDIX E

**Materials Considered**

- Plaintiff's Complaint (Case 4:21-cv-00913-NKL, Document 1)
- Defendant's Motion to Dismiss (Case 4:21-cv-00913-NKL, Document 31)
- Jay Rebuttal (Case 4:21-cv-00913-NKL, Document 55)
- Jay Survey Codebook

# EXHIBIT R



# Rebuttal Points

## Prepared for Dr. Wind in Response to Dr. Reibstein's Report

# Objectives and Methodology

- Dr. Wind asked Voluble Insights to evaluate the following aspects of Dr. **Reibstein's rebuttal report:**
  - The Google Trends analysis comparing searches for block tax and H&R Block tax;
  - The analysis of Amazon reviews using Block alone;
  - The analysis of forum posts using Block alone; and
  - The analysis of media collected from Factiva analysis.
- As directed by Dr. Wind, **we attempted to replicate Dr. Reibstein's** analytical work wherever possible and considered the context of the data **put forth in Dr. Reibstein's report.**
- The following pages outline our analyses and the shortcomings and issues we identified.

# GOOGLE TRENDS

# DR. REIBSTEIN'S GOOGLE TRENDS SEARCH OVERESTIMATED RESULTS FOR *BLOCK TAX* – SUMMARY

- Dr. Reibstein's claim that "consumers are more likely to seek out H&R Block's website through the Google search engine using the term [*block*] in conjunction with [*taxes*] than the term [*h&r block*]" (¶ 60) is false.

- Dr. Reibstein misinterpreted the data returned by his Google Trends searches. In particular, he did not realize that the results for a search of *block tax* incorporate results for searches of *H&R block tax* (and any other variation of 'H&R').

- Estimates of actual search volumes from Ahrefs' **Free Keyword Generator, a tool that** returns search volumes from Ahrefs' **database of 8 billion queries,**[*] consistently show that when searching for H&R Block, consumers more frequently use the words *H&R* and *block* together.

- To the extent consumers do search for *block tax* and *block taxes* without referencing 'H&R,' it is not at all clear these users were intending to search for H&R Block.

* https://ahrefs.com/keyword-generator

# DR. REIBSTEIN MISREPRESENTS THE PURPOSE OF GOOGLE TRENDS AND MISINTERPRETS ITS OUTPUT

- Using Google Trends, users can compare the relative search volume of different searches queries. The results are reported on a relative scale from zero to 100, indexed to the peak search volume of any of the queries over the specific period of time.

- Results returned by Google Trends are not limited to the words in the query:

  - While results must include the keywords contained in a query, they also incorporate queries with additional words (*i.e.*, if my query contains two keywords, A and B, the results for that search will incorporate searches containing keywords A and B, and other keywords searched together with A and B.)

  - Further, unless quotes are used around sets of keywords, the keywords can appear separate from each other and in any order (*i.e.,* a search of keywords A and B will incorporate searches in which the A is next to B, B is next to A, and any number of words are between A and B).

  - **See the excerpt below from a Google document titled, "Search tips for Trends."**

| Search term | Type of results you see |
|---|---|
| tennis shoes | Results can include searches containing both tennis and shoes in any order. Results can also include searches like "red tennis shoes," "funny shoes for tennis," or "tennis without shoes." <br><br> No misspellings, spelling variations, synonyms, plural, or singular versions of your terms are included. |
| "tennis shoes" | Results include the exact phrase inside double quotation marks, possibly with words before or after, like "red tennis shoes." |

Source: https://support.google.com/trends/answer/4359582

# DR. REIBSTEIN'S SEARCH RESULTS INCLUDE H&R BLOCK SEARCHES UNDER THE *BLOCK TAX* RESULTS

- **Dr. Reibstein's findings are a result of** misunderstanding of Google Trends data, not a result of greater consumer interest.

- Given results on Google Trends are not limited to just the keywords in the **query, Dr. Reibstein's search of** *block tax* incorporates all other searches that contain at least that phrase.

- Further, because Dr. Reibstein did not include quotes around the phrase *block tax*, his results likely incorporate searches that do not even have to have keywords next to each other or in the correct order.

Sample Search Queries Incorporated in search of *Block Tax*

Block Tax

Block IRS from accessing my tax return

The only term also incorporated in the *H&R Block Tax* search

H&R Block Tax

H & R Block Tax

HR Block Tax

H R Block Tax

H+R Block Tax

H and R Block Tax

HandR Block Tax

H7R  Block Tax

Hand R block Tax

H@R Block Tax

H abd R Block Tax

# DR. REIBSTEIN'S FLAWED GOOGLE TRENDS SEARCH



In Dr. Reibstein's original flawed search, it appears that *block tax* is a much more common search term than *h & r block tax*.

Dr. Reibstein's Report, p. 42 (Fig. 18)

7

# DR. REIBSTEIN'S SEARCH RESULTS INCLUDE H&R BLOCK SEARCHES UNDER THE *BLOCK TAX* RESULTS



**Dr. Reibstein's Interpretation of Google Trends Results**

Block Tax

H&R Block Tax

**Correct Interpretation of Google Trends Results**

Block Tax

H&R Block Tax

<u>Dr. Reibstein's Conclusion</u>: "**Searches for** [*block taxes* (no quotes)] **exceed searches for** [*h&r block taxes* (no quotes)], **suggesting that consumers are more likely to seek out H&R Block's website through the Google search engine using the term "block" in conjunction with "taxes"** than the term [*h&r block* (no quotes)] in conjunction with "taxes." (Reibstein Report, ¶60).

<u>Correct Conclusion</u>: Searches for *h&r block taxes* are necessarily a subset of *block taxes*. Data from Ahrefs (discussed in the following slides) suggest that consumers are much more likely to seek out H&R Block's website through the Google search engine using the terms 'H&R' (and variations of it) in conjunction with 'block' and 'taxes' than the terms 'block' and 'tax' alone.

* Graphics are not to scale

# *H&R Block* Dominates The Search Interest

Search of *block tax* (without quotes)
excluding 'hr' and 'h&r'

Search for *H&R Block*



Dr. Reibstein's analysis is also based on the arbitrary phrase *block tax*, despite the fact Google Trends data show that consumers more frequently search for H&R Block using the phrase *H&R Block* without the addition of the word 'tax.'

When *h&r block* is included (without 'tax') as a search term, the results are dramatic and counter to Dr Reibstein's conclusion: *h&r block* is searched significantly more frequently than *block tax* (after excluding even just two variations of 'H&R').

Google reports that the average relative search interest* for *block tax* without H&R terms is 3 and the average for *H&R Block* is 20, meaning *H&R Block* had over 6.5 times the search interest of *block tax*.



Source: https://trends.google.com/trends/explore?date=all&geo=US&q=block%20tax%20-hr%20-h%26r,h%26r%20block

9

\* Google calculates the average relative search interest by averaging the relative search interest for each month from January 2004 through January 2020.

# AHREFS FREE KEYWORD GENERATOR CONFIRMS MOST SEARCHES INCLUDING 'BLOCK' AND 'TAX' ALSO CONTAIN 'H&R'

- For technical reasons (described at the end of this report), **we were unable to correct Dr. Reibstein's search on Google** Trends and fairly compare a search of *block tax* and *H&R Block Tax.*

- Nonetheless, there are other tools one can rely on to compare search volumes. One of these tools is Ahrefs' Free Keyword Generator* tool, which allows users to discover popular search phrases included in Ahrefs database of 8 billion search queries.

- When searching different keywords, the Free Keyword Generator returns a list of the 100 most popular searches in its database that incorporate those keywords (in the order written). The list also contains an estimate of the average monthly number of search generated in the last 12 months and the last time the data related to that search was updated in the Ahrefs database. The screenshot to the right is an example showing the first 12 results of a search of *tax deadline.*

- We conducted three searches of the Ahrefs database: *block tax*, *block taxes,* and *block*. The results of the searches are described in the following slides.



| Keyword | Volume | Updated |
|---|---|---|
| tax deadline 2021 | 298K | 19 hours |
| 2021 tax deadline | 81K | 20 hours |
| tax deadline | 44K | 9 hours |
| 2020 tax deadline | 40K | a day |
| federal tax deadline 2021 | 28K | 2 days |
| irs tax deadline 2021 | 26K | 2 days |
| what is the tax deadline for 2021 | 11K | 3 days |
| will the 2021 tax deadline be extended again | 10K | 21 hours |
| income tax deadline 2021 | 10K | a day |
| tax deadline 2020 | 9.3K | 4 days |
| texas tax deadline 2021 | 8.1K | a day |
| tax deadline 2021 texas | 8.1K | 2 days |

Keyword ideas: "tax deadline"
Phrase match | Questions
The first 100 keywords out of 12,644 Sign up for Ahrefs

*The middle of the image has been cropped to fit the page.*

10

* https://ahrefs.com/keyword-generator.

# BLOCK TAX GENERATES ONLY 500 MONTHLY SEARCHES, COMPARED TO MILLIONS FOR H&R BLOCK AND SIMILAR PHRASES

## Block Tax Search Volume

- *Block Tax* (as a standalone phrase) generated only 500 monthly searches.

- The remaining 99/100 results in Ahrefs' database included a variation of 'H&R.'*

- The 99 results generated approximately 114,750 combined monthly searches, approximately 99.6% more than the *Block Tax* search.

## Block Taxes Search Volume

- *Block Taxes* (as a standalone phrase) was not included in the list of top 100 searches that include that phrase.

- 95/100 results in Ahrefs' database included a variation of 'H&R.'†

- The 95 results generated approximately 36,140 combined monthly searches.§

## Block Search Volume‖

- *H&R Block* (as a standalone phrase) generated 1.2 million monthly average searches.

- *HR Block* (as a standalone phrase) generated 1.4 million monthly average searches.

- *h and r block* (as a standalone phrase) generated 488,000 monthly average searches.

- *h & r block* (as a standalone phrase) generated 145,000 monthly average searches.

- *handr block* (as a standalone phrase) generated 107,000 monthly average searches

* The following are the H&R variations found in the Ahrefs results for *block tax*: H&R, hr, handr, h and r, h & r, h r, and h7r.
† The following are the H&R variations found in the Ahrefs results for *block taxes*: H&R, hr, handr, h and r, h & r, h r, h & r, h+r, h@r, h abd r, hand r. The 5 results that did not include a variation of H&R were as follows: national block taxes, h&block taxes, h block taxes, block taxes discount, and medieval engineers claim block taxes. These 5 results generated a combined 70 monthly searches.
‡ Ahrefs listed the volume of many of the results as "0-10." Since we do not know the exact search volume, we treated these as having no search volume.
§ ‖ The *block* search included many other variations of "H&R Block" as well as unrelated phrases (e.g., *block chain, on my block*, etc.) , indicating consumers either reference 'H&R' to search for H&R Block or are seeking other content.

# AHREFS' TOP *BLOCK TAX, BLOCK TAXES,* AND *BLOCK* SEARCHES

The 20 most popular queries in the Ahrefs database that mention *block tax, block taxes,* and *block* are listed below.

### *Block Tax* Searches*

| Search Query | Average Monthly Volume |
|---|---|
| h&r block tax software | 21,000 |
| hr block tax calculator | 9,400 |
| h&r block tax calculator | 9,300 |
| handr block tax software | 6,800 |
| h&r block tax software deluxe + state 2018 | 6,400 |
| h&r block tax | 4,400 |
| hr block tax estimator | 3,900 |
| h&r block tax return | 3,600 |
| h and r block tax calculator | 3,300 |
| h&r block tax software 2018 | 3,200 |
| h&r block tax software 2019 | 3,200 |
| h & r block tax software | 2,700 |
| h&r block tax estimator | 2,400 |
| h&r block tax course | 2,200 |
| h&r block tax software premium 2018 | 1,600 |
| h&r block tax software deluxe + state 2019 | 1,500 |
| h&r block tax filing | 1,300 |
| h&r block tax software premium & business 2018 | 1,100 |
| h&r block tax cut | 1,100 |
| h&r block tax calculator 2018 | 1,000 |

### *Block Taxes* Searches†

| Search Query | Average Monthly Volume |
|---|---|
| h&r block taxes | 31,000 |
| h&r block taxes online | 1,400 |
| hr block taxes cost | 800 |
| h&r block taxes free | 600 |
| h & r block taxes | 400 |
| hr block taxes | 350 |
| h & r block taxes online | 300 |
| h and r block taxes cost | 200 |
| h&r block taxes cost | 200 |
| h&r block taxes login | 150 |
| h and r block taxes | 100 |
| h and r block taxes online free | 100 |
| h&r block taxes online free | 60 |
| hr block taxes free | 60 |
| handr block taxes online | 40 |
| h and r block taxes calculator | 40 |
| online h&r block taxes | 40 |
| national block taxes | 40 |
| h an r block taxes | 20 |
| h r block taxes | 20 |

### *Block* Searches

| Search Query | Average Monthly Volume |
|---|---|
| hr block | 1,400,000 |
| h&r block | 1,200,000 |
| h and r block | 488,000 |
| on my block | 441,000 |
| block chain | 182,000 |
| h & r block | 145,000 |
| on my block cast | 131,000 |
| on my block season 4 | 115,000 |
| block | 112,000 |
| basilica block party | 109,000 |
| handr block | 107,000 |
| butcher block | 85,000 |
| butcher block countertops | 84,000 |
| block island | 80,000 |
| new kids on the block | 80,000 |
| how long is a block | 67,000 |
| h&r block free | 64,000 |
| how to block a number on iphone | 58,000 |
| cinder block | 58,000 |
| h and r block near me | 54,000 |

\* The standalone phrase *block tax* ranked 31st.
† The standalone phrase *block taxes* did not rank in the top 100.

# AMAZON REVIEWS

# THE AMAZON REVIEWS IN DR. REIBSTEIN'S REPORT ARE NOT REPRESENTATIVE OF THE PRODUCT REVIEWS AS A WHOLE

- Dr. Reibstein provides ten Amazon reviews[*] from two 2020 H&R Block products (a digital download[†] and a physical copy[‡]) that refer to H&R Block as just 'Block.' However, these reviews make up only a small percentage of the 1,077 reviews on these pages and are not representative.

- To analyze what portion of reviews these examples represent, we collected the reviews[§] on the two H&R Block products, conducted a text search on the review title and text, and calculated how often consumers use 'block' without 'H&R' (or 'hr', 'h and r', or other variations) when discussing the company's products.

- We conducted a manual review to validate our automated approach, the results of which suggest the results are generally accurate and may be overly generous to Dr. Reibstein.
  - To validate our automated approach, a coder manually reviewed a randomly-generated 10% sample of the reviews (110 reviews in total).
  - In 108 of the 110 cases, the coder's analysis matched the automated one. In the two cases it did not match,[‖] the manual review found that the automated approach favored Dr. Reibstein's analysis incorrectly claiming a review used 'Block' alone (thereby increasing the size of numerator) and by missing a post that used the company name (thereby decreasing the size of the denominator). Given the high validation rate, we report the automated data as coded without adjustment.

* Exhibit 3 to Dr. Reibstein's report includes five other reviews from Office Depot's website not included in this analysis. The Office Depot listing has over 14,000 reviews.
† https://www.amazon.com/Block-Software-Deluxe-Exclusive-Download/dp/B08L993RL3
‡ https://www.amazon.com/Block-Software-Deluxe-Exclusive-Physical/dp/B08JNQ1FM6
§ Amazon shows 7,631 ratings for the digital version and 1,441 ratings for the physical versions, which includes both ratings (*i.e.*, numerical scores only) and reviews (*i.e.*, star ratings accompanied with a text component). Our analysis is limited to reviews only. There were a total of 822 and 255 reviews for the two products when we collected them on January 25, 2022.
‖ https://www.amazon.com/gp/customer-reviews/R19VZSBEI8U2NI/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B08JNQ1FM6 and https://www.amazon.com/gp/customer-reviews/R32I7YH0ACGDW7/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B08L993RL3.

# FEW REVIEWERS REFER TO H&R BLOCK USING ONLY THE WORD BLOCK

- The product pages have a total of 1,077 consumer reviews posted between 11/16/2020 and 1/5/2022.

- In addition to the 10 Block-only reviews in Dr. **Reibstein's report, 15 others use Block alone** and 17 others use both H&R Block and Block in the same review.

- Overall, only 3.9% of reviews on the H&R Block product pages use Block alone or Block alone with H&R Block to refer to H&R Block.
  - 2.3% use Block as the only reference to the company.
  - 1.6% use both H&R Block and Block.

- Over 40% of the reviews on the H&R Block product pages using Block alone are 1-star reviews and two-thirds are 3 stars or fewer. All reviews are out of 5 stars.



2.3%  1.6%

96.1%

■ Using Block Alone  ■ Using Both  ■ Not Using Block Alone

# EVEN THE MOST CONSERVATIVE APPROACH SHOWS THE REVIEWS ARE NOT REPRESENTATIVE

- While Amazon users were reviewing a clearly identified H&R Block product, most of the reviews from the two H&R Block product pages do not explicitly mention the company name in the review. Only 431 of the 1,077 reviews mention H&R Block or some variation of it.
  - These 431 include any review that mentions H&R Block, Block, HR Block, H & R Block, H and R Block, H R Block, or HRB in the review body or title.
- Even using the conservative approach of only considering those 431 **reviews that mention the company name, Dr. Reibstein's few examples are** not representative.
- Of reviews that reference the company name:
  - 5.8% use only Block to reference the company;
  - 3.9% use both Block and H&R Block; and
  - 90.3% use some form of H&R Block.

# FORUM POSTS

# THE FORUM POSTS CITED BY DR. REIBSTEIN ARE NOT REPRESENTATIVE

- Dr. Reibstein includes four posts from a forum, claiming they illustrate that consumers make the **link between Block, Inc. and Cash App and represent another "mechanism" through which** consumers will link the companies.

- **The** "whatsthatcharge.com" **forum that Dr. Reibstein uses in his report is for consumers** investigating unknown charges on their credit cards. Whatsthatcharge.com caters to a subset of consumers who have a narrowly defined online payment issue. There is no evidence that posts by these consumers are representative of the consumer population at large or consumers who are interested in the products and services offered by H&R Block or Block.

- Some posters are just learning about the companies (Cash App and Square), are not users of either company, and/or do not know they are the same company. See examples below:

I had 14 debits for $5 each from a cash app with 3 different names: Mary, David, and Cynthia with the phone number 415-375-3176 which I called and it belongs to this square company. Never had a cash app account, never authorized any debits, never heard of square company, and had to close a debit card, rearrange money, and order a new one. What a pain in the a** to do!!!


posted 05/30/2020 by SCD

I have 14 authorized transactions from the 8774174551 equaling $3405 through CASH APP...omg! They have taken anywhere from $10 to $900 per transaction. I was reading that they also do it through square. Be safe. Watch out. So scary.


posted 04/21/2021

👍 Helpful (1)   👎 Not So Much (3)

18

# FEW USERS CONNECTED SQUARE TO CASH APP



Only 17% of posts mention both Square and Cash App

- ■ Posts mentioning neither Cash App nor Square
- ■ Posts Mentioning Cash App without Square
- ■ Posts mentioning Square without Cash App
- ■ Posts mentioning both (incl. references to Square Cash)

Dr. Reibstein included four example posts from two pages on whatsthatcharge.com, but these are not representative of the overall discussion.

Of the 54 posts across the two cited pages, 25 mentioned neither company and only nine mentioned both Square and Cash App.

Even posters that mentioned both companies may not know the two are affiliated, as evidenced by the second example on the previous page.

From https://www.whatsthatcharge.com/SQC-BR-8774174551-CA & https://www.whatsthatcharge.com/SQC-04153753176-CA as cited in the Reibstein Report.

# FACTIVA MEDIA ANALYSIS

# DR. REIBSTEIN'S REVIEW OF MEDIA COVERAGE IS FLAWED AND MISLEADING — SUMMARY

Dr. Reibstein attempted to show that the media has frequently linked Cash App with Square and that the linkage "has become stronger and more prevalent over time." (¶73) However, there are many flaws in this analysis:

- The analysis was based only on summary data and cannot be replicated.

- **Dr. Reibstein attempted to "confirm" his analysis using** unrepresentative sample.

- Most of the analysis is based on niche publications.

- Even if we accept his analysis (fatal flaws notwithstanding,) the percentage of 'articles' that link the two names has decreased over time rather than "becoming stronger and more prevalent."

Dr. Reibstein's Report, p. 52



| Figure 21: Historical Linkage of "Cash App" to "Square" in Media Articles | | | | | |
|---|---|---|---|---|---|
| | *2017* | *2018* | *2019* | *2020* | *2021* |
| Cash App AND Square | 81 | 248 | 326 | 620 | 1,428 |
| Cash App | 100 | 388 | 730 | 2,043 | 3,563 |
| Ratio | 81% | 64% | 45% | 30% | 40% |
| Ratio (Adjusted) | 81% | 61% | 41% | 27% | 32% |

Dr. Reibstein's Found Linkage Between Cash App & Square

Ratio Adjusted · — · — Overall Average · · · · Trendline

# THE ANALYSIS WAS BASED ON SUMMARY DATA AND CANNOT BE REPLICATED

- Dr. Reibstein did not produce a list of all articles included in the Factiva analysis and does not seem to have reviewed all available data.
  - It appears he relied on a summary table showing the number of articles published per year rather than accessing the articles themselves.
  - While Factiva does make it difficult to export a full list of articles from its database, it does allow a user to review additional summary data (*e.g.,* a list of publications returned by a search, a list of subjects discussed, etc.) that can be used to assess whether the articles returned by a search are relevant to the analysis. There is no evidence that Dr. Reibstein reviewed the summary data available to him.

- **We could not replicate Dr. Reibstein's results on Factiva with the same parameters he used.**
  - While the numbers are similar for the search of Cash App and Square, the numbers for the search of Cash App are not.
  - **Unfortunately, Dr. Reibstein did not produce any exports of the results from his search of "Cash App."** While it is not uncommon for databases to return different results for the exact same search, we do not have enough information to explain why there are discrepancies in the Cash App and Square search results.

|  |  | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|
| Dr. Reibstein | Cash App AND Square | 81 | 248 | 326 | 620 | 1,428 |
|  | Cash App | 100 | 388 | 730 | 2,043 | 3,563 |
| Voluble | Cash App AND Square | 78 | 304 | 316 | 767 | 1,541 |
|  | Cash App | 90 | 341 | 462 | 1,142 | 2,509 |

# DR. REIBSTEIN'S SAMPLE IS NOT REPRESENTATIVE

- Neither Dr. Reibstein's report nor his backup data describes how the sample was selected.
  - Dr. Reibstein manually reviewed a sample of articles in order to "confirm the inference" that there is a "substantial linkage between Cash App and Square" in media coverage referencing Cash App (¶¶ 73-74).
  - Dr. Reibstein does not say that his sample was randomly selected or that it was representative of the overall population. If the sample is not representative, then it cannot be relied upon to confirm his inference. Our review of the samples found they are not proportionally distributed across the years of interest and are primarily from the latter half of the calendar years, as shown in the tables below.

- These samples are not representative and cannot be used to draw conclusions about the full dataset:
  - The sample significantly overrepresents articles published in earlier years and underrepresents articles published in later years.
  - The samples appear to have been collected in reverse chronological order and not randomly.

- At most, Dr. Reibstein knows whether the last 65 to 81 articles published in a particular year include a link between Cash App and Square.

| Percentage of Articles Sampled Per Year | | | | | |
|---|---|---|---|---|---|
| | 2017 | 2018 | 2019 | 2020 | 2021 |
| Articles in Dataset | 81 | 248 | 326 | 620 | 1,428 |
| No. of Articles in Sample | 65 | 81 | 73 | 73 | 73 |
| Percentage Sampled | 80% | 33% | 22% | 12% | 5% |

| Date Range Included in the Sample | |
|---|---|
| 2017 | February 10 – December 19, 2017 |
| 2018 | August 14 – December 29, 2018 |
| 2019 | October 17 – December 31, 2019 |
| 2020 | November 23 – December 31, 2020 |
| 2021 | November 2– November 30, 2021 |

# THE FACTIVA ANALYSIS IS DOMINATED BY NICHE PUBLICATIONS

- A detailed analysis of the 73 articles included his 2021 sample found that most of the articles appear to be from publications targeting finance and other professionals and investors.

- In fact, approximately **51% of the articles in the sample are from the following publications:** Investor's Business Daily, Lend Academy, Benzinga, InvestorPlace, and VIQ FD Disclosure. These kinds of publications target a specialized and/or niche audience, per their website descriptions:

  - Investor's Business Daily "provides best of breed data, research and information for RIAs, FAs and Institutional Investors" and boasts that its users have an average net worth of over $1.7 million;*

  - Lend Academy is "a daily news service covering all the important fintech news;"†

  - Benzina describes itself as "one-stop shop for investors of all stripes and styles" offering content related to "breakouts to unusual volume, analyst ratings, futures and options;"‡

  - InvestorPlace "publishes detailed research and recommendations for self-directed investors, financial advisors and money managers;"§ and

  - VIQ FD Disclosure does not appear to be a publication at all and is instead transcripts from conferences and interviews.

- The sample also includes three Square SEC filings and three Square press releases.

- As mentioned previously, we attempted to replicate Dr. Reibstein's search on Factiva. The sources included in the results of our search are similar to the ones included in Dr. Reibstein's small 2021 sample. As a result, it is likely that Dr. Reibstein's entire analysis incorporates niche sources.

- All publications included in the 2021 sample are on the following slides.

\* https://get.investors.com/advertising/
† https://www.lendacademy.com/about
‡ https://www.benzinga.com/about
§ https://investorplace.com/corporate/about-us/

# PUBLICATIONS INCLUDED IN DR. REIBSTEIN'S 2021 SAMPLE (CHART CONTINUES ON FOLLOWING PAGE)

| Source | Count of Articles | Percentage of Articles | Cumulative Percentage |
|---|---|---|---|
| Investor's Business Daily | 13 | 18% | 18% |
| Lend Academy | 9 | 12% | 30% |
| Benzinga | 6 | 8% | 38% |
| InvestorPlace | 5 | 7% | 45% |
| VIQ FD Disclosure | 4 | 5% | 51% |
| MarketWatch | 3 | 4% | 55% |
| Securities and Exchange Commission (SEC) Filings | 3 | 4% | 59% |
| American Banker | 2 | 3% | 62% |
| Business Wire | 2 | 3% | 64% |
| Engadget | 2 | 3% | 67% |
| Seeking Alpha | 2 | 3% | 70% |
| ABC News | 1 | 1% | 71% |
| azcentral.com | 1 | 1% | 73% |
| Barron's Online | 1 | 1% | 74% |
| CE Latin America Migration | 1 | 1% | 75% |
| eCoustics.com | 1 | 1% | 77% |

# PUBLICATIONS INCLUDED IN DR. REIBSTEIN'S 2021 SAMPLE (CONTINUED FROM PREVIOUS PAGE)

| Source | Count of Articles | Percentage of Articles | Cumulative Percentage |
|---|---|---|---|
| Forbes.com | 1 | 1% | 78% |
| International Business Times | 1 | 1% | 79% |
| Kiplinger.com | 1 | 1% | 81% |
| PR Newswire | 1 | 1% | 82% |
| Proactive Investors USA & Canada | 1 | 1% | 84% |
| Reuters Washington Daybook Report | 1 | 1% | 85% |
| Smarter Analyst | 1 | 1% | 86% |
| TechCrunch | 1 | 1% | 88% |
| Telegraph Herald | 1 | 1% | 89% |
| The Hill | 1 | 1% | 90% |
| The Wall Street Journal | 1 | 1% | 92% |
| The Winchester Star | 1 | 1% | 93% |
| US Fed News | 1 | 1% | 95% |
| USA Today Online | 1 | 1% | 96% |
| U-Wire | 1 | 1% | 97% |
| Warren's Consumer Electronics Daily | 1 | 1% | 99% |
| WDEZ | 1 | 1% | 100% |

# THE FACTIVA ANALYSIS IS DOMINATED BY NICHE PUBLICATIONS AND IGNORED SOCIAL MEDIA COVERAGE

- **Dr. Reibstein's sample does not include** articles from popular media outlets,[*] such as Time, Vice, Bustle, Complex, and Slate,[†] all of which published articles about Cash App during the date range covered by the sample.

- The 2021 sample also does not include any coverage of Cash App on social media, despite the fact Cash App collaborated with multiple celebrities to promote its product on social media during the date range covered by the sample. Examples include:[§]

  - Rapper Lil Nas X promoted Cash App on Instagram and Twitter to his 12.3 million Instagram followers and 7.5 million Twitter followers;

  - Rapper Megan Thee Stallion promoted Cash App on Instagram to her 27.4m Instagram followers and retweeted a Cash App post to her 7.3 million Twitter followers;

  - NFL player Odell Beckham Jr. promoted Cash App on Instagram to his 15.2 million Instagram followers and Twitter to his 4.2 million followers;[‡] and

  - NFL player Aaron Rodgers promoted Cash App on Instagram to his 1.9 million Instagram followers and Twitter to his 4.5 million followers.

- None of the articles or social media posts cited includes a link between Cash App and Square.

[*] Time, Vice, Bustle, Complex and Slate all appear in Pew Research's list of most visited news outlets of 2019 and 2020 (https://www.pewresearch.org/journalism/2021/07/27/state-of-the-news-media-methodology/). Pew has not yet prepared a report using 2021 data.
[†] See, for example, https://time.com/6118513/into-the-metaverse-time-newsletter, https://www.vice.com/en/article/g5qbg4/monaleo-is-the-sweetest-bully-rapping-today, https://www.bustle.com/life/how-to-tip-tiktok, https://www.complex.com/music/lil-nas-x-partnership-cash-app-give-away-1-million-to-teens, and https://slate.com/technology/2021/11/cyber-fraud-nigeria-lockdown-university-students.html.
[‡] Dr. Reibstein's 2021 sample does include articles that discuss Odell Beckham Jr. taking his salary in bitcoin and giving away $1 million on Cash App but doesn't include the actual social media posts in which Mr. Beckham promoted the giveaway.
[§] Lil Nas X (https://www.instagram.com/p/CWodEHGFdjk/; https://twitter.com/LilNasX/status/1463247233625772032): Megan Thee Stallion (https://www.instagram.com/p/CW6Hsn1vrOC; https://twitter.com/theestallion/status/1465736459306946560); Odell Beckham Jr (https://twitter.com/obj/status/1462836953888534528; https://www.instagram.com/p/CWIiw4gj7R7/) ; Aaron Rodgers (https://www.instagram.com/p/CVvsViiPHtT/; https://twitter.com/AaronRodgers12/status/1455256506601984002).

# THE FACTIVA ANALYSIS IS DOMINATED BY NICHE PUBLICATIONS

- **Notably, the kind of publications included in Dr. Reibstein's Factiva analysis are** very different from those discussed in the paragraph that immediately precedes the Factiva analysis (¶72).

- In paragraph 72, Dr. Reibstein includes quotes from eight publications in an attempt to demonstrate that the media links Square to Cash App. Seven of the eight articles are from mainstream news websites or newspapers (The Verge, CNN, WSJ, Forbes, Business Insider, The Washington Post, and LA Times), and the eighth is from Business Wire.

- Dr. Reibstein does not explain how he found these eight articles or whether they were included in his Factiva search.[*] Nonetheless, the articles listed in paragraph 72 **are not representative of the kind of media coverage included in Dr. Reibstein's** Factiva analysis.

* The list of sources returned in our Factiva did not show results for The Verge or the LA Times, so it is unlikely they were included in Dr. Reibstein's either.

# ADDITIONAL DETAIL ON GOOGLE TRENDS

# UNABLE TO CORRECT DR. REIBSTEIN'S GOOGLE TRENDS SEARCH

- In theory, to "correct" Dr. Reibstein's approach one would do the following:

  1) Add quotes around the keywords 'block tax' to ensure the results are limited to searches in which those keywords appear next to each other; and

  2) Exclude keywords that contain 'H&R' and as many variations of that term (*e.g.*, 'H & R,' 'HR,' 'H and R') as possible. To add exclusion keywords, a user puts the NOT symbol ('-') directly in front of a keyword.

- Google Trends limits users' ability to combine exact matching with exclusion keywords. The table below summarizes the results of running different kinds of queries, based on our testing.

| Query | Description | Output |
|-------|-------------|--------|
| "A" -"B" | Quotes around both the main keyword (A) and the exclusion keyword (B) | Google returns an error |
| "A" -B | Quotes only around the main keyword (A) | Google returns an error |
| A -"B" | Quotes only around the excluded keyword (B) | Google ignores the NOT symbol ("-"), effectively converting the search to A AND "B." |
| A -B | No quotes around either keyword | Google returns results |

- As the table shows, we were unable to both require exact matching and exclude keywords. As a result, it is not possible to properly correct Dr. Reibstein's approach. First, one cannot use quote around 'block tax' while also excluding results that reference 'H&R.' Second, it's only possible to exclude variations of 'H&R' that do not incorporate spaces (*e.g.*, 'H&R' and 'HR'), since variations that include spaces (*e.g.*, 'H & R,' 'H R,' 'H and R') must be placed in quotes to be excluded properly.*

* Google interprets spaces between keywords as an AND operator. If one were to search *block tax −h & r*, Google would interpret the query as follows: block AND tax AND & AND r AND NOT h. In other words, the '&' and the 'r' in 'h & r' would be treated as stand alone keywords along with 'block' and 'tax.'

# VOLUBLE INSIGHTS

- Voluble Insights is a consulting firm specializing in social media and other forms of online media. Voluble was founded by a team of experienced litigation consultants to provide analyses of online consumer conversations designed specifically for use in commercial litigation.